1    [Counsel on signature page]

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN FRANCISCO DIVISION**

11

12   STEWART O'NAN, et al.,                    Case No.: 3:24-cv-01451-CRB

13        *Plaintiffs,*
                                              **[PROPOSED] STIPULATED ORDER
14            v.                              REGARDING DISCOVERY OF
                                              ELECTRONICALLY STORED
15   DATABRICKS, INC., et al.,                INFORMATION**

16                      *Defendant.*

17
     ─────────────────────────────
18   REBECCA MAKKAI, et al.,

19        *Plaintiffs,*

20            v.

21   DATABRICKS, INC., et al.,

22                      *Defendant.*

23

24

25

26

27

28

Upon the stipulation of the Parties, the Court ORDERS as follows:

1.      This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2.      This Order may be modified at the Court's discretion or by stipulation.

3.      As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26.  Likewise, a Party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4.      A Party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5.      The Parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines") and are encouraged to employ the District's Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

6.      **Disclosure:** Pursuant to Federal Rules of Civil Procedure 26(a) and 26(g), and to the extent not already disclosed, the Parties shall disclose the following information.

   a.  **Custodians**: Each side will identify the ten (10) custodians believed most likely to have discoverable ESI in their possession, custody, or control (hereinafter, "Document Custodians").  The Document Custodians shall be identified by name, title, and connection to the instant litigation.  This process shall begin within fourteen (14) days of entry of this order, and such identification shall be complete no later than twenty-one (21) days from entry of this order.  The Requesting Party may request that the Producing Party add up to three (3) additional custodians, to which the Producing Party will object only on the basis of Apex considerations, prior to commencing the process outlined in Section 6.b.

   b.  **Additional Custodians**: If, after the Parties identify thirteen (13) Document Custodians, a Requesting Party believes that additional Document Custodians should be added, then the Requesting Party shall advise the Producing Party in writing of the proposed additional Document Custodians and the basis for the request.  If the Parties

have not agreed whether to add the Document Custodian within seven (7) days of the Requesting Party's request, then the matter may be brought to the Court in accordance with the Court's procedures.  Nothing in this paragraph waives any objection by a Producing Party that further investigation, discovery, or document production is needed before determining the necessity or lack thereof of additional Document Custodians.

c.  **Data Sources**: The Producing Party will inform the Requesting Party about which data sources within the Producing Party's possession, custody, or control have been searched and/or collected from to identify potentially responsive or relevant documents or ESI.

d.  The Parties agree to meet and confer regarding the identification of any additional data sources with potentially responsive information, in compliance with the Guidelines for the Discovery of Electronically Stored Information (ESI Guidelines) for the Northern District of California.

7.    **Search**: The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce documents responsive to discovery.

a.  **Search Terms Use**: Each Producing Party may – but is not required to – use search terms to locate potentially relevant documents for collection and/or culling after collection.  As a general matter, each Producing Party will use search terms for searching email and other electronic communications, and other sources that are readily amenable to search terms.  For sources not readily amenable to search terms, each Producing Party is best equipped to determine whether search terms or other approaches – such as retrieval of documents and sources identified during custodial interviews – is appropriate for each such source.  For documents using search terms, the Producing Party will provide its suggested search terms to the Requesting Party.  The Requesting Party will have seven (7) days to add or propose modifications to the Requesting Party's terms.  If the Producing Party objects to the Requesting Party's

additional or modified terms based on overbreadth or burden, then the Producing Party will produce a hit count for the disputed terms and propose alternative terms.  If the Parties continue to disagree, they will meet and confer to resolve the search terms.  If a Party intends to use Technology Assisted Review ("TAR") (including Continuous Active Learning), the Parties will agree to a separate TAR protocol to govern that process.

b. **Search Terms**: To the extent search terms are used for a given source or set of data, the Parties will develop search terms as described above.  After applying the search terms to the targeted document set(s), the Producing Party will review a statistically valid (95% ± 5), randomly generated sample set of the documents that do not hit upon any search terms ("Null Set Sample") and produce to the Requesting Party the relevant, responsive, non-privileged documents (if any exist) from that Null Set Sample.  The Producing Party will develop appropriate new search term(s), if needed, to capture any such relevant documents located within the Null Set Sample.  The Producing Party will then apply the original and new search terms to the targeted document set and disclose the original and new terms to the Requesting Party, along with a hit report.  If the Requesting Party objects to the sufficiency of the Producing Party's original and new search terms, the Parties agree to conduct one round (and if there is good cause, i.e. any justifiable reason to do so, more than one round) of the four-step process identified below:

