April 7, 2025

The Honorable Lisa J. Cisneros
United States District Court for the Northern District of California
450 Golden Gate Ave.,
San Francisco, CA 94102

      Re: *In Re Mosaic LLM Litigation*; Case No. 3:24-cv-01451-CRB

Dear Magistrate Judge Cisneros,

Pursuant to Your Honor's standing order, the parties submit this letter brief regarding a dispute over Plaintiffs' request to add more than 120 search terms to be applied against Defendants' electronically stored information (the "Proposed Terms"). *See* Exhibit A. The parties disagree as to whether Plaintiffs' request is timely or proper under the ESI Order (ECF 61). The parties met and conferred on March 31, 2025, but were unable to reach a resolution. The relevant discovery dates and case management deadlines are provided below.

(1) Close of Fact Discovery on Plaintiffs' copyright claim/fair use: July 1, 2025.
(2) Close of Expert Discovery: October 9, 2025.
(3) Summary Judgment Motions on Plaintiffs' copyright claim/fair use: November 20, 2025.
(4) Oppositions to Summary Judgment Motions: December 30, 2025.
(5) Replies to Summary Judgment Motions: January 27, 2026.

## Plaintiffs' Position

The ESI Protocol permits modification of search terms "at the Court's discretion or by stipulation." ECF 61 at ¶ 2. Plaintiffs' proposal to modify and add search terms based on information acquired during the litigation and newly issued Requests for Production ("RFPs") will ensure the production of discoverable, responsive documents. *See* Ex. A. Discovery is still in its early stages: Defendants have made limited productions so far consisting largely of non-custodial documents. Defendants are still reviewing their custodial documents and have not provided Plaintiffs with any hit reports for either the existing terms or Proposed Terms. Defendants' blanket refusal to consider adding terms or provide hit reports at this early stage impedes discovery.

**The ESI Protocol Contemplates Additional Search Terms**. The ESI Order (ECF 61) establishes a framework for negotiating search terms. It contemplates initial negotiation within seven days of the Court's Order. *See* ECF 61 at ¶ 7(a). The parties did so in December 2024 and came up with an initial list of 26 search terms. Defendants' position now appears to be that this initial list of search terms is carved in stone, subject only to negotiations over those search strings based on the "Null Set" process. But the ESI Order does not support that view. Rather, the ESI Order allows modification "at the Court's discretion or by stipulation." ECF 61 at ¶ 2. Defendants' argument that Plaintiffs have not formally moved to modify the ESI Order is a distinction without a difference. The Court's discretion is broad, "extend[ing] to crafting discovery orders that may expand, limit, or differ from the relief requested." *In re Soc. Media Adolescent Addiction*, No. 22-MD-03047-YGR (PHK), 2024 WL 4771404 (N.D. Cal. Nov. 12, 2024).

The ESI Order's "Null Set Sample" process supports Plaintiffs' request and proposed, modified search terms. That process contemplates that the parties will "develop appropriate new search term(s), if needed, to capture any . . . relevant documents" not captured by any initial search terms. *Id.* at ¶ 7(b). The "Null Set Sample" process can be repeatedly conducted if there is "any kind of justifiable reason" to do so. *Id.* Because, as detailed below, Plaintiffs have become aware of additional search terms that will unquestionably yield many more responsive documents, Plaintiffs proactively seek to add these terms now. Plaintiffs' Proposed Terms would decrease the number of relevant documents in a null sample set and help avoid piecemeal negotiations over document categories not captured by the initial terms at a later point.

**Additional Search Terms are Needed to Capture Relevant Documents.** Defendants have not argued that the additional search terms proposed by Plaintiffs are not relevant—nor could they. It is consistent with best practices for ESI searches for parties to engage in iterative approaches, based on results of searches and as the parties' understanding of the relevant issues develop. The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery, 15 Sedona Conf. J. 217, 226 (2014). Since the initial search term discussions occurred, Plaintiffs have issued an additional 44 RFPs based on a better understanding of the case. Terms like "the-eye.eu" or "Reisner" are highly likely to yield responsive documents. *See generally* Alex Reisner, *Revealed: The Authors Whose Pirated Books Are Powering Generative AI*, The Atlantic (Aug. 19, 2023). Other terms represent industry specific terms of art—which Defendants did not disclose during the initial proposed terms—such as "context window" or "ablation studies." *See, e.g.,* Ex. A ('ablat* w/5 stud*'). The latter of which help investigate the importance of specific content for AI training, such as books. Likewise, "pile.books3_source", which is one of the alleged sets of training data Defendants used to train their AI models, is highly likely to yield only relevant hits.

