May 6, 2025

The Honorable Lisa J. Cisneros
United States District Court for the Northern District of California
450 Golden Gate Ave.,
San Francisco, CA 94102

Re: *In Re Mosaic LLM Litigation*; Case No. 3:24-cv-01451-CRB

Dear Magistrate Judge Cisneros,

Pursuant to Your Honor's April 9, 2025 Order (ECF 109), the parties submit this letter brief regarding a dispute over seventeen of Plaintiffs' requested search terms for Defendants' ESI (the "Disputed Terms"). The parties met and conferred extensively and resolved disagreements over many terms, but were unable to reach a resolution on the Disputed Terms. The relevant discovery dates and case management deadlines are provided below.

(1) Close of Fact Discovery on Plaintiffs' copyright claim/fair use: September 30, 2025.
(2) Close of Expert Discovery: January 23, 2026.
(3) Summary Judgment Motions on Plaintiffs' copyright claim/fair use: February 25, 2026.
(4) Oppositions to Summary Judgment Motions: April 7, 2026.
(5) Replies to Summary Judgment Motions: May 6, 2026.

**Plaintiffs' Position**

The parties engaged in multiple rounds of search-term revisions, and Plaintiffs thoughtfully narrowed terms that appeared to produce outsized hits. Plaintiffs reduced the document hits for roughly 60 objected-to terms from 217,733 to 41,198.[1] *See* Ex. B, C (row 61).[2] And Plaintiffs have continued to narrow where justified. But now, the parties are at an impasse as to 17 terms that go to the heart of Defendants' misconduct. Defendants' May 1 "global compromise"—framed as all-or-nothing—threatens to omit from review plainly responsive documents and cannot be justified on grounds of burden or proportionality. Defendants have not identified or discussed how these tailored terms are generating "noise" (i.e. substantial non-responsive documents) beyond raising it for the first time in their brief. *See generally* Ex. A, B, & C. Instead, Defendants have consistently taken the approach of simply requesting lower document hits. Plaintiffs cannot accept such a proposal at the expense of capturing potentially key documents.

This case is at the forefront of copyright law, it implicates hundreds of millions of dollars in damages, and Defendants—valued at tens of billions of dollars—do not and cannot argue that they lack resources to conduct robust discovery. *See* Fed. R. Civ. P. 26(b)(1) (setting forth factors).

---

[1]Defendants have agreed to run search strings containing the term DBRX—the name of an LLM released by Databricks in March 2024—but believe the relevance of that term should be briefed separately. Plaintiffs disagree but have acceded to avoid a procedural dispute. The parties will promptly submit a joint brief on the issue if they cannot reach agreement this week.

[2]Column A in Exhibit A represents the Disputed Terms. Exhibit B represents the document counts for the negotiated terms as of April 22. Exhibit C represents the status of the negotiations on April 25.

The parties' positions are roughly 15,000 documents apart. *See* Ex. A (row 18). Any burden associated with reviewing these additional documents is justified by the importance of the documents and issues. *See N.Y. Times v. Microsoft*, 1:23-cv-11195 (S.D.N.Y. Dec. 6, 2024), ECF No. 365, (raising the cap of OpenAI's custodial documents to 600,000 documents in a similar copyright infringement case).

**The Disputed Terms are tailored to capture relevant documents and are not overbroad or burdensome.** The Disputed Terms represent some of the most relevant search strings Plaintiffs proposed and are not unduly burdensome. Plaintiffs' proposed search term ["pirac*" OR "pirat*"] adds roughly 400 unique documents. Defendants' proposed narrowing, *see* Ex. A (row 4), would omit key documents, as shown by examples cited in the *Kadrey v. Meta* case alleging the same claims. *See* 3:23-cv-03417 (N.D. Cal. Apr. 30, 2025), ECF No. 574 at 12 (citing Meta employees as saying "not sure we can use meta's IPs to load through torrents pirate content").

The term ["the eye" OR "theeye" OR "the-eye" OR "the-eye.eu"] adds roughly 800 documents and concerns a key source of pirated content. "Hugging Face facilitated [the] download [of Books3] from the Eye for more than two and a half years." Alex Reisner, *Revealed: The Authors Whose Pirated Books Are Powering Generative AI*, The Atlantic (Aug. 19, 2023). The very purpose of the The-Eye.eu website is to "to suck up and serve large datasets." *Id.* Another term tailored to the central issue of Defendants' pirating data, [("Torrent*" OR pirat*) AND ("book*" OR "data*" OR "sourc*" OR "work*" OR "website*" OR "site*" OR "copyright*" OR "train*")], picks up roughly 400 unique documents. Defendants demanded a "w/10" connector to reduce the hits to roughly 100. *See* Ex. A (row 12). This is misguided. *Any* document, for example, using the word "torrent" in a document discussing books should be reviewed for responsiveness.

