UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In Re Mosaic LLM Litigation* | Case No. 24-cv-01451-CRB   (LJC)<br><br>**ORDER RESOLVING DISCOVERY LETTERS**<br><br>Re: Dkt. Nos. 119, 122 |

Pending before the Court are two Joint Discovery Letters, ECF Nos. 119 and 122. At issue in ECF No. 119 are seventeen disputed search terms, with the parties' competing proposals at Exhibit A. At issue in ECF No. 122 is whether Plaintiffs may obtain discovery regarding DBRX, a large language model released by Defendant Databricks. This Order assumes the parties' familiarity with the case and the applicable legal standards. Having considered the parties' briefing, the record and relevant authorities, the Court GRANTS IN PART Plaintiffs' request for discovery relief at ECF No. 119, DENIES Defendants' request for discovery relief at ECF No. 122, and directs the parties to meet and confer.

I.   **ECF NO. 119**

At ECF No. 109, the Court ordered the parties to meet and confer regarding 120 additional search terms proposed by Plaintiffs. The parties did so, (*see* ECF No. 119 at 3), but have been unable to agree on seventeen of the 120 terms. Their competing proposed terms, complete with hit counts, are listed at Exhibit A. Plaintiffs object that Defendants' proposed search terms are too narrow and will not capture "potentially key documents" (*id.* at 1); Defendants object that Plaintiffs' proposed search terms are overbroad and would hit on unresponsive documents (*id.* at 4). Plaintiffs' proposed search terms hit on roughly 15,000 more documents than Defendants'

1  proposed terms.

2  Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any
3  party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In
4  evaluating if discovery requests are proportional, courts must consider "the importance of the
5  issues at stake in the action, the amount in controversy, the parties' relative access to relevant
6  information, the parties' resources, the importance of the discovery in resolving the issues, and
7  whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*; *see In*
8  *re Williams-Sonoma*, *Inc.*, 947 F.3d 535, 539 (2020).

9  Defendants contend that, while Plaintiffs' proposed search terms may hit on relevant
10 documents, they will also hit on thousands of unresponsive documents, and reviewing these
11 "irrelevant documents" will impose an undue burden. ECF No. 119 at 4. To illustrate this point,
12 Defendants explain that Plaintiffs' search string "'replac*' W/10 ('writer*' OR 'author*')" hits on
13 hundreds of documents that "have nothing to do with authors"; the search term "the eye" hits on
14 hundreds of unresponsive documents, such as those that include the phrase "more than meets the
15 eye"; that the search term"'pirac*' or 'pirat*'" hits on hundreds of documents that mention "movie
16 reviews, a sports team, or a Disneyland ride"; and that the search string "('license*' OR 'right to'
17 OR 'rights' OR deal OR 'contract*' OR 'agreement*') W/15 ('book*' OR 'copyright!')" hits on
18 "thousands" of documents that include the general disclaimer "all rights reserved" near the word
19 "copyright" but are not responsive to Plaintiffs' requests. *Id.*

20 The Court accepts Defendants' representations that some of Plaintiffs' search terms hit on
21 unresponsive documents. But search terms are employed to narrow down the universe of
22 potentially responsive documents, not identify exclusively responsive documents. That Plaintiffs'
23 terms are overinclusive is not dispositive. Moreover, while Plaintiffs' more general search terms
24 such as "the eye" or "Penguin" may hit on a substantial number of unresponsive documents, the
25 Court is skeptical that Plaintiffs' more tailored search strings and terms, such as "('huggingface'
26 OR 'hugging face') w/25 (book* OR 'training data' OR dataset* OR download* OR redpajama',"
27 would yield many unresponsive results. ECF No. 119-1 at 2. Defendants' proposal to limit this
28 string is more likely to exclude responsive documents than keep out irrelevant ones. Additionally,

