JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
RYAN KWOCK (CSB No. 336414)
rkwock@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

DAVID HAYES (CSB No. 122894)
dhayes@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:     650.988.8500
Facsimile:     650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly MOSAIC ML, INC.

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| *In Re Mosaic LLM Litigation* | Master File Case No. 3:24-cv-01451-CRB<br>Consolidated with Case No. 3:24-cv-02653-CRB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:        July 11, 2025<br>Time:        10:00 a.m.<br>Location:    Courtroom 6, 17th Floor<br>Judge:       Hon. Charles R. Breyer |

*Vertical left margin:* FENWICK & WEST LLP

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 2

BACKGROUND ............................................................................................................................ 2

ARGUMENT ................................................................................................................................. 5

  A. Plaintiffs' motion is untimely. ........................................................................ 5

  B. Plaintiffs' motion shows bad faith. ................................................................ 8

  C. Plaintiffs' proposed amendment would prejudice Defendants. ............................ 9

  D. Plaintiffs' proposed amendment is futile. ................................................... 10

    1. Plaintiffs' conclusory allegations fail to state a plausible direct infringement claim against Databricks ........................................................ 11

    2. The proposed amended complaint's few factual allegations concerning DBRX fail to support a claim. ................................................. 13

CONCLUSION ........................................................................................................................... 15

FENWICK & WEST LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Ahlmeyer v. Nevada Sys. of Higher Educ.*,
555 F.3d 1051 (9th Cir. 2009) ............................................................................... 10

6

7

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) ......................................................................... *passim*

8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 10, 11, 12

9

10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 10

11

12

*Cabrera v. Residential Credit Sol. Inc.*,
No. CV 14-09212 DMG, 2015 WL 13916231 (C.D. Cal. Sept. 10, 2015) ............................ 8

13

*Canter & Assocs., LLC v. Teachscape, Inc.*,
No. C 07-3225 RS, 2007 WL 4365480 (N.D. Cal. Dec. 12, 2007) .......................... 11, 12, 13

14

15

*Evans v. NBCUniversal Media, LLC*,
No. CV 21-0984-CBM-PD(X), 2021 WL 4513639 (C.D. Cal. Sept. 30, 2021) .................... 11

16

*EVOX Prods., LLC v. Verizon Media Inc.*,
No. CV 20-2852-CBM, 2021 WL 3260609 (C.D. Cal. May 5, 2021) .................................. 11

17

18

*Gilead Scis., Inc. v. Merck & Co.*,
No. 5:13-cv-04057-BLF, 2016 WL 146574 (N.D. Cal. Jan. 13, 2016) ................................ 12

19

20

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ............................................................................. 5

21

*Johnson v. Hewlett-Packard Co.*,
809 F. Supp. 2d 1114 (N.D. Cal. 2011) ........................................................ 5, 9, 10

22

23

*Kadrey v. Meta Platforms, Inc.*,
No. 23-cv-03417-VC, 2025 WL 82205 (N.D. Cal. Jan. 13, 2025) .......................................... 7

24

25

*Kobayashi v. McMullin*,
No. 2:19-cv-06591-SSS (MAA), 2023 WL 11822286 (C.D. Cal. July 7, 2023) ...................... 8

26

*Menzel v. Scholastic, Inc.*,
No. 17-cv-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .................... 10, 11, 12

27

28

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ............................................................................. 9

FENWICK & WEST LLP

*Poe v. Nw. Mut. Life Ins. Co.*,
  No. 8:21-cv-02065-SPG-E, 2023 WL 4155379 (C.D. Cal. Jan. 20, 2023) ............................ 7

*Quan v. San Francisco Police Dep't*,
  No. C 10–01835 MEJ, 2011 WL 2470477 (N.D. Cal. June 21, 2011) ...................................... 7

*Ryan v. Microsoft Corp.*,
  147 F. Supp. 3d 868 (N.D. Cal. 2015) .................................................................................. 10

*Texaco, Inc. v. Ponsoldt*,
  939 F.2d 794 (9th Cir. 1991).................................................................................................. 5

*TrustLabs, Inc. v. Jaiyong*,
  No. 21-cv-02606-CRB, 2024 WL 1354486 (N.D. Cal. Mar. 30, 2024) ........................... 9, 10

*In re Volkswagen "Clean Diesel" Mktg., Sales, Pracs., and Prods. Liab. Litig.*,
  No. 15-md-02672-CRB, 2023 WL 2095921 (N.D. Cal. Feb. 17, 2023)................................ 10

*Washington v. Lowe's HIW Inc.*,
  75 F. Supp. 3d 1240 (N.D. Cal. 2014) .................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 15(a)......................................................................................................... 5, 8

1    Defendants MosaicML, LLC ("MosaicML") and Databricks, Inc. ("Databricks") oppose

2    Plaintiffs' motion for leave to file a first amended consolidated complaint (Dkt. 124).

3    <u>**INTRODUCTION AND SUMMARY OF THE ARGUMENT**</u>

4    This case has always been about Defendant MosaicML's use of a dataset called "Books3"

5    to train specific large language models ("LLMs") called the MPT models.  Plaintiffs are five authors

