Joseph R. Saveri (SBN 130064)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Email: jsaveri@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

*[Additional counsel on signature page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

*In Re Mosaic LLM Litigation*

Master File Case No. 3:24-cv-01451-CRB
Consolidated with Case No. 3:24-cv-02653-CRB

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED CONSOLIDATED COMPLAINT**

Date July 11, 2025
TIME: 10:00 a.m.
PLACE: San Francisco Courthouse, Courtroom 6 – 17th Floor

Jury Trial Demanded

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. Plaintiffs Satisfy the Liberal Standard to Amend. .......... 1

A. Plaintiffs Did Not Unduly Delay .......... 1

B. There is No Bad Faith .......... 4

C. Defendants Fail to Show the Most Important Factor—Prejudice. .......... 6

D. Defendants Failed to Show Futility .......... 8

III. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Leadership Rsch. Inst., Inc*,
2024 WL 1480486 (S.D. Cal. Jan. 18, 2024) ..... 3, 4

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) ..... 2, 4, 8

*Cabrera v. Residential Credit Sol. Inc*,
2015 WL 13916231 (C.D. Cal. Sept. 10, 2015) ..... 4, 5

*Canter & Assocs., LLC v. Teachscape, Inc.*,
2007 WL 4365480 (N.D. Cal. Dec. 12, 2007) ..... 10

*Collins v. Wal-Mart Stores, Inc.*,
2025 WL 1638319 (S.D. Cal. June 6, 2025) ..... 4

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ..... 4

*Dennis v. Ralph Lauren Corp.*,
2017 WL 3085085 (S.D. Cal. Apr. 12, 2017) ..... 9

*Dunbar v. Google, Inc.*,
2012 WL 6202797 (N.D. Cal. Dec. 12, 2012) ..... 3

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ..... 1

*Ernest Bock, LLC v. Steelman*,
2021 WL 1550332 (D. Nev. Apr. 20, 2021) ..... 3, 4

*Evans v. NBCUniversal Media, LLC*,
2021 WL 4513639 (C.D. Cal. Sept. 30, 2021) ..... 10

*Fletcher v. Baca*,
2009 WL 10711614 (C.D. Cal. Mar. 31, 2009) ..... 4

*Foman v. Davis*,
371 U.S. 178 (1962) ..... 1

*Hwa Sung Sim v. Duran*,
2018 WL 746490 (E.D. Cal. Feb. 7, 2018) ..... 6

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ..... 2

*Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114 (N.D. Cal. 2011), *aff'd*, 546 F. App'x 613 (9th Cir. 2013) ........ 2, 3, 7

*Kobayashi v. McMullin*, 2023 WL 11822286 (C.D. Cal. July 7, 2023), *report and recommendation adopted,* 2023 WL 11822282 (C.D. Cal. Sept. 1, 2023) ........ 5

*Leines v. Homeland Vinyl Prods., Inc.*, 2020 WL 6044037 (E.D. Cal. Oct. 13, 2020) ........ 8

*Macias v. KDF Foxdale, L.P.*, 2020 WL 2097607 (N.D. Cal. May 1, 2020) ........ 9

*McCabe v. Six Continents Hotels, Inc.*, 2013 WL 12306494 (N.D. Cal. Oct. 10, 2013) ........ 3

*Menzel v. Scholastic, Inc.*, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ........ 10

*Naranjo v. Bank of Am. Nat'l Ass'n*, 2015 WL 913031 (N.D. Cal. Feb. 27, 2015) ........ 5

*PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 294855 (N.D. Cal. Jan. 27, 2014) ........ 4, 6, 7

*Poe v. Nw. Mut. Life Ins. Co.*, 2023 WL 4155379 (C.D. Cal. Jan. 20, 2023) ........ 4

*Sanzaro v. Ardiente Homeowners Ass'n, LLC*, 2017 WL 5895133 (D. Nev. Nov. 29, 2017) ........ 8

