[Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

Master File Case No. 3:24-cv-01451-CRB
Consolidated with Case No. 3:24-cv-02653-CRB

*In Re Mosaic LLM Litigation*

**FIRST AMENDED CONSOLIDATED COMPLAINT**

Class Action

Jury Trial Demanded

Plaintiffs Stewart O'Nan, Abdi Nazemian, Brian Keene, Rebecca Makkai, and Jason Reynolds (together "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class-action complaint ("Complaint") against defendants Mosaic ML, Inc. ("MosaicML") and Databricks, Inc. ("Databricks") (together "Defendants").

**OVERVIEW**

1.      *Artificial intelligence*—commonly abbreviated "AI"—denotes software that is designed to algorithmically simulate human reasoning or inference, often using statistical methods.

2.      *A large language model* is an AI software program designed to emit convincingly naturalistic text outputs in response to user prompts. MosaicML Pretrained Transformer ("MPT") is a series of large language models created by MosaicML and distributed by Databricks.  "DBRX" is a series of large language models created by the same MosaicML team that created the MPT series, after Databricks acquired MosaicML. Databricks distributes the DBRX models.

3.      Rather than being programmed in the traditional way—that is, by human programmers writing code—a large language model is *trained* by copying an enormous quantity of textual works, extracting protected expression from these works, and transforming that protected expression into a large set of numbers called *weights* that are stored within the model. These weights are entirely and uniquely derived from the protected expression in the training dataset. Whenever a large language model generates text output in response to a user prompt, it is performing a computation that relies on these stored weights, with the goal of imitating the protected expression ingested from the training dataset.

4.      Plaintiffs and Class members are authors. They own registered copyrights in certain books that were included in the training dataset that MosaicML has admitted copying to train its MPT models. Plaintiffs and Class members never authorized MosaicML to use their copyrighted works as training material. Defendants have never compensated Plaintiffs and Class members for using their copyrighted works as training material.

5.      MosaicML and Databricks copied these copyrighted works multiple times to

train the MPT and, on information and belief, DBRX models.

6.    Databricks, as the corporate parent of MosaicML and distributor of the MPT and DBRX models, has also commercially benefitted from these acts of massive copyright infringement.

7.    Through the above acts, Defendants have jointly infringed Plaintiffs' copyrighted works, and they continue to do so by continuing to store, process, and reproduce the training datasets containing copies of Plaintiffs' Works to train the MPT and DBRX models.

## JURISDICTION AND VENUE

8.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Copyright Act (17 U.S.C. § 501).

9.    Jurisdiction and venue are proper in this judicial district under 28 U.S.C. § 1391(c)(2) because Defendants are headquartered in this district. Defendants created the MPT language models and distribute them commercially. Therefore, a substantial part of the events giving rise to the claim occurred in this District. A substantial portion of the affected interstate trade and commerce was carried out in this District. Defendants have transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. Defendants' conduct has had the intended and foreseeable effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

10.    Under Civil Local Rule 3-2(c), assignment of this case to the San Francisco Division is proper because this case pertains to intellectual-property rights, which is a district-wide case category under General Order No. 44, and therefore venue is proper in any courthouse in this District.

## PLAINTIFFS

11.    Plaintiff Stewart O'Nan is an author who lives in Massachusetts. Mr. O'Nan owns registered copyrights in multiple books, including *Last Night at the Lobster*; *The Night Country; Emily, Alone; The Circus Fire; The Good Wife; The Speed Queen; The Vietnam*

*Reader; West of Sunset; City of Secrets; Henry, Himself;* and *In the Walled City.*

12.    Plaintiff Abdi Nazemian is an author who lives in California. Mr. Nazemian owns registered copyrights in multiple books, including *Like a Love Story* and *The Authentics*.

13.    Plaintiff Brian Keene is an author who lives in Pennsylvania. Mr. Keene owns registered copyrights in multiple books, including *Ghost Walk; City of the Dead;* and *Dead Sea*.

14.    Plaintiff Rebecca Makkai is an author who lives in Illinois. Plaintiff Makkai owns registered copyrights in multiple books, including, *The Hundred Year House*; *Music for Wartime*; and *The Great Believers*.

15.    Plaintiff Jason Reynolds is an author who lives in Washington, D.C. Plaintiff Reynolds owns registered copyrights in multiple books, including *As Brave as You*; *When I was the Greatest*; *All American Boys*; *Ghost*; *Patina*; *Long Way Down*; *Sunny*; *For Every One*; and *Look Both Ways*.

