1  JEDEDIAH WAKEFIELD (CSB No. 178058)
   jwakefield@fenwick.com
2  RYAN KWOCK (CSB No. 336414)
   rkwock@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, CA 94104
   Telephone:    415.875.2300
5  Facsimile:    415.281.1350

6  DAVID HAYES (CSB No. 122894)
   dhayes@fenwick.com
7  FENWICK & WEST LLP
   801 California Street
8  Mountain View, CA 94041
   Telephone:    650.988.8500
9  Facsimile:    650.938.5200

10 *Attorneys for Defendants*
   DATABRICKS, INC., and
11 MOSAIC ML, LLC, formerly MOSAIC ML, INC.

12 *Additional counsel listed on signature page*

13

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In Re Mosaic LLM Litigation* | Master File Case No. 3:24-cv-01451-CRB<br>Consolidated with Case No. 3:24-cv-02653-CRB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:  August 22, 2025<br>Time:  10:00 a.m.<br>Dept:  Courtroom 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

FENWICK & WEST LLP

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF FACTS .............................................................................................. 2
    A. MosaicML and the MPT Models ........................................................................ 2
    B. Databricks and DBRX ......................................................................................... 3
    C. Plaintiffs' Original Claims ................................................................................... 4
    D. Plaintiffs' New Claims ........................................................................................ 4
III. STATEMENT OF ISSUES TO BE DECIDED .............................................................. 6
IV. ARGUMENT ................................................................................................................... 6
    A. The Amended Complaint's conclusory allegations fail to state a direct infringement claim against Databricks ................................................................ 7
        1. Plaintiffs fail to state a direct infringement claim against Databricks concerning the MPT models. ................................................................... 7
        2. Plaintiffs' core allegations about DBRX are not entitled to an assumption of truth. ................................................................................. 9
    B. Plaintiffs' remaining factual allegations about DBRX cannot support a claim. ................................................................................................................. 10
V. CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... *passim*

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  No. 18-cv-00933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ........................ 7, 8, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. *passim*

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
  149 F.Supp.3d 1167 (N.D. Cal. 2015) ................................................................................. 10

*Canter & Assocs., LLC v. Teachscape, Inc.*,
  No. C 07-3225 RS, 2007 WL 4365480 (N.D. Cal. Dec. 12, 2007) ......................... 7, 9, 10, 12

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011) ............................................................................................... 7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ................................................................................................. 6

*Doe v. Walmart, Inc.*,
  No. 18-CV-02125-LHK, 2019 WL 499754 (N.D. Cal. Feb. 8, 2019) ..................................... 9

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................................. 3

*Implicit Networks Inc. v. F5 Networks Inc.*,
  No. C 10-4234 SI, 2013 WL 1007250 (N.D. Cal. Mar. 13, 2013) ........................................ 12

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ................................................................................................. 7

*Menzel v. Scholastic, Inc.*,
  No. 17-cv-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .................... 6, 9, 10, 13

*Miller v. Facebook, Inc.*,
  No. C 10–00264 WHA, 2010 WL 1292708 (N.D. Cal. Mar. 31, 2010) ................................. 8

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
  No. CV 16-3975-DMG, 2017 WL 5664996 (C.D. Cal. Sept. 14, 2017) ............................... 10

*Reaper v. Ace Am. Ins. Co.*,
   No. 21-CV-05876-HSG, 2023 WL 1478474 (N.D. Cal. Feb. 2, 2023), *aff'd*,
   No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024) ....................................................... 10

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
   No. C 09–05659 WHA, 2011 WL 166198 (N.D. Cal. Jan. 18, 2011) ............................ 7, 9, 11

*Ross v. Abbott Vascular Inc.*,
   No. 19-cv-03794-JST, 2022 WL 20275185 (N.D. Cal. Mar. 3, 2022) ....................................... 9

*Synopsys, Inc. v. ATopTech, Inc.*,
   No. C 13–cv–02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ................................. 11

**Statutes**

17 U.S.C § 106 ................................................................................................................................ 7

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................................................... 12

Fed. R. Civ. P. 11 ......................................................................................................................... 12

# NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 22, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Charles R. Breyer, located at Courtroom 6 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 or by video conference, Defendants Databricks, Inc. ("Databricks") and Mosaic ML, LLC, formerly Mosaic ML, Inc., ("MosaicML") move to dismiss Count 1 of Plaintiffs' First Amended Consolidated Complaint ("Amended Complaint"). Specifically, Defendants move to dismiss (1) Plaintiffs' direct copyright infringement claim against Databricks and (2) Plaintiffs' claims based on training of Databricks' DBRX models.

