[Counsel on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| *In Re Mosaic LLM Litigation* | Master File Case No. 3:24-cv-01451-CRB<br>Consolidated with Case No. 3:24-cv-02653-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:      August 22, 2025<br>Time:      10:00 a.m.<br>Location:  Courtroom 6, 17th Floor<br>Judge:     Hon. Charles R. Breyer |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................1

ARGUMENT .........................................................................................................................3

    A.    PLAINTIFFS PLAUSIBLY ALLEGE A DIRECT INFRINGEMENT CLAIM AGAINST DATABRICKS ...................................................................................4

        1.    The FACC Plausibly Alleges Databricks Reproduced Plaintiffs' Infringed Works for the MPT Models..........................................................................5

        2.    Plaintiffs Plausibly Allege Defendants Infringed Plaintiffs' Works for the DBRX Models..........................................................................................6

            a.    Even Before Plaintiffs Amended the Court Found Allegations Sufficient to Cover DBRX .............................................................6

            b.    Defendants' Course of Conduct With Respect to MPT and DBRX Supports the Allegations of Copyright Infringement as to DBRX 7

            c.    Defendants' Deliberate Secrecy Weighs Against Dismissal ........10

    B.    ALTERNATIVELY, THE COURT SHOULD GRANT LEAVE TO AMEND TO CURE ANY DEFICIENCIES .................................................................................11

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Andersen v. Stability AI, Ltd.*,
  700 F.Supp.3d 853 (N.D. Cal. 2023) ................................................................................... 5

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
  137 F.4th 1015 (9th Cir. 2025) ........................................................................................ 4, 6

*Aquarian Found., Inc. v. Lowndes*,
  127 F.4th 814 (9th Cir. 2025) ............................................................................................. 4

*Bartz v. Anthropic PBC*,
  No. C 24-05417 WHA, 2025 WL 1741691 (N.D. Cal. June 23, 2025) ............................ 10

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  No. 18-cv-00933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ......................... 6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 3

*Conley v. Gibson*,
  355 U.S. 41 (1957) .............................................................................................................. 3

*Dante Valve Co. v. Republic Brass Sales, Inc.*,
  No. 17-cv-2582-AJB-WVG, 2019 WL 1406583 (S.D. Cal. Mar. 28, 2019) ...................... 8

*Doe v. United States*,
  419 F.3d 1058 (9th Cir. 2005) ............................................................................................ 3

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ............................................................................................ 10

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) .............................................................................. 3

*Kadrey v. Meta Platforms, Inc.*,
  No. 23-cv-03417-VC, 2025 WL 1752484 (N.D. Cal. June 25, 2025) .............................. 10

*Neo4j, Inc. v. Graph Found., Inc.*,
  No. 5:19-cv-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) .......................... 4

*O'Nan, et al. v. Databricks Inc., et al.*,
  Case No. 3:24-cv-01451-CRB (N.D. Cal. March 8, 2024) ................................................ 1

*Reaper v. Ace Am. Ins. Co.*,
  No. 21-cv-05876-HSG, 2023 WL 1478474 (N.D. Cal. Feb. 2, 2023) ................................ 7

*Ross v. Abbott Vascular Inc.*,
   No. 19-cv-03794-JST, 2022 WL 20275185 (N.D. Cal. Mar. 3, 2022) .................................. 9

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ........................................................................................................ 3

*Terraza v. Safeway Inc.*,
   241 F. Supp. 3d 1057 (N.D. Cal. 2017) ............................................................................ 4, 6

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ............................................................................................ 4

*Walintukan v. SBE Ent. Grp., LLC*,
   2017 WL 635278 (N.D. Cal. Feb. 15, 2017) ..................................................................... 4

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................................................... 3

## INTRODUCTION

This is a copyright case in which Plaintiffs allege that MosaicML, Inc ("MosaicML") and Databricks, Inc. ("Databricks") reproduced Plaintiffs' copyrighted books without permission.

