1 | JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
2 | RYAN KWOCK (CSB No. 336414)
rkwock@fenwick.com
3 | FENWICK & WEST LLP
555 California Street, 12th Floor
4 | San Francisco, CA 94104
Telephone:    415.875.2300
5 | Facsimile:    415.281.1350

6 | DAVID HAYES (CSB No. 122894)
dhayes@fenwick.com
7 | FENWICK & WEST LLP
801 California Street
8 | Mountain View, CA 94041
Telephone:    650.988.8500
9 | Facsimile:    650.938.5200

10 | *Attorneys for Defendants*
DATABRICKS, INC., and
11 | MOSAIC ML, LLC, formerly MOSAIC ML, INC.

12 | *Additional counsel listed on signature page*

13

FENWICK & WEST LLP

14

15

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

16

17 | *In Re Mosaic LLM Litigation*

Case No.: 3:24-cv-01451-CRB

18 | **DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS
19 | FIRST AMENDED CONSOLIDATED
COMPLAINT**

20 | Date:         August 22, 2025
Time:         10:00 a.m.
21 | Dept:         6
Judge:        Hon. Charles R. Breyer

22

23

24

25

26

27

28

DEFS.' REPLY ISO MTD FAC          Master File Case No.: 3:24-cv-01451-CRB

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT ................................................................................................................ 2

    A.    Plaintiffs invoke the incorrect legal standard............................................... 2

    B.    Plaintiffs' conclusory allegations against Databricks regarding the MPT
           models fail to state a claim.......................................................................... 2

    C.    Plaintiffs' lack of specific allegations about DBRX dooms their claims................ 4

           1.    The few factual allegations about DBRX do not support a claim.............. 5

           2.    Plaintiffs' "course of conduct" theory is baseless and conclusory. ............ 7

    D.    The Court should reject Plaintiffs' misleading introduction of discovery
           materials. ..................................................................................................... 9

III.  CONCLUSION ............................................................................................................ 10

FENWICK & WEST LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andersen v. Stability AI, Ltd.*,
   700 F. Supp. 3d 853 (N.D. Cal. 2023) ............................................................. 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................*passim*

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015).......................................................................... 6

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
   No. 18-CV-00933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020). ............................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................... 1, 2, 3, 4

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................... 1, 2

*Dante Valve Co. v. Republic Brass Sales, Inc.*,
   No. 17-CV-2582-AJB-WVG, 2019 WL 1406583 (S.D. Cal. Mar. 28, 2019) .......................... 8

*Diamond S.J. Enter., Inc. v. City of San Jose*,
   No. 18-CV-01353-LHK, 2018 WL 5619746 (N.D. Cal. Oct. 29, 2018) ............................. 3

*EVOX Prods., LLC v. Verizon Media Inc.*,
   No. CV 20-2852-CBM, 2021 WL 3260609 (C.D. Cal. May 5, 2021) ............................... 9

*Implicit Networks Inc. v. F5 Networks Inc.*,
   No. C 10-4234 SI, 2013 WL 1007250 (N.D. Cal. Mar. 13, 2013) ............................. 7

*Lewis v. SF Bay Area Rapid Transit Dist.*,
   No. 25-cv-00869-RS, 2025 WL 1785765 (N.D. Cal. June 27, 2025)............................. 5

*Menzel v. Scholastic, Inc.*,
   No. 17-CV-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018)......................... 4, 7, 8

*Miller v. Facebook, Inc.*,
   No. C 10-00264 WHA, 2010 WL 1292708 (N.D. Cal. Mar. 31, 2010) ............................. 3, 4

*Reaper v. Ace Insurance Company*,
   No. 21-CV-05876-HSG, 2023 WL 1478474 (N.D. Cal. Feb. 2, 2023), *aff'd*,
   No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024) ..................................... 4

FENWICK & WEST LLP

*Ross v. Abbott Vascular Inc.*,
No. 19-CV-03794-JST, 2022 WL 20275185 (N.D. Cal. Mar. 3, 2022) ................................... 8

*Synopsys, Inc. v. ATopTech, Inc.*,
No. C 13–CV–02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ............................ 6, 8

**Statutes**

17 U.S.C. § 106 ................................................................................................................................. 4

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................................... 7

**Other Authorities**

*Library of Congress*, General Information,
https://www.loc.gov/about/general-information .......................................................................... 6

FENWICK & WEST LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP

1   Defendants Databricks, Inc. ("Databricks") and Mosaic ML, LLC ("MosaicML") submit

2 this Reply in support of their Motion to Dismiss Plaintiffs' First Amended Consolidated Complaint

3 (Dkt. 133).

