JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
RYAN KWOCK (CSB No. 336414)
rkwock@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 650.938.5200

DAVID HAYES (CSB No. 122894)
dhayes@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly MOSAIC ML, INC.

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

*In Re Mosaic LLM Litigation*

Case No.: 3:24-cv-01451-CRB

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING JOINT LETTER BRIEF (DKT. 145)**

Dept: G – 15th Floor
Judge: Honorable Lisa J. Cisneros

## I. INTRODUCTION

Plaintiffs' supplemental brief shows that (1) they have not justified the need for Defendants to produce *all* DBRX training data; and (2) Court intervention is not needed to resolve the handful of additional requests for production ("RFPs") that Plaintiffs raise. As Plaintiffs tacitly admit, Defendants *have* produced extensive discovery about how DBRX was trained, including source code and internal documents that identify the training datasets used to train DBRX. Despite having this discovery, Plaintiffs still fail to identify a dataset that allegedly contains *their* books. Defendants agreed to produce training data (for the MPT models) when Plaintiffs had identified a dataset that they alleged contains their books. But Plaintiffs' demand for a fishing expedition here is practically limitless: they want *all* training data for DBRX—terabytes of irrelevant files—regardless of whether they claim that such datasets contain their books. That scorched earth, disproportionate approach is not how discovery is supposed to work.

As to the five RFPs, Plaintiffs state that "Defendants would not agree to produce documents that relate to DBRX training." Br. at 5. But as even Plaintiffs' brief demonstrates, Defendants *have* been producing documents related to DBRX training. Defendants' remaining objections were about the scope of requests for documents on *other* topics, such as revenue. Further, Defendants recognize the Court's August 7 Order and are willing to confer about outstanding issues.

## II. BACKGROUND

Plaintiffs initially brought this case in March 2024, alleging in detail that their specific books were included in the "Books3" dataset, and that MosaicML used Books3 to train a series of large language models called the MPT models. Dkt. 1 (Compl.) ¶¶ 24-34. Plaintiffs' recently amended complaint adds claims as to the DBRX models ("DBRX"), which were released in March 2024. Dkt. 131 (Am. Compl.) ¶¶ 39-44.

In contrast to their claims about the MPT models, Plaintiffs do *not* allege that Books3 was used to train DBRX. *See id.* Rather, they vaguely allege—solely on "information and belief"—that because "open data sets" were used to train DBRX, and some "open data sets" include "notorious shadow library websites," Plaintiffs books must have been used to train DBRX. *Id.* ¶ 41. The amended complaint does not identify any specific dataset other than Books3 that

allegedly contains Plaintiffs' books. *Id.* at ¶¶ 27-56. But, in responses to interrogatories asking Plaintiffs to identify all datasets that include their works, Plaintiffs identified specific "shadow libraries" and datasets. Decl. of Ryan Kwock ("Kwock Decl.") ¶ 7; Ex. A. Plaintiffs make no allegation that any specific dataset was used to train DBRX.

DBRX was trained on voluminous and diverse types of data, including software code. As the DBRX announcement explained, DBRX "was pre-trained on 12T tokens of text and code data." The Mosaic Research Team, Introducing DBRX: *A New State-of-the-Art Open LLM* (Mar. 27, 2024), https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm ("DBRX blogpost"). Since the Court's May ruling on DBRX (Dkt. 123), Defendants have produced source code and numerous internal documents about DBRX, including documents identifying DBRX training datasets by name, technical documents, and the DBRX model weights. Kwock Decl. ¶ 2. Plaintiffs' expert has also inspected configuration files used to train DBRX, which include the file paths to the training data used. *Id.* At no point have Plaintiffs asked for more details about any of the dataset names. *Id.* ¶ 8. Nor have they identified any specific training dataset in the documents Defendants have produced as containing their works. Instead, with no justification, Plaintiffs have insisted on the production of *all* training data—*terabytes* of data of all types.

