some

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

*In re Mosaic LLM Litigation*

Case No.  24-cv-01451-CRB   (LJC)

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' REQUEST TO DEPOSE ALI GHODSI**

Re: Dkt. No. 179

The parties disagree about whether Plaintiffs may depose the CEO of Defendant Databricks, Dr. Ali Ghodsi.  ECF Nos. 178-3[1], 179.  Although the Court assumes the parties' familiarity with the overall factual and procedural history of the case, it provides the following background to contextualize the instant dispute.  Databricks acquired Defendant MosaicML in July 2023.  *See* ECF No. 131 (Am. Compl.) ¶ 17.  The Court previously granted Plaintiffs' request to designate Ghodsi as a document custodian, in large part based on Plaintiff's showing that Dr. Ghodsi was a principal decision-maker in Databricks' acquisition of MosaicML.  ECF No. 130 at 2-3.  Although the Court acknowledged that it was "speculative that Ghodsi" had "documents regarding Databricks and MosaicML's relationship post-acquisition," absent a showing of undue burden, the Court permitted Plaintiffs to designate Ghodsi as a custodian, warning Plaintiffs they would "have to bear the consequences of making an unwise selection."  *Id.* at 3, 3 n.1 (quotation marks omitted).  At the time the Court issued its order, Judge Breyer had just granted Plaintiffs' request to amend their complaint to add a direct infringement claim against Databricks and the

---

[1] The parties filed the unredacted version of their letter brief under seal at ECF No. 178-3 and copies of the exhibits to their letter brief under seal at ECF Nos. 178-4 to 178-15.  The redacted version over the letter brief is at ECF No. 179.  The Court cites to the versions under seal.

1    scope of Plaintiffs' case against Databricks was in flux.  *See* ECF No. 129.  Since that prior order,

2    Plaintiffs' claims against Databricks have been trimmed down to a claim of vicarious copyright

3    infringement only and Plaintiffs have reviewed Ghodsi's documents.  *See* ECF No. 162, 178-3 at 3

4    (describing "[d]ocuments Ghodsi produced since" the Court's order at ECF No. 130).

5        Having reviewed the record and the parties' arguments, Plaintiffs' request to depose

6    Ghodsi is denied without prejudice.

7    **I.    LEGAL STANDARD**

8        Federal Rule of Civil Procedure 30(a)(1) provides that a party may "depose any person,

9    including a party, without leave of court except" under specific circumstances enumerated at Rule

10   30(a)(2).  A party objecting to a deposition may seek court intervention pursuant to Rule 26(c),

11   which provides that courts "may, for good cause, issue an order to protect a party or person from

12   annoyance, embarrassment, oppression, or undue burden or expense" by, among other things,

13   prohibiting a deposition or limiting its scope.  The party seeking the court's protection bears the

14   burden of "demonstrating harm or prejudice that will result from the discovery."  *Rivera v.*

15   *NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).  "A party seeking to prevent a deposition

16   carries a heavy burden to show why discovery should be denied."  *Celerity, Inc. v. Ultra Clean*

17   *Holding, Inc.*, No. C 05-4374, 2007 WL 205067, at *4 n.1 (N.D. Cal. Jan. 25, 2007).

18       However, courts have recognized that permitting depositions of high-level executives (so-

19   called "apex" witnesses) with scant personal knowledge of the facts of a case "creates a

20   tremendous potential for abuse or harassment."  *Id.* at *3.  Thus, if a party notices a deposition of

21   such a witness, "the court may exercise its discretion under the federal rules to limit discovery."

22   *In re Google Litig.*, No. C 08-03172, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011).  "In

23   determining whether to allow an apex deposition," district courts generally "consider (1) whether

24   the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and

25   (2) whether the party seeking the deposition has exhausted other less intrusive discovery

26   methods."  *Id.*

27       This protection for apex witnesses "exists in tension with the otherwise broad allowance

28   for discovery of party witnesses under the federal rules," and, as the undersigned has noted, has

United States District Court
Northern District of California

2

1    not been endorsed by the Ninth Circuit nor enshrined in the Federal Rules of Civil Procedure.

