November 28, 2025

The Honorable Lisa J. Cisneros
United States District Court for the Northern District of California

      Re: *In Re Mosaic LLM Litigation*; Case No. 3:24-cv-01451-CRB

Dear Magistrate Judge Cisneros,

      The parties submit this joint letter brief regarding several discovery disputes: (1) Defendants' "sufficient to show" limitations in response to set three of Plaintiffs' RFPs; (2) Plaintiffs' motion to compel production of the Databricks/Mosaic acquisition agreement (RFPs 3, 11); and (3) Plaintiffs' motion to compel document retention-related documents (Mosaic RFP No. 104; Databricks RFP No. 121, subparts a., c., e., and g.). The parties met and conferred on November 19, 2025 and November 20, 2025, but were unable to reach a resolution on these issues.[1]

---

[1] The relevant discovery and case management deadlines are as follows: (1) Close of Fact Discovery on Plaintiffs' copyright claim/fair use: November 21, 2025; (2) Close of Expert Discovery: March 25, 2026; (3) Summary Judgment Motions on Plaintiffs' copyright claim/fair use: April 24, 2026; (4) Oppositions to Summary Judgment Motions: June 8, 2026; (5) Replies to Summary Judgment Motions: July 10, 2026.

**Plaintiffs' Position**

I. **Improper "Sufficient to Show" Limitations**

Defendants wrongly claim that they must produce only documents "sufficient to show" certain issues, when at least 28 RFPs request "All" documents and communications. *See* Ex. B, MosaicML's Resps. to RFP Nos. 105 to 114, and 117 to 120; Ex. C, Databricks's Resps. to RFP Nos. 122 to 131, and 134 to 137. Producing documents "sufficient to show" is insufficient, especially where the material sought is relevant beyond simply whether something occurred. *See Laryngeal Mask Co. Ltd. v. Ambu A/S*, 2009 WL 10672487, at *2 (S.D. Cal. Jan. 27, 2009) ("*Ambu*") (finding defendant's "sufficient to show" responses improper as to *twenty separate RFPs* and rejecting argument that "relating to" RFPs are *per se* improper); *Carlin v. DairyAmerica, Inc.*, 2017 WL 3601495, at *3 (E.D. Cal. Aug. 22, 2017) (granting motion to compel "[a]ll documents and communications regarding, relating, or referring to" a particular subject, after defendant limited production to "sufficient to show"). In other cases against AI companies for illegally collecting data, courts have compelled production of *all* documents requested rather than ones simply "sufficient to show." In *In re Clearview AI, Inc., Consumer Priv. Litig.*, the court rejected defendants' "sufficient to show" limitations on requests involving conduct in other states because defendants' extraterritoriality defense implicated conduct such as the *scraping of internet websites*, *interactions with users/customers*, and *storage of data* in the relevant states. 2022 WL 22903326, at *4 (N.D. Ill. Aug. 18, 2022) ("*Clearview AI*").

Here, as in the cases above, Defendants "unilaterally reduced the scope of the request, which is improper[.]" *Ambu*, 2009 WL 10672487 at *3.[2] For example:

- **RFP 105 to MosaicML / RFP 122 to Databricks:** Defendants commit to producing only documents *sufficient to show* how datasets containing pirated books were "acquired, used, and made available."[3] Because a core issue in this case is how Defendants acquired and stored copyrighted data, with each instance or communication potentially relevant, the Court should order production of *all* documents on this category. *See, e.g., Clearview AI*, 2022 WL 22903326, at *4; *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1031 (N.D. Cal. 2025) (storage of copyrighted books required independent fair use analysis).
- **RFP 111 to MosaicML / RFP 128 to Databricks:** These requests seek documents related to third parties who downloaded the pirated books hosted by Defendants. Defendants *admit* . *See, e.g.,* MosaicML's Resp to RFA No. 367; Databricks' Resp. to Pltfs' RFA No. 280. But they have yet to identify ███████████████████████████████████████████████████████████████. Hanlin Tang—MosaicML's Chief Technical Officer and one of Defendants' 30(b)(6) witnesses—testified vaguely that ███████████████████████████████████████████████" Ex. G, Tang Tr., 87-4-5. Production of all documents responsive to these requests—not just documents sufficient to show—is necessary to show the scope of Defendants' conduct.

