JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
RYAN KWOCK (CSB No. 336414)
rkwock@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

DAVID HAYES (CSB No. 122894)
dhayes@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly MOSAIC ML, INC.

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In Re Mosaic LLM Litigation* | Master File Case No. 3:24-cv-01451-CRB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT**<br><br>Date: January 16, 2026<br>Time: 10:00 a.m.<br>Location: Video Conference (Zoom)<br>Judge: Hon. Charles R. Breyer |

FENWICK & WEST LLP

**TABLE OF CONTENTS**


**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..... 1

STATEMENT OF ISSUES TO BE DECIDED ..... 2

BACKGROUND ..... 3

A. Plaintiffs' Original Complaint Based on MosaicML's Use of Books3. ..... 3

B. Plaintiffs' Prior Attempt to Add Claims Regarding DBRX. ..... 4

C. Substantial Completion and the Parties' August Case Management Statement. ..... 5

D. Plaintiffs' Motions to Seek Leave to Amend and to Extend Fact Discovery ..... 6

ARGUMENT ..... 7

A. Plaintiffs' motion is untimely, and Plaintiffs cannot show diligence. ..... 8

B. Plaintiffs' proposed amendment would prejudice Defendants. ..... 10

C. Plaintiffs' motion shows bad faith. ..... 13

CONCLUSION ..... 15


FENWICK & WEST LLP

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946 (9th Cir. 2006) .......... 7

*Brownlee v. 12745 Moorpark LLC*, No. 2:13-cv-9188-ODW, 2014 WL 4978441 (C.D. Cal. Oct. 3, 2014) .......... 14

*Cabrera v. Residential Credit Sol. Inc.*, No. CV 14-09212 DMG, 2015 WL 13916231 (C.D. Cal. Sept. 10, 2015) .......... 13, 14

*Callan v. Amdahl Corp.*, No. C-94-0295-VRW, 1995 WL 261420 (N.D. Cal. Apr. 24, 1995) .......... 8

*Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649 (N.D. Cal. 2025) .......... 9

*Herrera v. Cnty. of San Benito*, No. 24-CV-01133-NC, 2025 WL 2323350 (N.D. Cal. Aug. 11, 2025) .......... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 15-MD-02672-CRB, 2023 WL 2095921 (N.D. Cal. Feb. 17, 2023) .......... 10, 13

*Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114 (N.D. Cal. 2011) .......... 7

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) .......... 7, 8

*Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2025 WL 82205 (N.D. Cal. Jan. 13, 2025) .......... 12

*Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, Dkt. 300 (Dec. 27, 2024), Dkt. 346 (Dec. 18, 2024) .......... 9

*Kobayashi v. McMullin*, No. 2:19-cv-06591-SSS (MAA), 2023 WL 11822286 (C.D. Cal. July 7, 2023) .......... 13

*Liberty Mut. Ins. Co. v. California Auto. Assigned Risk Plan*, No. C 11-1419 MMC, 2012 WL 3277213 (N.D. Cal. Aug. 9, 2012) .......... 7

*Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980 (9th Cir. 1999) .......... 11

*Makkai v. Databricks, Inc.*, No. 3:24-cv-02653-CRB (N.D. Cal. May 2, 2024), Dkt. 1 .......... 3

*Martinez v. Bay Area Rescue Mission*, No. 22-CV-06092-CRB, 2025 WL 1223555 (N.D. Cal. Apr. 28, 2025) .......... 10, 13


FENWICK & WEST LLP

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) .......... 12

*Muench Photography, Inc. v. Pearson Educ., Inc.*,
No. 12-CV-01927-WHO, 2013 WL 4426493 (N.D. Cal. Aug. 15, 2013) .......... 7, 10, 13

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 11

*Pizana v. SanMedica Int'l LLC*,
345 F.R.D. 469 (E.D. Cal. 2022) .......... 10

*Scognamillo v. Credit Suisse First Bos., LLC*,
587 F. Supp. 2d 1149 (N.D. Cal. 2008) .......... 10

*SpinMaster Ltd. v. Your Store Online*,
Nos. CV 09-2121 CAS (JCx), CV 09-5803 CAS (JCx), 2010 WL 4883884 (C.D. Cal. Nov. 22, 2010) .......... 10

*TrustLabs, Inc. v. Jaiyong*,
No. 21-CV-02606-CRB, 2024 WL 1354486 (N.D. Cal. Mar. 30, 2024) .......... 10

FENWICK & WEST LLP

FENWICK & WEST LLP

Defendants MosaicML, LLC ("MosaicML") and Databricks, Inc. ("Databricks") (collectively, "Defendants") oppose Plaintiffs' motion to modify the scheduling order and for leave to file a second amended consolidated complaint ("SACC") (Dkt. 196).