1. The Requesting Party may request one additional Null Set Sample to be reviewed by the Producing Party;

2. The Producing Party will review the additional Null Set Sample and produce all relevant, responsive, non-privileged documents to the Requesting Party;

3. The Requesting Party can propose additional search terms that would capture the relevant, responsive, non- privileged documents from the additional Null Set Sample; and

4. The Producing Party will apply the search terms to evaluate their reasonableness.

If the search terms proposed by the Requesting Party have an unreasonably high or overbroad yield, the Producing Party may review a randomly generated 95/5 confidence level/margin of error sample set of documents to determine the overbreadth of the proposed search terms.

Where appropriate, the Producing Party may develop alternative search terms that are more narrowly tailored to capture the relevant, responsive, non-privileged documents from the additional Null Set Sample, and provide a hit report on those terms.

As noted above, for good cause, the Requesting Party can request that there be more than one round of the four-step process described above. For purposes of this provision, "good cause" shall mean any kind of justifiable reason to do the four-step process again.

c. **Other Review Procedures**: Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents. Further, nothing in this Order requires the production of documents that are irrelevant, privileged, or otherwise protected from disclosure merely because the documents hit upon a search term.

d. **Known, Responsive ESI**: Specific, non-duplicative ESI that is identified by a Party as responsive to a discovery request shall not be withheld from review or production solely on the grounds that it was not identified by (or is subject to an exclusion set forth in) the protocols described in, or developed in accordance with, this Order.

e. **Production and Supplementation of ESI**: Production of responsive, non-privileged documents shall proceed on a rolling basis and be substantially completed in view of the Scheduling Order entered in this case.

8.    **Preservation**: To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

a.  Parties will preserve non-duplicative, relevant information currently in their possession, custody, or control.

b.  Unwarranted, extraordinary measures will not be taken to preserve the two sources of ESI listed immediately below, unless it is determined that these sources are the only available source of unique responsive data, including but not limited to version histories or iterations of generative AI models.  If either of these sources contain unique responsive data, the Parties agree to meet and confer on a preservation protocol specific to the identified data source.  Those two sources will be retained pursuant to standard business processes but not searched, reviewed, or produced, unless ordered by the Court or agreed to by the Parties, as provided in this paragraph:

1.  backup systems and/or tapes used for disaster recovery; and

2.  systems no longer in use that cannot be accessed by using systems currently in use by the Party.

c.  In addition to the above, the Parties agree that data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved (this category will not include sources known to contain data that was used to train any large language model related to issues raised in this litigation or any dataset or records describing that data (hereinafter collectively "LLM Data"), however the Parties will meet and confer to determine both any format and reasonable scope regarding the production of any LLM Data relating to Plaintiffs' allegedly copyrighted works):

1.  Deleted, slack, fragmented, or unallocated data only accessible by forensics.

2.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.   On-line data such as temporary internet files, history, cache, cookies, and the like.

4.   Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates.

5.   Mobile device activity logs.

6.   Server, system, or network logs.

7.   Dynamic fields in databases or log files not stored or retained in the usual course of business.

8.   Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the Party.

d.   The Parties acknowledge that Databricks, Inc. may be subject to various privacy regulations and court orders that require the disposition of identifiable user data. To the extent that identifiable user data subject to routine disposition as required by privacy regulations and court orders is identified as relevant to the claims or defenses in this case, the Parties will meet and confer on preservation of such information as it exists at that time, including the feasibility of such preservation and the type and import of the user data implicated.

e.   Data that is inaccessible within the meaning of Federal Rule of Civil Procedure 26(b)(2)(B) shall not be produced to another Party, either in native form or otherwise, unless ordered by the Court. The Parties will meet and confer in good faith regarding whether there are reasonable and practical methodologies to query or sample such data sources.