Other proposed terms seek documents relevant to any licensing agreements Defendants contemplated. For instance, roughly half the Proposed Terms are variations of the names of book sellers or publishing companies. These terms are far from generic and, again, are unlikely to generate irrelevant results. If Plaintiffs are wrong about this, and certain terms yield significant non-responsive or burdensome documents, they will reconsider—but only if Defendants agree to provide hit reports and to engage in a reasonable discussion. They have refused to do so, however, preferring to object, as a blanket matter, to the addition of **any** terms at this early stage of discovery. These "search terms are highly relevant to the case and excluding them from discovery on timeliness" would undoubtedly impair the discovery process. *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, No. 18-CV-07591-CRB, 2021 WL 862482, at *2 n.3 (N.D. Cal. Mar. 8, 2021); *see also Nat'l Day Laborer Organizing Network v. U.S. Immigr. & Customs Enf't*, 877 F. Supp. 2d 87, 110 (S.D.N.Y. 2012) ("[[I]n many contexts, the use of keywords without testing and refinement . . . will in fact not be reasonably calculated to uncover all responsive material.").

Instead of addressing the merits, Defendants make a strawman argument based on the addition of new counsel. Plaintiffs' counsel *collectively*, not Susman Godfrey or Lieff Cabraser, worked to identify search term gaps given the state of discovery and Defendants' limited production to date. Defendants' citation to *Alvarado Orthopedic Rsch., L.P. v. Linvatec Corp.*, No. 11-cv-0246, 2012 WL 6193834, at *3 (S.D. Cal. Dec. 12, 2012), is inapposite. There, new counsel—on the basis of being new counsel—argued for a reordering of the case schedule, which undermined the court's ability to control the docket. *Id.* at *1, *2. Here, Plaintiffs' request

promotes efficiency in the discovery process rather than undermining that process or the Court. Defendants have also argued that additional search terms would only be warranted if Plaintiffs identified specific gaps in Defendants' existing production. This puts the cart before the horse. The simplest way to identify gaps is to run the proposed terms, see whether they yield *unique* documents, and review those documents. Defendants have refused to engage in that process, which exemplifies why Plaintiffs raise this issue now. Plaintiffs seek to avoid arguing over search terms to discover documents at the last minute and, possibly, after relevant depositions have occurred.

Courts have allowed parties to add search terms at even later stages of discovery than the parties are presently at here. In *In re Social Media*, this Court allowed additional terms over a defendant's objection that additional terms should not be added "on the eve of substantial completion" of document production and where defendant's believed there was a "global, final agreement[]" as to search terms. 2024 WL 4771404, at *2, *4. The defendant there specifically argued that the court's prior orders forbid additional search terms. *See id.* (ECF 1314 at 3–4). Here, Defendants have not—nor could they—argue that the parties are near or are on the eve of substantial completion of document production when the parties are still negotiating parts of other search terms not at issue in this letter. To date, Defendants' productions have largely amounted to only public information and training data. Only recently have Defendants started producing emails.

**Defendants' burden argument is unripe and unsupported.** During the March 31, 2025 meet and confer, Defendants indicated that some terms were burdensome, and Plaintiffs requested hit reports. Defendants refused to provide hit reports or any specific information. "Parties are both encouraged and expected to timely share eDiscovery statistics such as hit number results when they have a dispute over eDiscovery issues such as search terms." *Humanmade v. SFMade*, No. 23-CV-02349-HSG (PHK), 2024 WL 3378326, at *3 (N.D. Cal. July 10, 2024). Instead, Defendants preferred to submit this dispute to the Court based on a blanket objection to the additional terms' timeliness. Defendants' eleventh hour—unsupported—claim of "580,000 unique [additional] documents" is meaningless. A defect in a single search term could hit as many documents. It is fundamentally unfair and unproductive for Defendants to ask the Court to consider claimed burden in denying Plaintiffs' request, after refusing to give Plaintiffs the information that would have allowed them to address purported burden.

**Plaintiffs' Final Proposed Compromise:** (1) Defendants to provide hit reports and objections to any overly burdensome proposed terms within 5 business days; (2) Plaintiffs to respond to Defendants' objections and, as appropriate, revise their search terms within 5 business days of receiving Defendants objections; and (3) the parties to meet and confer within 3 business days to narrow any remaining disputed terms.