Defendants objected on burden *and* relevance grounds to "orion," which produced roughly 700 unique documents. Orion is the name of a publishing company, relevant to whether Defendants sought licensing for books to use in training data—just like the numerous other search terms relating to publishing company names that Defendants accepted. But Defendants have not identified noise that would justify narrowing this unique term. The same goes for Penguin—one of the largest publishing companies. Again, further limiters may not catch examples from similar cases. *See Kadrey*, ECF 574 at 8 n.16 (Meta employee saying, "[w]e should try to get all the big guys: Harper Collins, Simon & Schuster, Macmillan, Hachette, Penguin Random House."). And Plaintiffs have already narrowed the term for CORE publishing from 8,000 unique hits to 490. Ex. A (row 15); Ex. B (row 43).

**The Disputed Terms generating the highest hit counts are justified by their relevance**. Only five Disputed Terms have unique hit counts above one thousand. The search strings generating these higher hit counts are tailored to capture highly relevant documents and justify any burden: **1)** ["licens*" OR "right to" OR "rights" OR deal OR "contract*" OR "agreement*") W/15 ("book*" OR "copyright!"] relates to Defendants' efforts to license copyrighted material. Plaintiffs narrowed this string from over 10,000 additional documents to roughly 4,000. *See* Ex. B (row 29); Ex. A (row 9). **2)** ["Regurg*" OR "memoriz*" OR "leak*" OR "reproduc*") w/15 ("data" OR "tokens" OR verbatim] is critical to the issue of whether the LLMs were known to produce output substantially similar to that of the training data. Plaintiffs narrowed the term from over 11,000 unique hits down to roughly 3,600 . Ex. B (row 31); Ex. A (row 11). **3)** ["replac*" W/10 ("writer*" OR "author*"] goes to whether Defendants' use of pirated content will harm the market for

Plaintiffs' work and the extent to which Defendants considered this concern. Plaintiffs narrowed this term from over 9,000 hits to only roughly 1,100 hits. Ex. B (row 20); Ex. A (row 5). **4)** [("huggingface" OR "hugging face") w/25 (book* OR "training data" OR dataset* OR download* OR redpajama) addresses a well-known source of pirated content for LLMs. *See, e.g.*, @tobywalsh, Twitter (Mar. 11, 2025 6:26 AM), https://x.com/TobyWalsh/status/1899451938598793496. Plaintiffs narrowed the term from tens of thousands of hits to roughly 5,800. *See* Ex. B (row 10); Ex. A (row 3). **5)** ["book*" w/10 ("data" OR "source*")], with a little over 1,000 unique hits, goes to the central issue in this case—Defendants' use of books to train its LLMs.

Defendants have not *shown* that Plaintiffs' terms are overbroad (the closest they come is an eleventh-hour attempt to point out some examples of irrelevant documents for the *first time* in this filing). Complaining that the hit counts are too high is an insufficient basis on which to object to the 15,000 disputed hits in a case of this importance and value. *See Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7–9 (D.D.C. 2017) (ordering the review of tens of thousands of custodial documents in a case where the party already produced over 500,000 custodial documents based, in part, on tens of millions of dollars at stake). And of course, search strings will contain irrelevant documents. *See id.* at 9 & n.5 (ordering further custodial discovery even where the producing party demonstrated the additional custodial documents had only an 11% responsiveness rate, and noting other custodians had a responsiveness rate as low as 3%).

**Final Compromise:** Plaintiffs respectfully ask the Court to grant Plaintiffs' proposed 17 terms. In the alternative, if the Court believes any of Plaintiffs' terms are overly burdensome, Plaintiffs request that the Court order Defendants to identify the specific noise (i.e. overbroad terms in strings) so that Plaintiffs can further tailor the terms.

## Defendants' Position

Plaintiffs' insistence that Defendants review ESI containing the Disputed Terms would impose unreasonable and disproportionate burdens without yielding additional useful information.