2

the Court is not persuaded that the "burden or expense" of Defendants reviewing an additional 15,000 documents would outweigh the likely benefits. Fed. R. Civ. P. 26(a)(1). As Plaintiffs argue, their search terms may hit on documents that are directly relevant to Defendants' fair use claims that would not be captured by Defendants' narrower terms. *See* ECF No. 119 at 2. This case is at the frontline of a developing area of copyright law and Plaintiffs seek hundreds of millions of dollars in damages. While reviewing additional documents obviously does place a burden on Defendants, they have not shown that this burden would be unreasonable or undue. *See Cook v. Meta Platforms, Inc.*, No. 22-cv-02485, 2025 WL 251942, at *4 (N.D. Cal. Jan. 21, 2025) (finding that search strings "aimed at relevant subjects" that hit on 18,073 and 17,128 documents were "not overly burdensome"); *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (explaining that the party opposing discovery has the "burden of showing that discovery should not be allowed"). While Defendant MosaicML may have been a lean "startup with fewer than a hundred employees" in 2023 when it launched its MPT models, this has little bearing on how reviewing the additional documents would be an undue burden on Defendants MosaicML and Databricks now.

The Court finds it reasonable to adopt most of Plaintiffs' seventeen proposed search terms outright, with some exceptions.

For the following search strings, Defendants shall inform Plaintiffs what specific terms generate noise and the parties shall meet and confer by May 23, 2025 to narrow the search strings and/or search terms so that they produce fewer unresponsive documents:

- "pirac*" OR "pirat*"
- ("license*" OR "right to" OR "rights" OR deal OR "contract*" OR "agreement*") W/15 ("book*" OR "copyright!")

Plaintiffs' proposed string "'book*' W/10 (necessary OR better OR best OR critical OR essential OR valuable)" is substantially similar to their proposed string "('necess*' OR better OR best OR quality OR 'valu*' OR critical OR essential) W/5 ('book*')." ECF No. 119-1 at 2. Including both of these is likely to yield needlessly duplicative results. Plaintiffs may use one of these search strings, but not both. By May 23, 2025 the parties shall meet and confer to select a

replacement search term.

The Court adopts the remainder of Plaintiffs' proposed search terms at ECF No. 119-1.

## II. ECF NO. 122

The parties' dispute at ECF No. 122 is whether Plaintiffs may seek discovery regarding Databricks' large language model (LLM), DBRX, released in March 2024.

Plaintiffs' Complaint alleges that MosaicML copied Plaintiffs' copyrighted works from a dataset without permission and used their works to train MosaicML's earlier series of LLMs, the MPT models. *See* ECF No. 1 (Compl.) ¶¶ 24-30.[1] Specifically, Plaintiffs allege that their works were included in an online "shadow library," Bibliotik, a website that hosts and distributes "vast quantities of unlicensed copyrighted material." *Id.* ¶ 28. The contents of Bibliotik were copied into a dataset, Books3, which was, in turn, incorporated in a separate dataset, "RedPajama – Books." *Id.* ¶¶ 25-26. Plaintiffs assert that MosaicML trained its MPT models on a mix of sources that included the "RedPajama – Books" dataset, and, thus, their copyrighted works. *Id.* ¶ 25. Plaintiffs allege that since MosaicML was acquired by Databricks, it "has continued to make copies of the Infringed Works for LLM training and other commercial purposes." *Id.* ¶ 35.

With respect to Databricks, Plaintiffs allege that the company acquired MosaicML in July 2023, and, as MosaicML's corporate parent, has "the right and ability to control the direct infringement…committed by MosaicML" and has "directly benefitted financially" from MosaicML's infringing activities. *Id.* ¶ 44. Plaintiffs have sued MosaicML for direct copyright infringement and Databricks for vicarious copyright infringement. *See id.* ¶¶ 36-46. The Complaint does not allege that Databricks directly infringed on Plaintiffs' copyrights and does not mention the DBRX models.

Plaintiffs argue that DBRX is the "newest model" of Defendants' LLM "released under a different name," and that obtaining discovery regarding DBRX "is essential to understand[ing] the scope of Defendants' infringing activities." ECF No. 122 at 2. Defendants contend that the scope

---

[1] The citations to the Complaint are to the complaint filed on March 8, 2024, in *O'Nan v. Databricks*, Case No. 24-cv-0145-1. The *O'Nan* complaint is substantially similar to the complaint in *Makkai v. Databricks*, Case No. 24-cv-02653, which was filed on May 2, 2024. The two cases have since been consolidated to form the instant action.

4

of Plaintiffs' discovery is limited by the Complaint and, absent amendment, they may not seek information about DBRX, a "separate" LLM trained "using a different mix of data" from the MPT models and "released by a post-acquisition parent company that is not accused of infringing conduct." *Id.* at 4, 5.  They note that they provided discovery responses denying that the DBRX models were trained on the "Red Pajama – Books" dataset or "Books3" dataset, and argue that is sufficient to show that DBRX was not trained on Plaintiffs' works. *Id.*; *see* ECF No. 122-2.