6    who allege that the Books3 dataset contained some of their books.  Training an LLM involves

7    exposing the model to a large quantity and wide diversity of textual data, which allows the model

8    to identify patterns in language.  MosaicML, an AI research company, publicly disclosed that it

9    used Books3 as one of the datasets when training its MPT models.  On that basis, Plaintiffs brought

10   a direct copyright infringement claim against MosaicML.  Plaintiffs also sued MosaicML's

11   subsequent parent company, Databricks, on a single claim of vicarious liability, alleging that

12   Databricks had the "right and ability to control" and benefitted financially from MosaicML's

13   alleged infringements—even though the training took place before Databricks acquired MosaicML.

14   Plaintiffs' Complaints did *not* accuse Databricks of direct infringement.

15   Well over a year into this lawsuit and just weeks before the deadline for substantial

16   completion of document discovery, Plaintiffs seek to amend their Complaints to add, for the first

17   time, both (1) a direct infringement claim against Databricks, and (2) a claim involving different

18   LLMs later released by Databricks called the DBRX models ("DBRX").  But DBRX was *not*

19   trained on Books3, and Plaintiffs' proposed amendment fails to identify *any* facts showing that

20   Databricks copied even one of Plaintiffs' books.  Plaintiffs suggest that newly discovered facts

21   excuse their long delay, but those arguments—like the new claims themselves—collapse under

22   scrutiny.

23   Under the factors that courts in the Ninth Circuit consider in deciding whether to grant leave

24   to amend, the Court should deny Plaintiffs' motion.  *See AmerisourceBergen Corp. v. Dialysist W.,*

25   *Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  First, Plaintiffs delayed unreasonably in seeking to amend,

26   as they have known about DBRX and the facts that supposedly support their amendment for more

27   than a year.  Second, the amendment is in bad faith, as underscored by Plaintiffs'

28   mischaracterizations of key facts in their motion.  Third, the amendment would unfairly prejudice

FENWICK & WEST LLP

Defendants, as it would radically expand the case, and undoubtedly require additional extensive discovery and a further extension of the case schedule. And fourth, the amendment would be futile, as the new claims rest on baseless conjecture and fail to state *facts* stating a plausible infringement claim against Databricks related to DBRX. The Court should reject Plaintiffs' motion.

## STATEMENT OF ISSUES TO BE DECIDED

Should Plaintiffs be granted leave to file an amended complaint to add a direct infringement claim against Databricks and involving DBRX when (1) the proposed amendment comes more than fourteen months after all the information on which the amendment is based was available; (2) the arguments made in support of the amendment show bad faith; (3) amending now would dramatically expand the case and prejudice Defendants; and (4) the proposed amendment lacks any non-conclusory facts that would state a claim against Databricks or involving DBRX.

## BACKGROUND

MosaicML was incorporated in 2020 with a goal of providing tools to facilitate the efficient training of machine learning models. Unlike providers of general-purpose generative AI models used by consumers (like OpenAI's ChatGPT or Google's Gemini), MosaicML focused on building tools that enabled organizations to gain insights from and leverage their own data. Beginning in April 2023, MosaicML released LLMs called the MosaicML Pretrained Transformer ("MPT") models. The MPT models served to demonstrate MosaicML's capabilities in providing tools that enterprises could use to develop their own models and to advance research in the AI field. *See* The Mosaic Research Team, *Introducing MPT-7B: A New Standard for Open-Source, Commercially Usable LLMs* (May 5, 2023), https://www.databricks.com/blog/mpt-7b ("MPT-7B blogpost") ("Now you can train, finetune, and deploy your own private MPT models, either starting from one of our checkpoints or training from scratch."). To further those goals, MosaicML released the MPT models, and the source code needed to use them, for free. *See, e.g.*, Hugging Face, mosaicml/mpt-7B, https://huggingface.co/mosaicml/mpt-7b. Similarly, to help the research community understand how the MPT models were trained, MosaicML disclosed the training data it used in blog posts. *See, e.g.*, MPT-7B blogpost.

FENWICK & WEST LLP

Databricks acquired MosaicML in July 2023.  *See* Dkt. 1 ("Compl.") ¶ 14.  Databricks is a data infrastructure company that helps customers analyze and govern their data as well as build and use AI models.  On March 27, 2024, Databricks released new LLMs, trained on Databricks' infrastructure, called DBRX.  As the blogpost that introduced DBRX explained, although former MosaicML scientists worked on DBRX, it used a different architecture and mix of training data than the MPT models.  The Mosaic Research Team, *Introducing DBRX: A New State-of-the-Art Open LLM* (Mar. 27, 2024), https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm ("DBRX blogpost").  This mix of data included 12 trillion "tokens" (for example, words, parts of words, punctuation, and blank spaces) of not just text but also software code.  *Id.*  Like many companies in the AI space, Databricks did not publicly disclose the training data for DBRX, but as described more fully below, DBRX was *not* trained on Books3.  *See* Declaration of Jed Wakefield ("Wakefield Decl.") ¶¶ 7-9; Exs. B & C.