*Texaco, Inc. v Ponsoldt*, 939 F.2d 794 (9th Cir. 1991) ........ 2

*TrustLabs, Inc. v. Jaiyong*, 2024 WL 1354486 (N.D. Cal. Mar. 30, 2024) ........ 8

*Walintukan v. SBE Ent. Grp., LLC*, 2017 WL 635278 (N.D. Cal. Feb. 15, 2017) ........ 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 9

Fed. R. Civ. P. 15 ........ 1, 4, 6, 7

**Other Authorities**

The Mosaic Research Team, *Introducing DBRX: A New State-of-the-Art Open LLM*, Databricks (Mar. 27, 2024), https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm ........................... 7

The Mosaic Research Team, *MPT-30B: Raising the Bar for Open-Source Foundation Models*, Databricks (June 22, 2023), https://www.databricks.com/blog/mpt-30b ................................................................. 6

## I. INTRODUCTION

Plaintiffs' proposed first amended consolidated complaint ("FACC") adds (1) a direct infringement claim against Defendant Databricks, (2) Defendants' LLM released during the pendency of this litigation, known as DBRX, (3) additional Asserted Works that Plaintiffs recently confirmed were improperly used as part of the training data for the MPT models, and (4) reflects the consolidation of the two separately filed, related cases. Defendants challenge the first two amendments but fail to show that any of the *Foman* factors favor denying these timely amendments. There is no reason to depart from Rule 15's "extreme liberality" in granting leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). The Court should grant Plaintiffs' Motion.

## II. Plaintiffs Satisfy the Liberal Standard to Amend.

Defendants nominally invoke the *Foman v. Davis*, 371 U.S. 178, 182 (1962) factors, but their arguments are unsupported and wrong. They allege delay, but Plaintiffs moved before the Court-ordered and stipulated deadline to move for leave to amend. Defendants claim they will be prejudiced, but identify no burden beyond the ordinary costs of litigation particularly. Document production is still fully underway and at a relatively early stage. Their futility argument improperly invokes facts outside the FACC and fails to meet their burden to show that no set of facts could support a sufficient claim. Finally, Defendants' allegation of bad faith is baseless and entirely dependent on misstating Plaintiffs' arguments and motion. Defendants offer no valid basis for departing from *Foman*'s presumption that leave be freely given and denying leave to amend.

### A. Plaintiffs Did Not Unduly Delay

Defendants' argument that Plaintiffs unduly delayed in seeking leave to amend fails. It is premised on the time since DBRX was released and the other public statements pertaining to Databricks were made, which cannot carry the day. Resp. at 5 (arguing 14-month delay). Defendants' scattershot cases, which they contend offer comparable timeframes and support denying leave, are inapposite. Resp. at 5. For example, Defendants cite *Texaco, Inc. v. Ponsoldt* for the proposition that a court denied leave to amend "where a party waited eight months." Resp.

at 5. But in that case, plaintiffs sought leave "eight months *after the district court granted summary judgment against [the party],* and nearly two years after filing the initial complaint," 939 F.2d 794, 799 (9th Cir. 1991) (emphasis added). In *AmerisourceBergen Corp. v. Dialysist W., Inc.*, the court did not base its finding of undue delay solely on a 15 month delay in isolation—"more detrimental" was that the amending party sought to amend a position it had taken 12 months into the litigation, where the party had all the information it needed at that time, and there was no explanation for the *drastic* amendment three months later. 465 F.3d 946, 953 (9th Cir. 2006). In *Jackson v. Bank of Hawaii*, the amending party filed an amended complaint 14 months after first informing the court of its intent to amend the complaint—8 months of which were after the party "fully analyze[d]" the relevant evidence and "added new attorneys." 902 F.2d 1385, 1388 (9th Cir. 1990). And in *Johnson v. Hewlett-Packard Co.*, plaintiff sought to file a *fourth* amended complaint, *after* summary judgment, seeking to change its position on a "critical issue" where the court had, months before, relied on the plaintiff's prior position and had denied certain discovery on the basis of plaintiff's allegations. 809 F. Supp. 2d 1114, 1120-21 (N.D. Cal. 2011), *aff'd*, 546 F. App'x 613 (9th Cir. 2013).