16.    A non-exhaustive list of registered copyrights owned by Plaintiffs is included as Exhibit A.

**DEFENDANTS**

17.    Defendant Databricks is a Delaware corporation with its principal place of business at 160 Spear Street, 13th Floor, San Francisco CA 94105. Databricks acquired MosaicML in July 2023.

18.    Defendant MosaicML is a Delaware corporation with its principal place of business at 501 2nd Street, Suite 202, San Francisco CA 94107. MosaicML operates as a subsidiary of Databricks.

**AGENTS AND CO-CONSPIRATORS**

19.    The unlawful acts alleged against Defendants in this class action complaint were authorized, ordered, or performed by the Defendants' respective officers, agents, employees, representatives, or shareholders while actively engaged in the management, direction, or control of the Defendants' businesses or affairs. The Defendants' agents operated under the explicit and apparent authority of their principals. Each Defendant, and its subsidiaries, affiliates, and agents

operated as a single unified entity.

20.    Various persons or firms not named as defendants may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof. Each acted as the principal, agent, or joint venture of Defendants with respect to the acts, violations, and common course of conduct alleged herein.

**FACTUAL ALLEGATIONS**

21.    MosaicML was founded in 2020 to provide tools to facilitate the training of AI models.

22.    In May 2023, MosaicML released the first in its MPT series of large language models, called MPT-7B. A large language model ("LLM") is AI software designed to emit convincingly naturalistic text outputs in response to user prompts.

23.    Though an LLM is a software program, it is not created the way most software programs are—that is, by human software programmers writing code. Rather, an LLM is *trained* by copying an enormous quantity of textual works and then feeding these copies into the model. This corpus of input material is called the *training dataset*.

24.    During training, the LLM copies and ingests each textual work in the training dataset and extracts protected expression from it. The LLM progressively adjusts its output to more closely approximate the protected expression copied from the training dataset. The LLM records the results of this process in a large set of numbers called *weights* that are stored within the model. These weights are entirely and uniquely derived from the protected expression in the training dataset. For instance, the MPT-7B language model is so named because the model stores seven billion ("7B") weights derived from protected expression in its training dataset.

25.    Once the LLM has copied and ingested the textual works in the training dataset and transformed the protected expression into stored weights, the LLM is able to emit convincing simulations of natural written language in response to user prompts. Whenever an LLM generates text output in response to a user prompt, it is performing a computation that relies on these stored weights, with the goal of imitating the protected expression ingested from the training dataset.

FIRST AMENDED CONSOLIDATED COMPLAINT
Case No.: 3:24-cv-01451-CRB

26.     Much of the material in MosaicML's training datasets, however, comes from copyrighted works—including books written by Plaintiffs and Class members—that were copied by MosaicML without consent, without credit, and without compensation.

27.     In May 2023, MosaicML first announced MPT-7B in a blog post called "Introducing MPT-7B: A New Standard for Open-Source, Commercially Usable LLMs."[1] In the blog post, MosaicML describes the MPT-7B training dataset as a "MosaicML-curated mix of sources … [that] emphasizes English natural language text … and includes elements of the recently-released RedPajama dataset."

28.     In a table describing the composition of the MPT-7B training dataset, MosaicML notes that a large quantity of data comes from a component dataset called "RedPajama—Books". MosaicML's blog post does not further describe the contents of the "RedPajama—Books" dataset.

29.     But information about RedPajama is available elsewhere. The RedPajama dataset is hosted on a website called Hugging Face.[2] According to the documentation for the RedPajama dataset found there, its "Books" component is actually a copy of the "Books3 dataset" that is "downloaded from Huggingface [sic]" when a user runs the script that automatically assembles the RedPajama dataset. Therefore, anyone who uses the "RedPajama—Books" dataset for training an AI model is actually using a copy of the Books3 dataset. The documentation for the RedPajama dataset does not further describe the contents of Books3.

30.     But information about Books3 is available elsewhere. Books3 is a component of a separate AI training dataset called The Pile, curated by a research organization called EleutherAI. In December 2020, EleutherAI introduced this dataset in a paper called "The Pile: An 800GB Dataset of Diverse Text for Language Modeling."[3] This paper describes the contents of Books3:

> Books3 is a dataset of books derived from a copy of the contents of the Bibliotik private tracker … Bibliotik consists of a mix of fiction and nonfiction books and is almost an order of magnitude larger than our

---

[1] Available at https://www.databricks.com/blog/mpt-7b
[2] Available at https://huggingface.co/datasets/togethercomputer/RedPajama-Data-1T
[3] Available at https://arxiv.org/pdf/2101.00027.pdf

next largest book dataset (BookCorpus2). We included Bibliotik because books are invaluable for long-range context modeling research and coherent storytelling.[4]

31.    Bibliotik is one of a number of notorious "shadow library" websites that also includes Library Genesis (aka LibGen), Z-Library (aka B-ok), Sci-Hub, and Anna's Archive. These shadow libraries have long been of interest to the AI-training community because they host and distribute vast quantities of unlicensed copyrighted material. For that reason, these shadow libraries also violate the U.S. Copyright Act.