This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Proposed Order; the letter brief and other materials submitted in connection with the motion; the records and docket in this matter; any reply that Defendants file in support of this motion; and any evidence and argument presented to the Court.

Dated: July 11, 2025                                    FENWICK & WEST LLP

                                                        By: /s/ Jedediah Wakefield
                                                            Jedediah Wakefield (CSB No. 178058)
                                                            jwakefield@fenwick.com
                                                            555 California Street, 12th Floor
                                                            San Francisco, CA 94104
                                                            Telephone:    415.875.2300
                                                            Facsimile:    415.281.1350

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs' First Amended Consolidated Complaint asserts new copyright claims that rest on threadbare allegations that fail to state a plausible claim. As the Court will recall, this case began with a claim by five authors that Defendant MosaicML made copies of their books when training certain large language models ("LLMs") called the MPT models. Training an LLM requires a large quantity and wide diversity of text data. In their initial complaints, Plaintiffs made factual allegations about why they believed *specific* books were contained in a *specific* dataset that MosaicML used to train the MPT models. The original complaints carefully connected the dots, explaining that (1) MosaicML had used a dataset called "RedPajama – Books," (2) "RedPajama – Books" contains a dataset called "Books3," and (3) specific books by Plaintiffs were included in Books3. Based on those factual allegations, Plaintiffs brought a direct infringement claim against MosaicML, alleging that it had "necessarily made a copy of the Books3 dataset" when training the MPT models. Plaintiffs did not bring a direct infringement claim against Databricks, since they had no basis to do so. Instead, Plaintiffs asserted only a vicarious infringement claim against Databricks, based on the theory that after Databricks acquired MosaicML in July 2023, it could control and financially benefit from MosaicML's alleged infringement.

In their Amended Complaint, Plaintiffs seek to expand the case by adding (1) a direct infringement claim against Databricks regarding the MPT models, and (2) infringement claims against both MosaicML and Databricks relating to DBRX, a series of LLMs released by Databricks a year after it acquired MosaicML. But in contrast to their original allegations, Plaintiffs' new claims are long on conclusory rhetoric but fatally short on facts. Regarding the MPT models, the Amended Complaint never claims that *Databricks* (as opposed to MosaicML) trained those models on Books3 or that *Databricks* used any dataset containing any of Plaintiffs' books. Instead, the Amended Complaint recites the bare legal elements of a claim, alleging that Defendants "jointly directly infringed Plaintiffs' exclusive rights in their copyrighted works." As for DBRX, Plaintiffs' new claims—which rest almost entirely on "information and belief"—are even worse. Plaintiffs do not allege that DBRX was trained on Books3 or any particular dataset, much less that Databricks

copied even one of Plaintiffs' books. Instead, their allegations boil down to speculation that because the MPT models were trained on Books3, DBRX must have been trained on *some* dataset that contains Plaintiffs' books. Underscoring the speculative nature of that claim, Plaintiffs do not identify a single copyrighted work that they own that was purportedly used to train DBRX.

Plaintiffs should not be allowed to proceed with these threadbare, speculative allegations. Under the *Iqbal* and *Twombly* standard, Plaintiffs must make non-conclusory allegations that make their claims not just conceivable, but plausible. Plaintiffs have failed to do so here. The bulk of their allegations about Databricks' supposed direct infringement and DBRX are conclusory statements that, as a matter of law, are not entitled to an assumption of truth. The few factual allegations that remain do not give rise to a plausible claim. Rather, Plaintiffs suggest that because Databricks trained DBRX on a large amount of data, including undisclosed "open" datasets, the Court should simply assume that Databricks copied Plaintiffs' specific books. But that is precisely the type of unsupported speculation that courts regularly hold cannot support a claim. Without any non-speculative factual allegations, Plaintiffs' Amended Complaint cannot survive a motion to dismiss. For these reasons and others discussed below, the Court should dismiss Plaintiffs' direct copyright infringement claim against Databricks and Plaintiffs' claims regarding DBRX.