The allegations in Plaintiffs' First Amended Consolidated Complaint ("FACC"), considered in their entirety and in the light most favorable to Plaintiffs, satisfy the pleading standard for direct copyright infringement against Databricks. The FACC details specific connections between Databricks' MPT line of large language models ("LLMs"), which are known to have been trained on Plaintiffs' copyrighted works, and its newer DBRX line of models, along with allegations of deliberate secrecy surrounding DBRX's training data. Defendants' public statements support that DBRX was designed and trained in the same way by the same team and using similarly-sized datasets as the MPT models, which Databricks does not dispute was trained on Plaintiffs' works, as well as Databricks' direct involvement in developing the infringing MPT and DBRX models over many years. The allegations establish a plausible course of infringing conduct by Databricks with respect to the MPT and DBRX models, and for that reason the motion should be denied.

## BACKGROUND

Plaintiffs filed their initial complaints in March and May 2024 respectively, asserting a claim for direct copyright infringement against MosaicML and a claim for vicarious infringement against Databricks arising from the use of Plaintiffs' copyrighted works in the line of MPT large language models. *O'Nan, et al. v. Databricks Inc., et al.*, Case No. 3:24-cv-01451-CRB (N.D. Cal. March 8, 2024) (the "*O'Nan* Action") ECF No. 1; *Makkai, et al., v. Databricks, Inc., et al.*, Case No. 3:24-cv-02653-CRB (N.D. Cal. May 2, 2024) (the "*Makkai* Action") ECF No. 1. Plaintiffs alleged that MosaicML infringed Plaintiffs' copyrights by downloading and copying Books3—a pirated dataset containing Plaintiffs' copyrighted works—to train the MPT models. *O'Nan* Action, ECF No. 1 ¶¶ 38-9; *Makkai* Action, ECF No. 1 at ¶¶ 38-39. Plaintiffs alleged vicarious liability against Databricks given Databricks' acquisition of MosaicML in 2023. *O'Nan* Action, ECF No. 1 ¶¶ 43-46; *Makkai* Action, ECF No. 1 at ¶¶ 43-48. One year later, in March 2024, Databricks released its DBRX LLM. FACC ¶ 39. But DBRX was not just a Databricks model. Instead, as Plaintiffs allege, DBRX was created by the

same MosaicML team that had copied, stored, processed, and reproduced Plaintiffs' works to create the MPT line of models. FACC ¶¶ 2, 42, 51. Around the time of DBRX's release, Defendants' employees made statements indicating that Defendants trained the DBRX models using the same infringed works as the MPT models. *See* FACC ¶¶ 40–44. For example, Naveen Rao, Databricks' Vice President of Generative AI and the former CEO of MosaicML, stated that "DBRX was trained on a large set of data from a diverse range of sources," including "open data sets that the community knows." *See* FACC ¶ 40 (citing https://techcrunch.com/2024/03/27/databricks-spent-10m-on-a-generative-ai-model-that-still-cant-beat-gpt-4/). Plaintiffs allege that DBRX *was* trained on Plaintiffs' works, because "these 'open data sets' known to the community include notorious shadow library websites, which include Plaintiffs' Works, and Defendants used these shadow libraries to obtain the trillions of tokens of training data used for the DBRX models." FACC ¶ 41. As a result, Plaintiffs allege that "Defendants have built upon these infringing acts by MosaicML in the development of DBRX and have continued to infringe Plaintiffs' copyrights in the training and development of the DBRX models." *Id.* at ¶ 43.

Plaintiffs moved for leave to file the FACC on May 30, 2025 (ECF No. 124), Defendants opposed for the same reasons they raise in their motion to dismiss (ECF No. 126), and the court granted the motion over Defendants' objections (ECF No. 129). Plaintiffs filed the FACC on June 27, 2025. ECF No. 131. Plaintiffs added, among other things, a claim of direct copyright infringement by Databricks for its training of the MPT and DBRX models using Plaintiffs' Infringed Works, as defined in Exhibit A to the FACC. *Id.* at ¶¶ 17, 45-56. To support their factual allegations of direct infringement, Plaintiffs cited to Databricks' continued copying of the Infringed Works for LLM training and other commercial purposes after its July 2023 acquisition of MosaicML. *Id.*, at ¶ 38.