4 **I.  INTRODUCTION**

5   Defendants' Motion to Dismiss demonstrated why Plaintiffs' new copyright claims fail to

6 satisfy the Supreme Court's *Twombly* and *Iqbal* standard.  Unable to rebut that showing, Plaintiffs'

7 Opposition instead invokes the outmoded "no set of facts" standard from *Conley v. Gibson*, which

8 the Supreme Court rejected more than 15 years ago.  Proceeding from that glaring error, the

9 Opposition fails to show how the Amended Complaint's few factual allegations about Databricks

10 and DBRX support Plaintiffs' new claims.  In contrast to their original claims about the MPT

11 models—which Plaintiffs specifically alleged were trained by MosaicML using the Books3

12 dataset—Plaintiffs point only to threadbare allegations about Databricks' supposed direct

13 infringement and DBRX.  Those conclusory allegations fail to state a claim as a matter of law.

14   The few *facts* that the Opposition cites cannot support a plausible claim.  That Databricks

15 trained DBRX on a large amount of data, including "open" datasets that DBRX did not publicly

16 identify, does not support an inference that Databricks made infringing copies of anything, much

17 less that it copied *Plaintiffs' specific books*.  Plaintiffs argue that because scientists who worked on

18 the MPT models also worked on DBRX, the Court should infer that Defendants engaged in an

19 infringing "course of conduct."  But "course of conduct" is just another conclusory label lacking

20 factual support.  And Plaintiffs' reliance on materials outside the pleadings—including discovery

21 materials and references to developments in other cases—is not only improper, but also fails to

22 support Plaintiffs' defective claims.

23   In the end, Plaintiffs' new claims rest on nothing but baseless conjecture, which fails to tie

24 Databricks to even one act of infringement as to even one of Plaintiffs' books.  For the reasons

25 stated below and in Defendants' Motion, the Court should dismiss Plaintiffs' direct copyright

26 infringement claim against Databricks and Plaintiffs' claims regarding DBRX.  Moreover, because

27 Plaintiffs have not proffered evidence on which they could salvage their claims, dismissal with

28 prejudice is warranted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP

## II.    ARGUMENT

### A.    Plaintiffs invoke the incorrect legal standard.

Plaintiffs' Opposition starts off by invoking a superseded pleading standard.  Relying on *Conley v. Gibson*, Plaintiffs argue that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Opp. at 3 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  But the Supreme Court in *Twombly* expressly rejected *Conley*'s "no set of facts" standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (explaining that "this famous observation has earned its retirement" and that *Conley*'s "no set of facts" language is not a "minimum standard of adequate pleading").

Plaintiffs also assert that allegations should not be read in isolation.  Opp. at 4.  Fair enough, but that does not change *Iqbal* and *Twombly*'s "two-pronged approach" for evaluating whether a complaint states a plausible claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555-56).  Under that framework, a court should first identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *See id.* at 679.  Only then can a court determine whether the remaining "well-pleaded factual allegations … plausibly give rise to an entitlement to relief."  *See id.*  Applying the correct standard, Plaintiffs' Amended Complaint fails to support a direct infringement claim against Databricks or claims involving DBRX.