## III. ARGUMENT

### A. Defendants have produced discovery sufficient for Plaintiffs to identify the DBRX training datasets.

Plaintiffs' brief acknowledges that Defendants have produced documents identifying DBRX training datasets by name, DBRX source code, and internal documents and communications about DBRX. Plaintiffs do not claim that the named datasets include the datasets that Plaintiffs identified in their interrogatory responses as containing their books, or the "shadow libraries" referred to in the amended complaint. Rather, Plaintiffs' purported justification for demanding *all* training data boils down to (1) because "MPT2" was used internally as a name before DBRX was released, this separate model *must* have been trained on the same datasets (when documents produced support the opposite inference); and (2) Plaintiffs cannot identify the "*contents* of the training data" based on their names. Br. at 1-2. Neither argument explains why Plaintiffs need *all*

training data to determine whether DBRX was trained on datasets including their books.

Regarding the internal use of the name "MPT2" leading up to DBRX's release, the fact that, after the MPT series, Databricks internally used the name MPT2 when creating a second, new category of LLMs does not suggest that the same datasets—let alone Books3 or any "shadow libraries"—were used. In fact, what Plaintiffs cite illustrates how the two models were separate: Plaintiffs' expert inspected *separate* sets of configuration files, and the DBRX source code labels were "in stark contrast to the MPT model source code." Br. at 2. This does not support an "inference" that the same datasets were used.[1] And the documents Plaintiffs cite show that Defendants specifically looked for datasets *other* than Books3 to use with subsequent models. *See* Dkt. 155-9 (Ex. G) (trying to find long sequence data similarly *sized* as Books3—i.e., *not* Books3). And *none* of the datasets identified in Defendants' documents are datasets that Plaintiffs included in their interrogatory responses, much less their amended complaint.

As to the "contents" of the datasets, Plaintiffs are not claiming that they seek more information about a specific dataset or the training data for any particular dataset that Defendants' productions identified. Rather, Plaintiffs assert that some datasets (including one identified as "code") do not have sufficiently descriptive names or are not "well-known training datasets." Br. at 2. But Plaintiffs are not limiting their request to those datasets, or even to text datasets, as opposed to *code* used to train models how to generate original *software*. Moreover, Plaintiffs acknowledge that some of the datasets included *are* well-known datasets as to which Plaintiffs assert no claims. *See* Br. at 2 & nn. 3 & 4 (discussing specific known datasets). Yet these datasets would still be included in the massive, overbroad production that Plaintiffs demand.

On this issue, the Court's order in *Andersen v. Stability AI* is on point. No. 3:23-cv-00201-WHO (N.D. Cal. June 27, 2025), Dkt. 314. There, the plaintiffs alleged that their works were included in the LAION datasets, but demanded training data from *all* datasets. *Id.* at 2. The Court found that the "non-LAION datasets [were] not relevant to Plaintiffs' copyright claims against Midjourney." *Id.* at 4. Similarly, Plaintiffs here have identified in their amended complaint and

[1] Plaintiffs also cite a document about potential *experiments* being run. Br. at 3. But that document does not suggest that these datasets were included in the DBRX training data at issue here.

interrogatory responses specific datasets that they believe contain their books. Plaintiffs have now received extensive discovery about which datasets were used for DBRX. Plaintiffs do not allege that any of those datasets contain their books—only that it is theoretically possible that *some* copyrighted material could have been used in one of the datasets. But Plaintiffs "must plead facts showing standing as to each defendant" and not rely on the claims of any and all copyright holders. *See Doe v. Walmart Inc.*, No. 18-CV-02125-LHK, 2019 WL 499754, at *8 (N.D. Cal. Feb. 8, 2019) (quoting *Perez v. Wells Fargo & Co.*, No. C 14–0989 PJH, 2015 WL 1887354, at *5 (N.D. Cal. Apr. 24, 2015)). And Plaintiffs have now received discovery that is sufficient to allow them to identify whether the datasets they contend contain their books were used in DBRX.

**B. Plaintiffs have not justified the burden of producing *all* training data.**

Defendants agreed to (and have been) producing highly confidential documents about how DBRX was trained. Kwock Decl. ¶ 2. But producing training data involves a massive data production—dozens of terabytes of data—and Plaintiffs have not explained how this scale of a production is proportionate to the needs of the case, particularly for datasets that contain code and would never include books. *See* DBRX blogpost.