2    *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012);  *see In re Uber*

3    *Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084, 2025 WL 896412, at *1 (N.D.

4    Cal. Mar. 24, 2025) (explaining that "the Ninth Circuit has used the words 'apex doctrine' exactly

5    once, in a footnote making clear that a decision barring a deposition of cabinet secretary was *not*

6    based on that doctrine.").  The undersigned thus declines to treat the apex doctrine as establishing

7    hard and fast rules for when depositions of high-level executives may occur, instead treating it as

8    "an application of Rule 26's requirements of relevance and proportionality and protecting a person

9    from abuse or harassment."  *In re Apple Iphone Antitrust Litig.*, No. 11-cv-06714, 2021 WL

10   485709, at *4 (N.D. Cal. Jan. 26, 2021).

11   **II.    ANALYSIS**

12        Plaintiffs assert a direct copyright infringement claim against MosaicML for the alleged

13   use of their asserted works to train MosaicML's generative AI models and assert a vicarious

14   copyright infringement claim against Databricks.  They allege that:

> As the corporate parent of MosaicML, Databricks had the right and
> ability to control the direct infringements alleged in Count 1 [for
> direct infringement] committed by MosaicML, at minimum those
> occurring after the acquisition. Databricks failed to exert its right and
> ability to control MosaicML's infringements … Databricks has
> directly benefitted financially from the direct infringement by
> MosaicML … because MosaicML generates revenue from its
> infringing activity, and this revenue belongs to Databricks.

19   ECF No. 131 (Am. Compl) ¶¶ 56-59.

20        "Vicarious infringement occurs when one profits from direct infringement while declining

21   to exercise a right to stop or limit it."  *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068,

22   1071 (9th Cir. 2013).  "Vicarious liability attaches if the [defendant] had both the (1) 'right and

23   ability to supervise the infringing activity' and (2) 'a direct financial interest' in the activity."  *Id.*

24   (quoting *A & M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)).  As to the

25   first element of vicarious liability, a defendant exercises control over the infringing activity where

26   they have "both a legal right to stop or limit the directly infringing conduct, as well as the practical

27   ability to do so."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).  As

28

United States District Court
Northern District of California

to the second, "financial benefit exists where the availability of infringing material acts as a draw for customers." *Napster*, 239 F.3d at 1023 (quotation marks omitted). Thus, discovery into Databricks' ability to supervise and control MosaicML's allegedly infringing use of Plaintiffs' works and into Databricks' financial benefit from this activity is essential to Plaintiffs' vicarious infringement claim.

Plaintiffs argue that Ghodsi's documents show that he has "unique, relevant knowledge of the disputed issues" pertinent to the vicarious infringement claim. ECF No. 178-3 at 3. If that is the case, they have done a peculiar job selecting which exhibits to present to the Court. Their exhibits support that Ghodsi was "involved in the Mosaic acquisition" and prioritized acquiring MosaicML because of its generative AI models. *Id.*; *see* ECF Nos. 178-4–178-9, 178-12. But that Ghodsi sought out MosaicML because of its generative AI capabilities does not show that Ghodsi directed or supervised MosaicML's allegedly infringing activities. Plaintiffs point to, among other things, an email from a MosaicML employee announcing the launch of a new model, meeting notes where Ghodsi asks a question about a potential data source, and an email thread where Ghodsi offers an encouraging but non-substantive message regarding a new generative AI tool. ECF Nos. 178-10, 178-11. That Ghodsi was kept abreast of these developments does not support that he was personally involved in decisions regarding MosaicML's use of allegedly infringing training data.[2]