---

[2] The cases Defendants cite are inapposite. In *Champion*, the plaintiffs issued broad RFPs *to a third party* under the Hague Convention. *Champion v. Feld Ent., Inc.*, 2022 WL 1813608, at *4 (S.D. Cal. June 2, 2022). In *Galanski v. Wal-Mart Assocs., Inc.*, the requests the court narrowed to "sufficient to show" sought documents that specified locations, indicated whether something occurred, or indicated awareness of a problem. 2024 WL 2701084, at *8 (E.D. Cal. May 24, 2024). Here, *all* materials sought are relevant—to show the scope of Defendants' conduct.

[3] The parties agree that "used" encompasses storage, retention, distribution, or deletion for purposes of these requests.

- **RFP 118 to MosaicML / RFP 135 to Databricks:** Defendants agreed only to produce documents sufficient to show "any policies regarding MosaicML's responses to complaints concerning the use of copyrighted material." This limitation improperly excludes, for example, communications where employees discuss or interpret the policies.
- **RFP 119 to MosaicML / RFP 136 to Databricks:** Plaintiffs request documents and communications relating to a document hosted by MosaicML on GitHub titled ▓▓▓▓▓▓ or ▓▓▓▓▓▓ Databricks employee Brandon Cui describes this document as ▓▓▓▓▓▓ ▓▓▓▓▓▓. *See* Ex D (MOSAIC_ONAN_00003900). Defendants state they produced responsive material from the ▓▓▓▓▓▓ as part of a source code inspection, but refuse to search for all communications about. Defendants must produce *all* Documents and Communications concerning the ▓▓▓▓▓▓ GitHub repository.
- **RFP 120 to MosaicML / RFP 137 to Databricks:** Plaintiffs request Defendants search for and produce *all* documents that summarize or index training data. Documents summarizing or indexing the training data are critical for understanding data composition and will streamline Plaintiffs' experts' analysis of voluminous training data.

**Final Proposed Compromise:** Defendants produce *all* documents and communications responsive to RFP Nos. 105 to 111, and 118 to 120 to MosaicML (*see* Ex. B) and RFP Nos. 122 to 128, and 135 to 137 to Datbricks (*see* Ex. C). Plaintiffs will accept a sufficient to show limitation for RFPs 112-114 and 117 to MosaicML, and RFPs 129-131 and 134 to Databricks.

**II.   The Court Should Order Production of the MosaicML Acquisition Agreement**

Plaintiffs requested, and Defendants refuse to produce, Databricks' purchase agreement of MosaicML, which is responsive to RFPs 3 and 11 and plainly relevant. *See* Ex A. Databricks disputes that it had the right and ability to control acts of direct infringement by MosaicML after the acquisition. *See* Defendants' Answer to FACC. But witnesses have indicated that ▓▓▓▓▓▓ ▓▓▓▓▓▓ Ex. F, Tang Tr., 38:6-7; Ex. G, Frankle Tr., 15:8-13. Determining whether Databricks controlled MosaicML requires looking at their purchase agreement. *See Residual Income Opportunities, Inc. v. RWN, Inc.*, 2016 WL 11969810, at *6 (C.D. Cal. Sept. 14, 2016) (compelling production of purchase agreement because issue of liability "cannot be decided without looking at the asset purchase agreement between Defendants.").

Defendants contend Plaintiffs have not served an RFP that covers the acquisition agreement. But RFP 3 requests agreements "related to the acquisition and/or use of Training Data." Databricks ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The purchase agreement is therefore within the scope of documents requested by RFP 3 and clearly discoverable. It is also responsive to RFP 11—which requests documents "evidencing any income generated from or *related to* your LLMs"—because MosaicML's development of the MPT LLM models was a significant factor in Databricks's $1.3 billion purchase of Mosaic ML.

**Final proposed compromise:** Plaintiffs respectfully request the Court orders Databricks to produce the MosaicML acquisition agreement.