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

With fact discovery already closed, Plaintiffs ask the Court to radically expand this case. As the Court will recall, this case has always been about Defendant MosaicML's use of a dataset called "Books3" to train specific large language models ("LLMs") called the MPT models. Plaintiffs are five authors who allege that the Books3 dataset contained some of their books. On that basis, Plaintiffs' current Complaint alleges (1) a direct infringement claim against MosaicML based on its use of Books3 to train LLMs called the MPT models; and (2) a vicarious infringement claim against Databricks, based on its alleged ability to control and financial interest in MosaicML's alleged infringement. Plaintiffs added a direct infringement claim against Databricks over a different model called DBRX, but the Court dismissed that claim without leave to amend. Dkt. 162. Now, after the close of fact discovery and long after the deadline to amend pleadings, Plaintiffs seek to pursue fundamentally new and different claims, including not only a direct infringement claim against Databricks, but entirely new *contributory* infringement and *inducement* claims, both of which require proof of *third-party* infringement.

Plaintiffs' belated motion cannot satisfy either the diligence or prejudice prongs of the "good cause" test under Rule 16(b). Hoping to show diligence, Plaintiffs assert that their untimely amendment is based on "recent" discovery showing Defendants' distribution of datasets to third parties. That is simply false. Plaintiffs told the Court back in *August* that they had learned in discovery that "MosaicML distributed copies of the Books3 dataset to third parties," and that Plaintiffs planned to seek leave to amend "based on recent discovery." Dkt. 170 at 1, 6-7. Unsurprisingly, most of the documents Plaintiffs cite in support of their motion were produced *before* the end of August. Thus, Plaintiffs' claim of some late-breaking revelation cannot withstand scrutiny.

Permitting Plaintiffs' untimely amendment would also inflict very real prejudice on Defendants. Courts routinely recognize that requiring parties to reopen discovery and expend

additional time and money addressing new claims is precisely the type of prejudice that warrants denial of leave to amend. While Plaintiffs assure the Court otherwise, the amendment would significantly expand and delay this case. Indeed, Plaintiffs admit that they now seek discovery about DBRX, even though the Court has repeatedly shut down Plaintiffs' efforts to pursue precisely that discovery because the operative Complaint did not support it. Meanwhile, Plaintiffs claim that their request for a 45-day extension of the case schedule is unrelated to their proposed amendment, but that, too, is false. Indeed, Plaintiffs expressly seek the extension to pursue discovery from multiple third parties about their alleged use of the Books3 dataset, which is key to Plaintiffs' new secondary liability claims.

Plaintiffs also fail to satisfy the factors that courts in the Ninth Circuit consider when deciding whether to grant leave to amend under Rule 15. In addition to unreasonable delay and unfair prejudice, the amendment is in bad faith, as evidenced by Plaintiffs' (1) deliberately waiting to complete discovery before amending, (2) offering misleading excuses for their delay, and (3) claiming that their amendment would not require new discovery while simultaneously seeking to extend the case schedule for precisely that purpose. The Court should deny Plaintiffs' untimely and bad-faith motion for leave to amend.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should grant Plaintiffs leave to file an amended complaint to add a direct infringement claim against Databricks, a contributory copyright infringement claim against MosaicML and Databricks, and an inducement of copyright infringement claim against MosaicML and Databricks, when (1) Plaintiffs have not shown diligence, but instead delayed for months after admittedly being aware of the alleged basis for their new claims; (2) amending now would unfairly prejudice Defendants by dramatically expanding the case and requiring extensive additional discovery (including from third parties) after the deadline to complete discovery has passed; and (3) Plaintiffs' conduct in seeking the amendment shows bad faith.

## BACKGROUND

### A. Plaintiffs' Original Complaint Based on MosaicML's Use of Books3.

This case began in March 2024, when three of the named Plaintiffs filed their original complaint. Dkt. 1 (Compl.). Plaintiffs' original complaint alleged a straightforward, albeit flawed, theory: that MosaicML copied Plaintiffs' copyright-protected works without their authorization to train MosaicML's series of MPT models. *Id.* ¶¶ 4-5, 26-34. Specifically, Plaintiffs alleged that a dataset called "Books3" contained copies of their works, and that Books3 was included in a broader dataset (called "RedPajama – Books") that Mosaic copied as part of the process for training the MPT models. *Id.* ¶¶ 26-34. MosaicML had publicly disclosed that it used RedPajama – Books, which contains Books3, as one of the datasets used to train the MPT models. *See, e.g.*, *id.* ¶ 24 (quoting MPT-7B blogpost).