9.   **Production Format**: The Parties agree to produce documents in the formats described in Exhibit 2 to this Order. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties

agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

10.     **Enterprise Messaging, Mobile Device Data, and Other Communication Tools**:

    a.     The Parties will disclose at the outset any use of enterprise messaging tools used in the course of business (*e.g.*, Slack, MS Teams, Zoom, WhatsApp, Google Chat, Sametime, Skype, Telegram, etc.).  The Parties will meet and confer regarding procedures for inclusive collection of such data, the format of the production, metadata fields, and other issues unique to this type of data.  Electronically stored information associated with enterprise messaging tools should be collected and reviewed with emails and other custodian/non-custodial data sources.  Documents produced from an enterprise messaging platform must clearly indicate, either in a unique metadata field or on the face of the document, the specific platform the documents are from.

    b.   The Parties agree to disclose whether any Document Custodians' mobile devices contain unique sources of relevant ESI, and to meet and confer regarding procedures for the inclusive collection of such data, the format of production, metadata fields, and other issues unique to this type of data.

11.     **Deduplication and Threading**: A Party should use reasonable efforts to produce only a single copy of a responsive document.  "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages, or SHA-256 hash values.  The Parties will make reasonable efforts to not produce Duplicate ESI. To the extent identical copies of documents appear in the files of multiple Document Custodians, the Producing Party will use reasonable efforts to produce only one such identical copy across all Document Custodians based on MD5 or SHA-1 hash values at the document level for file system data or the email family level for emails.  Entire document families may constitute Duplicate ESI.  De-duplication will not break apart families.  When Duplicate ESI exists in the files of multiple Document Custodians, the names of all Document Custodians who were in possession of a

document prior to de-duplication will be populated in the "AllCustodians" field identified in Exhibit 1.

12.    **Privilege Logs, Redactions, and Challenging Privilege**: The Parties agree to meet and confer to develop a stipulated protocol for privilege logs, redactions, and challenges to privilege designations. If the Parties cannot agree on a stipulated protocol within thirty (30) days of the date of this order, they agree to submit the dispute to the Court or designated Magistrate Judge for resolution.

13.    **Structured Data and Model Data**: The Parties agree to meet and confer to develop a stipulated protocol for production and review of structured data and model data, if needed.  If the Parties cannot agree on whether a stipulated protocol is needed, and if so, the terms of that protocol, by December 20, 2024, they agree to submit the dispute to the Court or designated Magistrate Judge for resolution.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: December 5, 2024

Honorable Charles R. Breyer
United States District Judge

1    Dated: December 4, 2024

2    By:  */s/ Joseph Saveri*                              By:  */s/ Deena J.G. Feit*
     Joseph R. Saveri (State Bar No. 130064)       Jedediah Wakefield
3    Cadio Zirpoli (State Bar No. 179108)          Ryan Kwock
     Christopher K. L. Young (State Bar No.         **FENWICK & WEST LLP**
4    318371)                                        555 California Street, 12th Floor
     Elissa Buchanan (State Bar No. 249996)        San Francisco, CA 94104
5    Evan Creutz (State Bar No. 349728)            Telephone: (415) 875-2300
6    **JOSEPH SAVERI LAW FIRM, LLP**               Email: jwakefield@fenwick.com
     601 California Street, Suite 1505                    rkwock@fenwick.com
7    San Francisco, CA 94108
8    Telephone: (415) 500-6800                      David Lloyd Hayes
     Facsimile:  (415) 395-9940                     **FENWICK & WEST LLP**
9    Email:  jsaveri@saverilawfirm.com             801 California Street
            czirpoli@saverilawfirm.com             Mountain View, CA 94041
10           cyoung@saverilawfirm.com              Telephone: (650) 988-8500
             eabuchanan@ saverilawfirm.com         Email: dhayes@fenwick.com
11           ecreutz@saverilawfirm.com

12   Matthew Butterick (State Bar No. 250953)      Charles Moulins (admitted *pro hac vice*)
13   1920 Hillhurst Avenue, #406                   **FENWICK & WEST LLP**
     Los Angeles, CA 90027                         902 Broadway, Suite 14
14   Telephone: (323) 968-2632                     New York, NY 10010
     Facsimile:  (415) 395-9940                    Telephone: (212) 430-2600
15   Email: mb@butaricklaw.com                     Email: cmoulins@fenwick.com