### Defendants' Position

Plaintiffs' untimely request to add more than 120 search terms—which comes shortly after Plaintiffs' retention of new counsel—improperly attempts to undo the stipulated ESI Order that the parties spent months negotiating. The point of those negotiations—which involved meaningful compromises on both sides—was to agree on a clear, predictable, and efficient process for ESI matters and avoid bringing disputes like this one to the Court. Plaintiffs' lead counsel, including the Joseph Saveri Law Firm, negotiated and signed the ESI protocol, and Judge Breyer adopted it as an Order on December 5, 2024. ECF 61. The Order provides a specific process and a clear

3

deadline for proposing search terms. Consistent with that process, Defendants proposed a list of terms, and Plaintiffs proposed additional terms, back in December. Defendants accepted all but one of the search terms. Since then, Defendants have been searching, reviewing, and producing documents based on the agreed search terms.

Last month, Lieff Cabraser and Susman Godfrey joined Plaintiffs' team (ECF 85-91, 98-101), and—in an attempt at a do-over of the ESI Order—promptly requested that Defendants add myriad new search terms, months after the deadline to do so. They advance baseless arguments in support of that request. *First*, Plaintiffs wrongly suggest that the ESI Order "permits modification of search terms 'at the Court's discretion or by stipulation.'" Not so. The ESI Order provides that the *Order itself* (like any court order) may be modified. ECF 61 ¶ 2. But Plaintiffs have not moved to modify the Order, nor would they have any justification to do so. *Second*, Plaintiffs claim that "information acquired during the litigation" justifies their belated request. But the only "new" information they cite (a 2023 article) predates this lawsuit. They also point to new RFPs that they served *after* requesting new search terms, but Plaintiffs' desire to serve new discovery is not a basis to jettison the ESI Order's clear process. *Third,* Plaintiffs argue that new terms could "capture relevant documents," but they offer no justification for not proposing them earlier. And if potential relevance were enough, Plaintiffs could endlessly demand new search terms, and the process would never end. That is exactly why the parties agreed to an ESI protocol to cabin the process.

Courts in this District recognize that parties should abide by their negotiated discovery agreements, particularly when approved as court orders. A contrary result would only discourage parties from resolving discovery disputes by stipulation. Plaintiffs should abide by the process that they accepted and that the Court approved.

**Plaintiffs' proposal fails to comply with the ESI Order's clear process for dealing with search terms.** Under the ESI Order, after a producing party provides proposed search terms, the requesting party has seven days to add or propose modifications to those terms. ECF 61 ¶ 7(a). If the producing party objects to those additions or modifications, the producing party will provide a hit count for the disputed terms *only,* and propose alternative terms. *Id.* The ESI Order then provides a process for testing the search terms (through a "null set" sample of documents not hitting on search terms) and adding new terms, if needed, based on *that* process. *Id.* ¶ 7(b). Defendants provided their list in compliance with that process, and Plaintiffs requested extensive additional search terms on December 24, 2024—the deadline under the ESI Order. Defendants accepted all but one of those terms. Defendants have been reviewing voluminous documents based on the agreed search terms.

Shortly after Plaintiffs' new counsel joined the case last month, they began demanding that Defendants add and modify the search terms. Plaintiffs also demanded hit counts for *all* terms, even though the ESI Order provides that a producing party must provide hit counts only for disputed terms that are timely submitted under the ESI Order. ECF 61 ¶ 7(a)-(b).

**Plaintiffs have no justification for undoing the ESI Order.** Plaintiffs now argue that "proactively" adding more than 120 search terms "promotes efficiency" and would "avoid piecemeal negotiations." Aside from being wrong, that is not the process the parties—*in order to achieve efficiencies*—negotiated.

4

Plaintiffs should be held to terms of an agreed Order.  "Courts encourage parties to work out things like ESI protocols and other procedures governing discovery … And when parties reach an agreement, we ordinarily need to hold them to it.  Otherwise, if discovery agreements routinely turn out to be worthless and unenforceable, we deprive the parties of any reason to enter into them." *In re StubHub Refund Litig.*, No. 20-md-02951-HSG (TSH), 2023 WL 3092972, at *1-2 (N.D. Cal. Apr. 25, 2023) (enforcing ESI Protocol and explaining "[l]itigants should live up to their agreements, especially when they are embodied in court orders, as the ESI Protocol is here").  That new counsel may wish things had been negotiated differently does not justify modifying a stipulated Order.  Indeed, it is a "widely followed principle" that new counsel's arrival does not allow parties "to conduct additional discovery or otherwise set aside valid and binding orders of the court, regardless of the efficacy of any new strategy counsel seeks to follow."  *Alvarado Orthopedic Rsch., L.P. v. Linvatec Corp.*, No. 11cv0246 IEG (RBB), 2012 WL 6193834, at *3 (S.D. Cal. Dec. 12, 2012) (quoting *Harshaw v. Bethany Christian Servs.*, No. 1:08–cv–104, 2010 WL 8032038, at *8 (W.D. Mich. Aug. 5, 2010)).