As the Court will recall, the parties' search term dispute began when Plaintiffs proposed adding or revising over 120 new search terms on top of the 26 terms the parties had agreed on months ago. Despite the dubious value and very real burden this additional review will impose, Defendants have accepted more than 100 terms, either as originally proposed or as revised by agreement after exchanging hit counts. This includes roughly 90 terms that Defendants accepted without any modification, and nearly 20 of the 27 terms that Plaintiffs revised. Meanwhile, Plaintiffs have agreed to withdraw only *one* term during the entire process. To resolve the remaining issues, Defendants proposed alternative strings, and Plaintiffs accepted only *one* of Defendants' alternatives. Still trying to reach a resolution, Defendants proposed a global compromise where it would accept nine of Plaintiffs' terms if Plaintiffs would accept Defendants' revisions on the other eleven strings. Plaintiffs categorically rejected this proposal and instead brought this dispute to the Court. Defendants have since agreed to three additional terms.

Defendants' proposed alternatives for the remaining search terms remove the burden of reviewing potentially more than 15,000 additional documents (more than 20,000 including family members). Given the significant additional review Defendants have already agreed to conduct and

the overbreadth of the Disputed Terms, the Court should order Plaintiffs to accept Defendants' reasonable proposed alternatives.

**Background:** MosaicML was founded in 2021 with a mission of making efficient training of machine learning models accessible to enterprises. Databricks acquired MosaicML in July 2023. Plaintiffs, five authors, allege that MosaicML infringed copyrights in Plaintiffs' books when using a dataset called "Books3" during training of specific generative AI large language models called MosaicML Pretrained Transformer ("MPT") models. *See* Dkt. 1, Compl. ¶ 5. MosaicML trained and released those MPT models before its acquisition by Databricks.

Because fair use is a threshold and potentially dispositive issue, at the outset of the case Defendants proposed a schedule "focused primarily on the issue of fair use" followed by summary judgment on that issue. Dkt. 53 at 19. Plaintiffs rejected that proposal and asked for the case to proceed on all issues. The Court rejected Plaintiffs' proposal and *adopted Defendants' streamlined proposal in full. Id.* at 19-20, 21. As a result, discovery at this stage should be focused on infringement and fair use, not on other issues in the case such as class certification.

**Plaintiffs' proposed search terms are overbroad.** While parties may obtain discovery on relevant matters, discovery also has boundaries. *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020). "If the requirement for proportionality in discovery means anything … it must mean that burdensome, tangential discovery should not be permitted based on the mere possibility that something may turn up to support what is otherwise only speculation." *McCall v. State Farm Mut. Auto. Ins. Co.*, No. 16CV01058JADGWF, 2017 WL 3174914, at *9 (D. Nev. July 26, 2017). Here, Plaintiffs refuse to compromise on seventeen terms—again *after Defendants already agreed to more than 100*—relying on a claim that their search strings might yield relevant documents. But if that were sufficient justification to require a search term, Rule 26's proportionality requirement would be meaningless.

These disputed terms are overbroad and would generate substantial "noise." For example, Plaintiffs insist on the term "'replac*' W/10 ('writer*' OR 'author*')," presumably because Plaintiffs speculate that Defendants may have spoken about whether the MPT models could replace authors. While Defendants disagree with that premise, they were willing to search a revised string that would limit "W/10" to "W/5," which makes sense: if MosaicML employees were truly discussing replacing writers, those terms would likely appear within five words of one another (or even two). And many commonly used words containing the strings "replac* and "author*" (like a communication "authorizing" an office manager to purchase a "replacement" item) would have nothing to do with anything in this case. Indeed, hundreds of documents hit on the term "authori**z*** W/10 replac*" but would have nothing to do with authors.

Meanwhile, unsurprisingly, hundreds of documents hitting on "the eye" contain false hits (e.g., more than meets the eye, the eye exam); and hundreds of documents with only "pirac*" or "pirat*" include movie reviews, a sports team, or a Disneyland ride. The term "'book*' W/10 (necessary OR better OR best OR critical OR essential OR valuable)" includes hundreds of documents that are not even MosaicML communications and dozens of hits for "book**ing**" W/10 of other terms, again having nothing to do with books. And thousands of documents hitting on "('licens*' OR 'right to' OR 'rights' OR deal OR 'contract*' OR 'agreement*') W/15 ('book*' OR 'copyright!')" hit on the standard disclaimer "all rights reserved" near "copyright." Narrowing these strings would eliminate the need to review hundreds of likely irrelevant documents.