      Rule 26(b)(1) establishes that discovery must be "relevant to any party's claim or defense." This does not mean that discovery is strictly limited "to issues raised by the pleadings," because "discovery itself is designed to help define and clarify the issues." *Lin v. Solta Med., Inc.*, No. 21-cv-05062, 2023 WL 8374740, at *1 (N.D. Cal. Dec. 4, 2023) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Here, Plaintiffs allege that MosaicML "repeatedly copied the Infringed Works without Plaintiffs' permission" for "LLM training and other commercial purposes" and that Databricks knew of but failed to control MosaicML's infringement and "directly benefitted financially" from such infringement.  Compl. ¶¶ 35, 41, 46-47.  While their allegations focus on MosaicML's use of the "Books3" and "RedPajama – Books" datasets to train their LLMs, they also alleged that Plaintiffs' copyrighted books were part of the Bibliotik shadow library (*id.* ¶¶ 27-30) and that, after MosaicML was bought by Databricks, MosaicML "continued to make copies of the Infringed Works for LLM training and other commercial purposes." *Id.* ¶ 35.

      Given Plaintiffs' allegations that MosaicML has continued to use Plaintiffs' work to develop LLMs, and that Databricks has continued to benefit from the alleged infringement, Plaintiffs must be permitted to investigate how Databricks' newest LLM, released after Databricks acquired MosaicML, was trained.  *See Kadrey v. Meta*, 23-cv-03417 (N.D. Cal.), ECF No. 279 at 4 ("The Court agrees with Plaintiffs that Llama 4 is relevant to this case, notwithstanding that it is still under development."); *Tremblay v. OpenAI, Inc.,* No. 23-CV-03223, 2025 WL 84635, at *2 (N.D. Cal. Jan. 13, 2025), *motion for relief from judgment denied,* 2025 WL 445793 (N.D. Cal. Feb. 10, 2025) (noting that, at a hearing on the discovery dispute regarding LLMs not mentioned in the complaint, the court "instructed that discovery into the recent and in-development large

1  language models appeared reasonable"). Plaintiffs' written discovery responses that the DBRX
2  models were not trained on the "RedPajama – Books" or "Books3" datasets do not, in and of
3  themselves, preclude further discovery into the DBRX models' training. Defendants also denied
4  that the MPT models were trained on these datasets (*see* ECF No. 122-2 at 4-5). By Defendants'
5  logic, Plaintiffs should not be permitted to obtain discovery into how the MPT models were
6  trained because Defendants denied that they used "RedPajama – Books" or "Books3" to train
7  them. This is illogical as to the MPT models and as to the DBRX models. Plaintiffs must be
8  permitted to obtain further discovery to test Defendants' denials. Moreover, Plaintiffs allege that
9  their copyrighted works were part of the Bibliotik shadow library, copied into various datasets,
10 and that MosaicML then compiled a huge amount of information to train their MPT models that,
11 allegedly, included the copyrighted works. The MosaicML team then, post-acquisition, developed
12 the DBRX models. Defendants assert that DBRX was trained "using a different mix of data" than
13 the MPT models. ECF No. 122 at 4. Considering Defendants' assertions alongside Plaintiffs'
14 allegations, the parties will likely raise factual and legal disputes as to whether Defendants have
15 infringed on Plaintiffs' copyrighted works through the development of DBRX. Plaintiffs have
16 alleged that MosaicML made further copies of Books3 dataset or subsets thereof to train other
17 models in the MPT family. Compl. ¶ 39. Therefore, discovery regarding how the DBRX models
18 were trained is relevant to the claims and defenses in this case.

19  The Court accordingly DENIES Defendants' request that all further discovery on DBRX
20 be prohibited. Plaintiffs may obtain discovery regarding how the DBRX models were trained,
21 pursuant to the Federal Rules, the parties' stipulated ESI order, and the Court's prior orders. This
22 Order does not abridge Defendants' right to assert applicable privileges or objections.

**IT IS SO ORDERED.**

Dated: May 20, 2025

LISA J. CISNEROS
United States Magistrate Judge

6