The operative Complaints in this action, which are virtually identical, were filed in March and May 2024 by five authors.[1]  The Complaints allege that, by using Books3, MosaicML copied the Plaintiffs' works to train the MPT models.  Compl. ¶ 4; *see also* Dkt. 1-1 (Ex. A) (list of "Infringed Works").  Specifically, Plaintiffs allege that their books are contained in the Books3 dataset, which itself is part of a larger dataset called "RedPajama – Books."[2]  Compl. ¶¶ 26-34.  MosaicML publicly disclosed that it used RedPajama – Books as one of the datasets used to train the MPT models.  *See, e.g.*, *id.* ¶ 24 (quoting MPT-7B blogpost).  Relying on their claims about Books3, Plaintiffs brought a direct infringement claim against MosaicML based on its use of Books3 to train the MPT models.  *See, e.g.*, *id.* ¶ 38 ("To train the MPT-7B and MPT-30B language models, MosaicML copied the Books3 dataset, which includes the Infringed Works.").  They also brought a single claim against Databricks for vicarious infringement alleging that as the corporate

---

[1] The *O'Nan* complaint was filed by Plaintiffs Stewart O'Nan, Abdi Nazemian, and Brian Keene on March 8, 2024.  Dkt. 1.  The *Makkai* complaint was filed by Rebecca Makkai and Jason Reynolds on May 2, 2024.  *Makkai v. Databricks, Inc.*, No. 3:24-cv-02653 (N.D. Cal. May 2, 2024), Dkt. 1 ("*Makkai* Complaint").

[2] RedPajama – Books comprises two datasets: (1) Books3; and (2) PG-19 (a dataset not at issue).  Thus, the Books3 dataset is the only dataset at issue in this case.

FENWICK & WEST LLP

parent, Databricks somehow had the "right and ability to control" and benefitted financially from *MosaicML's* alleged infringements. *Id.* ¶¶ 43-46.

Databricks released DBRX about three weeks after the first complaint was filed. Plaintiffs' second complaint, which was virtually identical to the first, was filed by two additional authors more than a month *after* Databricks released DBRX. Defendants answered the Complaints on May 2, 2024 and May 29, 2024, respectively. Dkt. 39; *Makkai* Dkt. 26. The Court later consolidated the cases. *See* Dkts. 56, 57.

Long after DBRX was released, Plaintiffs continued to assert that their case was about MosaicML's alleged infringement by using Books3 to train the MPT models. In a June 2024 Case Management Statement, Plaintiffs stated that "MosaicML copied the Books3 dataset, which includes the O'Nan and Makkai Plaintiffs' Infringed Works, used these copies to train MosaicML's LLMs, and made further copies to train additional models in the MPT family." Dkt. 47 at 2. And in the two case management statements filed since then, including one in April 2025, Plaintiffs gave no indication that they would seek leave to amend their Complaints to include DBRX or to add a direct infringement claim against Databricks. *See* Dkts. 73, 106. When the cases were consolidated in November 2024, Plaintiffs did not seek to file an amended complaint, and they again gave no indication that they claimed infringement in connection with DBRX.

Discovery in the case has focused on the MPT models, and in Defendants' discovery objections and responses, Defendants have consistently made clear that they are limiting discovery to the MPT models. Wakefield Decl. ¶ 3. Beginning in March 2025, however, Plaintiffs began propounding sweeping discovery requests specific to DBRX. *Id.* ¶ 6. Defendants objected on the basis that DBRX was not relevant to Plaintiffs' claims and that the only claim against Databricks was a vicarious (*not* direct) infringement claim. *See* Dkt. 122 at 3-5. While Databricks maintains that DBRX is not relevant, it amended its verified interrogatory responses and answered RFAs to make clear that DBRX was *not* trained on Books3. *See id.* Plaintiffs nevertheless brought the discovery dispute to the Magistrate Judge, and in a joint letter-brief, Plaintiffs claimed that discovery on DBRX was relevant but still said nothing about seeking leave to amend their Complaints. *Id.* at 1-3. Meanwhile, discovery in this case has been extensive, and Defendants have

FENWICK & WEST LLP

produced more than *40 terabytes* of training data, source code, and other documents related to the MPT models.  Wakefield Decl. ¶ 5.  The Magistrate Judge allowed Plaintiffs to obtain discovery on how DBRX was trained while permitting Defendants to raise objections, and Defendants are currently seeking relief from that order.  Dkts. 123, 125.