These decisions present a stark contrast from the circumstances here and only confirm why Plaintiffs' motion for leave to amend should be granted. None of the cases relied on by Defendants involve a case in the early stages of discovery and where Plaintiffs have been diligently pursuing this theory and seeking discovery on DBRX and Databricks—over Defendants' objection—for months. In stark contrast to the situation in *Johnson*, Plaintiffs promptly sought leave to amend after Defendants attempted to curtail discovery on the basis of the scope of the pleadings. *See* 902 F.2d at 1388. And Plaintiffs did so *before* the stipulated and Court ordered deadline.

Specifically, Plaintiffs sought discovery into DBRX three months ago, in March 2025. Resp. at 4. Since then, Plaintiffs have diligently sought information through discovery related to DBRX and Databricks' direct role in training and developing DBRX, and Plaintiffs have had to turn to the Court in the face of Defendants' refusal to produce any discovery related to DBRX on the grounds that it was not among the expressly alleged infringing products. *See* Dkt. 108 Ex. A

(listing search terms Defendants refused to add, including those related to DBRX), Dkt. 119 at 1 n.1 (noting Defendants objected to the relevance of DBRX); Dkt. 122 (arguing Defendants' refusal to produce any discovery on DBRX is improper). Defendants have yet to produce discovery relating to DBRX or to even meaningfully produce any custodial documents. *See* Mot. at 3 n.3; Declaration of Joseph Saveri ("Saveri Decl.") at ¶ 4; *see also Dunbar v. Google, Inc.*, 2012 WL 6202797, at *14 (N.D. Cal. Dec. 12, 2012) (noting that defendant's "own strategic choices may have contributed to Plaintiff's delay in asserting the Amended [pleading]"); *McCabe v. Six Continents Hotels, Inc.*, 2013 WL 12306494, at *3 (N.D. Cal. Oct. 10, 2013) (considering plaintiff's diligence in pursuing discovery); *Ernest Bock, LLC v. Steelman*, 2021 WL 1550332, at *5 (D. Nev. Apr. 20, 2021) (considering the "slow pace of discovery" in concluding amendment was timely).

Plaintiffs argued that their original complaint encompassed DBRX. Defendants disagreed and refused to respond to discovery, but the Court agreed with Plaintiffs. *See* Dkt. 1 at ¶ 35; Dkt. 123 at 6. Plaintiffs' proposed amendment merely eliminates all doubt. It was reasonable and timely to amend to clarify the scope of the complaint within weeks of these disputes, where the disputes might serve as a basis for placing Plaintiffs on notice of the need to amend. *Cf. Johnson*, 809 F. Supp. 2d at 1121 (denying leave where plaintiff had been on notice of the need to amend because of discovery disputes).

Defendants' attempt to minimize the parties' agreed Scheduling Order deadline, which this Court entered, Dkt. 111, fails. Resp. at 7. Particularly in light of Defendants' delay and obstruction of discovery, as discussed *supra*, there is absolutely nothing improper about Plaintiffs' filing their motion on "the last day permitted by the scheduling order." Resp. at 6. In *Alexander v. Leadership Rsch. Inst., Inc.*, the court rejected exactly this argument and granted plaintiff's motion for leave to file a second amended complaint filed "on the last day permitted by the Scheduling Order" over defendants' objection because "the parties must be able to rely upon the deadlines in the Scheduling Order because otherwise they would be meaningless." 2024 WL 1480486, at *3 (S.D. Cal. Jan. 18, 2024); *PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 294855, at *4 (N.D. Cal. Jan. 27, 2014) (noting that seeking leave to amend within the stipulated deadline, even "on the last day," "strongly shows