32.    The person who assembled the Books3 dataset, Shawn Presser, has confirmed in public statements that it represents "all of Bibliotik" and contains approximately 196,640 books.

33.    Plaintiffs' copyrighted books listed in Exhibit A are among the works in the Books3 dataset. Below, these books are referred to as the **Infringed Works**.

34.    Until October 2023, the Books3 dataset was available from Hugging Face. At that time, the Books3 dataset was removed with a message that it "is defunct and no longer accessible due to reported copyright infringement."[5]

35.    But before then, anyone who used the "RedPajama—Books" dataset for training necessarily made a copy of the Books3 dataset. This includes MosaicML, which completed the training of MPT-7B before May 2023.

36.    In sum, MosaicML has admitted training its MPT-7B model on a copy of the "RedPajama—Books" dataset, which in turn is a copy of the Books3 dataset. Therefore, MosaicML necessarily trained its MPT-7B model on a copy of Books3. Certain books written by Plaintiffs are part of Books3—including the Infringed Works—and thus MosaicML necessarily trained MPT-7B on one or more copies of the Infringed Works, thereby directly infringing the copyrights of the Plaintiffs.

37.    In June 2023, MosaicML released another member of the MPT series of large language models, called MPT-30B. As the name suggests, MPT-30B contained 30 billion weights—over quadruple the size of MPT-7B—derived from its training dataset. In a table

---

[4] *Id.* at 3–4.
[5] See https://huggingface.co/datasets/the_pile_books3

FIRST AMENDED CONSOLIDATED COMPLAINT
Case No.: 3:24-cv-01451-CRB

describing the composition of the MPT-30B training dataset, MosaicML admitted that once again, a large quantity of training data came from "RedPajama—Books."[6] By copying the "RedPajama—Books" dataset, MosaicML necessarily copied Books3—including the Infringed Works—thereby again directly infringing the copyrights of the Plaintiffs.

38.    On information and belief, since it was acquired by Databricks in July 2023, MosaicML has continued to make copies of the Infringed Works for LLM training and other commercial purposes.

39.    On March 27, 2024, Databricks announced a new LLM series named DBRX in a blog post called "Introducing DBRX: A New State-of-the-Art Open LLM."[7]  In the blog post, Databricks describes DBRX as a "general-purpose LLM," that was trained on a "curated" dataset of 12 trillion tokens.  There are two versions of DBRX—"DBRX Base" and "DBRX Instruct."

40.    Defendants have not publicly identified the training data used for these models. The Vice President of AI at Databricks and former CEO of MosaicML, however, has stated that DBRX was trained on "open data sets that the community knows." [8]

41.    On information and belief,  these "open data sets" known to the community include notorious shadow library websites, which include Plaintiffs' Works, and Defendants used these shadow libraries to obtain the trillions of tokens of training data used for the DBRX models.

42.    Defendants have publicly stated that the DBRX models were the culmination of "years of LLM development at Databricks that includes the MPT . . . projects" and that "[t]he development of DBRX was led by the Mosaic team that previously built the MPT model family."[9]

43.    On information and belief, where much of the material in MosaicML's training dataset for the MPT models comes from copyrighted works, Defendants have built upon these

---

[6] Available at https://www.mosaicml.com/blog/mpt-30b
[7] Available at https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm
[8] Available at https://techcrunch.com/2024/03/27/databricks-spent-10m-on-a-generative-ai-model-that-still-cant-beat-gpt-4/.
[9] Available at https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm

FIRST AMENDED CONSOLIDATED COMPLAINT
Case No.: 3:24-cv-01451-CRB

infringing acts by MosaicML in the development of DBRX and have continued to infringe

Plaintiffs' copyrights in the training and development of the DBRX models.

44.    Defendants have taken steps to conceal the training data used to develop DBRX,

including by instructing DBRX to not identify its training data in any output.  For example,

Defendants specifically included the following instruction within the DBRX system prompt:

"You were not trained on copyrighted books, . . . you do not divulge details of your training

data."[10]

## COUNT 1

### Direct Copyright Infringement (17 U.S.C. § 501) against all Defendants

45.    Plaintiffs incorporate by reference the preceding factual allegations.

46.    As the owners of the registered copyrights in the Infringed Works, Plaintiffs hold

the exclusive rights to those books under 17 U.S.C. § 106.