## II.   STATEMENT OF FACTS

### A.   MosaicML and the MPT Models

MosaicML was incorporated in 2020 with a goal of making machine learning efficient for enterprises. *See* Dkt. 131 ("Am. Compl.") at ¶ 21. In 2023, MosaicML introduced LLMs called the MPT models, including the MPT-7B model in May 2023 and the MPT-30B model in June 2023. *Id.* ¶¶ 22, 37. An LLM provides text output in response to user text inputs. *Id.* ¶ 25. As MosaicML explained in its blogposts when introducing the MPT models, they were intended to allow customers to develop and deploy their own LLMs. *See* The Mosaic Research Team, *Introducing MPT-7B: A New Standard for Open-Source, Commercially Usable LLMs* (May 5, 2023), https://www.databricks.com/blog/mpt-7b ("MPT-7B blogpost") ("Now you can train, finetune, and deploy your own private MPT models, either starting from one of our checkpoints or training from scratch."); The Mosaic Research Team, *MPT-30B: Raising the Bar for Open-Source Foundation*

*Models* (June 22, 2023), https://www.databricks.com/blog/mpt-30b ("MPT-30B blogpost") ("With MosaicML infrastructure, you can train your own custom MPT-30B from scratch ….").[1] MosaicML also hoped to advance LLM development more broadly and enable others to build on its efforts. MPT-7B blogpost. To that end, MosaicML not only made the MPT models available for free, but also "open-sourced the entire codebase for pretraining, finetuning, and evaluating MPT." *Id.*; *see also* MPT-30B blogpost (identifying its "publicly available LLM Foundry codebase").

As part of its promotion of public research, MosaicML publicly identified the datasets used to train the MPT models, the proportion of each dataset used, and other details about the training data. MPT-7B blogpost; MPT-30B blogpost. Training an LLM requires a large quantity of textual data, and the MPT models used billions of "tokens" (for example, words, parts of words, or blank spaces). *See* Am. Compl. ¶ 23; MPT-7B blogpost; MPT-30B blogpost. One source of training data MosaicML used to train the MPT-7B and MPT-30B models was the "RedPajama – Books" dataset, which itself contains a dataset called "Books3." *Id.* ¶¶ 28, 29. RedPajama – Books constituted about 3% of the tokens in the MPT-7B and MPT-30B model training datasets. MPT-7B blogpost; MPT-30B blogpost.

### B. Databricks and DBRX

Databricks is a company that helps customers analyze and govern their data as well as build and use AI models. In July 2023, Databricks acquired MosaicML. *See* Am. Compl. ¶ 17. The next year, on March 27, 2024, Databricks released new LLMs called DBRX. *Id.* ¶ 39. DBRX was built using Databricks' infrastructure and Databricks' tools. The Mosaic Research Team, *Introducing DBRX: A New State-of-the-Art Open LLM* (Mar. 27, 2024), https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm ("DBRX blogpost").[2]

---

[1] The MPT blogposts are cited in Plaintiffs' Amended Complaint and form the basis for Plaintiffs' allegations about MosaicML. *See* Am. Compl. ¶¶ 27 & n.1, 28; 37 & n.6. Accordingly, the Court can consider them incorporated by reference. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1080 (N.D. Cal. 2022) ("Documents are subject to incorporation by reference if a plaintiff refers to them extensively or they form the basis of the complaint." (citation modified)).

[2] The DBRX blogpost is cited in the Amended Complaint and is also relied on for Plaintiffs' claims against DBRX. *See* Am. Compl. ¶ 39 & n.7, 42.

Although MosaicML scientists worked on DBRX, it used a different mix of training data than the MPT models. *Id.* The DBRX training data included 12 trillion tokens of both text and software code. *Id.* Like many businesses in the competitive AI space, Databricks did not identify the specific training data it used. Am. Compl. ¶ 40.