Even before Plaintiffs amended to add specific allegations about DBRX, on May 20, 2025 Magistrate Judge Cisneros found that discovery of DBRX was relevant to the case as laid out in Plaintiffs' *original* complaints, and ordered "discovery regarding how the DBRX models were trained." ECF No. 123 at 6. Plaintiffs have been diligently seeking information on how DBRX was trained. For example, almost four months ago, Plaintiffs requested from Databricks "[t]he Training

Data used for Your LLMs, including any subversions or iterations. This includes all datasets, data sources, and documentation detailing the content and composition of the Training Data." *See* Declaration of Joseph R. Saveri ("Saveri Decl."), ¶ 2 (quoting Plaintiffs' RFP No. 15 to Databricks). Then, more than two months ago, Judge Cisneros compelled Defendants to produce documents responsive to RFP No. 15 with respect to the DBRX models. ECF No. 123 at 6.

Despite Plaintiffs' efforts, Defendants have delayed production of these materials, producing minimal documents, missing the court-ordered substantial completion deadline of July 15, and refusing to produce DBRX training data. *See* Saveri Decl. ¶¶ 5-9. Defendants have only produced 5 custodial documents relating to the training of DBRX as of the substantial completion deadline. *See* Saveri Decl. ¶ 6. As of the date of this filing, Defendants have not produced any additional documents, nor any DBRX training data. *See* Saveri Decl. ¶ 9. ████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████

## ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly,* 550 U.S. at 569 n.14, 570. The statements alleged in the complaint must provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." (citation omitted)). The court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Moreover, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "Dismissal 'is proper only where there is no

cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv-06226-EJD, 2020 WL 6700480, at *2 (N.D. Cal. Nov. 13, 2020) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

Courts have recognized the challenges inherent in alleging facts that are uniquely within the defendant's possession. *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1025 (9th Cir. 2025) (cleaned up) ("And a court cannot reasonably demand that plaintiffs plead facts which tend systemically to be in the sole possession of defendants.").

### A. PLAINTIFFS PLAUSIBLY ALLEGE A DIRECT INFRINGEMENT CLAIM AGAINST DATABRICKS

A direct copyright infringement claim requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Aquarian Found., Inc. v. Lowndes*, 127 F.4th 814, 818 (9th Cir. 2025). Defendants only contest Plaintiffs' allegations as to copying. *See* Mot. at 7-13. But Defendants fall far short of showing the legal insufficiency of the FACC as to the direct infringement claim against Databricks relating to the MPT and DBRX models. It is well-established that "if the underlying facts or circumstances relied upon by a plaintiff *may* be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Walintukan v. SBE Ent. Grp., LLC*, 2017 WL 635278, at *2 (N.D. Cal. Feb. 15, 2017) (emphasis added) (citation omitted).

A "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1081 (N.D. Cal. 2017). But Defendants do just that. *See* Mot. at 7-13. They rip the very pages out of the book to entangle the Court into viewing each allegation in isolation, but this Court has rejected such an approach. *Terraza*, 241 F. Supp. 3d at 1081 (rejecting defendants' argument that "when viewed in isolation" "each of [the] allegations do not plausibly" state a claim); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (similar). Defendants' attempt to separate allegations against Databricks into "core allegations" and "remaining factual allegations," Mot. at 7-13, is another attempt among many by Databricks to distance itself from any liability. But this fails.

1. **The FACC Plausibly Alleges Databricks Reproduced Plaintiffs' Infringed Works for the MPT Models**

Defendants attempt to distance Databricks from involvement in infringing conduct in connection with the MPT models. Mot. at 8. Defendants write off as "formulaic" Plaintiffs' allegation that Databricks infringed Plaintiffs' copyrights by (1) "copying, storing, processing, and reproducing the *training datasets* containing copies of Plaintiffs' Works to train the MPT and DBRX models" and (2) "by copying, storing, processing, and reproducing the *MPT models* trained on Plaintiffs' Works." Mot. at 7-8 (quoting FACC ¶¶ 51–52) (emphasis added). Defendants' sole argument is that the "MPT models were trained before Databricks acquired MosaicML." Mot. 8. But this case is not simply about the training of the models; it is about Databricks and MosaicML's unlicensed reproduction of Plaintiffs' works. So regardless of when the MPT models were *trained*, Plaintiffs also allege that Defendants—including Databricks—continue to store and process the pirated training data that includes Plaintiffs' Infringed Works post-acquisition. FACC ¶¶ 7, 38, 51. It is already well established in the FACC that the MPT models were trained on the Infringed Works. *See, e.g.*, FACC ¶¶ 27–36. Databricks' own public statements support Databricks' connection to the MPT models, publicly stating that "years of LLM development at Databricks…includes the MPT projects." FACC ¶ 42.