### B.    Plaintiffs' conclusory allegations against Databricks regarding the MPT models fail to state a claim.

Plaintiffs effectively concede that their only allegations against Databricks pertaining to the MPT models are conclusory: that Defendants "jointly directly infringed Plaintiffs' exclusive rights" by (1) "copying, storing, processing, and reproducing the training datasets containing copies of Plaintiffs' Works to train the MPT and DBRX models"; and (2) "by copying, storing, processing, and reproducing the MPT models trained on Plaintiffs' Works."  Dkt. 131 (Am. Compl.) ¶¶ 51-52; Opp. at 5.  Those are precisely the sort of conclusory allegations that are not entitled to an assumption of truth.  *See* Mot. at 8.  For example, in *Twombly*, an antitrust case, it was not enough

FENWICK & WEST LLP

to plead that defendants "entered into a contract, combination or conspiracy to prevent competitive entry in their respective … markets and have agreed not to compete with one another." 550 U.S. at 551 (citation omitted). Nor was it enough in *Iqbal*, which involved a claim for deprivation of constitutional protections, to allege that defendants "'knew of, condoned, and willfully and maliciously agreed to subject [plaintiff]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" 556 U.S. at 680 (second alteration in original) (citation omitted). Likewise, Plaintiffs' formulaic recitations of the elements of an infringement claim are not enough to state a claim. Plaintiffs point to no specific *factual* allegations to support their theory of direct infringement by Databricks concerning the MPT models. Opp. at 5.[1] Nor is there any factual allegation that the MPT models *themselves* are "copies" of Plaintiffs' books such that Databricks' use of the MPT models themselves would constitute infringement.

Tellingly, Plaintiffs fail to meaningfully distinguish Defendants' cases—or to address some of them at all. Plaintiffs cite only *part* of the discussion in *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, while ignoring its main holding that "a 'formulaic recitation of the elements of a [copyright] cause of action" is insufficient to state a claim. No. 18-CV-00933-MMC, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020). And Plaintiffs do not even address *Miller v. Facebook, Inc.*, where the court held that identifying the allegedly infringed work was not enough. No. C 10-00264 WHA, 2010 WL 1292708, at *3 (N.D. Cal. Mar. 31, 2010). In *Miller*, the plaintiff alleged that Facebook "copied, displayed or distributed infringing copies" of the plaintiff's work. *Id.* The court dismissed the direct copyright infringement claim, explaining that "[i]f plaintiff wishes to proceed with his direct copyright infringement claim, he must include sufficient factual allegations that explain how defendant Facebook copied, displayed or distributed infringing copies of

---

[1] Plaintiffs repeatedly make assertions about "pirated" training data. *See, e.g.*, Opp. at 5; *see generally* Opp. 1-13 (invoking the word "pirated" 13 times). The word "pirated" is absent from Plaintiffs' Amended Complaint, and a party cannot amend its pleadings through briefing. *See Diamond S.J. Enter., Inc. v. City of San Jose*, No. 18-CV-01353-LHK, 2018 WL 5619746, at *6 (N.D. Cal. Oct. 29, 2018) ("Plaintiff cannot amend the complaint through briefing."). And in all events, the Amended Complaint cites no facts that would support a claim that Databricks copied any so-called "pirated" dataset.

FENWICK & WEST LLP

1    [plaintiff's work].  Mere legal conclusions disguised as factual allegations will not suffice." *Id.*

2        The same reasoning applies here.  Plaintiffs have failed to provide anything beyond legal

3    conclusions to support their direct infringement claim against Databricks regarding the MPT

4    models.  That claim should be dismissed.

5        **C.    Plaintiffs' lack of specific allegations about DBRX dooms their claims.**

6        Plaintiffs insist that their conclusory allegation, made on information and belief, that

7    "Defendants have built upon [MosaicML's] infringing acts in the development of DBRX" can

8    withstand a motion to dismiss.  Opp. at 6.  But Plaintiffs never say what "built upon" means.

9    Plainly, it is not an allegation of *fact* that Defendants engaged in any specific act of infringement

10   under 17 U.S.C. § 106: that Defendants reproduced, distributed, or created derivative works of *any*

11   works—let alone any of *Plaintiffs'* books.  And while Plaintiffs try to distinguish *Reaper v. Ace*

12   *Insurance Company*, that case is on point here.  *See* No. 21-CV-05876-HSG, 2023 WL 1478474

13   (N.D. Cal. Feb. 2, 2023), *aff'd*, No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024).  There,

14   the court explained that even "allegations pled on information and belief must still be supported by

15   a 'factual foundation leading to that belief.'"  *Id.* at *2 (citation omitted).  Plaintiffs' "information

16   and belief" allegations lack a factual foundation and thus carry no weight.