As Plaintiffs noted, the parties did not discuss burden when conferring; Plaintiffs refused to discuss specifics, instead insisting on all training data. But as a compromise on the burden of production, Defendants are willing to produce DBRX training data that Plaintiffs have a reasonable basis to believe contains their books. This would allow Plaintiffs to evaluate the "contents" of certain training data while reasonably limiting discovery to the claims and defenses in this case. As noted above, Plaintiffs' experts have reviewed configuration files that identify the paths for the training datasets used. If Plaintiffs contend that any of those paths would include datasets that contain *their* books, Defendants would be willing to produce that corresponding data. Defendants are also willing to confer with Plaintiffs about specific datasets if Plaintiffs contend that they cannot evaluate them based on their names.

**C. The parties are not at an impasse about the RFPs.**

Plaintiffs contend that this dispute is ripe because "Defendants would not agree to produce documents that relate to DBRX training" for certain RFPs. Br. at 5. But as Plaintiffs' brief

FENWICK & WEST LLP

FENWICK & WEST LLP

illustrates, Defendants have produced numerous documents relating to DBRX training, including documents responsive to Plaintiffs' RFPs. *See, e.g.*, Dkts. 155-4-9; 156-6, 9 (Exs. A-H). Plaintiffs also assert that at the parties' July 24 conference, "Defendants stated that they would withhold further responsive documents as long as their motion to dismiss remains pending." Br. at 6. This is incorrect. Defendants did *not* say that, and Plaintiffs' assertion is belied by the fact that Defendants *have* continued to produce responsive documents since that conference.

After Plaintiffs served dozens of RFPs, the parties met on July 2 about certain requests. For a number of the RFPs (including 35/80, 52/97, and 53/98), Defendants maintained that the requests were already covered by what Defendants agreed to produce. Kwock Decl. ¶ 3.[2] For other requests (such as revenue), Defendants maintained that they were outside the issue of how DBRX was trained. *Id.* Defendants also agreed to follow up with their position on the RFPs' applicability to "in-development models." *Id.* Following this conference, Defendants continued to produce documents. *Id.* Ultimately, on July 23, Defendants reiterated to Plaintiffs that DBRX discovery should be limited to documents related to how DBRX was trained pending the motion to dismiss ruling. *Id.* ¶ 5. When the parties met the next day (about training data), Plaintiffs unilaterally declared an impasse as to all issues, even though Defendants tried to engage further. *Id.* ¶ 6. In all events, Defendants recognize that under the Court's August 7 order, discovery as to DBRX is not stayed, and they will continue to produce responsive documents and confer with Plaintiffs about outstanding issues regarding the breadth of Plaintiffs' requests. Accordingly, there is no live dispute for the Court to resolve.

## IV. CONCLUSION

For these reasons, the Court should deny Plaintiffs' request for all training data. If Plaintiffs can, in good faith, identify training data they believe contains *their* books, Defendants are willing to produce that training data. The Court should require the parties to confer regarding outstanding RFP issues in light of the Court's August 7 order.

[2] Plaintiffs' self-serving correspondence purporting to memorialize the meet and confer is not comprehensive and does not accurately capture what Defendants said or agreed to.

Dated: August 15, 2025

FENWICK & WEST LLP

By: /s/ Jedediah Wakefield

Jedediah Wakefield (CSB No. 178058)
jwakefield@fenwick.com
Ryan Kwock (CSB No. 336414)
rkwock@fenwick.com
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 650.938.5200

David Hayes (CSB No. 122894)
dhayes@fenwick.com
Diana C. Buck (CSB No. 339314)
dbuck@fenwick.com
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Deena Feit (admitted *pro hac vice*)
dfeit@fenwick.com
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 650.938.5200

Charles Moulins (admitted *pro hac vice*)
cmoulins@fenwick.com
Justine Vandermel (admitted *pro hac vice*)
justine.vandermel@fenwick.com
902 Broadway, 18th Floor
New York, NY 10010
Telephone: 212.430.2600
Facsimile: 650.938.5200

Zachary Harned (CSB No. 335898)
zharned@fenwick.com
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone: 310.434.5400
Facsimile: 650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly
MOSAIC ML, INC.