While the exhibits and Ghodsi's role in the acquisition suggest that Ghodsi has more personal knowledge regarding the claims of the case than the proverbial Safeway CEO being deposed for a slip-and-fall, at this stage, Plaintiffs have not shown that Ghodsi has sufficient relevant information regarding the vicarious infringement claim to justify his deposition. *See In re Apple Iphone Antitrust Litigation*, 2021 WL 485709, at *4. As Defendants argue, Plaintiffs will likely be able to obtain the information they seek from other witnesses. First, Plaintiffs will be deposing MosaicML's CEO Dr. Naveen Rao, who became a vice president of engineering at

United States District Court
Northern District of California

---

[2] Similarly, Plaintiffs do not show that Ghodsi has information regarding Databricks' financial benefit from the alleged infringement.

United States District Court
Northern District of California

1   Databricks after the acquisition.  ECF No. 178-3 at 2[3].  Although Plaintiffs argue that "Rao's

2   deposition does not duplicate questioning Ghodsi over his control (and failure to exercise it)" over

3   MosaicML, Rao will presumably be able to testify as to MosaicML's incorporation into

4   Databricks and whether Databricks controlled MosaicML's alleged infringing activity.  *See, e.g.*,

5   ECF No. 178-14 at 2.  Second, as Plaintiffs admit, they have not noticed any other "depositions of

6   Databricks founders or C-suite management."  *Id.* at 5 n.3.  It is unclear why not: the exhibits

7   Plaintiffs point to in order to show Ghodsi's personal knowledge list numerous other founders and

8   members of Databricks' leadership who appear to have great familiarity with Databricks'

9   acquisition of MosiacML, MosaicML's integration into Databricks, and MosaicML's

10  developments post-acquisition.  While Plaintiffs do not need to depose every other founder or

11  leader at Databricks before turning to Ghodsi, the Court agrees with Defendants that Plaintiffs

12  must first seek information regarding "Databricks' alleged control of MosaicML" and Databricks'

13  alleged financial benefit from the infringing activities from other deponents who are more likely to

14  have direct, relevant knowledge of these matters.  *Id.* at 2.

15          However, the Court disagrees with Defendants to the extent that they argue that the only

16  depositions Plaintiffs may take "to obtain information about Databricks' alleged control of

17  MosaicML" are of the "lower-level … individuals who worked on the MPT models."  *Id.*

18  Although the Court agrees that deposing engineers or other employees who directly worked on the

19  MPT models would likely be appropriate, it does not follow that Plaintiffs are barred from

20  deposing executives or senior employees who were involved in strategic decision-making or have

21  relevant knowledge regarding Databricks' ability to control MosaicML's allegedly infringing

22  activities or regarding alleged Databricks' financial benefit from such activities.[4]  *See Apple v.*

23  *Samsung*, 282 F.R.D. at 263 (explaining the impropriety of using the "apex designation as applied

24  to multiple executives" as a "tool for evading otherwise relevant and permissible discovery").

25  Rather—and again, without prejudice to any arguments the parties may raise in the future

26

27  _____

    [3] Per Plaintiffs, Rao has since left Databricks.  *Id.* at 5.

28  [4] This is without prejudice to any dispute the parties may present to the Court regarding the
    appropriateness of a particular deposition.

regarding particular depositions—the Court anticipates that select depositions of Databricks' financial officers and/or technology officers with more relevant knowledge than Ghodsi may be warranted.

The Court accordingly denies Plaintiffs' request to depose Dr. Ghodsi.  This denial is without prejudice and Plaintiffs may renew their request if subsequent discovery reveals that Ghodsi has personal, relevant knowledge that pertains to Plaintiffs' vicarious infringement claim that is not unreasonably cumulative or duplicative of other witnesses' testimony.  Plaintiffs may also renew their request if Defendants unreasonably object to the depositions of other Databricks executives or senior employees who likely possess relevant information.

**IT IS SO ORDERED.**

Dated: November 4, 2025

LISA J. CISNEROS
United States Magistrate Judge