**III.   The Court Should Order Production of Defendants' Retention Policies**

Plaintiffs move to compel production of documents responsive to RFP 104 to MosaicML / RFP 121 to Databricks, subparts: **a.** (document retention policies); **c.** (policies and guidelines for

use and retention of e-mail and instant messages); **e.** (policies regarding the use of personal devices); and **g.** (documents regarding destruction or spoliation of potentially relevant ESI). *See* Exs. B, C. "Document retention policies are generally discoverable." *Velasco v. Mercedes-Benz USA, LLC*, 2019 WL 6825744, at *2 (C.D. Cal. June 13, 2019); *Sharma v. BMW of N. Am. LLC*, 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016) (similar).

Defendants' proposal to produce "document retention policies and guidelines that would have applied to the MPT models" improperly excludes retention policies that apply to other key categories of documents in this case (emails, text messages, financials statements, slack messages, etc). The requested documents will "help Plaintiffs determine the universe of responsive documents and evaluate any gaps in document production." *Sharma*, 2016 WL 1019668, at *4. And it is evident there *are* gaps in production. For example, Defendants' former employees have admitted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. E, Chiley Tr. 206:2-7), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**Final proposed compromise:** Plaintiffs respectfully request the Court order Defendants to produce documents responsive to RFP 104 to MosaicML / RFP 121 subparts a., c., e., and g.

### Defendants' Position

In Plaintiffs' eleventh-hour demand for more discovery, brought after the close of fact discovery, they seek documents that (1) are not proportional to the needs of the case, (2) they did not request, or (3) are simply irrelevant. More than a month after Defendants served their responses to Plaintiffs' *third* set of RFPs—and months after the substantial completion of production—Plaintiffs demand *all* documents about a variety of topics, when Defendants already produced numerous documents in response to Plaintiffs' late-arising requests. In short, *after* the close of fact discovery, Plaintiffs want Defendants to perform a complete re-review of documents—at a massive expense of time and resources—even though Plaintiffs have not identified any actual deficiencies in Defendants' production. The Court should deny each demand.

**The RFPs requesting "all documents" are not proportional to the needs of the case.** Narrowing overbroad requests to "sufficient to show" is a frequently used and entirely reasonable way to meet Rule 26's proportionality requirement. *See, e.g.*, *Champion v. Feld Ent., Inc.*, 2022 WL 1813608, at *5 (S.D. Cal. June 2, 2022) (expressing concern that "requests for 'all documents' was overbroad and not proportional to the needs of the case" and narrowing certain requests to "sufficient to show"); *see also Galanski v. Wal-Mart Assocs., Inc.*, 2024 WL 2701084, at *8 (E.D. Cal. May 24, 2024) (narrowing certain requests to "sufficient to show"). Unsurprisingly, Plaintiffs' cases underscore that the appropriateness of "sufficient to show" responses depends on the specific request. *See Laryngeal*, 2009 WL 10672487, at *2 (responding party did not allege specific burden); *Carlin*, 2017 WL 3601495, at *3 (assessing requests on a case-by-case basis); *In re Clearview AI*, 2022 WL 22903326, at *4 (discussing response in light of "fact-intensive" inquiry for affirmative defense). Even Plaintiffs implicitly acknowledge that "sufficient to show" responses are not inherently improper—they agreed to this limitation for other requests and have even served "sufficient to identify" requests themselves.

Defendants adopted that approach to provide Plaintiffs with the relevant information without imposing a disproportionate and undue burden on Defendants. That was entirely proper

here, where the requests were facially overbroad, sought irrelevant information, and were served long past the agreed substantial completion deadline. It is even more appropriate now, after Plaintiffs delayed raising a dispute and fact discovery has closed. *See In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 5579222, at *3 (S.D. Cal. Nov. 30, 2021) ("The Court will not exercise its broad discretion to permit or deny discovery in a manner that rewards plaintiff's lack of diligence by requiring defendants to search for responsive documents anew" (citation modified)).