Based on those allegations, Plaintiffs brought a direct infringement claim against MosaicML and a claim for vicarious infringement against Databricks as MosaicML's corporate parent. *Id.* ¶¶ 36-42, 43-46. Plaintiffs did not bring a direct infringement claim against Databricks or allege that Databricks had used the Books3 dataset when training any models. About two months later, two more Plaintiffs brought a virtually identical complaint. *Makkai v. Databricks, Inc.*, No. 3:24-cv-02653-CRB (N.D. Cal. May 2, 2024), Dkt. 1. The cases were related on May 13, 2024, Dkt. 45, and consolidated in December 2024, Dkt. 57.

Defendants took the position that, even if MosaicML had made unauthorized copies of Plaintiffs' or putative class members' works, any such copying was fair use under Section 107 of the Copyright Act and therefore did not infringe any copyrights. Because the fair use defense could moot class certification questions and potentially dispose of the entire litigation, Defendants proposed that the Court consider a motion for summary judgment based on fair use *before* considering class certification. Dkt. 47 at 5-6. Defendants therefore proposed a streamlined schedule that would expeditiously move the Court and the parties toward consideration of the potentially case-dispositive fair use issue. *Id.* at 19-20. Plaintiffs "disput[ed] that fair use is suitable for resolution via dispositive motion practice," and opposed consideration of that defense before

FENWICK & WEST LLP

class certification issues. *Id.* at 4. The Court, however, adopted Defendants' streamlined schedule, which promised to greatly simplify the proceedings. Dkt. 53 at 21.

**B. Plaintiffs' Prior Attempt to Add Claims Regarding DBRX.**

Throughout fact discovery, Defendants stipulated to significant discovery extensions, extending the schedule three times. Dkts. 82, 111, and 172. In aggregate, those extensions pushed the close of fact discovery back by more than 200 days.

On May 30, 2025, the last day to seek leave to amend the pleadings, Plaintiffs moved to amend their Complaint to add a direct infringement claim against Databricks based on the DBRX model, and to identify additional works that they alleged Defendants had infringed. Dkt. 124. Defendants opposed that motion on several grounds, including that Plaintiffs had unduly delayed their request to amend. Dkt. 126 at 5-8, 9-10. While the Court granted leave to amend, it admonished Plaintiffs for delaying the amendment. Indeed, the Court held that "Plaintiffs have not provided a satisfactory explanation for their delay" and that their excuses for that delay "d[id] not justify over a year of delay in this case." Dkt. 129 at 3. But the Court held that granting leave to amend was appropriate because "[t]he parties are still in the midst of discovery, with several months left to go," which the Court found "differentiates this case from others in which courts have held that undue delay warrants denial of leave to amend." *Id.* The Court similarly held that Defendants would not be prejudiced because "[d]iscovery is still open and will remain so for several months." *Id.* at 5. Thus, in allowing Plaintiffs' belated amendment, the Court relied heavily on the fact that several months remained before the scheduled close of fact discovery.

Defendants moved to dismiss Plaintiffs' direct copyright infringement claim against Databricks and Plaintiffs' claims regarding DBRX, arguing that Plaintiffs' new allegations boiled down to speculation. Dkt. 133 at 2. The Court agreed with Defendants that Plaintiffs' threadbare and speculative DBRX allegations could not survive the pleading stage. Dkt. 162. The Court held that "Plaintiffs' allegations regarding the DBRX models' underlying data sets are far too generalized to state a claim for copyright infringement." *Id.* at 3. It also criticized Plaintiffs' logically untenable inference that, because the MPT models were trained on Books3, DBRX must likewise have been trained on some dataset containing Plaintiffs' books. *Id.* at 4 ("A plaintiff

FENWICK & WEST LLP

cannot use one alleged instance of infringement to simply presume that the same party committed more infringement."). The Court then considered Plaintiffs' arguments that it "should allow them to proceed with discovery as to the DBRX models and thus leave open the possibility for amendment." *Id.* at 5. The Court rejected Plaintiffs' overreach: "This [request] gets discovery backward. Discovery is not a 'fishing expedition[].'" *Id.* (citation omitted). Finally, the Court instructed Plaintiffs that they could seek to amend again only in very limited circumstances: "If discovery into the surviving claims reveals information that would permit them to allege *facts—not conclusions*—as to Databricks' *liability for direct infringement*, Plaintiffs may move for leave to further amend their complaint." *Id.* (emphasis added).