16   Brian D. Clark (admitted *pro hac vice*)      Deena J.G. Feit (admitted *pro hac vice*)
17   Laura M. Matson (admitted *pro hac vice*)     **FENWICK & WEST LLP**
     Arielle S. Wagner (admitted *pro hac vice*)   401 Union Street, 5th Floor
18   Eura Chang (admitted *pro hac vice*)          Seattle, WA 98101
19   **LOCKRIDGE GRINDAL NAUEN**                   Telephone: (206) 389-4510
     **PLLP**                                      Email: dfeit@fenwick.com
20   100 Washington Avenue South, Suite 2200
     Minneapolis, MN 55401                         Zachary Harned
21   Telephone: (612) 339-6900                     **FENWICK & WEST LLP**
     Facsimile:  (612) 339-0981                    730 Arizona Avenue, 1st Floor
22   Email:  bdclark@locklaw.com                   Santa Monica, CA 90401
23           lmmatson@locklaw.com                  Telephone: (310) 434-5400
             aswagner@locklaw.com                  Email: zharned@fenwick.com
24           echang@locklaw.com

25   *Counsel for Individual and Representative*   *Counsel for Defendants*
     *Plaintiffs and the Proposed Class in the*    *Databricks, Inc. and Mosaic ML, LLC,*
26   *O'Nan* Action                                *formerly Mosaic ML, Inc.*

27

28

Bryan L. Clobes (admitted *pro hac vice*)
Alexander J. Sweatman (admitted *pro hac vice*)
Mohammed R. Rathur (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:      312-782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

*Attorneys for Plaintiffs and the Proposed Class in the* Makkai *Action*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

**FIELDS AND METADATA TO BE PRODUCED**

1.    The load files accompanying scanned paper documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family |
| PAGECOUNT | Number of pages |
| TEXTLINK | Link to text file for the document |
| CUSTODIAN | Name of custodian or custodial file |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| REDACTION | Indicate whether document was redacted electronically after scanning |

2.    The following Metadata fields shall be included in Load files accompanying ESI, to the extent available, and/or unredacted:

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| BEGBATES | First Bates identifier of item | First Bates identifier of item |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol.

STIP. ORDER RE: DISCOVERY OF ESI          11          Case No. 3:24-cv-01451-CRB

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| ENDBATES | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family | Ending Bates number of a document family |
| PRODVOL | Production volume | Production volume |
| PAGECOUNT | Number of pages | Number of pages |
| ATTACHCOUNT | Number of files attached to parent | Number of files attached to parent |
| CUSTODIAN | Custodian of the document | Custodian of the document |
| ALLCUSTODIANS | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation | Confidentiality designation |
| AUTHOR | Any value populated in the Author field of the document properties | n/a |

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| FROM | n/a | Sender of email message, message sent via messaging platform, or calendar invite |
| TO | n/a | All recipients that were included on the "To" line of an email message or calendar invite.  Recipients of a message sent via messaging platform. |
| CC | n/a | All recipients that were included on the "CC" line of message or calendar invite |
| BCC | n/a | All recipients that were included on the "BCC" line of message or calendar invite |
| EMAILSUBJECT | n/a | Subject of message or calendar invite pulled from the document properties.  Name of messaging channel. |
| TITLE | Any value populated in the Title field of the document properties | n/a |
| DATETIMECREATED | Date and time file was created according to filesystem information (format: MM/DD/YYYY HH:mm:ss) | n/a |

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| DATETIMEMODIFIED | Date and time file was last modified according to filesystem information (format: MM/DD/YYYY HH:mm:ss) | n/a |
| DATETIMESENT | n/a | The sent date and time of the message in the format MM/DD/YYYY HH:mm:ss. Date of 24-hour segment of message. |
| DATETIMERECEIVED | n/a | The received date of the message in the format MM/DD/YYYY HH:mm:ss |
| FILENAME | Contents of this Metadata field, or an equivalent | Contents of this Metadata field, or an equivalent |
| DOCEXT | File extension of document pulled from the document properties | File extension of document pulled from the document properties |
| FILESIZE | Size of the file in bytes | Size of the file in bytes |
| FILEPATH | The directory structure of the original file(s). Any container name is included in the path. | The directory structure of the original file(s). Any container name is included in the path. |
| HASHVALUE | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email |