Plaintiffs also suggest that the mere fact that the Court could modify *the Order itself* means they can disregard its provisions governing search terms.  They have not sought to modify the Order but claim that is a "distinction without a difference."  But if that were the case, the Order would lose all force in streamlining discovery.  Plaintiffs' cited cases about adding terms late in discovery are not only inapplicable, but miss the point; those cases did not discuss a party trying to circumvent the processes under a court-ordered ESI protocol.  Here, Plaintiffs are not just asking for terms later in the ESI process; they are ignoring the process entirely.

Moreover, Plaintiffs' purported justification for their belated request is pretextual.  Plaintiffs claim that their request is "based on information acquired during the litigation."  But everything they cite to, including an almost two-year-old article, was at their disposal well before this case was even filed.  The same is true of the "industry specific terms" Plaintiffs cite (an argument Plaintiffs unfairly *first* raised hours before this filing).  Plaintiffs also point to the fact that they served new RFPs.  But if that were enough, they could request endless new search terms by merely dreaming up new discovery requests.  That is not the deal the parties struck.

**Plaintiffs' proposal is unreasonable on its face.**  Because Plaintiffs have *no* justification for trying to reconfigure the ESI Order, requiring *Defendants* to demonstrate burden to enforce the Order flips the process on its head.  But as Defendants *did* explain during the parties' conference, Plaintiffs' request to add more than 120 search terms adds a significant burden; it would approximately *triple* the documents required to review and add more than 580,000 unique documents beyond the more than 290,000 documents that are currently being reviewed under the current search terms.  And Plaintiffs' claim that their terms could lead to "relevant documents" does not justify this burden.  Discovery must be both relevant *and* "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Further, it does not "promote[] efficiency" to negotiate 120 additional search terms with individual hit counts *before* evaluating the efficacy of the current search terms and adding terms, if warranted, through the Court-ordered null set process.

**Defendants' Final Proposed Compromise:** Plaintiffs will comply with the procedures for a requesting party to propose additional search terms pursuant to the null set process under the ESI Order ¶ 7(b).  Defendants will engage in the process in good faith and consider proposed additional search terms that would capture relevant, responsive documents from null set samples.

DATED:  April 7, 2025

By:  /s/ Joseph R. Saveri
Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
William Castillo Guardado (SBN 294159)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
mb@buttericklaw.com

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor

By:  /s/ Jedediah Wakefield
Jedediah Wakefield (CSB No. 178058)
jwakefield@fenwick.com
Ryan Kwock (CSB No. 336414)
rkwock@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

David Hayes (CSB No. 122894)
dhayes@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone:     650.988.8500
Facsimile:     650.938.5200

Deena Feit (admitted *pro hac vice*)
dfeit@fenwick.com
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:     206.389.4510
Facsimile:     206.389.4511

Charles Moulins (admitted *pro hac vice*)
cmoulins@fenwick.com
**FENWICK & WEST LLP**
902 Broadway, Ste 14
New York, NY 10010
Telephone:     212.430.2600
Facsimile:     650.938.5200

Zachary Harned (CSB No. 335898)
zharned@fenwick.com
**FENWICK & WEST LLP**
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone:     310.554.5400
Facsimile:     650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly
MOSAIC ML, INC.

New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (pro hac vice)
Trevor D. Nystrom (pro hac vice)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com

Rachel J. Geman (admitted *pro hac vice*)
Danna Z. Elmasry (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

Rachel J. Geman (admitted *pro hac vice*)
Danna Z. Elmasry (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Bryan L. Clobes (admitted *pro hac vice*)
Alexander J. Sweatman (admitted *pro hac vice*)
Mohammed A. Rathur (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Brian D. Clark (admitted *pro hac vice*)
Laura M. Matson (admitted *pro hac vice*)
Arielle Wagner (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION OF CONCURRENCE IN FILING PURSUANT TO CIVIL L.R. 5-1(i)(3)**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Joseph R. Saveri. By their signature, Joseph R. Saveri attests that he has obtained concurrence in the filing of this document from each of the attorneys identified in the above signature block.

Dated: April 7, 2025                                            By: */s/ Joseph R. Saveri*
                                                                           Joseph R. Saveri