Similarly, Plaintiffs requested that Defendants search the names of 61 publishers, claiming that these terms were relevant to whether Defendants sought licensing agreements (Defendants are already answering interrogatories on this subject). Defendants accepted most of these terms—often without any limitation—but for certain publishers, requested to include additional limitations that would substantially lower the hit counts of likely irrelevant documents (for example, movie reviews referring to "The Penguin" Batman character). But Plaintiffs have again refused to accept Defendants' reasonable proposals. And for "Core," Plaintiffs still insist that the term be searched within *20* words of book*, publish*, or license*, again not explaining why Defendants' alternative of using limiting words such as licens*, agree*, or contract* within 10 words does not meet Plaintiffs' stated goal of determining whether Defendants sought licensing agreements.

**Plaintiffs' proposed terms impose disproportionate burdens.** Plaintiffs have not demonstrated why narrower terms could not accomplish their stated purpose while eliminating the burden of the additional irrelevant documents. Instead, they cited a case (*Oxbow*) where the parties had already agreed on search terms. Given the potential length, complexity, technical nature, and density of the documents, Defendants estimate that every thousand documents could add 50 plus hours of review (at 20 documents per hour). Narrowing hit counts to remove cumulatively thousands of documents across terms would reduce the burden on Defendants—who are already reviewing more than 300,000 documents based on the agreed-upon terms.

Finally, Plaintiffs seek to justify the burden of their requests by citing an *OpenAI* case that set a cap of 600,000 documents. But unlike OpenAI, which has thousands of employees, MosaicML was a startup with fewer than a hundred employees when the MPT models were trained. OpenAI is a bigger company with many more custodians, and a correspondingly higher number of expected documents to review. And "[t]he concept of proportionality does not exist in the abstract; it is case specific, and what is proportional in one case is obviously not decisive of what is proportional in another." *United States ex rel. Gill v. CVS Health Corp.*, No. 18 C 6494, 2023 WL 4106267, at *3 (N.D. Ill. June 20, 2023).

**Defendants' Final Proposed Compromise**: The proposed compromise that Defendants offered on May 1 to reach a global agreement is reflected in Exhibit D. Plaintiffs categorically rejected this compromise, generally stating, without explanation, that "it includes overly narrowing numerous key terms" and that the issue should go before the Court. Defendants have since agreed to the three strings containing "DBRX," while maintaining their relevance objections. Plaintiffs should accept Defendants' revisions to the seventeen unresolved search terms, or Plaintiffs should propose alternatives that specifically address their claim of Defendants' "overly narrow[ed]" terms.

DATED: May 6, 2025

By: /s/ Joseph R. Saveri
Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
William Castillo Guardado (SBN 294159)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
mb@buttericklaw.com

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vic*
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor

By: /s/ Jedediah Wakefield
Jedediah Wakefield (CSB No. 178058)
jwakefield@fenwick.com
Ryan Kwock (CSB No. 336414)
rkwock@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

David Hayes (CSB No. 122894)
dhayes@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Deena Feit (admitted *pro hac vice*)
dfeit@fenwick.com
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511

Charles Moulins (admitted *pro hac vice*)
cmoulins@fenwick.com
**FENWICK & WEST LLP**
902 Broadway, Ste 14
New York, NY 10010
Telephone: 212.430.2600
Facsimile: 650.938.5200

Zachary Harned (CSB No. 335898)
zharned@fenwick.com
**FENWICK & WEST LLP**
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone: 310.554.5400
Facsimile: 650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly
MOSAIC ML, INC.

New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (pro hac vice)
Trevor D. Nystrom (pro hac vice)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com

Rachel J. Geman (admitted *pro hac vice*)
Danna Z. Elmasry (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

Rachel J. Geman (admitted *pro hac vice*)
Danna Z. Elmasry (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Bryan L. Clobes (admitted *pro hac vice*)
Alexander J. Sweatman (admitted *pro hac vice*)
Mohammed A. Rathur (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Brian D. Clark (admitted *pro hac vice*)
Laura M. Matson (admitted *pro hac vice*)
Arielle Wagner (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION OF CONCURRENCE IN FILING PURSUANT TO CIVIL L.R. 5-1(i)(3)**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Rohit Nath. By their signature, Rohit Nath attests that he has obtained concurrence in the filing of this document from each of the attorneys identified in the above signature block.

Dated: May 6, 2025

By: */s/ Rohit D. Nath*
Rohit D. Nath