On May 29, the day before the deadline to seek leave to amend under the scheduling order, Plaintiffs informed Defendants by email that they intended to file an amended complaint and asked if Defendants consented to the amendment.  Wakefield Decl. ¶ 12.  Defendants responded that they did not.  *Id.*  Plaintiffs moved to amend their Complaints to add DBRX, a direct infringement claim against Databricks, and additional works to Exhibit A of their complaint.  Dkt. 124.

## ARGUMENT

Requests for leave to amend a complaint after a defendant has answered are governed by Federal Rule of Civil Procedure 15(a).  Whether to grant or deny leave to amend is at the discretion of the district court.  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).  While Rule 15(a) leave should be given "when justice so requires," a court should not grant leave to amend where the amendment (1) creates undue delay in litigation, (2) is sought in bad faith, (3) prejudices the opposing party, or (4) is futile.  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  Each of those reasons supports denying Plaintiffs' motion for leave to amend.

### A.    Plaintiffs' motion is untimely.

A plaintiff unduly delays if it does not promptly seek to amend after it knows, or should know, the facts that form the bases for its amendment.  *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1120 (N.D. Cal. 2011).  Courts routinely hold that plaintiffs unduly delay when, as here, they wait to seek leave to amend until months after obtaining the relevant facts.  *See, e.g.*, *AmerisourceBergen*, 465 F.3d at 951 (affirming denial of motion to amend where party waited fifteen months after learning facts); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (affirming denial of motion for leave to amend where party waited eight months); *Jackson,* 902 F.2d at 1387 (affirming denial of leave to amend where plaintiffs delayed eight months beyond time they should have known of the existence of claims); *Johnson*, 809 F. Supp. 2d at 1120-21 (denying motion to amend where plaintiffs delayed at least two months).

FENWICK & WEST LLP

FENWICK & WEST LLP

Here, Plaintiffs' delay in seeking leave to amend for *more than fourteen months* since the release of DBRX is entirely unreasonable and unjustified.  DBRX was released on March 27, 2024.  The "evidence" on which Plaintiffs now rely—Databricks' DBRX announcement, the "TechCrunch" article Plaintiffs quote, and the X post Plaintiffs cite—were *all* published on that date.  Dkt. 124-2 ¶¶ 39-44.  Indeed, every factual allegation in Plaintiffs' proposed amendment relating to Databricks or DBRX could have been made more than fourteen months ago.  For example, according to Plaintiffs, it has become necessary to add a direct infringement claim against Databricks because "Defendants' own public statements indicate that Defendants worked jointly in infringing Plaintiffs' copyrighted works thus necessitating adding Databricks to the direct infringement claim."  Dkt. 124 ("Mot.") at 3.  But the only "public statements" in the proposed amendment are from the day DBRX was released almost fifteen months ago, and before their second Complaint was filed in May 2024.  *See Makkai* Complaint (filed May 2, 2024).  And despite multiple opportunities to add allegations related to DBRX and Databricks, Plaintiffs simply failed to do so.  Instead, they waited until the last day permitted by the scheduling order, and six weeks before the substantial completion deadline for document production, to seek leave to amend.

Lacking any actual basis for their delay, Plaintiffs misleadingly cite unrelated discovery as if it somehow justifies bringing new claims about DBRX.  In a supporting declaration, Plaintiffs' counsel states that "on April 4, 2025, Defendants produced a dataset used to train *their LLMs* that allowed Plaintiffs to further confirm additional copyrighted works … were used to train *Defendants' LLMs*."  Dkt. 124-1 (emphasis added).  That misleading language leaves the impression that Plaintiffs discovered new evidence about *DBRX*.  That is false.  As Plaintiffs acknowledge, that production consisted of training data for the *MPT models*, Mot. at 4—which were trained *by MosaicML* (not Databricks).  That data had nothing to do with DBRX, Databricks, or the paragraphs Plaintiffs seek to add to support a direct infringement claim against Databricks.  At most, it may explain why Plaintiffs seek leave to amend Exhibit A to their Complaint (the list of allegedly infringed works used in training *the MPT models*).  That, of course, has nothing to do

with the substance of Plaintiffs' proposed amendment about Databricks or DBRX, and the Court

should not fall for Plaintiffs' effort to sow confusion on this point.[3]

None of Plaintiffs' remaining arguments excuse their undue delay. They half-heartedly

suggest that the appearance of *additional* (not replacement) counsel in 2025 means that the Court

should overlook their untimeliness. But "a change in representation does not excuse the delay of

over a year in seeking to amend the Complaint." *Quan v. San Francisco Police Dep't*, No. C 10–

01835 MEJ, 2011 WL 2470477, at *5 (N.D. Cal. June 21, 2011) (denying motion for leave to

amend). Nor does the fact that, more than a year into the case, Plaintiffs "reassessed" the facts and

decided to fundamentally change their strategy. *See id.* at *4. The single case on which Plaintiffs

rely for this point does not suggest that merely adding new counsel excuses all delay. *See Poe v.