that [plaintiff] did not unduly delay"). Timely filing within the deadline to amend is a proper consideration within the Rule 15 analysis. *See AmerisourceBergen Corp.*, 465 F.3d at 953; *Poe v. Nw. Mut. Life Ins. Co.*, 2023 WL 4155379, at *5 (C.D. Cal. Jan. 20, 2023) ("[I]mportantly, Plaintiff's motion was timely under the Scheduling Order . . . ."); *Ernest Bock, LLC v. Steelman*, 2021 WL 1550332, at *5 (D. Nev. Apr. 20, 2021) (finding no undue delay, in part, based on the "the timeliness of amendment under the parties' scheduling order"); *Collins v. Wal-Mart Stores, Inc.*, 2025 WL 1638319, at *5 (S.D. Cal. June 6, 2025) (finding a motion to amend timely where it was filed within the scheduling order deadline to amend).

Finally, even if Plaintiffs could have sought to amend the complaint to include DBRX and the direct infringement claim against Databricks earlier as Defendants contend, waiting to amend within the period allotted for amendment to avoid piecemeal amendments is not unreasonable. *See Fletcher v. Baca*, 2009 WL 10711614, at *3 (C.D. Cal. Mar. 31, 2009) (noting it was not unreasonable for a party to wait to amend to avoid "proceeding in a piecemeal fashion"). Plaintiffs' FACC amendments cover consolidation, DBRX, a direct infringement claim against Databricks, and additional Asserted Works that were identified in Defendants' recently produced training data. Accomplishing this in one fell swoop within the Court ordered timeframe is reasonable, especially where there is *no prejudice* as described below.

In any event, "delay alone is not sufficient to justify the denial of a motion requesting leave to amend." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). As set forth *infra*, there is no prejudice, no bad faith, and no other basis to deny leave here.

### B. <u>There is No Bad Faith</u>

Defendants' own cited cases fail to support their opposition. *Cabrera v. Residential Credit Sol. Inc.* involved an attempted amendment to add a res judicata issue where a bankruptcy court had already found the party had filed multiple bankruptcy cases intended to "hinder, delay, or defraud creditors." 2015 WL 13916231, at *7 (C.D. Cal. Sept. 10, 2015). In *Kobayashi v. McMullin*, a plaintiff sought leave to amend in a clear attempt to circumvent the court's prior rulings that claims be stricken from an amended complaint. 2023 WL 11822286, at *5 (C.D. Cal. July 7,

2023), *report and recommendation adopted*, 2023 WL 11822282 (C.D. Cal. Sept. 1, 2023). Plaintiffs did exactly the opposite here: they amended consistent with the Court's recent discovery rulings to clarify and avoid further disputes and as permitted by the current Scheduling Order.

Defendants' attempt to conflate their claims of "Plaintiffs' inexcusable delay" with bad faith betrays the weakness of their arguments. Resp. at 8. Courts have rejected this very argument, holding that "[e]ven assuming the basis for Plaintiffs' amendment was known at the time of the initial complaint, that is not, by itself, objective evidence of bad faith or tactical gamesmanship." *Naranjo v. Bank of Am. Nat'l Ass'n*, 2015 WL 913031, at *7 (N.D. Cal. Feb. 27, 2015). Defendants have made no showing of bad faith or gamesmanship, much less the "strong showing" required to deny leave. *Id.* at *6.

Defendants also claim, without evidence, that Plaintiffs' motion attempts to mislead the Court as to the basis for amending. Resp. at 8. Not so. Plaintiffs' stated basis for adding additional Asserted Works was that Defendants produced training data in *April 2025* confirming that those were infringed. Mot. at 4 ("Defendants provided only last month the training dataset that allowed Plaintiffs to further confirm additional works by Plaintiffs were used by Defendants *to train their MPT models*." (emphasis added)).[1] Plaintiffs never said (or suggested) that this was a production of *DBRX* training data—to the contrary. Plaintiffs repeatedly cited to Magistrate Judge Cisneros's *May 20, 2025* order, Dkt. 123, that overruled Defendants' refusal to produce *any* discovery related to DBRX—including its training data. Plaintiffs made clear the dataset mentioned in its motion was produced in April 2025. To be clear, *Plaintiffs* allege that this training data set was used to train *multiple* MPT models—MosaicML developed these LLMs and Databricks continues to distribute them—making these LLMs *their LLMs*. *See* Compl. at ¶ 2; *see also* The Mosaic Research Team, *MPT-30B: Raising the Bar for Open-Source Foundation Models*, Databricks (June 22,