47.    To train the MPT-7B and MPT-30B language models, MosaicML copied the

Books3 dataset, which includes the Infringed Works. MosaicML made multiple copies of the

Books3 dataset during the training of the MPT-7B and MPT-30B models.

48.    On information and belief, MosaicML made further copies of the Books3 dataset

or subsets thereof to train other models in the MPT family. For instance, MosaicML released a

model called MPT-7B-StoryWriter-65k+ ("the StoryWriter model"), a variant of MPT-7B that

MosaicML admits was further trained on "a filtered fiction subset of the [B]ooks3 dataset".[11]

The stated purpose of the StoryWriter model is "to read and write stories"—or, put another

way, to generate works that directly compete with works in the training dataset.

49.    On information and belief, Defendants have further made copies of Plaintiffs'

Works for use to train the DBRX models.

50.    Plaintiffs and the Class members never authorized Defendants to make copies of

their Infringed Works, make derivative works, publicly display copies (or derivative works), or

distribute copies (or derivative works). All those rights belong exclusively to Plaintiffs and the

---

[10] Available at https://x.com/natolambert/status/1773005582963994761
[11] *See* https://www.databricks.com/blog/mpt-7b

FIRST AMENDED CONSOLIDATED COMPLAINT
Case No.: 3:24-cv-01451-CRB

Class members under the U.S. Copyright Act.

51.    By copying, storing, processing, and reproducing the training datasets containing copies of Plaintiffs' Works to train the MPT and DBRX models, Defendants have jointly directly infringed Plaintiffs' exclusive rights in their copyrighted works.

52.    On information and belief, by copying, storing, processing, and reproducing the MPT models trained on Plaintiffs' Works, MosaicML and Databricks have jointly directly infringed Plaintiffs' exclusive rights in their copyrighted works.

53.    Defendants repeatedly copied the Infringed Works without Plaintiffs' permission. Defendants made these copies without Plaintiffs' permission and in violation of their exclusive rights under the Copyright Act.

54.    On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful and carried out with full knowledge of Plaintiffs' rights in the copyrighted works. As a direct result of their conduct, Defendants have wrongfully profited from copyrighted works that they do not own.

55.    By and through the actions alleged above, Defendants have infringed and will continue to infringe Plaintiffs' copyrights.

56.    Plaintiffs have been injured by Defendants' acts of direct copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

## COUNT 2

### Vicarious Copyright Infringement against Databricks

57.    Plaintiffs incorporate by reference the preceding factual allegations.

58.    Databricks acquired MosaicML in July 2023. As the corporate parent of MosaicML, Databricks had the right and ability to control the direct infringements alleged in Count 1 committed by MosaicML, at minimum those occurring after the acquisition. Databricks failed to exert its right and ability to control MosaicML's infringements.

59.    Databricks has directly benefitted financially from the direct infringement by MosaicML alleged in Count 1 because MosaicML generates revenue from its infringing

activities, and this revenue belongs to Databricks.

60.    Plaintiffs have been injured by Databricks's acts of vicarious copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

## CLASS ALLEGATIONS

61.    The "**Class Period**" as defined in this Complaint begins on at least March 8, 2021 and runs through the present. Because Plaintiffs do not yet know when the unlawful conduct alleged herein began, but believe, on information and belief, that the conduct likely began earlier than March 8, 2021, Plaintiffs reserve the right to amend the Class Period to comport with the facts and evidence uncovered during further investigation or through discovery.

62.    **Class definition**. Plaintiffs bring this action for damages and injunctive relief as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of the following Class:

> **All persons or entities domiciled in the United States that own a United States copyright in any work that was used as training data for the Defendants' language models during the Class Period.**

63.    This Class definition excludes:

a.    Defendants named herein;

b.    any of the Defendants' co-conspirators;

c.    any of Defendants' parent companies, subsidiaries, and affiliates;

d.    any of Defendants' officers, directors, management, employees, subsidiaries, affiliates, or agents;

e.    all governmental entities; and

f.    the judges and chambers staff in this case, as well as any members of their immediate families.

64.    **Numerosity**. Plaintiffs do not know the exact number of members in the Class. This information is in the exclusive control of Defendants. On information and belief, there are at least thousands of members in the Class geographically dispersed throughout the United

FIRST AMENDED CONSOLIDATED COMPLAINT
Case No.: 3:24-cv-01451-CRB

States. Therefore, joinder of all members of the Class in the prosecution of this action is impracticable.