### C. Plaintiffs' Original Claims

Plaintiffs are five authors who allege that they own registered copyrights in multiple books. Am. Compl. ¶¶ 11-16. They further allege that certain of their books—which the Amended Complaint specifically identifies as the "Infringed Works"—are contained in the Books3 dataset, which forms part of RedPajama – Books. *Id.* ¶¶ 26, 30. Plaintiffs allege that, by using RedPajama – Books to train the MPT models, MosaicML "necessarily made a copy of the Books3 dataset." *Id.* ¶ 35. Accordingly, they allege that "MosaicML necessarily trained MPT-7B on one or more copies of the Infringed Works, thereby directly infringing the copyrights of the Plaintiffs." *Id.* ¶ 36; *see also id.* ¶ 37. And, on "information and belief," Plaintiffs allege that "since it was acquired by Databricks in July 2023, *MosaicML* has continued to make copies of the Infringed Works for LLM training and other commercial purposes." *Id.* ¶ 38 (emphasis added). Based on these allegations, Plaintiffs initially brought (1) a direct infringement claim against MosaicML for its use of Books3 to train the MPT models; and (2) a vicarious infringement claim against Databricks based on its "right and ability to control" and derive financial benefit from MosaicML's alleged infringements. *Id.* ¶¶ 47-48, 58-59; *see also* Dkt. 124-2 (redline between original and amended complaints) at ¶¶ 45-60.

### D. Plaintiffs' New Claims

Plaintiffs' Amended Complaint adds a direct infringement claim against Databricks as to the MPT models and adds a new claim that Defendants infringed Plaintiffs' copyrights when training DBRX. Regarding Databricks' alleged direct infringement, Plaintiffs make a conclusory, catch-all claim that "[b]y copying, storing, processing, and reproducing the training datasets containing copies of Plaintiffs' Works to train the MPT and DBRX models, Defendants have jointly directly infringed Plaintiffs' exclusive rights in their copyrighted works." Am. Compl. ¶ 51. They similarly assert, on information and belief, that "by copying, storing, processing, and reproducing

FENWICK & WEST LLP

the MPT models trained on Plaintiffs' Works, MosaicML and Databricks have jointly directly infringed Plaintiffs' exclusive rights in their copyrighted works." *Id.* ¶ 52. Notably, despite using the defined term "Infringed Works" to refer to the specific titles in Exhibit A, neither paragraph alleges that Databricks copied the "Infringed Works." *Id.* at ¶¶ 51-52.

Regarding the training of DBRX, Plaintiffs do not identify any specific dataset that they believe was used. Nor do they identify any specific copyrighted work that any such dataset contained. Again, this is in sharp contrast to their claims about the MPT models, in which Plaintiffs list their specific books allegedly included in Books3. Am. Compl. ¶ 33, Ex. A. Rather, Plaintiffs allege that the former CEO of MosaicML, now a Databricks vice president, stated that DBRX was trained on "open data sets that the community knows." *Id.* ¶ 40. According to Plaintiffs, some "'open data sets' … include notorious shadow library websites, which include Plaintiffs' Works." *Id.* ¶ 41. But while Plaintiffs allege that "shadow libraries … host and distribute vast quantities of unlicensed copyrighted material," the only dataset ("shadow" or otherwise) that Plaintiffs actually allege contains *their* "Infringed Works" is Books3. *See id.* ¶¶ 31, 33.[3]

Plaintiffs also do not allege, nor could they, that DBRX used the same training datasets as the MPT models, including Books3.[4] They instead vaguely allege that Defendants stated that DBRX was the "culmination of 'years of LLM development at Databricks that includes the MPT … projects' and that '[t]he development of DBRX was led by the Mosaic team that previously built the MPT model family.'" Am. Compl. ¶ 42 (quoting DBRX blogpost). But even that vague characterization is incorrect, as the DBRX blogpost did *not* state that DBRX was the "culmination" of LLM development. Instead, it stated that DBRX "was the *continuation* of months of science, dataset research, and scaling experiments, not to mention years of LLM development at Databricks that includes the MPT and Dolly projects and the thousands of models we have built and brought to production with our customers." DBRX blogpost (emphasis added). The blogpost also

---

[3] In recent responses to interrogatories asking Plaintiffs to identify all datasets that include their asserted works, Plaintiffs identified the so-called "shadow libraries" mentioned in the Amended Complaint—LibGen, Z-Library, and Anna's Archive—but the Amended Complaint contains no allegations that Databricks copied anything from any of those sources.