Defendants attempt to argue that Plaintiffs allegations are "vague about which 'works' are at issue" because Plaintiffs use the phrases "copyrighted works" or "Plaintiffs' Works." Mot. at 8. This argument falls flat. In the context of the complaint, it is clear what works have been asserted as infringed. *Cf.* FACC ¶¶ 51–52, *with id.* at ¶ 11–15, 33, 36. Indeed, in *Anderson v. Stability AI et al.*, Judge William Orrick rejected similar arguments raised by defendant Midjourney in an AI copyright case related to visual works. *Andersen v. Stability AI, Ltd.*, 700 F. Supp. 3d 853, 863-64 (N.D. Cal. 2023). There, the court denied defendants' motion to dismiss even though the plaintiff did "not identify which of her specific works … were used as Training Images," given, in part, the sheer size of defendant's training dataset. *Id.* at 863. In the context of massive copyright violations, the court considered that it was a "plausible inference[] . . . that *all* of Anderson's works that were registered as collections *and* were online were scraped into the training datasets." *Id.* at 864. The scope of

defendants' widespread piracy in *Anderson* was more than enough to distinguish the case from traditional copyright violation cases. *Id.* at 364 n.4. Here, similarly, Plaintiffs have plausibly alleged based on public statements that Defendants used large pirated datasets that would indisputably include the Plaintiffs' works. This more than satisfies Rule 8.

The cases Defendants rely on are inapposite. In *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, the court rejected plaintiff's allegations as conclusory because the plaintiff provided *no allegations* as to what was actually infringed. No. 18-cv-00933-MMC, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020). The court faulted the plaintiff for failing to provide any allegation as to "what parts of any BD manual(s) were copied, what portions of BD's software, assuming Cytek exceed the scope of its license(s), were copied, and in what Cytek document or software such copying is manifest." *Id.* But Plaintiffs' FACC makes clear that Plaintiffs' Infringed Works were among the pirated works in the Books3 dataset, which was copied, stored, processed, and reproduced for the MPT models, and which continues to be stored, processed, and reproduced by Databricks. This rises well above "the speculative level." *Becton*, 2020 WL 1877707, at 7. It is not speculative at all.

    **2.**    **Plaintiffs Plausibly Allege Defendants Infringed Plaintiffs' Works for the DBRX Models**

Defendants' claims that the FACC does not plausibly allege infringement arising from DBRX ignores the history of this case and the allegations in the FACC. The Court should reject Defendants' attempts to insulate DBRX from discovery.

    **a.**    **Even Before Plaintiffs Amended the Court Found Allegations Sufficient to Cover DBRX**

Defendants' criticize Plaintiffs' allegation that "Defendants have built upon [MosaicML's infringing acts] in the development of DBRX and have continued to infringe Plaintiffs' copyrights in the training and development of DBRX." FACC ¶ 49. This allegation is sufficient to state a claim for direct copyright infringement. *Terraza*, 241 F. Supp. 3d at 1081. Indeed, even under Plaintiffs' *original complaint*, this Court found there was sufficient basis to conclude that there will be "factual and legal disputes as to whether Defendants have infringed on Plaintiffs' copyrighted works through

the development of DBRX." ECF No. 123 at 6. The notion that Plaintiffs could have somehow pled themselves out of a plausible claim for relief by bolstering their allegations with detail makes no sense at all. This crucial procedural history (ignored by Defendants) renders Defendants' cited cases inapposite as they involve allegations that were deemed speculative or conclusory. For example, the plaintiffs in *Reaper* provided "no factual support" for their assertion that Defendant authorized a third party to provide and review claim forms, or that the third party acted as its agent. *Reaper v. Ace Am. Ins. Co.*, No. 21-cv-05876-HSG, 2023 WL 1478474, at *2 (N.D. Cal. Feb. 2, 2023). In *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2020 WL 1877707, at *4 (N.D. Cal. Apr. 15, 2020), which involved a claim for breach of certain software license agreements for the software works,[1] the court observed that Plaintiff had failed to allege any facts to support the allegation that the copies at issue were "unauthorized" (where the relevant contract allowed the defendant to create authorized copies). *Id.* The plaintiff also failed to allege facts identifying the particular challenged use or contractual provision prohibiting such use, and failed to plead the time at which the software license agreements were breached. The opposite is true here where the Court has already found the allegations sufficient to warrant discovery.