17       Unable to explain how their hopelessly vague allegation could meet the *Iqbal* and *Twombly*

18   standard, Plaintiffs instead rely on Judge Cisneros's order allowing "discovery regarding how the

19   DBRX models were trained."  Opp. at 2, 6-7 (citing Dkt. 123 at 6).  But that discovery order

20   acknowledged that the (original) complaint did "not mention the DBRX models" (Dkt. 123 at 4),

21   and therefore the order did *not* assess the sufficiency of any claim about DBRX.  And in granting

22   Plaintiffs leave to amend, the Court acknowledged that a motion to dismiss would be appropriate.

23   Dkt. 129 at 6.

24       The absence of other factual details about DBRX in the Amended Complaint is telling.

25   Plaintiffs now claim that they conducted an investigation about DBRX.  Opp. at 11 n.4.  Yet the

26   Amended Complaint is silent about any investigation, and Plaintiffs cite no information obtained

27   through such an investigation.  Nor do they claim that it would be impossible to obtain such

28   information, if it existed.  *Cf. Menzel v. Scholastic, Inc.*, No. 17-CV-05499-EMC, 2018 WL

DEFS.' REPLY ISO MTD FAC            4        Master File Case No.: 3:24-cv-01451-CRB

FENWICK & WEST LLP

1400386, at *3 (N.D. Cal. Mar. 19, 2018) ("Mr. Menzel has not made any showing that it is impossible to obtain some evidence of Scholastic's wrongdoing."). Given the absence of any factual basis supporting an infringement claim as to DBRX, that claim must be dismissed.

### 1. The few factual allegations about DBRX do not support a claim.

Unable to point to any facts showing that Plaintiffs' books were used to train DBRX, the Opposition attempts to string together a few unremarkable facts to support Plaintiffs' claim. That effort fails.

*First*, Plaintiffs rely on a quote from MosaicML's former CEO stating that DBRX was trained using "open data sets that the community knows." Am. Compl. ¶¶ 40-41, Opp. at 9-10. But as a case that Plaintiffs cite shows, an allegation that a company used "open datasets" is insufficient to state an infringement claim. *See Andersen v. Stability AI, Ltd.*, 700 F. Supp. 3d 853, 863, 868-69 (N.D. Cal. 2023). In *Andersen*, the court granted Midjourney's motion to dismiss the plaintiffs' direct infringement claim, where the allegations against Midjourney were similar to the "open dataset" claims here. *Id.* at 868-69. There, Midjourney's CEO was quoted as saying "[w]e use the open data sets that are published and train across those." *Id.* at 869 (citation omitted). That was not enough to state an infringement claim there, and it is not enough here.

Moreover, to the extent that Plaintiffs rely on *Andersen* to claim they do not need to identify which of *their* books DBRX was trained on, that reliance is misplaced. *See* Opp. at 5. In *Andersen*, unlike here, plaintiffs alleged that "[e]xamples of Ms. Andersen's Works included in the Training Data" could be found on a *specific* website and were included in *specific* datasets that defendants used. 700 F. Supp. 3d at 863. By contrast, Plaintiffs here fail to allege that any specific book was included in any particular dataset used to train DBRX.

Plaintiffs also claim in a footnote that *other* AI companies used "Library Genesis" after using Books3. Opp. at 10 n.3. That argument improperly relies on information outside the pleadings. S*ee Lewis v. SF Bay Area Rapid Transit Dist.*, No. 25-cv-00869-RS, 2025 WL 1785765, at *3 (N.D. Cal. June 27, 2025) ("A Rule 12(b)(6) motion to dismiss addresses the four corners of a complaint, not newly raised allegations or evidence."). And in all events, Plaintiffs' "guilt by association" argument fails, since they do not allege that *Databricks* used Library Genesis or any

FENWICK & WEST LLP

1    specific "open dataset" containing Plaintiffs' works. *See Synopsys, Inc. v. ATopTech, Inc.*, No. C

2    13–CV–02965 SC, 2013 WL 5770542, at \*4 (N.D. Cal. Oct. 24, 2013) (dismissing copyright claim

3    based on speculation of widespread copying "without describing any acts or works that infringe

4    Plaintiff's [copyrighted work]").

5         *Second*, Plaintiffs suggest that they can state a claim based on the sheer *volume* of data used.