**RFPs 105/122:** Plaintiffs' request for "[a]ll Documents and Communications Concerning," *inter alia*, Defendants' use of the RedPajama – Books and Books3 dataset, is plainly overbroad and unduly burdensome. Defendants reasonably objected (on grounds including relevance, overbreadth, burden, and proportionality) but agreed to respond to the *substance* of the request—documents showing how these datasets were used and made available. Defendants have already conducted a thorough search and produced voluminous data showing the uses of those datasets, including source code and modified versions of the datasets themselves, along with extensive internal and external communications about those uses. Plaintiffs now demand that Defendants conduct a massively expensive, time-consuming post-cutoff *re-review* for any redundant or duplicative communications "Concerning" these datasets, even though those uses were already fully disclosed, and regardless of whether the rest of the communication might contain irrelevant but sensitive customer information. Plaintiffs cannot justify the enormous burden and expense of demanding an untimely re-review for additional documents containing duplicative information.

**RFPs 111/128:** These requests for "[a]ll Document and Communications" listing or summarizing third parties "who downloaded any Pirated data" are similarly disproportionate. Defendants agreed to provide documents identifying these parties and have produced numerous documents and communications with the parties to whom Defendants made the relevant datasets available (along with the datasets themselves). These documents show each party that was provided access, when, and the surrounding circumstances. Plaintiffs fail to explain why they need "all" documents identifying the *same* parties, particularly when some documents could also contain proprietary customer information unrelated to this case. *See, e.g.*, *Westerman v. FTI Consulting, Inc.*, 2024 WL 4314789, at *21 (N.D. Cal. Sept. 25, 2024) (narrowing requests for all documents and communications relating to "actual work locations" of specific individuals to "documents sufficient to show the actual work locations" of those individuals).

**RFPs 118/135:** Defendants agreed to produce documents sufficient to show "policies regarding MosaicML's responses to complaints concerning the use of copyrighted material as Training Data used to train the MPT Models," including communications containing any such policies. As MosaicML witnesses have testified, Mosaic was a start-up without "policies" around use of copyrighted materials. Plaintiffs have not explained what more they are looking for, much less why Defendants should conduct a re-review for documents "regarding" any such policies.

**RFPs 119/136:** These requests are a fishing expedition. Pointing to a code repository where a former employee said that a dataset *not at issue in this case* was available, Plaintiffs now want "[a]ll Documents and Communications concerning" that repository. Defendants already searched the repository and produced the only potentially responsive material (a short file with code). Plaintiffs do not contend that anything from that file necessitated the production of additional documents. Rather, they simply want all documents related to the name of a repository,

without even showing that the repository itself is relevant to their claims. That is equivalent to demanding all communications relating to a *file cabinet* that once held a single relevant document.

**RFPs 120/137:** Plaintiffs' request for "[a]ll Documents and Communications that list or summarize the Training Data" is again beyond any needs of this case. Aside from producing the MPT Models' training data *itself* (comprising terabytes of data) and the MPT Models' configuration files, Defendants have produced model cards for the MPT Models—which *list and summarize the training data*. Plaintiffs do not and cannot credibly contend that this is insufficient.

**The Court should deny Plaintiffs' request for the acquisition agreement.** Plaintiffs never served a request for the MosaicML acquisition agreement, and they have known for over a year that Defendants did not plan to produce it. Now that discovery has closed, they improperly contort old requests to try to reach the agreement. But a party "may not use a motion to compel to obtain a document that he did not request in the request for production." *Carter v. Dawson*, 2011 WL 1806497, at *4 (E.D. Cal. May 10, 2011). That should end the inquiry. RFP 3 requests agreements "related to the acquisition and/or use of *the Training Data*." Ex. A (emphasis added). Databricks did not acquire the "Training Data." Moreover, the datasets and models at issue were publicly and freely available. If Plaintiffs wanted documents about acquiring *a company*, they could have requested that. Moreover, in *July 2024*, Defendants agreed to produce "documents sufficient to show any agreements *by which Mosaic acquired and/or used data from the RedPajama – Books Dataset and Books3 Dataset*" to train the MPT models, which obviously does not include the acquisition agreement. *See id.* (emphasis added). Similarly, RFP 11 requests documents "evidencing any income generated" from the MPT Models, and Defendants agreed to produce "documents sufficient to show revenue Defendants generated from fees to access and use" the MPT Models. *See id*. Defendants served those unambiguous responses over a year ago. Until November 7—two weeks before fact discovery closed—Plaintiffs never claimed that those requests called for the acquisition agreement, because they do not.