### C. Substantial Completion and the Parties' August Case Management Statement.

The parties produced documents on a rolling basis, and document production was substantially completed by August 22, 2025. Declaration of Ryan Kwock ("Kwock Decl.") ¶ 2. Defendants, who help businesses train their own LLMs, produced documents regarding providing customers with access to publicly available datasets in a format that facilitated LLM training. The documents Defendants produced through August 2025 included more than 100 documents about Defendants making datasets containing Books3 available to certain third parties, including dozens of notifications for internal engineering tickets about making these datasets available. *Id.* ¶ 4. These documents produced through August 2025 identified specific third parties, including several documents about third parties that Plaintiffs now seek to depose. *Id.* Under the parties' agreed schedule, fact discovery closed on November 21. Dkt. 172.

Based on the documents produced throughout the summer, Plaintiffs stated in the parties' August 29, 2025 Case Management Statement that "discovery indicates that MosaicML distributed copies of the Books3 dataset to third parties," and that Plaintiffs "expect to seek leave to file a second amended consolidated complaint to add a direct infringement claim against Databricks based on recent discovery produced by Defendants." Dkt. 170 at 1, 6-7. As Defendants pointed out at the time, the Case Management Statement was the first time that Plaintiffs disclosed their

intent to again seek leave to amend their complaint. *See id.* at 7. Plaintiffs stated they would "meet and confer with Defendants prior to seeking leave." *Id.*

Despite that representation, throughout September and October, Plaintiffs did not confer with Defendants about their proposed amended complaint or let Defendants know what claims they intended to add. Kwock Decl. ¶ 15. Following the substantial completion of production, Plaintiffs began to take depositions, beginning in October, with depositions continuing through December 5 (past the discovery cutoff) because of Plaintiffs' belated November request to take five additional depositions. *See id.* ¶ 16; Dkt. 187 (order granting Plaintiffs' request).

**D. Plaintiffs' Motions to Seek Leave to Amend and to Extend Fact Discovery.**

On November 12, 2025, the week before fact discovery closed, Plaintiffs for the first time sent Defendants a draft of their proposed SACC. Kwock Decl. ¶ 17. As Plaintiffs' redline illustrates, the proposed SACC substantively recasts the operative complaint. Dkt. 195, Ex. B. Rather than focusing only on Defendants' LLM training, the SACC expands to include Defendants' allegedly "distributing … datasets containing copies of Plaintiffs' and the putative Class's copyrighted books." *Id.* ¶ 7; *see also id.* at ¶¶ 1-5, 36-53, 57. Based on these allegations, Plaintiffs propose adding a direct infringement claim against Databricks along with new secondary liability claims—one claim for contributory copyright infringement and one claim for inducement of copyright infringement—against both MosaicML and Databricks. *Id.* ¶¶ 66-82, 87-100. Plaintiffs' new allegations and claims thus materially alter the contours of the case, as they focus on new alleged conduct, including that of third parties.

Plaintiffs sought leave to amend their complaint on November 20, 2025, one day before the close of fact discovery, claiming it was based on "recent" discovery. But as Plaintiffs' motion for leave illustrates, the majority of the documents on which Plaintiffs rely were produced in August or earlier. *See* Dkt. 195, Exs. D, E, I-L, O, Q; Kwock Decl. ¶ 2-3 (exhibits produced between June 25, 2025, and August 22, 2025).

Two days before Plaintiffs moved for leave to amend their complaint, they filed a motion to extend the case schedule by 45 days. *See* Dkt. 191. While Plaintiffs claimed that their requested extension was based on "unresolved discovery disputes and substantial discovery remaining due"

FENWICK & WEST LLP

(*id.* at 1), the only truly "outstanding" discovery was the discovery that Plaintiffs sought in pursuit of their proposed amended complaint. *See* Dkt. 198 (Defs.' Opp.) at 2-5. Plaintiffs told the Court in a footnote that they expected their forthcoming amendment to have "little to no impact on the case schedule." Dkt. 191 at 5 n.3. But in the same motion, Plaintiffs acknowledged that they sought third-party discovery to obtain information about third parties' access to and use of datasets that Defendants made available. *Id.* at 4. That third-party discovery is plainly relevant to the secondary liability claims in Plaintiffs' proposed SACC. And just five days after seeking leave to amend, Plaintiffs requested that the Court permit another five depositions to obtain "information about Defendants' distribution of datasets containing Plaintiffs' works to third parties." Dkt. 201 at 2.

## ARGUMENT

A party seeking to amend a pleading after a deadline in a scheduling order must show "good cause." *Liberty Mut. Ins. Co. v. California Auto. Assigned Risk Plan*, No. C 11-1419 MMC, 2012 WL 3277213, at *3 (N.D. Cal. Aug. 9, 2012). The "good cause" standard requires that the party seeking amendment show diligence. *See id.* The moving party's failure to show diligence alone is enough to deny leave under Rule 16. *Id.* at *5. In addition, "prejudice to the opposing party 'supplies an additional reason for denying a motion to amend.'" *Id.* (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (citation modified)).