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| THREADID | n/a | Unique identification number that permits threading of email or chat conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that permits email threading in review software. |
| ITEMTYPE | Identifies whether the file is an email, attachment, or stand- alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. |
| NATIVEFILEPATH | Link to native file (if any) | Link to native file (if any) |
| TEXTFILEPATH | Link to extracted text/OCR file for the document | Link to extracted text/OCR file for the email |
| REDACTION | Identifies if a document has been redacted | Identifies if a document has been redacted |
| HASHIDDENCONTENT | Identifies if a document contains hidden content.[2] | |

Such Metadata field values will be provided to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the information in the Metadata is protected by law or Court Order. This list of fields does not create any obligation to create or

---

[2] "Hidden Content" for purposes of this field shall include track changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.

1    manually code fields that do not exist as part of the original Metadata of the document.

# **EXHIBIT 2**

## **PRODUCTION AND LOAD FILE FORMAT FOR DOCUMENTS AND ESI**

**1.    Delimited Text File.**

A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided. The delimiters for the file should be Concordance defaults accordingly:

| Comma | ASCII character 20 (¶) |
|---|---|
| Quote | ASCII character 254 (þ) |
| Newline | ASCII character 174 (®) |

- The first record should contain the field names in the order of the data.
- All date fields should be produced in mm/dd/yyyy format.
- Use carriage-return line-feed to indicate the start of the next record.
- Load files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered.
- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT).
- The volume names should be consecutive (i.e., ABC001, ABC002, et. Seq.).
- If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or
- UTF-16 format.

**2.    Image Cross-Reference File (.opt)**:  The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

Further definitions and instructions as follows:

| ImageID | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
|---|---|
| VolumeLabel | The name of the volume. |

| ImageFilePath | The full path to the image file. |
|---|---|
| DocumentBreak | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak | Leave empty. |
| BoxBreak | Leave empty. |
| PageCount | Number of pages in the Document. |

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (*e.g.*, ABC001.LFP).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. Seq.).

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as the Bates number of the page.

- Load files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

**3.** **OCR / Extracted Text Files**: OCR or Extracted Text files shall be provided in a separate folder containing Document level text files. OCR text should be produced for hard copy documents and for any ESI where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced). File name convention shall be: Match BegBates Number.

If Foreign Language / Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format.

**4.** **TIFFs**: Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided in ¶ 7 below. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document.

Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file.

**5.** **Color**: The Parties may request color copies where color is necessary to accurately interpret the document.

**6.** **Text Files**: A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

**7.** **Native files**: Spreadsheet-type files (*e.g.*, Microsoft Excel or Google Sheets) and presentation files (*e.g.*, PowerPoint or Google Slides) will be produced in native format unless redacted, in which instance, spreadsheets will be produced in TIFF with OCR Text Files.  To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format.  If PDF or word processing files (e.g., Microsoft Word) contain comments, notes, revisions, track changes, hidden text, and/or annotations that cannot be viewed in TIFF, the document must include the metadata designation for HASHIDDENCONTENT, and Requesting party may request a file in native format. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above.  A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

**8.** **Confidentiality Designation**: Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.  Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**9.** **Families, Embedded Files, and Hyperlinks**: Parent-child relationships will be maintained in production. Links within a document are not considered attachments. Producing Party will use reasonable efforts to match a responsive hyperlinked or embedded document identified in a parent email, including hyperlinked documents utilizing Google Workspace, Microsoft Office's "Share Documents Via Link" feature, or other document sharing platforms, with the parent email to which the document was hyperlinked or embedded. Documents extracted from embedded files shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship. Embedded or hyperlinked files that are not otherwise produced will be produced upon reasonable request. Other links in email to non-file sources, such as a website or QR code URL destinations need not be produced. If documents cannot be extracted from links at the time of collection, the Parties agree to promptly meet and confer to discuss alternative methods of collection and production.

1

## **ATTESTATION OF FILER**

2

3

    Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I attest that concurrence in the

filing of this document has been obtained.

4

5

Dated: December 4, 2024             Respectfully submitted,

6

                                By:       */s/ Laura M. Matson*

7

                                              Laura M. Matson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28