Nw. Mut. Life Ins. Co.*, No. 8:21-cv-02065-SPG-E, 2023 WL 4155379, at *2, 5 (C.D. Cal. Jan. 20,

2023) (granting plaintiffs' motion where plaintiff learned of information five months before seeking

to amend). Moreover, Plaintiffs' position is inconsistent with their previous representations to the

Court that Plaintiffs' counsel are working "*collectively*." Dkt. 108 at 2 (emphasis in original). And

in all events, lead counsel in this case has remained unchanged, and Plaintiffs have not even tried

to explain why the appearance of the *sixth, seventh,* and *eighth* firms to appear for Plaintiffs excuses

their prolonged delay.

Relying on out-of-circuit authority, Plaintiffs also argue that because they sought leave

within the time permitted by the scheduling order, they are entitled to a "presumption of

timeliness." Mot. at 3-4 (citing *Ap-Fonden v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB)

(KHP), 2023 WL 4865617, at *4 (S.D.N.Y. July 31, 2023)). Not so. The Ninth Circuit has

expressly rejected plaintiffs' argument that an amendment within the deadline imposed by a

scheduling order is "presumptively timely." *AmerisourceBergen*, 465 F.3d at 952. As the Ninth

Circuit held in that case: "in assessing timeliness, we do not merely ask whether a motion was filed

---

[3] For this reason, this case is unlike *Kadrey* because there, the court granted leave to amend when
new, key evidence was found in discovery *which supported plaintiffs' new allegations*. *See Kadrey
v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025)
(holding plaintiffs were not unduly delayed in seeking leave to amend where they received key
evidence within weeks of filing their motion). Here, the "evidence" Plaintiffs cite does not support
their allegations against Databricks or DBRX.

FENWICK & WEST LLP

FENWICK & WEST LLP

within the period of time allotted by the district court in a Rule 16 scheduling order.  Rather, in evaluating undue delay, we also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Id.* at 953 (citation modified).  Thus, contrary to Plaintiffs' argument, a scheduling order does not replace Rule 15, which makes clear that there is no amendment "as a matter of course" once a defendant has answered.  *See* Fed. R. Civ. P. 15(a)(1).

### B.    Plaintiffs' motion shows bad faith.

A motion to amend a complaint is made in bad faith where evidence indicates a wrongful motive and the moving party acts "with intent to deceive, harass, mislead, delay, or disrupt." *Kobayashi v. McMullin*, No. 2:19-cv-06591-SSS (MAA), 2023 WL 11822286, at *5 (C.D. Cal. July 7, 2023) (citation modified) (denying motion for leave to amend).  Courts find bad faith sufficient to deny leave to amend where the moving party engages in dilatory tactics, such as waiting months to move to amend a complaint.  *See Cabrera v. Residential Credit Sol. Inc.*, No. CV 14-09212 DMG (AWJx), 2015 WL 13916231, at *7 (C.D. Cal. Sept. 10, 2015) (denying leave to amend and finding bad faith where plaintiff had "history of dilatory tactics").

Here, in addition to Plaintiffs' inexcusable delay, Plaintiffs' misleading representations about the basis for their amendment highlight their bad faith.  Plaintiffs' argument that the amendments about DBRX serve "to better reflect the evidence to date" (Mot. at 5) is baseless— unless "evidence to date" means information available to Plaintiffs *over a year ago*.  Worse, Plaintiffs misleadingly assert that "through discovery, Plaintiffs have identified additional copyrighted works by Plaintiffs were used by Defendants to train *their LLMs*" (Mot. at 3) (emphasis added), implying that this "discovery" provides a new basis to bring direct infringement claims against Databricks related to DBRX.  But as discussed above, that discovery related only to training the *MPT models* and has nothing to do with DBRX or Databricks.

As Plaintiffs know, MosaicML used Books3 to train the MPT models before Databricks even acquired MosaicML.  *See* Compl. ¶ 38.  Yet, throughout their Motion, Plaintiffs use deliberately ambiguous language—referring generically to "Defendants' LLMs"—conflating claims about *the MPT models* with DBRX.  *See* Mot. at 3, 4, 5, 6, 7 (repeatedly referring to

1   Defendants' discovery about the MPT models as pertaining to "their LLMs").  Plaintiffs' attempt

2   to create the impression that this information learned in discovery pertains to DBRX demonstrates

3   Plaintiffs' bad faith.  The Court should deny Plaintiffs' motion on this basis as well.

4         **C.**    **Plaintiffs' proposed amendment would prejudice Defendants.**

5        In determining whether to deny a motion to amend, consideration of prejudice carries the

6   most weight.  *Washington v. Lowe's HIW Inc.*, 75 F. Supp. 3d 1240, 1245 (N.D. Cal. 2014).  Adding

7   claims that "greatly alter[] the nature of the litigation" can cause the opposing party undue

8   prejudice.  *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)

9   (affirming denial of leave).  Amendments to complaints are also unduly prejudicial where they set

10  a "discovery reset button" after the parties have engaged in extensive discovery.  *Johnson*, 809 F.