[1] As described in Plaintiffs' motion, the newly produced training data supported adding additional Asserted Works to the complaint. Mot. at 4, 7. Defendants, however, offer no challenge to amending the complaint to include these Asserted Works as constituting undue delay, prejudice, bad faith, or futility. *See generally* Resp. at 5–14. Instead, Defendants opted to shoehorn Plaintiffs' basis for adding the additional Asserted Works into Defendants' arguments regarding Databricks and DBRX. *See* Resp. at 6, 8.

2023), https://www.databricks.com/blog/mpt-30b. Defendants' attempt to conflate Plaintiffs' stated basis for adding Asserted Works with a claim that Plaintiffs have DBRX-specific training data is baseless and should be rejected.

### C. Defendants Fail to Show the Most Important Factor—Prejudice.

Defendants fail to show any prejudice here. "[T]he burden of having to defend a new claim alone is not undue prejudice under Rule 15," nor is "the prospect of additional discovery needed by the non-moving party in itself" sufficient. *PNY Techs.*, 2014 WL 294855, at *5.[2] "Rule 15 specifically allows for new causes of action so long as they have 'some relation' to the existing claims." *Id.* at *5. Defendants have not, and cannot, make any particularized showing of how the FACC will significantly expand existing discovery. But even if they could, at the time of Plaintiffs' motion—by the negotiated and agreed deadline to amend—four months remained in fact discovery. Where "the motion to amend the pleadings came with four months remaining for discovery and within the time period for making a motion to amend," Defendants have "a heavy burden of showing prejudice." *Id.*; *Hwa Sung Sim v. Duran*, 2018 WL 746490, at *2 (E.D. Cal. Feb. 7, 2018) (granting leave to file second amended complaint and holding that "prejudice to a non-movant is mitigated if discovery is still open . . . .").

Defendants make a cursory assertion that the FACC "will radically alter" this case. Resp. at 9. But that is plainly not true. Defendants fail to argue how a vicarious copyright infringement claim is "fundamentally" different than a direct infringement claim even in the abstract, Resp. at 9, let alone in this case where Databricks now controls and distributes the LLMs named in the original complaint. *See* Compl. at ¶¶ 2, 6. The explicit inclusion of DBRX is not a fundamental shift simply because, according to Defendants' self-serving litigation arguments, it is "an entirely different LLM." Resp. at 9. Defendants' prior public statements establish an unbroken chain between the DBRX and MPT models. *See, e.g.*, The Mosaic Research Team, *Introducing DBRX: A New State-*

---

[2]Defendants fail to point to any discovery needed from Plaintiffs to support their arguments of prejudice. Resp. at 9–10. Indeed, the only amendment that would require additional discovery from Plaintiffs related to the additional Asserted Works in the FACC, but Defendants do not challenge this portion of the FACC and Plaintiffs are already producing related discovery. *See* Saveri Decl. at ¶ 3.

*of-the-Art Open LLM*, Databricks (Mar. 27, 2024), https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm. And as mentioned before, Plaintiffs have not kept secret that DBRX is a subject of this case. Amending to include a related product bearing a different name is hardly a fundamental shift. *See PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 294855, at *5 (N.D. Cal. Jan. 27, 2014) (stating that "new causes of action . . . alleged for a different product does not constitute prejudice because Rule 15 specifically allows for new causes of action so long as they have 'some relation' to the existing claims").