65.     **Typicality**. Plaintiffs' claims are typical of the claims of other members of the Class because Plaintiffs and all members of the Class were damaged by the same wrongful conduct of Defendants as alleged herein, and the relief sought herein is common to all members of the Class.

66.     **Adequacy**. Plaintiffs will fairly and adequately represent the interests of the members of the Class because the Plaintiffs have experienced the same harms as the members of the Class and have no conflicts with any other members of the Class. Furthermore, Plaintiffs have retained sophisticated and competent counsel who are experienced in prosecuting federal and state class actions, as well as other complex litigation.

67.     **Commonality** and **predominance**. Numerous questions of law or fact common to each Class member arise from Defendants' conduct and predominate over any questions affecting the members of the Class individually:

a.     Whether Defendants violated the copyrights of Plaintiffs and the Class when they obtained copies of Plaintiffs' Infringed Works and copied the Infringed Works into the dataset used to train the Defendants' LLMs.

b.     Whether Defendants intended to cause further infringement of the Infringed Works with their LLMs because they have distributed these models as so-called "open source" models and advertised those models as a base from which to build further models.

c.     Whether any affirmative defense excuses Defendants' conduct.

d.     Whether any statutes of limitation limits the potential for recovery for Plaintiffs and the Class.

68.     **Other class considerations**. Defendants have acted on grounds generally applicable to the Class. This class action is superior to alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty

12

FIRST AMENDED CONSOLIDATED COMPLAINT
Case No.: 3:24-cv-01451-CRB

in the management of this action as a class action. The prosecution of separate actions by

individual Class members would create the risk of inconsistent or varying adjudications,

establishing incompatible standards of conduct for Defendant.

## DEMAND FOR JUDGMENT

Wherefore, Plaintiffs request that the Court enter judgment on their behalf and on behalf

of the Class defined herein, by ordering:

a) This action may proceed as a class action, with Plaintiffs serving as Class Representatives, and with Plaintiffs' counsel as Class Counsel.

b) Judgment in favor of Plaintiffs and the Class and against Defendants.

c) An award of statutory and other damages under 17 U.S.C. § 504 for violations of the copyrights of Plaintiffs and the Class by Defendants.

d) Reasonable attorneys' fees as available under 17 U.S.C. § 505 or other applicable statute.

e) A declaration that such infringement is willful.

f) Destruction or other reasonable disposition of all copies Defendants made or used in violation of the exclusive rights of Plaintiffs and the Class, under 17 U.S.C. § 503(b).

g) Pre- and post-judgment interest on the damages awarded to Plaintiffs and the Class, and that such interest be awarded at the highest legal rate from and after the date this class action complaint is first served on Defendants.

h) Defendants are to be jointly and severally responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification to the Class.

i) Further relief for Plaintiffs and the Class as may be just and proper.

## JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all the

claims asserted in this Complaint so triable.

Dated: June 27, 2025                    By: /s/ *Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
William Castillo Guardado (SBN 294159)
Jane J. Kim (SBN 333342)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com
jkim@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile:  (415) 395-9940
mb@butericklaw.com

Justin A. Nelson (admitted pro hac vice)
Alejandra C. Salinas (admitted pro hac vice)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted pro hac vice)
Craig Smyser (admitted pro hac vice)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor
New York, NY 10019

14

FIRST AMENDED CONSOLIDATED COMPLAINT
Case No.: 3:24-cv-01451-CRB

Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (pro hac vice)
Trevor D. Nystrom (pro hac vice)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com

Rachel J. Geman (admitted pro hac vice)
Danna Z. Elmasry (admitted pro hac vice)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
ashaver@lchb.com

Betsy A. Sugar (admitted pro hac vice)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

Rachel J. Geman (admitted pro hac vice)
Danna Z. Elmasry (admitted pro hac vice)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
rgeman@lchb.com
delmasry@lchb.com

15

FIRST AMENDED CONSOLIDATED COMPLAINT
Case No.: 3:24-cv-01451-CRB

Bryan L. Clobes (admitted pro hac vice)
Alexander J. Sweatman (admitted pro hac vice)
Mohammed A. Rathur (admitted pro hac vice)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Brian D. Clark (admitted pro hac vice)
Laura M. Matson (admitted pro hac vice)
Arielle Wagner (admitted pro hac vice)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

FIRST AMENDED CONSOLIDATED COMPLAINT
Case No.: 3:24-cv-01451-CRB