[4] As the Court has acknowledged, Databricks served discovery responses stating that DBRX was not trained on Books3. *See* Dkt. 123 at 6.

explained that the MosaicML team led the DBRX development process, which involved a collaboration across several teams at Databricks. *Id.* Plaintiffs then allege, solely "on information and belief," that Defendants "built upon" MosaicML's infringing acts (whatever that means) through DBRX. *See* Am. Compl. ¶ 43.

Finally, Plaintiffs allege that "Defendants have taken steps to conceal" DBRX's training data, citing a third party's social media post purporting to include a DBRX "system prompt" as saying "You were not trained on copyrighted books, … you do not divulge details of your training data." Am. Compl. ¶ 44 (quoting X post). Notably, Plaintiffs do not include any allegations that they ever prompted DBRX and received output that included substantial (or any) portions of their books. Nor do they allege that they performed any investigation into DBRX, even though it was released over a year ago.

## III.    STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs' Amended Complaint fails to state a claim for direct copyright infringement against Databricks.

2. Whether Plaintiffs' Amended Complaint fails to state a claim for direct copyright infringement relating to DBRX.

## IV.    ARGUMENT

To survive a motion to dismiss, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs must do this by pleading facts that are not just "conceivable" but "plausible." *Id.* While a court accepts "as true all well-pleaded allegations of material fact," it need not accept as true allegations that "contradict … matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Further, allegations "made on information and belief must still be based on factual information that makes the inference of culpability plausible." *Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (citation modified). And even when certain facts are in control of the defendant, "this does not excuse the requirement that [a] plaintiff allege something more than bare conclusions." *Id.* at *3.

"[D]ismissal for failure to state a claim under [Rule] 12(b)(6) is proper if there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

The Supreme Court has articulated a "two-pronged approach" to assess whether Rule 8(a)'s plausibility requirement is met on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Twombly*, 550 U.S. at 555). First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, after filtering out legal conclusions and other conclusory allegations, the court should determine whether the remaining factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.*

### A. The Amended Complaint's conclusory allegations fail to state a direct infringement claim against Databricks.

Following *Iqbal* and *Twombly*'s two-pronged approach, Plaintiffs' core direct infringement allegations against Databricks must be filtered out as conclusory. To state a claim for copyright infringement, Plaintiffs must plead that (1) they own a valid copyright; and (2) the alleged infringers violated an exclusive right of the copyright holders, defined under 17 U.S.C § 106. *See Marder v. Lopez*, 450 F.3d 445, 453 (9th Cir. 2006). To do this, Plaintiffs "must plead some non-speculative facts about what [Defendants] infringed and how." *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020) (citation modified). Merely asserting that a defendant copied copyrighted works is insufficient. *See Canter & Assocs., LLC v. Teachscape, Inc.*, No. C 07-3225 RS, 2007 WL 4365480, at *2 (N.D. Cal. Dec. 12, 2007). Rather, a plaintiff must allege specific infringing conduct. *Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. C 09–05659 WHA, 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011).

#### 1. Plaintiffs fail to state a direct infringement claim against Databricks concerning the MPT models.

Regarding the MPT models, Plaintiffs make formulaic allegations that Databricks and MosaicML "jointly" infringed Plaintiffs' copyrighted works (1) "[b]y copying, storing, processing,

and reproducing the training datasets containing copies of Plaintiffs' Works to train the MPT and DBRX models"; and (2) "by copying, storing, processing, and reproducing the MPT models trained on Plaintiffs' Works." Am. Compl. ¶¶ 51-52. But the MPT models were trained before Databricks acquired MosaicML, and Plaintiffs make no specific *factual* allegation that *Databricks* engaged in any specific infringing act in connection with the MPT models. And, as noted above, Plaintiffs are vague about which "works" are at issue, as they avoid using the defined term "Infringed Works" and instead vaguely refer to other, unspecified works.