     **b. Defendants' Course of Conduct With Respect to MPT and DBRX Supports the Allegations of Copyright Infringement as to DBRX**

Plaintiffs' new allegations about the Defendants' course of conduct leading to the development of DBRX further bolsters the already sufficient allegations. Prior to the release of DBRX, Defendants had already improperly used copyrighted material to train the MPT models. Pre-acquisition, MosaicML embarked on downloading, storing, and copying nearly two hundred thousand pirated books from the Books3 dataset as training material for the MPT models. FACC ¶ 32. These pirated books were used to train not just one LLM, but multiple LLMs. *Id.* at ¶¶ 36–37. Ultimately, the amount of training data used for the MPT-7B model, for example, amounted to 1 trillion tokens, an

---

[1] The plaintiff alleged that defendant breached those agreements by "at a minimum, making unauthorized copies of those works and/or using those works beyond the scope of their respective software license agreements in connection with developing and promoting Cytek's own products." *Id.* at *4.

amount achieved only by MosaicML's use of the pirated books. FACC ¶ 27 n.1.

Post-acquisition and now under Databricks's banner, the very same MosaicML development team that created the MPT models trained on pirated books, developed DBRX using 12 trillion tokens. FACC ¶ 2. Particularly where the very same team has a history of using shadow libraries that contain Plaintiffs' Infringed Works, FACC ¶¶ 30, 36, 38, the *massive* amounts of data needed to encompass the *12 trillion tokens* used to train DBRX plausibly supports Plaintiffs' claim where MosaicML had turned to pirated books to obtain only 1 trillion tokens. FACC ¶ 41. Defendants attempt to write this off by arguing that where "one party allegedly committed one infringing act does not provide a basis to allege that another party committed a different infringing act." Mot. at 9–10. But here, the very same individuals trained both the MPT models and DBRX. FACC ¶ 42. The only thing that changes about the team that developed the infringing models was that first they were only employed by MosaicML, and then they joined Databricks. FACC ¶¶ 2, 42. Databricks' attempt to distance itself by claiming these were just "some . . . scientists" that used pirated books to "train one model" is simply not accurate. Mot. at 12. In Databricks' own words, DBRX development was "*led by the MosaicML team* that previously built the MPT *model family*." FACC ¶ 42. It was not just *some* scientists nor was it only one model that involved pirated copies of Plaintiffs' Infringed Works—as Plaintiffs allege, it was *multiple* models. See FACC ¶¶ 27–37, 48.

Defendants take issue with Plaintiffs alleging "on information and belief." *See, e.g.*, Mot. 9. But "district courts in the Ninth Circuit have concluded that so long as there is a plausible foundation to such claims, allegations based on 'information and belief' are sufficient to survive dismissal." *Dante Valve Co. v. Republic Brass Sales, Inc.*, No. 17-cv-2582-AJB-WVG, 2019 WL 1406583, at *2 (S.D. Cal. Mar. 28, 2019). Even where a complaint is built upon "only one incident," this can "give[] rise to a 'plausible foundation' of similar instances." *Id.* Here, Plaintiffs have identified more than one incident of infringing use—Plaintiffs' Infringed Works were stored and used to train multiple models: the MPT-7B model, again to train the MPT-7B-StoryWriter-65k+, and again to train the MPT-30B model. FACC ¶¶ 27–37, 48. Such pleading is proper where "Defendant has exclusive control and possession over" the information. *Id.* at *2.