6    Opp. at 8.  They argue that because DBRX was developed using "12 trillion tokens" (which

7    includes words, parts of words, and blank spaces), Databricks must have used more data to train

8    DBRX than MosaicML used to train the MPT models.  *Id.*  Of course, more data does not

9    necessarily mean more *books*.  But even if the Court were to assume that DBRX was trained on

10   more books, that would not support an inference that Plaintiffs' specific titles were among those

11   books.  There are *tens of millions* of books in publication.  *See Authors Guild v. Google, Inc.*, 804

12   F.3d 202, 208 (2d Cir. 2015) (noting that Google had scanned more than 20 million books); *see*

13   *also Library of Congress*, General Information, https://www.loc.gov/about/general-information

14   (noting more than 25.77 million cataloged books in the Library of Congress classification system).

15   The Amended Complaint does *not* allege that DBRX was trained on Books3.  It is absurd to

16   conclude that because Books3 contained Plaintiffs' 28 specific titles, a different dataset, potentially

17   drawn from tens of millions of other books, would necessarily include those same titles.[2]  Thus,

18   Plaintiffs' conjecture based on the number of "tokens" used to train DBRX comes nowhere near

19   establishing a plausible claim.

20        *Third*, Plaintiffs assert that Databricks' decision not to disclose DBRX's training data

21   somehow excuses Plaintiffs' failure to plead facts.  Opp. at 10-11.  Not so.  By that reasoning, any

22   author could sue any LLM developer that did not disclose its training data, based solely on

23   speculation that such data might contain that author's book.  Plaintiffs provide no caselaw to bolster

24   this baseless argument.  In any event, there are completely legitimate reasons for a business not to

25   disclose its internal operational details, including protection of trade secrets.  And even if the Court

26

27   [2] As noted in Defendants' Motion (Mot. at 5, 8), and as the Opposition ignores, the Amended
     Complaint uses the defined term "Infringed Works" when discussing the MPT models but
28   conspicuously avoids that defined term when discussing DBRX.  Opp. at 7-8.

1   were to infer that LLM developers that do not publicly list their training data are "hiding something"

2   (which is false), that would not support a claim by *these authors* for *these books*.

3      In the end, all that Plaintiffs have here is an argument that Defendants' decision not to

4   publicly disclose the DBRX training data should subject them to "further discovery and litigation."

5   Opp. at 11.  But this is exactly the approach that the Supreme Court has rejected.  Federal Rule of

6   Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more

7   than conclusions." *Iqbal*, 566 U.S. at 678-79.

8      *Fourth*, Plaintiffs point to a March 27, 2024 post on X regarding a so-called "system

9   prompt," stating that DBRX was "not trained on copyrighted books" and was instructed not to

10  "divulge details of [its] training data."  Am. Compl. ¶ 44.  Irrationally, Plaintiffs argue that it

11  somehow "logically follows" that a statement that DBRX was *not* trained on copyrighted books

12  means that DBRX *was* trained on copyrighted books.  Opp. at 11.  And even if that argument made

13  any sense, "copyrighted books" does not necessarily include *Plaintiffs'* books.

14              **2.    Plaintiffs' "course of conduct" theory is baseless and conclusory.**

15     What the Amended Complaint lacks in facts, Plaintiffs try to compensate for with

16  conclusory labels.  Plaintiffs rely on a "course of conduct" argument: that because researchers at

17  MosaicML used the Books3 dataset as training material for the MPT models, and because that

18  dataset contained Plaintiffs' books, "the very same individuals" must have used Plaintiffs' books

19  in some *other* dataset to train the DBRX models.  Opp. at 7-9.  That argument is legally and

20  logically baseless.