**The Court should deny Plaintiffs' request for retention policies.** After fact discovery has closed, Plaintiffs seek retention policies so they can "evaluate any gaps in document production." This is yet another attempt to reopen discovery. But even if the request were timely, it would not be proportional. *See Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663, at *15 (D. Md. Feb. 21, 2017) (denying request for retention policies). Indeed, *Plaintiffs* objected to the very same request. Ex. H (Plaintiff Nazemian's Response to RFP set 7) (all Plaintiffs served the same response). Here, Plaintiffs have not identified any actual "gaps" in Defendants' productions. Instead, Plaintiffs assert that certain employees used a personal messaging application. But that does not explain why Plaintiffs seek corporate retention policies. Moreover, the only retention "policy" or guidance that Defendants have located is in the form of legal advice and direction from legal personnel, which is privileged. *In re Uber Techs., Inc., Passenger Sexual Assault Litig*., 2024 WL 5190360, at *5 (N.D. Cal. Dec. 21, 2024) (guide prepared by in-house counsel advising employees is privileged). Even if that document were relevant (which Defendants deny), Defendants are withholding it based on privilege.

**Final Compromise:** The Court should deny all of Plaintiffs' requests.

Respectfully Submitted,

By: */s/ Joseph R. Saveri*
Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
William Castillo Guardado (SBN 294159)
Holden Benon (SBN 325847)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com
hbenon@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile:  (415) 395-9940
mb@buttericklaw.com

Bryan L. Clobes (admitted pro hac vice)
Alexander J. Sweatman (admitted pro hac vice)
Mohammed A. Rathur (admitted pro hac vice)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

By: */s/ Jedediah Wakefield*
Jedediah Wakefield (CSB No. 178058)
Ryan Kwock (CSB No. 336414)
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  (415) 875-2300
Telephone:  (415) 281-1350
jwakefield@fenwick.com
rkwock@fenwick.com

David Lloyd Hayes (CSB No. 122894)
Diana C. Buck (CSB No. 339314)
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
dhayes@fenwick.com
dbuck@fenwick.com

Charles Moulins (admitted *pro hac vice)*
Justine Vandermel (admitted *pro hac vice*)
**FENWICK & WEST LLP**
902 Broadway, Suite 14
New York, NY 10010
Telephone:  (212) 430-2600
Facsimile:   (650) 938-5200
cmoulins@fenwick.com
justine.vandermel@fenwick.com

Brian D. Buckley (admitted *pro hac vice*)
Deena Feit (admitted *pro hac vice*)
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: (206) 389-4510
dfeit@fenwick.com
bbuckley@fenwick.com

<div style="column-count:2">

Justin A. Nelson (admitted pro hac vice)
Alejandra C. Salinas (admitted pro hac vice)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com

Rachel J. Geman (admitted *pro hac vice*)
Danna Z. Elmasry (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN**
  **& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
rgeman@lchb.com
delmasry@lchb.com

Zachary Harned (CSB No. 335898)
**FENWICK & WEST LLP**
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone: (310) 434-5400
zharned@fenwick.com

*Counsel for Defendants
Databricks, Inc., and Mosaic ML, LLC,
formerly Mosaic ML, Inc.*

</div>

Anne B. Shaver
**LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
ashaver@lchb.com

Betsy A. Sugar (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

**ATTESTATION OF CONCURRENCE IN FILING PURSUANT TO CIVIL L.R. 5-1(i)(3)**

I, Trevor D. Nystrom, attest that the other Signatory has concurred in the filing of this document.

Dated: November 28, 2025                    */s/ Trevor D. Nystrom*
                                             Trevor D. Nystrom