Only if a plaintiff demonstrates good cause under Rule 16(b) does a court consider amendment under Rule 15(a). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) (affirming denial of leave to amend). While leave under Rule 15(a) should be given "when justice so requires," a court should not grant leave to amend where the amendment (1) "produces an undue delay in litigation," (2) "prejudices the opposing party," (3) "is sought in bad faith," or (4) "is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Here, Plaintiffs have failed to demonstrate good cause under Rule 16, so the Court does not need to reach the Rule 15 inquiry. But the Court should also deny leave under Rule 15(a) because Plaintiffs have unduly delayed, the amendment would significantly prejudice Defendants, and Plaintiffs' conduct demonstrates bad faith.

### A. Plaintiffs' motion is untimely, and Plaintiffs cannot show diligence.

A plaintiff unduly delays if it does not promptly seek to amend after it knows, or should know, the facts that form the basis for its amendment. *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1120 (N.D. Cal. 2011) (denying motion to amend where plaintiffs delayed at least two months). Courts routinely hold that plaintiffs unduly delay when, as here, they wait to seek leave to amend until months after obtaining relevant facts. *See, e.g.*, *Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 12-CV-01927-WHO, 2013 WL 4426493, at *2 (N.D. Cal. Aug. 15, 2013)(four-months after plaintiff learned relevant facts constituted undue delay). Further, courts have found undue delay when plaintiffs wait for *additional* discovery before amending, despite having key documents allegedly supporting amendment. *See, e.g.*, *Callan v. Amdahl Corp.*, No. C-94-0295-VRW, 1995 WL 261420, at *5 (N.D. Cal. Apr. 24, 1995) ("While plaintiff complains he could not file his proposed amended complaint until he had received certain discovery from defendants, the record suggests otherwise … plaintiff had in his possession many of the key documents upon which he relies …."). To establish good cause, the burden is on the plaintiff "to prosecute [its] case properly." *Johnson*, 975 F.2d at 610.

Here, Plaintiffs delayed for months after obtaining the relevant facts. They told the Court in August 2025 that "discovery indicates that MosaicML distributed copies of the Books3 dataset to third parties" and that Plaintiffs planned to amend their complaint based on "recent discovery" produced before then. Dkt. 170 at 1, 6-7. Thus, Plaintiffs were aware of the purported core basis for Plaintiffs' new contributory infringement and inducement claims—the "distribution" of Books3 to customers, who were engaging in their own LLM training—at least three months ago. Similarly, all but one of the documents cited in support of the supposedly "new" evidence that Databricks allegedly "stored and used" certain datasets (Mot. at 5) were produced by the end of August, if not earlier. *See* Kwock Decl. ¶ 3; *see also* Pls.' Ex. D (produced July 15, 2025), E (produced August 13, 2025), Q (produced June 25, 2025).

The same goes for documents purportedly supporting Plaintiffs' claim that Databricks "exploited these datasets" and that "MosaicML Infringed Plaintiffs' Copyrighted Works in Multiple Ways." Mot. at 6-9. Five of these documents were produced in July and August. *See*



FENWICK & WEST LLP

Kwock Decl. ¶ 3; *see* Pls.' Ex. I (produced August 22, 2025); Ex. J (produced August 22, 2025); Ex. K (produced August 22, 2025); Ex. L (produced July 14, 2025); Ex. O (produced August 22, 2025). Meanwhile, three of the exhibits Plaintiffs cite as having been produced on November 12, 2025 are engineering "tickets," but Plaintiffs have had the email notifications containing the relevant substance of those tickets since July and August 2025. Kwock Decl. ¶¶ 5-8; Exs. 1-6.[1]

Similarly, while Plaintiffs cite to more "recent" deposition testimony, that testimony relates to information disclosed in documents produced in August, July, or earlier. Kwock Decl. ¶¶ 9-13. Plaintiffs even cite as "new evidence" testimony regarding the training of one of the MPT models—StoryWriter—on a subset of the Books3 dataset (Mot. at 7-8). But that information has been publicly available on a blogpost since May 5, 2023—*which Plaintiffs cited in their original Complaint* (Dkt. 1 ¶ 39) in March 2024—and which was produced to Plaintiffs in February 2025. Kwock Decl. ¶ 14. The fact that Plaintiffs finally got around to asking a witness about this information in November 2025 does not make it "new."