11  Supp. 2d at 1121.  For example, courts have found prejudice where the proposed amendment would

12  trigger significant additional discovery from new theories and allegations.  *TrustLabs, Inc. v.*

13  *Jaiyong*, No. 21-cv-02606-CRB, 2024 WL 1354486, at *7 (N.D. Cal. Mar. 30, 2024) (denying

14  leave to amend where proposed amendments altered the scope of litigation).  Courts also find undue

15  prejudice where a plaintiff's proposed amendment imposes additional litigation costs.  *See*

16  *AmerisourceBergen*, 465 F.3d at 953 (finding prejudice where eight months remained of discovery

17  and new claims "would have unfairly imposed potentially high, additional litigation costs").

18       Plaintiffs' proposed amendment will radically alter this case and significantly prejudice

19  Defendants.  Since the operative Complaints were filed, the parties have spent months negotiating

20  discovery matters, and Defendants have produced dozens of *terabytes* of data related to the MPT

21  models.  Wakefield Decl. ¶¶ 4, 5.  This time-consuming and costly exercise was based on the direct

22  infringement claim against MosaicML regarding the MPT models.  *Id.* ¶ 5.  The relevant issues as

23  to Databricks have been limited to its alleged "right and ability to control" and purported financial

24  benefit from MosaicML's alleged infringing acts.  Compl. ¶¶ 43-46.  Adding a new direct

25  infringement claim against Databricks, a party previously accused only of vicarious infringement,

26  about an entirely different LLM trained on different datasets that do not include Books3, will

27  introduce fundamentally different theories, multiplying the time and cost the parties have already

28  invested.  Wakefield Decl. ¶ 12.

FENWICK & WEST LLP

1    Meanwhile, Plaintiffs' refrain that there are "four full months" left in discovery brushes

2    aside the fact that the parties were only *six weeks* from the substantial completion of document

3    production when Plaintiffs moved to amend.  Mot. at 5; Dkt. 111 (scheduling order).  As in *Johnson*

4    and *Trustlabs*, Plaintiffs' proposed amendment will require a "discovery reset" and likely push this

5    and other case deadlines.  This is precisely the kind of prejudice that warrants denial of leave to

6    amend.  *AmerisourceBergen*, 465 F.3d at 953.

7    **D.    Plaintiffs' proposed amendment is futile.**

8    Finally, "futility of amendment alone can justify the denial of a motion [for leave to

9    amend]."  *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1055, 1061 (9th Cir. 2009)

10   (affirming dismissal of motion to amend as futile).  To determine whether an amendment would be

11   futile, courts apply the Rule 12(b)(6) standard.  *In re Volkswagen "Clean Diesel" Mktg., Sales,*

12   *Pracs., and Prods. Liab. Litig.*, No. 15-md-02672-CRB, 2023 WL 2095921, at *5 (N.D. Cal. Feb.

13   17, 2023).  Thus, Plaintiffs' proposed amendment must provide "enough facts to state a claim for

14   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

15   Plaintiffs must do this by "plead[ing] factual content that allows the court to draw the reasonable

16   inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

17   678 (2009).  In evaluating a complaint, courts do not credit "allegations that are merely conclusory,

18   unwarranted deductions of fact, or unreasonable inferences."  *Ryan v. Microsoft Corp.*, 147 F. Supp.

19   3d 868, 878 (N.D. Cal. 2015) (citation modified).

20   Here, many of the new allegations in Plaintiffs' proposed amendment are not only

21   conclusory, but also rely on "information and belief."   "[W]hile facts may be alleged upon

22   information and belief, that does not mean that conclusory allegations are permitted."  *Menzel v.*

23   *Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018).

24   Rather, allegations "made on information and belief must still be based on factual information that

25   makes the inference of culpability plausible."  *Id.* (citation modified).  And even when certain facts

26   are in control of the defendant, "this does not excuse the requirement that [a] plaintiff allege

27   something more than bare conclusions."  *Id.* at *3.

28

FENWICK & WEST LLP

1      The Supreme Court has articulated a "two-pronged approach" to assess whether Rule 8(a)'s

2   plausibility requirement is met on a motion to dismiss. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*,

3   550 U.S. at 555). First, a court should "begin by identifying pleadings that, because they are no

4   more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, after

5   filtering out legal conclusions and other conclusory allegations, the court should determine whether

6   the remaining *factual* allegations—accepted as true—"plausibly give rise to an entitlement to

7   relief." *Id.*

8          **1.    Plaintiffs' conclusory allegations fail to state a plausible direct
             infringement claim against Databricks.**
9

10      Following that two-pronged approach, Plaintiffs' core allegations as to Databricks' alleged

11   direct infringement and DBRX must be filtered out as conclusions that are not entitled to an

12   assumption of truth.[4] Plaintiffs' central allegation—that "Defendants have further made copies of