The present FACC could not be further from the "discovery reset button" that Defendants point to in *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1121 (N.D. Cal. 2011), *aff'd*, 546 F. App'x 613 (9th Cir. 2013). Resp. at 9. There, the proposed amended complaint came on the heels of summary judgment briefing, plaintiffs had already exhausted depositions and interrogatories, and defendants had answered 112 requests for production. *Johnson*, 809 F. Supp. 2d at 1121. The "discovery reset" meant postponing summary judgment and allowing the plaintiff to take new discovery. *Id.* Here, no depositions have occurred, the parties are roughly eight months from the start of summary judgment briefing, Defendants are far from substantially completing discovery,[3] and the Court has *already* granted discovery into DBRX. Dkt. 123 at 6. There is no need to "reset" discovery here.

Defendants argue that prejudice would result because "the parties have spent months negotiating discovery matters." Resp. at 9 (citing Declaration of Jed Wakefield ("Wakefield Decl.") at ¶ 4, 5). But Defendants' support for that is that the parties have already negotiated "a protective order, ESI protocol search terms, and lists of custodians." Wakefield Decl. at ¶ 4. Both MosaicML and Databricks participated in negotiating the stipulated protective order, *see* Dkt. 60, and provide no argument as to why this order would need to be altered. Resp. at 9. They provide no basis to conclude that custodians or search terms would need to be revisited—again, the scope of discovery already encompasses DBRX *and* Databricks' conduct in connection with the development and distribution of all the LLMs. *See* Dkt. 119 at 1 n.1 (Plaintiffs noting Defendants have accepted

[3] To date, Defendants' document production amounts to 308 documents, with only approximately 26 of those being custodial documents such as emails. *See* Saveri Decl. at ¶ 4.

search terms related to DBRX); Dkt. 123 at 6 (concluding DBRX is relevant to the claims and defenses). The current custodians already include multiple members of the Mosaic Research and Development team at Databricks. And as Defendants acknowledge, Resp. at 4, Plaintiffs have already sought discovery from Databricks regarding its involvement in the infringement at issue, thus Defendants cannot show any "incurred litigation expenses 'that could have been easily avoided' had [Plaintiffs] brought [the amended claims] in the first instance." *Sanzaro v. Ardiente Homeowners Ass'n*, LLC, 2017 WL 5895133, at *16 (D. Nev. Nov. 29, 2017) (quoting *AmerisourceBergen*, 465 F.3d at 953).

Defendants' own cases demonstrate the lack of prejudice here. In *AmerisourceBergen*, the amendments sought would have directly contradicted the party's position taken three months earlier in the litigation. 465 F.3d at 953. Discovery had progressed under Amerisource's admission that a product was genuine but months later it sought to alter its position to assert that it was counterfeit. *Id.* This about-face "drastically changed [the] litigation theory" and was prejudicial "because [it] contradicted the company's 'own previous admissions mid-stream,' without any proffered reason." *Id.* at 953 & n.9. Plaintiffs' FACC is no about-face nor does it contradict discovery to date. *TrustLabs, Inc. v. Jaiyong* is similarly unhelpful to Defendants. There, the party sought to amend "long after expert discovery closed," on the eve of fact discovery closing, to include claims "untethered" from the current factual circumstances of the case. 2024 WL 1354486, at *7–*8 (N.D. Cal. Mar. 30, 2024). The party opposing amendment "must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" *Leines v. Homeland Vinyl Prods., Inc.*, 2020 WL 6044037, at *4 (E.D. Cal. Oct. 13, 2020) (citation omitted). There is no prejudice here, much less prejudice warranting denial of leave.

**D. <u>Defendants Failed to Show Futility</u>**

Defendants have failed to demonstrate that Plaintiffs' FACC is futile. Defendants spend the entirety of their futility argument attempting to show the legal insufficiency of the FACC as to the direct infringement claim against Databricks and the inclusion of DBRX. Resp. at 10–14. But it is

well-established that "if the underlying facts or circumstances relied upon by a plaintiff *may* be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Walintukan v. SBE Ent. Grp., LLC*, 2017 WL 635278, at *2 (N.D. Cal. Feb. 15, 2017) (emphasis added) (citation omitted). Denying a motion to amend on futility grounds "is rare." *Id.* (citation omitted). Plaintiffs' FACC is a far cry from meeting that standard.