Plaintiffs' direct infringement allegations against Databricks are the exact types of conclusory statements that courts routinely dismiss. For example, in *Becton*, the plaintiff alleged on "information and belief" that the defendant's "product development and commercialization efforts for its flow cytometer products involved the unauthorized copying, reproduction, and distribution of, and the unauthorized preparation of derivative works based on [the copyrighted works]" and that the defendant "is continuing to make and distribute unauthorized copies of and derivative works based on [the copyrighted works], including copies altered to remove [plaintiff's] logos and product names and replace them with [the defendant's] names and artwork." 2020 WL 1877707, at *6 (citation modified). The court held that these allegations were "essentially, a 'formulaic recitation of the elements of a [copyright] cause of action'" and therefore "insufficient to plausibly state a claim for relief." *Id.* (quoting *Twombly*, 550 U.S. at 555) (alteration in original); *see also Miller v. Facebook, Inc.*, No. C 10–00264 WHA, 2010 WL 1292708, at *3 (N.D. Cal. Mar. 31, 2010) (dismissing copyright infringement claim and explaining that "[i]f plaintiff wishes to proceed with his direct copyright infringement claim, he must include sufficient factual allegations that explain how defendant Facebook copied, displayed or distributed infringing copies of Boomshine"). Similarly here, Plaintiffs' throwaway allegations that Databricks "jointly" infringed with regard to the MPT models do not identify any specific acts that *Databricks* allegedly engaged in and therefore cannot give rise to a claim against Databricks regarding the MPT models.

## 2. Plaintiffs' core allegations about DBRX are not entitled to an assumption of truth.

Plaintiffs' central allegations about DBRX are similarly threadbare and therefore "not entitled to the assumption of truth" under *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 679. Plaintiffs vaguely allege, on information and belief, that "where much of the material in MosaicML's training dataset for the MPT models comes from copyrighted works, Defendants have built upon these infringing acts by MosaicML in the development of DBRX and have continued to infringe Plaintiffs' copyrights in the training and development of the DBRX models." Am. Compl. ¶ 43. They also allege, again on information and belief, that "Defendants have further made copies of Plaintiffs' Works for use to train the DBRX models." *Id.* ¶ 49. But both these allegations lack any specific factual allegations and are entirely conclusory.

As an initial matter, to bring claims on behalf of a putative class, Plaintiffs themselves must have viable claims. *See Doe v. Walmart, Inc.*, No. 18-CV-02125-LHK, 2019 WL 499754, at *8 (N.D. Cal. Feb. 8, 2019) ("named plaintiffs in a class action suit must plead facts showing standing as to each defendant" (citation modified)). That means they must each allege that the copyright they own in one or more of *their specific books* was infringed. But Plaintiffs fail to allege that *any* specific dataset other than Books3 contains even one of *their* books. Moreover, Plaintiffs do not allege (nor could they) that DBRX was trained on Books3 (the one training dataset they allege contains their books) or any other specific dataset. Nor do they identify any copyrighted work that was purportedly copied during DBRX training. This dooms their claims. *See Richtek*, 2011 WL 166198, at *3 ("Bald recitations of legal conclusion … do not state a claim upon which relief can be granted."). For example, in *Canter*, the court dismissed a copyright claim when, as in this case, "the complaint effectively says nothing more than, 'all of my materials are copyrighted and I think you may have copied them.'" 2007 WL 4365480, at *2.

Plaintiffs attempt to rely on their claims about *MosaicML's* training of the MPT models to support their separate claims about Databricks or DBRX. But the fact that one party allegedly committed one infringing act does not provide a basis to allege that another party committed a different infringing act. *See Ross v. Abbott Vascular Inc.*, No. 19-cv-03794-JST, 2022 WL

20275185, at *8 (N.D. Cal. Mar. 3, 2022) (dismissing copyright infringement claim where plaintiff failed to identify specific infringing acts for each party in the complaint); *cf. Menzel*, 2018 WL 1400386, at *3 ("Just because Scholastic has exceeded licenses given by *other* individuals or entities does not make it plausible that Scholastic has done the same with respect to Mr. Menzel." (citation modified) (emphasis in original)). Thus, Plaintiffs' specific allegations about MosaicML and the MPT models do not make Plaintiffs' conclusory allegations about DBRX plausible.