Here, Defendants' reliance on *Menzel v. Scholastic, Inc.* is misplaced. 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018). *Menzel* is the exact opposite of the present facts. There the plaintiff made an "information and belief" allegation that the defendant used "more copies of his photographs than permitted under the license agreements" based on defendant's infringing acts toward unrelated parties. *Id.* The court there concluded that the fact that the defendant may have misused the licenses of other parties did not create a plausible inference that the defendant did so with plaintiff's license. *Id.* Here, in contrast, Plaintiffs have made specific allegations that *Defendants* have *already* extensively infringed *Plaintiffs' books* in the training of multiple MPT models. See FACC ¶¶ 26-37. *Defendants' own statements* indicate that the same individuals that trained the MPT models engaged in the same course of conduct in training DBRX just months later. *Id.* at ¶ 42. The *Menzel* court specifically recognized that an "inference of a pattern or practice of improper conduct from which an inference of wrongdoing against [Defendants] might be inferred" could support such a claim. *Menzel,* 2018 WL 1400386 at *3. And Defendants' other cases recognize the very same point that supports Plaintiffs here. *See Ross v. Abbott Vascular Inc.*, No. 19-cv-03794-JST, 2022 WL 20275185, at *8 (N.D. Cal. Mar. 3, 2022) (noting courts credit allegations based on information and belief "when there are *other* allegations that plausibly establish a sequence of events that point to infringement"). Defendants cannot divorce the infringing acts related to the MPT models from DBRX.

Moreover, Defendant's own executive's statements plausibly support that DBRX was trained on shadow libraries. In the words of MosaicML's former CEO and current Vice President of AI at Databricks, DBRX was trained on "open data sets that the community knows." FACC ¶ 40. Plaintiffs specifically allege that shadow libraries "have long been of interest to the AI-training community because they host and distribute vast quantities of unlicensed copyrighted material." FACC ¶ 31. Plaintiffs did not identify shadow libraries in vague corners of the internet, but specific websites that the AI-training community turns to: "Library Genesis (aka LibGen), Z-Library (aka B-ok), Sci-Hub, and Anna's Archive." *Id.* And despite Defendants' argument otherwise, Mot. at 9, Plaintiffs allege that

these "notorious shadow library websites" "include Plaintiffs' Works," FACC ¶41.[2] Data derived from the shadow library Bibliotik, for example, was already used to train the MPT models. FACC ¶ 30. And when Defendants' needed vast quantities of additional data—11 trillion more tokens of data—it is more than plausible to infer that they turned to the shadow libraries,[3] which included Plaintiffs Infringed Works. Against the backdrop of all this, Plaintiffs alleged that, "[o]n information and belief, Defendants have further made copies of Plaintiffs' Works for use to train the DBRX models." *Id.* ¶ 49.

### c. Defendants' Deliberate Secrecy Weighs Against Dismissal

After a course of conduct indicating clear instances of infringement, the Court should not condone Defendants' newfound secrecy to insulate themselves from further liability. Plaintiffs here *already* identify infringing conduct that supports allegations against Databricks regarding DBRX. Thus, Defendants' reliance on *Canter & Assocs., LLC v. Teachscape, Inc.*, fails. There, the court held the plaintiff "effectively concedes that it *does not possess any information* as to whether or not it has a viable copyright infringement claim." No. C 07-3225 RS, 2007 WL 4365480, at *2 (N.D. Cal. Dec. 12, 2007) (emphasis added).

In addition, Plaintiffs' allegations establish that Defendants took steps to conceal the training data for DBRX. Indeed, while MosaicML readily published training datasets used prior to this lawsuit, after this lawsuit was filed, Defendants swiftly changed course. FACC ¶ 40, 44. Defendants argue that these efforts were "[l]ike many businesses in the competitive AI space." Mot. at 12. But not only is this fact unsupported and irrelevant (many businesses in the competitive AI space used copyrighted material for their LLM models), it is also outside the scope of the complaint and not appropriately considered at the pleading stage. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637

---

[2] Defendants again quibble with the use of the phrase "Plaintiffs' Works." Mot. at 11 (faulting Plaintiffs for not "conspicuously" defining). Again, in the context of the Complaint, the term is clear. *See* FACC ¶¶ 11-15, 33.

[3] It is not only plausible, but a story that has similarly played out in the AI training community multiple times. *See Bartz v. Anthropic PBC*, No. C 24-05417 WHA, 2025 WL 1741691, at *2 (N.D. Cal. June 23, 2025) (noting that an AI developer, after downloading Books3, turned to Library Genesis for training data); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2025 WL 1752484, at *6 (N.D. Cal. June 25, 2025) (noting the same).