21     Courts have repeatedly explained that alleging facts about one infringement does not

22  support claims about a separate alleged infringement.  For example, in *Implicit Networks Inc. v. F5*

23  *Networks Inc.*, the court explained in a patent case that a "patentee cannot 'simply "assume" that

24  all of [accused infringer's] products are like the ones that [the patentee] tested and thereby shift to

25  [the accused infringer] the burden to show that is not the case.'"  No. C 10-4234 SI, 2013 WL

26  1007250, at *12 (N.D. Cal. Mar. 13, 2013) (alterations in original) (quoting *L & W, Inc. v. Shertech,*

27  *Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006)).  Likewise, in *Menzel*, the fact that Scholastic had

28  exceeded licenses given by *other* individuals and entities, and was a defendant in at least 13 other

FENWICK & WEST LLP

FENWICK & WEST LLP

1    copyright cases, was insufficient to establish an inference of wrongdoing as to the plaintiff's

2    copyrighted works.  2018 WL 1400386, at *3; s*ee also Ross v. Abbott Vascular Inc.*, No. 19-CV-

3    03794-JST, 2022 WL 20275185, at *8 (N.D. Cal. Mar. 3, 2022) (dismissing copyright infringement

4    claim when the plaintiffs failed to allege facts against specific defendants).

5         Plaintiffs' tortured attempt to distinguish *Ross* and *Menzel* only further illustrates the

6    weakness of Plaintiffs' argument.[3]  As Plaintiffs acknowledge, the courts in both cases dismissed

7    copyright claims where plaintiffs had failed to allege specific conduct supporting their claims.  That

8    result is warranted here.

9         Unsurprisingly, Plaintiffs cite no cases supporting their argument that alleging one

10   copyright infringement is sufficient to withstand a motion to dismiss about a separate alleged

11   infringement.  In Plaintiffs' single cited case on this issue, a trademark owner identified a specific

12   instance of an attempted counterfeit sale and alleged that the defendants were continuing to sell

13   *those same* products under the *same* counterfeit marks.  *See Dante Valve Co. v. Republic Brass*

14   *Sales, Inc.*, No. 17-CV-2582-AJB-WVG, 2019 WL 1406583, at *3 (S.D. Cal. Mar. 28, 2019).  Here,

15   by contrast, Plaintiffs allege only that MosaicML used Books3 with the MPT models and, therefore,

16   Databricks must have used some *other, unspecified* dataset that also contained Plaintiffs' books

17   when training DBRX.

18        In the end, Plaintiffs' "course of conduct" argument boils down to conjecture that

19   MosaicML scientists, now at Databricks, must have infringed their copyrights *somehow*.  Opp. at

20   7-8.  But Plaintiffs must plead "non-speculative facts about what Defendant[s] infringed and how."

21   *Synopsys*, 2013 WL 5770542, at *4.  They fail to do so.  Plaintiffs' "course of conduct" theory fails

22   to nudge Plaintiffs' claims "across the line from conceivable to plausible."  *See Iqbal*, 556 U.S. at

23   679-80 (quoting *Twombly*, 550 U.S. at 570).

24

25   [3] Plaintiffs misleadingly claim that *Menzel* "specifically recognized that an 'inference of a pattern
     or practice of improper conduct from which an inference of wrongdoing against [Defendants] might
26   be inferred' could support such a claim."  Opp. at 9 (alteration in original) (quoting *Menzel*, 2018
     WL 1400386, at *3).  But *Menzel* held the *opposite*: "Moreover, that Scholastic is a defendant in at
27   least thirteen other copyright cases … *does not do much* to establish an inference of a pattern or
     practice of improper conduct from which an inference of wrongdoing against Mr. Menzel might be
28   inferred."  *Menzel*, 2018 WL 1400386, at *3 (emphasis added) (citation omitted).