In other words, these are not "newly discovered facts" as Plaintiffs claim. Mot. at 11. Instead, the record shows that Plaintiffs unreasonably chose to wait for months and take the majority of depositions before amending, despite having the key documents allegedly supporting their new claims. Kwock Decl. ¶¶ 15-17. Accordingly, this case is nothing like the cases on which Plaintiffs rely, where the plaintiffs moved to amend shortly after learning genuinely "new" facts. *See Herrera v. Cnty. of San Benito*, No. 24-CV-01133-NC, 2025 WL 2323350, at *2-3 (N.D. Cal. Aug. 11, 2025) (plaintiff learned of new facts in May and June, and moved to amend on July 18, 2025, and "nowhere does Defendant argue that any of the facts Plaintiff alleges she relies on in seeking amendment can be found in their disclosures, responses, or productions from earlier in discovery"); *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 654-55 (N.D. Cal. 2025) (moving party filed motion for leave to amend one month after learning key facts and two months before the fact discovery deadline); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, Dkt. 300 at 7-8 (Dec. 27, 2024), Dkt. 346 at 2-3 (Dec. 18, 2024) (plaintiffs maintained they learned about

[1] The full "tickets" were produced on November 12, 2025 only because Plaintiffs waited to request them until *November 11, 2025* (a federal holiday), but Plaintiffs had the same substantive information since July and August 2025. Kwock Decl. ¶ 5.

FENWICK & WEST LLP

"new" facts just one week before moving to amend); *Pizana v. SanMedica Int'l LLC,* 345 F.R.D. 469, 480-81 (E.D. Cal. 2022) (key information was revealed in the weeks leading up to filing amended complaint, and plaintiff retained new counsel shortly before amendment).

While Plaintiffs attempt to blame Defendants for their belated discovery efforts, the record is clear that Plaintiffs failed to seek leave to amend despite knowing full well of the basis for their claims for months. The Court should deny amendment under Rule 16(b) for Plaintiffs' lack of diligence and—if the Court reaches Rule 15—based on their unreasonable delay.

**B. Plaintiffs' proposed amendment would prejudice Defendants.**

The significant prejudice to Defendants of reopening discovery at this late date is an independent reason to deny leave to amend. "Prejudice is heightened when a [p]laintiff seeks to amend a complaint late in litigation." *Scognamillo v. Credit Suisse First Bos., LLC*, 587 F. Supp. 2d 1149 (N.D. Cal. 2008) (citation modified). Needing "to reopen discovery and expend additional time and money addressing new claims and new facts … is the kind of prejudice to the opposing party that warrants denial of leave to amend." *Martinez v. Bay Area Rescue Mission*, No. 22-CV-06092-CRB, 2025 WL 1223555, at *2 (N.D. Cal. Apr. 28, 2025) (collecting cases); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 15-MD-02672-CRB, 2023 WL 2095921, at *2 (N.D. Cal. Feb. 17, 2023) (denying motion for leave to amend and explaining that "[t]he Ninth Circuit has often pointed to the prospect of significant additional discovery in the face of new theories advanced in a proposed amended complaint as a showing of undue prejudice"); *Muench Photography*, 2013 WL 4426493, at *3 (denying motion to amend and explaining that "the need to reopen discovery to explore new causes of action for even six weeks would delay the trial and prejudice [defendant]").

Similarly, courts find prejudice when a proposed amendment "would considerably alter the scope and nature" of the litigation and require discovery into additional issues. *See TrustLabs, Inc. v. Jaiyong*, No. 21-CV-02606-CRB, 2024 WL 1354486, at *7 (N.D. Cal. Mar. 30, 2024) (finding prejudice when party filed motion for leave "shortly before the close of fact discovery," *id.* at *8). For example, in *SpinMaster Ltd. v. Your Store Online*, the court found undue prejudice and denied leave to amend because adding a new copyright claim "would force [defendant] to engage in

FENWICK & WEST LLP

significant additional discovery, likely necessitating a delay in the discovery cut-off" and, "[m]ore importantly, [defendant] would have to undertake the defense of a whole new, tangentially related copyright claim." Nos. CV 09-2121 CAS (JCx), CV 09-5803 CAS (JCx), 2010 WL 4883884, at *6 (C.D. Cal. Nov. 22, 2010); *see also Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 983, 986 (9th Cir. 1999) (finding of prejudice and affirming denial of leave to amend where plaintiff sought to add complaints that would require defendant to "reopen discovery" to conduct further discovery regarding third parties).

Here, fact discovery has closed after multiple extensions, and Defendants have expended substantial time and resources collecting, searching, reviewing, and producing documents as well as defending depositions. Kwock Decl. ¶ 18. Plaintiffs' new claims would radically alter the contours of the case and require extensive additional discovery. Indeed, there is no way that the necessary third-party discovery could be completed within the 45-day extension Plaintiffs have requested, particularly given the approaching holidays. Instead, Plaintiffs' untimely request would require extending the case schedule by months to accommodate an immense amount of additional discovery, including from multiple third parties that to date have not been involved in the case.