13   Plaintiffs' Works for use to train the DBRX models" (Dkt. 124-2 ¶ 49)—lacks any factual

14   underpinning and is patently conclusory. *See Evans v. NBCUniversal Media, LLC*, No. CV 21-

15   0984-CBM-PD(X), 2021 WL 4513639, at *2 (C.D. Cal. Sept. 30, 2021) (denying motion for leave

16   to amend as futile when "the proposed SAC does not allege any specific infringing conduct by

17   Defendants"); *Canter & Assocs., LLC v. Teachscape, Inc.*, No. C 07-3225 RS, 2007 WL 4365480,

18   at *2 (N.D. Cal. Dec. 12, 2007) (dismissing copyright claim when "[a]s pleaded, the complaint

19   effectively says nothing more than, 'all of my materials are copyrighted and I think you may have

20   copied them'"). Plaintiffs' allegations about DBRX stand in stark contrast to those about the MPT

21   models, which trace Plaintiffs' *specific books* to a *specific dataset*—Books3. But Plaintiffs'

22

23

---

24   [4] In other sections of their motion, Plaintiffs point to the Magistrate Judge's ruling on DBRX as
     showing that "DBRX is relevant to the case." Mot. at 3, 5. As discussed above, Defendants are
25   seeking relief from that order, which incorrectly permitted discovery to trawl for support for a new,
     unpled claim. *See* Dkt. 125. Because the proposed amendment fails to state a claim about DBRX,
26   Plaintiffs should not be permitted to obtain discovery on it. *See Iqbal*, 556 U.S. at 678-79 ("Rule
     8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than
27   conclusions."); *EVOX Prods., LLC v. Verizon Media Inc.*, No. CV 20-2852-CBM (JEMX), 2021
     WL 3260609, at *3 (C.D. Cal. May 5, 2021) ("[T]he Complaint does not allege any facts regarding
28   'actual dissemination' and Plaintiff cannot use discovery as a fishing expedition in order to support
     conclusory claims.").

FENWICK & WEST LLP

proposed amended complaint fails to identify *any* other dataset containing even one of their books, much less a plausible basis to conclude that Databricks used any of Plaintiffs' works to train DBRX.

Instead, Plaintiffs vaguely assert, again "on information and belief," that because MosaicML allegedly engaged in infringing acts by using Books3, Databricks must "have built upon" MosaicML's alleged infringement. Dkt. 124-2 ¶ 43. The proposed amended complaint never says what "built upon" means. But clearly, the fact that one party allegedly committed an infringing act does not provide a basis to allege that a different party committed a separate act of infringement. *Cf. Menzel*, 2018 WL 1400386, at *3 ("Just because Scholastic has exceeded licenses given by *other* individuals or entities does not make it plausible that Scholastic has done the same with respect to Mr. Menzel." (citation modified) (emphasis in original)). Such vague and conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Nor is it sufficient for Plaintiffs to complain that they simply do not know what happened when DBRX was trained. For example, in *Canter*, the court rejected plaintiffs' attempt to excuse their lack of knowledge based on their inability to access defendants' materials, holding "that explanation does not serve to transform what is essentially a guess into a cognizable claim." 2007 WL 4365480, at *2. The same reasoning applies with even more force here, given Databricks' verified interrogatory and RFA responses stating that it did *not* use Books3 to train DBRX. *Cf. Gilead Scis., Inc. v. Merck & Co.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *2 (N.D. Cal. Jan. 13, 2016) (denying motion to compel as "the Court must take the producing party at its word" where requesting party lacked "real evidence" to doubt evidence from the producing party. (citation modified)).

Plaintiffs also speculate that "Databricks may be liable for direct infringement based on its involvement with the MPT projects." Mot. at 6. Their proposed amendment includes a throwaway conclusory allegation that "by copying, storing, processing, and reproducing the MPT models trained on Plaintiffs' Works, MosaicML and Databricks have jointly directly infringed Plaintiffs' exclusive rights in their copyrighted works." Dkt. 124-2 ¶ 52. But the MPT models were trained *before* Databricks acquired MosaicML. Plaintiffs make no *factual* allegation that *Databricks* engaged in any infringing act (i.e., copying a book) in connection with the MPT models. And in any event, such allegations would not support a claim about DBRX.

FENWICK & WEST LLP

1    In sum, the conclusory allegations in Plaintiffs' proposed amended complaint fail to state a

2    plausible direct infringement claim against Databricks or about DBRX.

3              **2.      The proposed amended complaint's few factual allegations concerning**

4                             **DBRX fail to support a claim.**

5    Once the proposed amendment is stripped of conclusory allegations, the few factual

6    allegations that remain fail to support Plaintiffs' new direct infringement claims about Databricks

7    and DBRX.