Specifically, Defendants argue futility because "Databricks' verified interrogatory and RFA responses [state] that it did not use Books3 to train DBRX." Resp. at 12, 14 (emphasis removed). But the Court already properly declined to accept this as a basis to deny Plaintiffs discovery into DBRX, holding that "Plaintiffs must be permitted to obtain further discovery to test Defendants' denials." Dkt. 123 at 6. It is, likewise, not a basis to find futility: "Defendants' argument ignores the rule that a court can look only to the facts pled in a proposed amendment in deciding whether to grant leave to amend." *Walintukan v. SBE Ent. Grp., LLC*, 2017 WL 635278, at *2 (N.D. Cal. Feb. 15, 2017); *see also Dennis v. Ralph Lauren Corp.*, 2017 WL 3085085, at *2 (S.D. Cal. Apr. 12, 2017). Contrary to Defendants' attempt to include its already-rejected discovery responses, "[t]he Court . . . 'must accept as true all factual allegations in the [proposed] complaint,' as it would on a Rule 12(b)(6) motion." *Macias v. KDF Foxdale, L.P.*, 2020 WL 2097607, at *3 (N.D. Cal. May 1, 2020) (third alteration in original) (quoting *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).

Against this background, Defendants' quibbling with Plaintiffs' allegations falls far short of showing futility. Defendants call Plaintiffs' allegation that "by copying, storing, processing, and reproducing the MPT models trained on Plaintiffs' Works, MosaicML and Databricks have jointly directly infringed Plaintiffs' exclusive rights in their copyrighted works" a "throwaway allegation." Resp. at 12 (quoting Dkt. 124-2 ¶ 52). But, as alleged in the FACC, Databricks's own public statements support that Databricks was involved in developing the infringing MPT models— "years of LLM development at Databricks" "includes the MPT" models. Dkt. 124-2 ¶ 42.

Defendants argue that Plaintiffs' allegation that "Defendants have further made copies of Plaintiffs' Works for use to train the DBRX models" lacks any factual underpinning. Resp. at 11

(quoting Dkt. 124-2 ¶ 49). But again, the FACC lays out a course of conduct by Defendants that already includes specific incidents of infringing acts based on the MPT models. *See* Dkt. 124-2 ¶¶ 26-37. And, again, Defendants' cited cases undermine their claim of futility. In *Evans v. NBCUniversal Media, LLC*, the plaintiff did "not allege *any* specific infringing conduct by Defendants" over three years. 2021 WL 4513639, at *2 (C.D. Cal. Sept. 30, 2021) (emphasis added); *Canter & Assocs., LLC v. Teachscape, Inc.*, 2007 WL 4365480, at *2 (N.D. Cal. Dec. 12, 2007) (finding plaintiff had no information as to any viable copyright claim). In *Menzel v. Scholastic, Inc.*, the plaintiff made an "information and belief" allegation that the defendant used "more copies of his photographs than permitted under the license agreements." 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018). The court there concluded that although the defendant may have done so with other licenses did not create a plausible inference that the defendant did so with plaintiff's license. *Id.* Here, however, Plaintiffs have made plausible allegations that Defendants extensively infringed Plaintiffs' works in training of multiple MPT models. *See* Dkt. 124-2 ¶¶ 26-37. *Defendants' own statements* (not Plaintiffs' guess) suggest that the same individuals that trained the MPT models engaged in the same course of conduct in training DBRX just months later—establishing an "inference of a pattern or practice of improper conduct from which an inference of wrongdoing against [Defendants] might be inferred." *Menzel*, 2018 WL 1400386, at *3.