Nor is it sufficient for Plaintiffs to complain that they simply do not know how DBRX was trained. For example, in *Canter*, the court rejected plaintiffs' attempt to excuse their lack of knowledge based on their inability to access defendants' materials, holding that "that explanation does not serve to transform what is essentially a guess into a cognizable claim." 2007 WL 4365480, at *2; *see also Reaper v. Ace Am. Ins. Co.*, No. 21-CV-05876-HSG, 2023 WL 1478474, at *3 (N.D. Cal. Feb. 2, 2023) ("Although the Court, in evaluating allegations made on information and belief, may consider whether facts are peculiarly within the possession and control of the defendant, such latitude does not mean that conclusory allegations are permitted." (quoting *Becton*, 2020 WL 1877707, at *4)), *aff'd*, No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024). And Plaintiffs cannot use a complaint with only conclusory allegations to "unlock the doors of discovery." *See Iqbal*, 556 U.S. at 679-80; *see also Menzel*, 2018 WL 1400386, at *2, 4 (dismissing complaint characterized as "fishing expedition" because it included only "conclusory allegations"). The conclusory allegations in Plaintiffs' Amended Complaint fail to state a plausible direct infringement claim against Databricks regarding DBRX.

### B.     Plaintiffs' remaining factual allegations about DBRX cannot support a claim.

Stripped of its conclusory allegations, the Amended Complaint is left with only a few factual allegations. None of them can support a direct infringement claim based on DBRX.

*First*, Plaintiffs rely on a quote from a Databricks vice president (and the former MosaicML CEO), in which he said that DBRX was trained using "open data sets that the community knows." Am. Compl. ¶ 40 (citing https://techcrunch.com/2024/03/27/databricks-spent-10m-on-a-generative-ai-model-that-still-cant-beat-gpt-4/). But to state a direct infringement claim, Plaintiffs must provide specific examples of how their works named in the Amended Complaint were

DEFS.' MTD FIRST AMENDED
CONSOLIDATED COMPLAINT

10

Master File Case No. 3:24-cv-01451-CRB

infringed. *See Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F.Supp.3d 1167, 1175-76 (N.D. Cal. 2015) (dismissing claims where plaintiffs failed to provide representative infringements); *see also MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, No. CV 16-3975-DMG (AJWx), 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) ("Absent any allegations of even representative infringements, the FAC fails to provide notice as a matter of law."). Claiming generally that Plaintiffs' works were infringed does not suffice. *See Synopsys, Inc. v. ATopTech, Inc.*, No. C 13–cv–02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (dismissing copyright claim where plaintiff "never [made] clear what Defendant copied" and failed to plead "non-speculative facts about what Defendant infringed and how"); *see also Richtek*, 2011 WL 166198, at *3 (dismissing conclusory copyright claims that failed to put defendant "on notice of its copyright infringement"). Here, Plaintiffs do not allege that Books3 was included in the "open data sets" referenced by MosaicML's former CEO. Nor do Plaintiffs claim that all "open data sets" contain *their specific books*. Instead, citing no facts, Plaintiffs vaguely allege that some "open data sets" include "shadow libraries" that contain "Plaintiffs' Works" (a term that Plaintiffs conspicuously do *not* define), without alleging that those libraries were used in training DBRX. Am. Compl. ¶ 41. These vague allegations cannot support an infringement claim regarding the training of DBRX.

*Second*, Plaintiffs speculate that because DBRX was trained on "trillions of tokens" of text and computer code (which could include not only words but also parts of words, punctuation, and spaces), it must have been trained on *some* unspecified "shadow library websites." Am. Compl. ¶ 41. But again, Plaintiffs must plead "non-speculative facts about what Defendant[s] infringed and how." *Synopsys*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013). Plaintiffs effectively ask the Court to infer that because DBRX was trained on a large quantity of data (including text and software code), Plaintiffs' specific books must have been part of the training data. Unsupported speculation about what "must have been" is insufficient to support a claim. *See id.* (dismissing copyright claim and explaining that, "Plaintiff [] hamstrings its complaint by simply speculating on how widespread the copying may be without describing any acts or works that infringe Plaintiff's [copyrights]").