F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). Defendants also attempt to argue that "[*a*] *company* may choose to keep an LLM's training data" confidential as a "trade secret." Mot. at 12 (emphasis added). Defendants are free to establish the reasons for keeping their training data a secret in discovery. But that, too, is irrelevant at the motion to dismiss stage, especially because *Defendants here*—not just any company—consistently published their training data sources and even stated DBRX training data came from open data sets that the community already knew. Again, Defendants' own cases undercut their position. In *Menzel*, the court specifically considered whether the plaintiff had "made any showing that it is impossible to obtain some evidence of [defendant's] wrongdoing." 2018 WL 1400386, at *3. Here, Plaintiffs have made that showing regarding DBRX's training data, and Defendants acknowledge that this information is not obtainable publicly.[4] Mot. at 12.

Plaintiffs specifically allege that Defendants programmed DBRX, through what is known as a "system prompt," to not just conceal its training data but also whether it was trained on "copyrighted books." FACC ¶ 44. It logically follows that—and Plaintiffs should be entitled to test in discovery whether—the model *was* trained on copyrighted books; otherwise, this system prompt would be superfluous. The Court should reject Defendants' attempt to use their own secrecy to insulate themselves from further discovery and litigation. Viewed as a whole, and in conjunction with Plaintiffs' allegations regarding Defendants' secrecy with respect to the training data used to train DBRX, *id.*, the FACC lays out a course of conduct by Defendants that includes sufficient allegations that support the infringement of Plaintiffs' copyrighted works with respect to the DBRX models.

### B. ALTERNATIVELY, THE COURT SHOULD GRANT LEAVE TO AMEND TO CURE ANY DEFICIENCIES

███████████████████████████████████████████████████

---

[4] Defendants make a passing assertion that "Plaintiffs [have not] conducted *any* investigation about DBRX that would support any of their allegations." Mot. 13. But this simply is not true. And Defendants even acknowledge the dearth of public information here. *See* Mot. at 12 (noting "Databricks' decision to not publicly disclose the training data").



Thus, even if the Court is inclined to grant the motion, the Court should allow Plaintiffs leave to amend so Plaintiffs may cure any deficiencies based on additional facts Plaintiffs learn through discovery.

If the Court concludes the FACC is insufficiently pled, it should allow 90 days for Plaintiffs to cure any deficiencies to allow the parties sufficient discovery into how DBRX was trained and so that

Plaintiffs have had an opportunity to apprise the Court of the facts revealed through such discovery. As Judge William Alsup has recently recognized in a similar copyright case, "the facts here should not be in dispute. If it's truly fair use, [Defendants] should be open about everything that happened." *See* Saveri Decl. Ex. C at 11. The Plaintiffs can simply take a deposition "of a 30(b)(6) person to find out if they're using" pirated content to train these LLMs. *Id.* at 10. There should be "[n]o stonewalling." *Id.* at 25.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the motion to dismiss be Denied. In the alternative, Plaintiffs should be granted leave to amend their complaint.

Dated: July 25, 2025                    Respectfully submitted,

By:  */s/ Joseph R. Saveri*
　　　Joseph R. Saveri
Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
William Castillo Guardado (SBN 294159)
Holden Benon (SBN 325847)
Jane Kim (SBN 333342)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com
hbenon@saverilawfirm.com
jkim@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile:  (415) 395-9940
mb@buttericklaw.com

Bryan L. Clobes (admitted *pro hac vice*)
Alexander J. Sweatman (admitted *pro hac vice*)
Mohammed A. Rathur (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

| | |
|---|---|
| 1 | Jordan W. Connors (admitted *pro hac vice*) |
| 2 | Trevor D. Nystrom (admitted *pro hac vice*) |
|   | **SUSMAN GODFREY L.L.P** |
| 3 | 401 Union Street, Suite 3000 |
|   | Seattle, WA 98101 |
| 4 | Telephone: (206) 516-3880 |
|   | jconnors@susmangodfrey.com |
| 5 | tnystrom@susmangodfrey.com |

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com

Rachel J. Geman (admitted *pro hac vice*)
Danna Z. Elmasry (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
ashaver@lchb.com

Betsy A. Sugar (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

Rachel J. Geman (admitted *pro hac vice*)
Danna Z. Elmasry (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
rgeman@lchb.com
delmasry@lchb.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*