FENWICK & WEST LLP

**D.    The Court should reject Plaintiffs' misleading introduction of discovery materials.**

Finally, Plaintiffs alternatively seek leave to amend to "cure any deficiencies." Opp. at 11-13. Plaintiffs misleadingly claim that Databricks has produced "few documents" about DBRX in discovery so far. *Id.* at 11-12; *see also id.* at 3. Plaintiffs then claim that those documents "suggest that DBRX was trained on copyrighted books and [that] Databricks participated in the development of MPT models." *Id.* at 11-12. As an initial matter, the one reference to Books3 that Plaintiffs cite was from March 2023 (before Databricks acquired MosaicML), and the documents do *not* say that *Databricks* used Books3 for *any* model. *See* Ex. A at 16; *see generally* Exs. A-B. Moreover, Plaintiffs completely omit mention of the extensive discovery that Databricks has produced about DBRX training: hundreds of source code files with the DBRX model weights and model-enabling source code; internal documents about DBRX training; code files identifying DBRX's pretraining datasets; and an internal document identifying DBRX's post-training datasets. Declaration of Ryan Kwock ("Kwock Decl.") ¶ 2. Importantly, some of these documents *list the datasets used to train DBRX*, and none of those datasets are among the datasets that Plaintiffs claim contain their books. *Id.* ¶ 3.

Plaintiffs' omission of critical facts while presenting misleading descriptions of discovery underscores what this is really about. Plaintiffs have no basis to sue Databricks over DBRX. They never did. Instead, they hope to use their flimsy Amended Complaint as the basis for launching a fishing expedition. Plaintiffs claim that they should be entitled to 90 days for "sufficient discovery into how DBRX was trained." Opp. at 12-13. But Plaintiffs *have* received extensive "discovery regarding how the DBRX models were trained." *See* Dkt. 123 at 6. And Defendants have been "open," including through producing source code for DBRX. Kwock Decl. ¶ 2. Plaintiffs should not be allowed to further pry open the discovery doors when their allegations about DBRX amount to conjecture and speculation. *See EVOX Prods., LLC v. Verizon Media Inc.*, No. CV 20-2852-CBM (JEMX), 2021 WL 3260609, at *3 (C.D. Cal. May 5, 2021) ("Plaintiff[s] cannot use discovery as a fishing expedition in order to support conclusory claims.").

FENWICK & WEST LLP

**III.    CONCLUSION**

For these reasons, along with those in Defendants' Motion to Dismiss (Dkt. 133), Defendants respectfully request that the Court dismiss Plaintiffs' direct infringement claim against Databricks and Plaintiffs' allegations about DBRX for failure to state a claim. Because Plaintiffs have proffered no additional facts on which they could salvage their claims, dismissal with prejudice is warranted.

Dated:    August 1, 2025                      FENWICK & WEST LLP

By:  /s/ Jedediah Wakefield
     Jedediah Wakefield (CSB No. 178058)
     jwakefield@fenwick.com
     Ryan Kwock (CSB No. 336414)
     rkwock@fenwick.com
     555 California Street, 12th Floor
     San Francisco, CA 94104
     Telephone:       415.875.2300
     Facsimile:        415.281.1350

     David Hayes (CSB No. 122894)
     dhayes@fenwick.com
     Diana C. Buck (CSB No. 339314)
     dbuck@fenwick.com
     801 California Street
     Mountain View, CA 94041
     Telephone:       650.988.8500
     Facsimile:        650.938.5200

     Deena J.G. Feit (admitted *pro hac vice*)
     dfeit@fenwick.com
     401 Union Street, 5th Floor
     Seattle, WA 98101
     Telephone:       206.389.4510
     Facsimile:        206.389.4511

     Charles Moulins (admitted *pro hac vice*)
     cmoulins@fenwick.com
     Justine Vandermel (admitted *pro hac vice*)
     justine.vandermel@fenwick.com
     902 Broadway, 18th Floor
     New York, NY 10010
     Telephone:       212.430.2600
     Facsimile:        650.938.5200

DEFS.' REPLY ISO MTD FAC              10        Master File Case No.: 3:24-cv-01451-CRB

FENWICK & WEST LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Zachary Harned (CSB No. 335898)
zharned@fenwick.com
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone:      310.434.5400
Facsimile:      650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly
MOSAIC ML, INC.

DEFS.' REPLY ISO MTD FAC                11        Master File Case No.: 3:24-cv-01451-CRB