Plaintiffs try to assure the Court that that they "seek to amend their Complaint as a result of recent discovery, *not to obtain it*." Mot. 12 (emphasis in original); *see also id.* ("Plaintiffs do not anticipate seeking additional discovery for these claims."). But those assertions are belied by Plaintiffs simultaneous request to extend fact discovery to pursue third-party document and deposition discovery, which is obviously in support of their proposed new claims about distribution and contributory infringement. *See* Dkt. 191 (Pls.' Mot. to Amend Scheduling Order); Dkt. 198 (Defs.' Opp.) at 1 (explaining that the "bulk of the discovery issues Plaintiffs have belatedly raised relate to a new 'contributory' infringement claim in their proposed" SACC). Indeed, just last week, Plaintiffs moved to take five additional "third-party depositions" to obtain additional "information about Defendants' distribution of datasets" containing allegedly copyrighted materials (Dkt. 201 at 3)—that is, discovery in support of their proposed SACC.

Plaintiffs also claim that their secondary liability claims are "based on Defendants' own documents and facts Defendants already have knowledge of." Mot. at 12. What Plaintiffs fail to

FENWICK & WEST LLP

mention—but what has obviously animated their last-minute discovery scramble—is that these claims require proof of direct infringement *by the third party*. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (to establish secondary copyright infringement plaintiff "must establish that there has been direct infringement by third parties"); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 (2005) ("the inducement theory of course requires evidence of actual infringement by recipients of the device"). Any purported third-party direct infringement that forms the basis of Plaintiffs' secondary liability claims is information about which Defendants decidedly *lack* knowledge. Indeed, Plaintiffs rely on Defendants' lack of such knowledge as their justification for seeking third-party discovery. *See* Dkt. 201 at 2 (arguing that additional third-party depositions were "necessary" due to lack of information from Defendants). For this reason, among others, Plaintiffs' reliance on *Kadrey v. Meta Platforms, Inc.,* No. 23-cv-03417-VC, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025), in which Defendant had knowledge of the relevant evidence, is misplaced.

Plaintiffs also now admit that their new claims would require reopening discovery as to DBRX. But as the Court will recall, when granting Defendants' motion to dismiss, the Court denied Plaintiffs request for leave to pursue additional discovery about DBRX. Dkt. 162 at 5 ("This gets discovery backward."). As a result, Magistrate Judge Cisneros denied Plaintiffs' demands for DBRX-related discovery. Dkt. 163 (holding that discovery regarding DBRX training data not warranted). Indeed, Magistrate Judge Cisneros recently affirmed that DBRX discovery has been off-limits when she ruled that Defendants had properly instructed deponents not to answer certain questions about DBRX. Dkt. 202 at 4.

Plaintiffs casually mention that their proposed amendment would justify seeking discovery as to DBRX. Mot. at 12. Plaintiffs misleadingly call this "a small additional burden." *Id.* But the burden would be *enormous*: Plaintiffs have served numerous discovery requests and interrogatories that they claim implicate DBRX, many of which Defendants rightly refused to respond to. Kwock Decl. ¶ 19. Plaintiffs' 30(b)(6) deposition notice also includes more than 20 topics seeking information about DBRX and/or Defendants' LLMs, for which Plaintiffs would likely seek further 30(b)(6) testimony if DBRX were added to the case. *Id.* ¶ 20. Plaintiffs cannot credibly argue that

FENWICK & WEST LLP

requiring Defendants to go back and respond to those requests and conduct additional document review is not a meaningful and burdensome expansion of discovery.

Reopening discovery to address these untimely claims would significantly prejudice Defendants. If the Court allowed Plaintiffs' proposed SACC, the accompanying discovery, including extensive third-party document and deposition discovery, would force Defendants to expend substantial time and resources addressing new claims, rather than moving forward to expert discovery based on the claims in the operative complaint. The third parties, who lack prior knowledge of the case, would have to begin searching for and reviewing responsive documents from scratch. They would also have to identify knowledgeable witnesses about events occurring years ago, and schedule depositions. This additional discovery would take months from the time it begins; it could not be completed by anytime close to the January 5, 2026 deadline contemplated in Plaintiffs' pending motion to extend the case schedule by 45 days. *See* Dkt. 191 at 5. It would also require extensive additional expert work, when opening expert reports are currently due in early January.

This is the exact type of prejudice that courts have repeatedly held justifies denying leave to amend. *See, e.g.*, *Martinez*, 2025 WL 1223555, at *2; *Muench Photography*, 2013 WL 4426493, at *3; *Volkswagen,* 2023 WL 2095921, at *2. The Court should deny leave to amend on this basis alone.