8    *First*, Plaintiffs quote Databricks' vice president of AI and former MosaicML CEO as

9    saying that DBRX was trained using "open data sets that the community knows." Dkt. 124-2 ¶ 40

10   (citing  https://techcrunch.com/2024/03/27/databricks-spent-10m-on-a-generative-ai-model-that-

11   still-cant-beat-gpt-4/). But nowhere do Plaintiffs allege that Books3, or any of Plaintiffs' books,

12   were included in those "open data sets." Nor do Plaintiffs claim that all "open data sets" contain

13   *their specific books*. Instead, citing no facts, Plaintiffs allege that certain "open data sets" include

14   unspecified "shadow libraries" that contain unspecified "copyrighted works." But Plaintiffs do not

15   cite a *single* specific dataset that allegedly contains *Plaintiffs'* asserted works. Dkt. 124-2 ¶ 41.

16   *Second*, Plaintiffs speculate that because DBRX was trained on "trillions of tokens" of text

17   and computer code (which could include not only words but also parts of words, punctuation, and

18   spaces), it must have been trained on *some* unspecified "shadow library websites." Dkt. 124-2 ¶ 41.

19   From there, Plaintiffs ask the Court to infer that DBRX's training data necessarily contained

20   Plaintiffs' asserted works. In other words, Plaintiffs say that because DBRX was trained on a lot

21   of data—including text and code—their specific books must have been in it. This is neither

22   plausible nor logical.

23   *Third*, Plaintiffs assert that "Defendants have taken steps to conceal the training data used

24   to develop DBRX." Dkt. 124-2 ¶ 44. But Databricks' decision not to publicly disclose the training

25   data it used does not provide a plausible basis to allege that it copied Plaintiffs' books. *See Canter*,

26   2007 4365480, at *2 (lack of knowledge based on inability to access defendants' materials was

27   insufficient to state a cognizable copyright infringement claim). An LLM's training data

28   composition may be proprietary, and a company might seek to protect it to maintain a competitive

advantage.  This choice, which has been made by multiple leading LLM developers, does not mean that any books subject to copyright protection, much less *these specific authors' books*, were used in the training datasets for DBRX.  By Plaintiffs' reasoning, they can sue every LLM developer that did not disclose the training data it used based on speculation that the training data may contain their books.

*Fourth*, Plaintiffs point to a March 27, 2024 post on X sharing what the author believed was DBRX's "system prompt," or operating instructions, which stated that DBRX was "not trained on copyrighted books" and was instructed not to "divulge details of [its] training data."  Dkt. 124-2 ¶ 44.  But stating that DBRX was *not* trained on copyrighted books does not then mean that DBRX *was* trained on copyrighted books—in fact, it suggests the exact opposite.  It certainly does not suggest that DBRX was trained on any of *Plaintiffs'* books.  And as discussed above, not divulging training data protects proprietary information and does not support an inference of copyright infringement.

*Fifth*, Plaintiffs cite Databricks' DBRX announcement as stating that DBRX was the continuation of "years of LLM development at Databricks that includes the MPT … projects" and that "[t]he development of DBRX was led by the MosaicML team that previously built the MPT model family."  Dkt. 124-2 ¶ 42 (quoting DBRX blogpost).  But the fact that some of the same scientists allegedly used Books3 to train one model does not rationally or legally state a claim that they committed new acts of infringement when training a different model.  This is particularly so when Databricks confirmed in discovery that Books3 was *not* used to train DBRX.  *See* Wakefield Decl. ¶¶ 7-9; Exs. B & C.

Ultimately, Plaintiffs fail to plead a Rule 8 basis to bring a claim against Databricks or involving DBRX.  The sole basis for Plaintiff's claim against MosaicML depends on its use of Books3, and Plaintiffs do not allege any use of Books3 by Databricks.  None of the allegations Plaintiffs added in their proposed amended complaint suffice to state a direct infringement claim against Databricks or DBRX, and the Court should deny Plaintiffs motion as futile.

FENWICK & WEST LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for leave to amend their Complaints.

Dated:   June 10, 2025

FENWICK & WEST LLP

By:  /s/ Jedediah Wakefield
Jedediah Wakefield (CSB No. 178058)
jwakefield@fenwick.com
Ryan Kwock (CSB No. 336414)
rkwock@fenwick.com
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:       415.875.2300
Facsimile:       415.281.1350

David Hayes (CSB No. 122894)
dhayes@fenwick.com
801 California Street
Mountain View, CA 94041
Telephone:       650.988.8500
Facsimile:       650.938.5200

Deena Feit (admitted *pro hac vice*)
dfeit@fenwick.com
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:       206.389.4510
Facsimile:       206.389.4511

Charles Moulins (admitted *pro hac vice*)
cmoulins@fenwick.com
902 Broadway, Ste. 14
New York, NY 10010
Telephone:       212.430.2600
Facsimile:       650.938.5200

Zachary Harned (CSB No. 335898)
zharned@fenwick.com
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone:       310.434.5400
Facsimile:       650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly
MOSAIC ML, INC.