Against this background, Plaintiffs' allegations do not amount to a "complain[t] that they simply do not know what happened when DBRX was trained," Resp. at 12. Plaintiffs have made specific allegations of connections between the MPT models and DBRX, and deliberate secrecy with respect to DBRX. In *Menzel*, the court specifically considered whether the plaintiff had "made any showing that it is impossible to obtain some evidence of [defendant's] wrongdoing." 2018 WL 1400386, at *3. Here, Plaintiffs have made that showing regarding DBRX's training data and Defendants plainly acknowledge that this information is not obtainable publicly. Resp. at 13–14. The Court should (again) reject Defendants' attempt to use their own secrecy to insulate themselves from further discovery and litigation.

Defendants further attempt to show futility by relying on matters outside the pleadings and ignoring the allegations. Defendants argue that the "open data sets that the community knows" used to train DBRX don't support Plaintiffs claims. Resp. at 13 (quoting Dkt. 124-2 ¶ 40). But Plaintiffs have already alleged that Defendants have used open datasets derived from "shadow libraries" like Bibliotik to train the MPT models. *See* Dkt. 124-2 ¶¶ 26-37. Plaintiffs further alleged that Defendants again used shadow libraries "*which include Plaintiffs' Works*" to train DBRX. *See* Dkt. 124-2 ¶¶ 41 (emphasis added).

And Defendants' attempt to address portions of the FACC in isolation fails. Resp. at 13–14. As Plaintiffs allege, Defendants had already improperly used copyrighted material to train the MPT models. That Defendants needed to obtain *massive* amounts of data to encompass the 14 trillion tokens used to train DBRX plausibly supports Plaintiffs' claim that Defendants again improperly turned to copyrighted material. Dkt. 124-2 ¶ 41. Further, that Defendants took steps to conceal the training data only after this lawsuit was filed and programmed DBRX to further conceal not just its training data but also whether it was trained on "copyrighted books" specifically, Dkt. 124-2 ¶¶ 40, 44, supports Plaintiffs allegations.[4] Lastly, that DBRX was trained by the same MosaicML team that trained multiple MPT models[5] using copyrighted material plausibly supports this team did so again with DBRX. Plaintiffs' FACC plausibly alleges a direct infringement claim as well as supports the inclusion of DBRX.

Even if the Court concludes the FACC would be futile as pleaded (which it should not), it should allow Plaintiffs to cure any deficiencies.

---

[4]Defendants argue that "multiple leading LLM developers" have made the choice to conceal their training data. Resp. at 14. That is irrelevant, unsupported in Defendants' response, and not in the FACC.

[5]Defendants state that this team used Books3 to train *one* model. Resp. at 14. Assuming that Defendants are referring to the MPT series, Plaintiffs' complaint alleges that Books3 was used to train multiple models, including at least the MPT-7B, MPT-30B, and the MPT-7B-StoryWriter-65k+. Compl. at ¶ 38-39.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs leave to file the proposed First Amended Consolidated Complaint.

Dated: June 20, 2025

By: /s/ *Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
William Castillo Guardado (SBN 294159)
Jane J. Kim (SBN 333342)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com
jkim@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
mb@buttericklaw.com

Justin A. Nelson (admitted pro hac vice)
Alejandra C. Salinas (admitted pro hac vice)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted pro hac vice)
Craig Smyser (admitted pro hac vice)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor

New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (pro hac vice)
Trevor D. Nystrom (pro hac vice)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com

Rachel J. Geman (admitted pro hac vice)
Danna Z. Elmasry (admitted pro hac vice)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (admitted pro hac vice)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

Rachel J. Geman (admitted pro hac vice)
Danna Z. Elmasry (admitted pro hac vice)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500

rgeman@lchb.com
delmasry@lchb.com

Bryan L. Clobes (admitted pro hac vice)
Mohammed A. Rathur (admitted pro hac vice)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com

Brian D. Clark (admitted pro hac vice)
Laura M. Matson (admitted pro hac vice)
Arielle Wagner (admitted pro hac vice)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document has been served on all current counsel of record on June 20, 2025.

*/s/ Rohit D. Nath*
Rohit D. Nath