*Third*, Plaintiffs assert that "Defendants have taken steps to conceal the training data used to develop DBRX." Am. Compl. ¶ 44. But Databricks' decision to not publicly disclose the training data it used does not provide a plausible basis to allege that it copied Plaintiffs' books. *Canter*, 2007 WL 4365480, at *2 (lack of knowledge based on inability to access defendants' materials was insufficient to state a cognizable copyright infringement claim); *see also Becton*, 2020 WL 1877707, at *4 n.10 (dismissing copyright claim based on conclusory allegations where plaintiff alleged certain materials were "exclusively within [defendant]'s control"). A company may choose to keep an LLM's training data composition confidential as it may be trade secret or proprietary, or to maintain a competitive advantage. This choice by Databricks does not support a plausible inference that books subject to copyright protection, much less *these specific authors' books*, must have been used in the training datasets for DBRX. By Plaintiffs' reasoning, they could sue every LLM developer that did not disclose the training data it used, based on speculation that such data might contain their books. Rule 8, and Rule 11, require more.

*Fourth*, Plaintiffs point to a March 27, 2024 social media post on X sharing what the author believed was DBRX's "system prompt," or operating instructions, which stated that DBRX was "not trained on copyrighted books" and was instructed not to "divulge details of [its] training data." Am. Compl. ¶ 44. But stating in a system prompt that DBRX was *not* trained on copyrighted books does not compel the inference that the opposite is true—namely, that DBRX *was* trained on copyrighted books. And it certainly does not suggest that DBRX was trained on any of *Plaintiffs'* books, whether listed in Exhibit A to the Amended Complaint or otherwise. Further, as discussed above, not divulging training data protects proprietary information and does not support an inference of copyright infringement.

*Fifth*, Plaintiffs cite Databricks' DBRX announcement as stating that DBRX was the continuation of "years of LLM development at Databricks that includes the MPT … projects" and that "[t]he development of DBRX was led by the Mosaic[ML] team that previously built the MPT model family." Am. Compl. ¶ 42 (quoting DBRX blogpost). But the fact that some of the same scientists allegedly used Books3 to train one model does not rationally or legally support a claim that they did so for a different model. *Cf. Implicit Networks Inc. v. F5 Networks Inc.*, No. C 10-

FENWICK & WEST LLP

4234 SI, 2013 WL 1007250, at *12 (N.D. Cal. Mar. 13, 2013) (rejecting argument that one product not accused of infringing may be "the proxy for accused devices").

Ultimately, Plaintiffs provide no factual allegations showing that any of their books were included in training data for DBRX. They do not allege that any output from DBRX suggested that it was trained on Plaintiffs' books, or indeed that Plaintiffs conducted *any* investigation about DBRX that would support any of their allegations. *See Menzel*, 2018 WL 1400386, at *3 (discussing plaintiff's lack of investigation beyond asking the defendant whether his photographs were used). Rather, Plaintiffs ask the Court to infer that, because MosaicML scientists used one dataset on certain other models, these scientists must have used *some* dataset containing Plaintiffs' books on a different set of models. This spurious conjecture cannot satisfy *Iqbal* and *Twombly* and does not suffice to state an infringement claim about DBRX.

## V.  CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss Plaintiffs' direct infringement claim against Databricks and Plaintiffs' allegations about DBRX for failure to state a claim.

Dated: July 11, 2025                              FENWICK & WEST LLP

By:  /s/ Jedediah Wakefield
Jedediah Wakefield (CSB No. 178058)
jwakefield@fenwick.com
Ryan Kwock (CSB No. 336414)
rkwock@fenwick.com
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:      415.875.2300
Facsimile:       415.281.1350

David Hayes (CSB No. 122894)
dhayes@fenwick.com
801 California Street
Mountain View, CA 94041
Telephone:      650.988.8500
Facsimile:       650.938.5200

Deena Feit (admitted *pro hac vice*)
dfeit@fenwick.com
401 Union Street, 5th Floor
Seattle, WA 98101

Telephone: 206.389.4510
Facsimile: 206.389.4511

Charles Moulins (admitted *pro hac vice*)
cmoulins@fenwick.com
902 Broadway, Ste 14
New York, NY 10010
Telephone: 212.430.2600
Facsimile: 650.938.5200

Zachary Harned (CSB No. 335898)
zharned@fenwick.com
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone: 310.434.5400
Facsimile: 650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly
MOSAIC ML, INC.