**C. Plaintiffs' motion shows bad faith.**

Because prejudice and delay are sufficient to deny a motion for leave to amend, the Court need not address bad faith or futility. *See Martinez*, 2025 WL 1223555, at *2. But Plaintiffs' bad faith also weighs in favor of denying leave to amend. A motion to amend a complaint is made in bad faith where evidence indicates a wrongful motive and the moving party acts "with intent to deceive, harass, mislead, delay, or disrupt." *Kobayashi v. McMullin*, No. 2:19-cv-06591-SSS (MAA), 2023 WL 11822286, at *5 (C.D. Cal. July 7, 2023) (citation modified) (denying motion for leave to amend). Courts find bad faith sufficient to deny leave to amend where the moving party engages in dilatory tactics, such as waiting months to move to amend a complaint. *See Cabrera v. Residential Credit Sol. Inc.*, No. CV 14-09212 DMG (AWJx), 2015 WL 13916231, at



FENWICK & WEST LLP

*7 (C.D. Cal. Sept. 10, 2015) (denying leave to amend and finding bad faith where plaintiff had "history of dilatory tactics"). Timing of a motion to amend may also be indicative of bad faith and an intent to delay a case by requiring the extension of deadlines. *See Brownlee v. 12745 Moorpark LLC*, No. 2:13-cv-9188-ODW (MANx), 2014 WL 4978441, at *3 (C.D. Cal. Oct. 3, 2014) (denying motion for leave to amend where party had an "unexplained four-month delay" and filed its motion 10 days before the discovery cutoff).

Here, in addition to Plaintiffs' inexcusable delay discussed above, Plaintiffs' contradictory and misleading representations highlight their bad faith. As shown above, Plaintiffs' argument that they learned only recently of the basis for their claims is false. So is their claim that the amendment will not require additional discovery. Indeed, just two days before moving for leave to amend, Plaintiffs moved to amend the schedule to, among other things, take third-party discovery—which is obviously related to their new contributory and inducement claims. Dkt. 191 at 4-5. Plaintiffs also misleadingly claim that their discovery into DBRX will not require "new discovery requests." Mot. at 12. But they know that the Court previously blocked certain of their *existing* discovery requests because Plaintiffs had not asserted a plausible claim involving DBRX. Against that backdrop, Plaintiffs' suggestion that their amendment will not meaningfully expand discovery reflects bad faith.

Moreover, Plaintiffs' three-month delay in seeking the present amendment is in keeping with their pattern of delay when seeking amendment. As the Court will recall, Plaintiffs previously sought to amend their complaint to add claims based on DBRX *more than fourteen months* after that model was released. Plaintiffs brought that motion on the last possible day to seek leave to amend under the Scheduling Order. Dkts. 111, 124. At the time, the Court found that Plaintiffs' delay was "without a doubt significant" and without "a satisfactory explanation." *See* Dkt. 129 at 3. Plaintiffs now have a history of waiting until the last moment to amend based on facts they have long known. And this time, the delay was tactical, as Plaintiffs chose to conceal their new secondary liability claims while taking depositions of Defendants' witnesses, including 30(b)(6) witnesses. Thus, Plaintiffs' conduct reveals a pattern demonstrating bad faith. *See Cabrera*, 2015 WL 13916231, at *7.

FENWICK & WEST LLP

Plaintiffs' delay and the prejudice to Defendants is enough to deny Plaintiffs' motion, but the Court should deny it on the basis of bad faith as well.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to modify the scheduling order and for leave to amend their Complaint.

Dated: December 4, 2025

FENWICK & WEST LLP

By: */s/ Jedediah Wakefield*

Jedediah Wakefield (CSB No. 178058)
jwakefield@fenwick.com
Ryan Kwock (CSB No. 336414)
rkwock@fenwick.com
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 650.938.5200

David Hayes (CSB No. 122894)
dhayes@fenwick.com
Diana C. Buck (CSB No. 339314)
dbuck@fenwick.com
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Brian D. Buckley (admitted *pro have vice*)
bbuckley@fenwick.com
Deena Feit (admitted *pro hac vice*)
dfeit@fenwick.com
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 650.938.5200

Charles Moulins (admitted *pro hac vice*)
cmoulins@fenwick.com
Justine Vandermel (admitted *pro hac vice*)
justine.vandermel@fenwick.com
902 Broadway, 18th Floor
New York, NY 10010
Telephone: 212.430.2600
Facsimile: 650.938.5200

Zachary Harned (CSB No. 335898)

zharned@fenwick.com
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone: 310.434.5400
Facsimile: 650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly
MOSAIC ML, INC.