1   [Counsel on signature page]

2

3

4

5

6

7

8

9               UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12

13

14   *In Re Mosaic LLM Litigation*          Master File Case No. 3:24-cv-01451-CRB
                                            Consolidated with Case No. 3:24-cv-02653-
15                                          CRB

16                                          **SECOND AMENDED CONSOLIDATED
                                            COMPLAINT**
17
                                            Class Action
18
                                            Jury Trial Demanded
19

20

21

22

23                         **<u>REDACTED</u>**

24

25

26

27

28

**TABLE OF CONTENTS**

I.      OVERVIEW...................................................................................................................2

II.     JURISDICTION AND VENUE ....................................................................................3

III.    PLAINTIFFS .................................................................................................................3

IV.     DEFENDANTS ..............................................................................................................4

V.      AGENTS AND CO-CONSPIRATORS ........................................................................4

VI.     FACTUAL ALLEGATIONS .........................................................................................4

        A.      ██████ and "RedPajama" Contain Plaintiffs' and Class Members' Works ...................4

        B.      AI Models Require Training Datasets.................................................................6

        C.      MosaicML Creates a Library of Pirated Books ................................................7

        D.      Databricks ████████████████████ ...............................9

VII.    CLASS ALLEGATIONS ...............................................................................................11

VIII.   DEMAND FOR JUDGMENT.......................................................................................18

IX.     JURY TRIAL DEMANDED .........................................................................................18

Plaintiffs Stewart O'Nan, Abdi Nazemian, Brian Keene, Rebecca Makkai, and Jason Reynolds (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class-action complaint ("Complaint") against defendants Mosaic ML, Inc. ("MosaicML") and Databricks, Inc. ("Databricks") (together "Defendants").

**I.      OVERVIEW**

1.      Defendant MosaicML downloaded hundreds of thousands of copyrighted books without permission in its quest to develop large language models ("LLMs"). One such model, known as "Storywriter," ████████████████████████. This expansive corpus of books— including ████████████████ and "RedPajama"—would form part of a library that

MosaicML made ████████████████████████████████
████████████.

2.    When Defendant Databricks acquired MosaicML in 2023, MosaicML ████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████
███████████████████████.

3.    Plaintiffs and Class members are authors. They own registered copyrights in certain books that were included in the RedPajama and ██████ datasets that ████████████████████
████████████ without their permission or compensation.

4.    Plaintiffs and Class members never authorized Defendants to ████████████████
██████████████ their copyrighted works. Defendants have never compensated Plaintiffs and Class members for █████████████████████████ their copyrighted works.

5.    Defendants also ██████████████████████████
████████████████████████ , and thereby contributed to and induced the infringing activity of others.

6.    MosaicML benefitted commercially from its acts of copyright infringement, including by securing investments and contracts with customers for use of its LLMs, and attracting its purchase by Databricks. Databricks, as the corporate parent of MosaicML and distributor of the MPT and DBRX models, has also commercially benefitted from this massive copyright infringement by securing investments and contracts with customers for use of its LLMs.

7.    Through the above acts, Defendants have jointly infringed Plaintiffs' copyrighted works, and continue to do so by ██████████████████████████████ the datasets containing copies of Plaintiffs' and the putative Class's copyrighted books.

## II.    JURISDICTION AND VENUE

8.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Copyright Act (17 U.S.C. § 501).

9.    Jurisdiction and venue are proper in this judicial district under 28 U.S.C. § 1391(c)(2) because Defendants are headquartered in this district. MosaicML created the MPT language models and Databricks created the DBRX language models. Defendants distribute these models commercially. Therefore, a substantial part of the events giving rise to the claim occurred in this District. A substantial portion of the affected interstate trade and commerce was carried out in this District. Defendants have transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. Defendants' conduct has had the intended and foreseeable effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

10.    Under Civil Local Rule 3-2(c), assignment of this case to the San Francisco Division is proper because this case pertains to intellectual-property rights, which is a district-wide case category under General Order No. 44, and therefore venue is proper in any courthouse in this District.

## III.    PLAINTIFFS

11.    Plaintiff Stewart O'Nan is an author who lives in Massachusetts. Mr. O'Nan owns registered copyrights in multiple books, including *Last Night at the Lobster*; *The Night Country; Emily, Alone; The Circus Fire; The Good Wife; The Speed Queen; The Vietnam Reader; West of Sunset; City of Secrets; Henry, Himself;* and *In the Walled City.*

12.    Plaintiff Abdi Nazemian is an author who lives in California. Mr. Nazemian owns registered copyrights in multiple books, including *Like a Love Story* and *The Authentics*.

13.    Plaintiff Brian Keene is an author who lives in Pennsylvania. Mr. Keene owns registered copyrights in multiple books, including *Ghost Walk; City of the Dead;* and *Dead Sea.*

14.    Plaintiff Rebecca Makkai is an author who lives in Illinois. Ms. Makkai owns registered copyrights in multiple books, including, *The Hundred Year House*; *Music for Wartime*; and *The Great Believers*.

15.     Plaintiff Jason Reynolds is an author who lives in Washington, D.C. Mr. Reynolds owns registered copyrights in multiple books, including *As Brave as You*; *When I was the Greatest*; *All American Boys*; *Ghost*; *Patina*; *Long Way Down*; *Sunny*; *For Every One*; and *Look Both Ways*.

16.     A non-exhaustive list of registered copyrights owned by Plaintiffs is included as Exhibit A.

### IV.    DEFENDANTS

17.     Defendant Databricks is a Delaware corporation with its principal place of business at 160 Spear Street, 13th Floor, San Francisco CA 94105. Databricks acquired MosaicML in July 2023.

18.     Defendant MosaicML is a Delaware corporation with its principal place of business at 501 2nd Street, Suite 202, San Francisco CA 94107. MosaicML operates as a subsidiary of Databricks.

### V.    AGENTS AND CO-CONSPIRATORS

19.     The unlawful acts alleged against Defendants in this class action complaint were authorized, ordered, or performed by the Defendants' respective officers, agents, employees, representatives, or shareholders while actively engaged in the management, direction, or control of the Defendants' businesses or affairs. The Defendants' agents operated under the explicit and apparent authority of their principals. Each Defendant, and its subsidiaries, affiliates, and agents operated as a single unified entity.

20.     Various persons or firms not named as defendants may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof. Each acted as the principal, agent, or joint venture of Defendants with respect to the acts, violations, and common course of conduct alleged herein.

### VI.    FACTUAL ALLEGATIONS

**A.**    ▮▮▮▮▮ **and "RedPajama" Contain Plaintiffs' and Class Members' Works**

21.     The Pile is a dataset curated by a research organization called EleutherAI for use in training AI models. In December 2020, EleutherAI introduced this dataset in a paper called "The Pile:

An 800GB Dataset of Diverse Text for Language Modeling."[1] The paper provides a description of Books3, a dataset contained within The Pile:

> Books3 is a dataset of books derived from a copy of the contents of the Bibliotik private tracker … Bibliotik consists of a mix of fiction and nonfiction books and is almost an order of magnitude larger than our next largest book dataset (BookCorpus2). We included Bibliotik because books are invaluable for long-range context modeling research and coherent storytelling.[2]

22.     Bibliotik is one of a number of notorious "shadow library" websites. Other shadow libraries includes Library Genesis (aka LibGen), Z-Library (aka B-ok), Sci-Hub, and Anna's Archive. These shadow libraries have long been of interest to the AI-training community because they host and distribute vast quantities of unlicensed copyrighted material, including books. For that reason, these shadow libraries also violate the U.S. Copyright Act.

23.     The person who assembled the Books3 dataset, Shawn Presser, has confirmed in public statements that it represents "all of Bibliotik" and contains approximately 196,640 books.

24.     Until October 2023, the Books3 dataset was available from Hugging Face as a standalone dataset. At that time, the Books3 dataset was removed with a message that it "is defunct and no longer accessible due to reported copyright infringement."[3]

25.     Books3 was included within another dataset known as RedPajama. Released in April 2023 and created by the company Together AI, the RedPajama dataset contained a subset called "Books" (also referred to as RedPajama-Books) that was actually a copy of the "Books3 dataset" that was "downloaded from Huggingface [sic]." A user could either download the dataset or run scripts that automatically assembled the RedPajama dataset.[4] After the "Books3 dataset" was removed from Hugging Face in

---

[1] Available at Gao, Leo, et al., *The Pile: An 800GB Dataset of Diverse Text for Language Modeling*, arXiv:2101.00027 (Dec. 31, 2020), https://arxiv.org/pdf/2101.00027.pdf.

[2] *Id.* at 3–4.

[3] See *The Pile Books3 Dataset*, Hugging Face, https://web.archive.org/web/20231127101818/https://huggingface.co/datasets/the_pile_books3 (on file with the Joseph Saveri Law Firm, LLP) (last visited Nov. 18, 2025).

[4] Available at TogetherComputer, *RedPajama-Data-1T Dataset*, Hugging Face, https://web.archive.org/web/20230420075601/https://huggingface.co/datasets/togethercomputer/RedPajama-Data-1T (on file with the Joseph Saveri Law Firm, LLP) (last visited Nov. 18, 2025).

October 2023, the RedPajama dataset documentation also added a message that Books3 is defunct "due to reported copyright infringement."[5]

26.    But before October 2023, anyone who downloaded the "RedPajama" dataset was downloading a copy of the Books3 dataset.

27.    Plaintiffs' copyrighted books listed in Exhibit A are among the works in the Books3 dataset. Below, these books are referred to as the **Infringed Works**.

**B.    AI Models Require Training Datasets**

28.    A large language model ("LLM") is AI software designed to emit convincingly naturalistic text outputs in response to user prompts.

29.    Though an LLM is a software program, it is not created the way most software programs are—that is, by human software programmers writing code. Rather, an LLM is *trained* by copying an enormous quantity of textual works and then feeding these copies into the model. This corpus of input material is called the *training dataset*.

30.    Training consists of a multi-stage process (known as the training pipeline) that includes the acquisition and curation of the dataset, processing of the dataset, feeding the dataset into the model so that the model can extract the patterns and relationships from the protected expression contained therein, and further fine-tuning the model for more specialized uses with even more data.

31.    The first step in training the model is acquiring and curating the data that goes in to the model. Training an LLM is not only a function of quantity of data, but also of quality. The selection and curation of training data is therefore an important first step in training. Copyrighted books tend to be high-quality data for training LLMs.

32.    During training, the LLM copies and ingests each textual work in the training dataset and extracts protected expression from it. During what is known as *pretraining*, the LLM progressively adjusts its output to more closely approximate the protected expression copied from the training dataset. The LLM records the results of this process in a large set of numbers called weights (also known as

---

[5] Available at TogetherComputer, *RedPajama-Data-1T Dataset*, Hugging Face, https://web.archive.org/web/20240510231649/https://huggingface.co/datasets/togethercomputer/RedPajama-Data-1T (on file with the Joseph Saveri Law Firm, LLP) (last visited Nov. 18, 2025).

*parameters*) that are stored within the model. These weights are entirely and uniquely derived from the protected expression in the training dataset. Once a model is pretrained, it results in a trained model known as a *base* or *foundational* model.

33.     During the development process of an LLM, engineers may also conduct experiments known as "ablation studies" that test the effect of certain data on the model. This can include, for example, determining whether there is a difference in the quality of a model's output if it is trained with books versus without. A dataset may be used to run such experiments but be excluded from the final training dataset of the model. Importantly, these datasets too may consist of copyrighted works, including books.

34.     Once the LLM has copied and ingested the textual works in the training dataset and transformed the protected expression into stored weights, the LLM is able to emit convincing simulations of natural written language in response to user prompts. Whenever an LLM generates text output in response to a user prompt, it is performing a computation that relies on these stored weights, with the goal of imitating the protected expression ingested from the training dataset.

35.     Throughout each step of the training pipeline, the same dataset may be used multiple times. Indeed, given the cost of developing an LLM, it is a ubiquitous practice to retain datasets for future use, whether that use is to pretrain other models, to perform ablations on a model, or to fine-tune an already trained base model. The implication is that if a dataset contains unlawfully-obtained copyrighted material, each step of the training pipeline may result in an unauthorized use (i.e., infringement) of that copyrighted work.

### C.     MosaicML Creates a Library of Pirated Books

36.     MosaicML was founded in 2020 to provide tools to facilitate the training of AI models.

37.     One of these tools is the MosaicML Platform, which companies or individuals can use to train their own AI models.[6] The MosaicML Platform allows users to select their training data, including through a feature known as MosaicML Streaming that allows customers to access datasets stored on

---

[6] Available at Mosaic ML, Inc. (organization page), https://huggingface.co/mosaicml, (on file with the Joseph Saveri Law Firm, LLP) (last visited Nov. 20, 2025).

remote or cloud servers.[7] MosaicML provides its customers with selected datasets to use with the

MosaicML Platform, ███████████████████████████.

38.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████.

39.    In April 2023, MosaicML obtained a copy of the RedPajama dataset to use to develop its

MPT models. RedPajama also contains a subset called "RedPajama-Books" that includes the Books3

dataset containing Plaintiffs' and Class members' works.

40.    MosaicML then ████████████████████████████ and

RedPajama—██████████████████████████████████████████

██████████████████████████████████████████

They contain close to ███████ books combined.

41.    MosaicML used this trove of pirated books for its own benefit. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████, MosaicML Chief Technology Officer Hanlin Tang ████████████████████

████████████████████████████████████████████████

42.    At around the same time, in April 2023, MosaicML ████████████████

███████████████████████. MosaicML's then-Chief Scientist Jonathan Frankle

███████████████████████████████████████████Naveen

Rao, former CEO of MosaicML and Vice President of AI at Databricks, stated ████████████

███████████████████████████

---

[7] *Id.*

[8] ███████████████████████████████████████████,

████████████████████████████████████████ (Apr.

19,2023).

43.     In May 2023, MosaicML released the first in its MPT series of large language models, called MPT-7B.

44.     In a blog post called "Introducing MPT-7B: A New Standard for Open-Source, Commercially Usable LLMs," MosaicML describes the MPT-7B training dataset as a "MosaicML-curated mix of sources . . . [that] emphasizes English natural language text . . . and includes elements of the recently-released RedPajama dataset." [9]

45.     In a table describing the composition of the MPT-7B training dataset, MosaicML notes that a large quantity of that training data came from "RedPajama—Books".

46.     MosaicML then released a model called MPT-7B-StoryWriter-65k+ ("the Storywriter model"), a variant of MPT-7B that MosaicML admits was further trained on "a filtered fiction subset of the [B]ooks3 dataset."  The stated purpose of the Storywriter model is "to read and write stories"—or, put another way, to generate works that directly compete with works in the training dataset. A MosaicML employee highlighted that █████████████████████████████████████████████ ████████████████████

47.     In June 2023, MosaicML released another member of the MPT series of large language models, called MPT-30B. As the name suggests, MPT-30B contained 30 billion weights—over quadruple the size of MPT-7B—derived from its training dataset. In a table describing the composition of the MPT-30B training dataset, MosaicML admitted that once again, a large quantity of that training data came from "RedPajama—Books."[10]

**D.     Databricks** █████████████████████████

48.     After Databricks acquired MosaicML in July 2023, Databricks took ████████████ ████████████████████████████████████████████████ ████████████

---

[9] See MosaicML, *Introducing MPT-7B: A New Standard for Open-Source, Commercially Usable LLMs*, Databricks Blog (May 5, 2023), https://www.databricks.com/blog/mpt-7b.

[10] Available at Mosaic Research, Mosaic Research Blog, https://www.mosaicml.com/blog/mpt-30b. (on file with the Joseph Saveri Law Firm, LLP) (last visited Nov. 20, 2025).

1    49.    Databricks ███████████████████████████████████████████

2    ████████████████████████████████████████████████████████████████

3    ██████████████████████████████

4    50.    Databricks ████████████████████████████████████████████

5    ████████████████████████████████████████. Databricks also continued to

6    operate the MosaicML Platform that enabled clients to train their own AI models ██████████

7    ████████████████████████████████.[11] Databricks ████████████████████

8    ████████████████████████████████████████████████████████████

9    ██████████████████████████████. In doing so, Databricks ████████████████

10   ██████████████████████████████████████

11   51.    ██████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████.

14   52.    Soon after acquiring MosaicML, Databricks ████████████████████

15   ████████████████. Referred to as ████████████████, Databricks employees ███████

16   ████████████████████████████████████. A Databricks employee ████████████

17   ██████████████████████████████████████████████████

18   ██████████ Databricks would later ████████████████████████████.

19   53.    Plainly, ████████████████████████████████ Databricks' acquisition of

20   MosaicML. As Chief Scientist Jonathan Frankle stated ████████████████████████

21   ████████████████████████████████████████ And Naveen Rao stated that

22   Databricks ████████████████████████████████████████████

23   ████████████████████████████████.

_____

[11] See Mosaic ML, Inc. (organization page), https://huggingface.co/mosaicml (on file with the Joseph Saveri Law Firm, LLP) (last visited Nov. 20, 2025).

54.     On March 27, 2024, Databricks announced its DBRX series of LLMs in a blog post called "Introducing DBRX: A New State-of-the-Art Open LLM."[12]  In the blog post, Databricks described DBRX as a "general-purpose LLM," that was trained on a "curated" dataset of 12 trillion tokens.  There are two versions of DBRX—"DBRX Base" and "DBRX Instruct."

55.     Defendants have not publicly identified the training data used for these DBRX models. Databricks' Vice President of AIs and former CEO of MosaicML, however, has stated that DBRX was trained on "open data sets that the community knows."[13]

56.     Defendants have publicly stated that the DBRX models were the culmination of "years of LLM development at Databricks that includes the MPT . . . projects" and that "[t]he development of DBRX was led by the Mosaic team that previously built the MPT model family."[14]

57.     There was nothing fair about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MosaicML downloaded these books and RedPajama—without permission from or compensation to their authors. ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮

## VII.    CLASS ALLEGATIONS

58.     The "**Class Period**" as defined in this Complaint begins on at least March 8, 2021 and runs through the present. Because Plaintiffs do not yet know when the unlawful conduct alleged herein began, but believe, on information and belief, that the conduct likely began earlier than March 8, 2021, Plaintiffs reserve the right to amend the Class Period to comport with the facts and evidence uncovered during further investigation or through discovery.

---

[12] Available at Mosaic Research Team, *Introducing DBRX: A New State-of-the-Art Open LLM*, Mosaic AI Research (Mar. 27, 2024), https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm.

[13] Available at Kyle Wiggers, *Databricks Spent $10M on a Generative AI Model That Still Can't Beat GPT-4*, TechCrunch (Mar. 27, 2024), https://techcrunch.com/2024/03/27/databricks-spent-10m-on-a-generative-ai-model-that-still-cant-beat-gpt-4/.

[14] Available at Mosaic Research Team, *Introducing DBRX: A New State-of-the-Art Open LLM*, Mosaic AI Research (Mar. 27, 2024), https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm.

59.    **Class definition**. Plaintiffs bring this action for damages and injunctive relief as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of the following Classes:

> **All legal or beneficial owners of copyrighted works that: (A) were registered with the United States Copyright Office within five years of the work's first publication; (B) were downloaded, reproduced, or distributed by Defendants; (C) were registered with the United States Copyright Office before being downloaded, reproduced, or distributed by Defendants, or were registered within three months of first publication; and (D) are assigned one or more International Standard Books Number(s) (ISBN) or AmazonStandard Identification Number(s) (ASIN).**

60.    These Class definitions exclude:

    a.    Defendants named herein;

    b.    any of the Defendants' co-conspirators;

    c.    any of Defendants' parent companies, subsidiaries, and affiliates;

    d.    any of Defendants' officers, directors, management, employees, subsidiaries, affiliates, or agents;

    e.    all governmental entities; and

    f.    the judges and chambers staff in this case, as well as any members of their immediate families.

61.    **Numerosity**. Plaintiffs do not know the exact number of members in the Class. This information is in the exclusive control of Defendants. On information and belief, there are at least thousands of members in the Class geographically dispersed throughout the United States. Therefore, joinder of all members of the Class in the prosecution of this action is impracticable.

62.    **Typicality**. Plaintiffs' claims are typical of the claims of other members of the Class because Plaintiffs and all members of the Class were damaged by the same wrongful conduct of Defendants as alleged herein, and the relief sought herein is common to all members of the Class.

63.    **Adequacy**. Plaintiffs will fairly and adequately represent the interests of the members of the Class because the Plaintiffs have experienced the same harms as the members of the Class and have no conflicts with any other members of the Class. Furthermore, Plaintiffs have retained sophisticated and

competent counsel who are experienced in prosecuting federal and state class actions, as well as other complex litigation.

64.  **Commonality** and **predominance**. Numerous questions of law or fact common to each Class member arise from Defendants' conduct and predominate over any questions affecting the members of the Class individually:

a.  Whether Defendants violated the copyrights of Plaintiffs and the Class when they .

b.  Whether Defendants intended to cause further infringement of the Infringed Works by virtue of ███████████████████████████ ████████████████████████████████ ████████.

c.  Whether any affirmative defense excuses Defendants' conduct.

d.  Whether any statutes of limitation limits the potential for recovery for Plaintiffs and the Class.

65.  **Other class considerations**. Defendants have acted on grounds generally applicable to the Class. This class action is superior to alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

**COUNT 1**

**Direct Copyright Infringement (17 U.S.C. § 501) against all Defendants**

66.  Plaintiffs incorporate by reference the preceding factual allegations.

67.  As the owners of the registered copyrights in the Infringed Works, Plaintiffs hold the exclusive rights to those books under 17 U.S.C. § 106.

68.     MosaicML downloaded copies of the RedPajama and ███████ datasets ████████ ████████, which includes the Infringed Works.

69.     MosaicML stored copies of RedPajama ████████████████████████████ ████████████████████████████████████ ████████.

70.     MosaicML ████████████████████████████████████████ ████████████████████.

71.     MosaicML also ████████████████████████████ ████████████████████████████████████ ████████████. Upon information and belief, ████████████ ████████████████████████████████.

72.     To develop the MPT-7B, MPT-30B, and MPT-7B-StoryWriter-65k+ language models, MosaicML copied ████████████████████ and RedPajama ████████████████, and train these models. MosaicML engineers further ████████████████████████ ████████████. MosaicML made multiple copies ████████████████ ████████████████████████████████.

73.     When Databricks acquired MosaicML in July 2023, ████████████████ ████████████████████████████████. MosaicML executives became Databricks executives and ran the pre-existing MosaicML business as part of Databricks. After the acquisition, Databricks ████████ ████████████████████████████████████ ████████████████████.

74.     Databricks further ████████████████████████████ ████████████████████████.

75.     Databricks marketed to its customers the ability to use the MosaicML Platform to train LLM models ████████████████████████████ ████████████████████████████████ ████████████████.

SECOND AMENDED CONSOLIDATED COMPLAINT

76. ███████████████████████████, Databricks █████████████
█████████████████████████████████████████████████████
███████.

77. Plaintiffs and the Class members never authorized Defendants to make copies of their Infringed Works, make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works). All those rights belong exclusively to Plaintiffs and the Class members under the U.S. Copyright Act.

78. By ██████████████████████████████ datasets containing copies of Plaintiffs' Works, Defendants directly infringed Plaintiffs' exclusive rights in their copyrighted works.

79. By copying, storing, processing, and reproducing the MPT models trained on Plaintiffs' Works, MosaicML has directly infringed Plaintiffs' exclusive rights in their copyrighted works.

80. Defendants' infringing conduct alleged herein was and continues to be willful and carried out with full knowledge of Plaintiffs' rights in the copyrighted works. As a direct result of their conduct, Defendants have wrongfully profited from copyrighted works that they do not own.

81. By and through the actions alleged above, Defendants have infringed and will continue to infringe Plaintiffs' copyrights.

82. Plaintiffs have been and continue to be injured by Defendants' acts of direct copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and all appropriate legal and equitable relief.

**COUNT 2**

**Vicarious Copyright Infringement against Databricks**

83. Plaintiffs incorporate by reference the preceding factual allegations.

84. Databricks acquired MosaicML in July 2023. As the corporate parent of MosaicML, Databricks had the right and ability to control the direct infringements alleged in Count 1 committed by MosaicML, at minimum those occurring after the acquisition. Databricks failed to exercise its right and ability to control MosaicML's infringements.

85.    Databricks has directly benefitted financially from the direct infringement by MosaicML alleged in Count 1 because MosaicML generates revenue from its infringing activities, and this revenue belongs to Databricks.

86.    Plaintiffs have been and continue to be injured by Databricks's acts of vicarious copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and all appropriate legal and equitable.

## COUNT 3

### Contributory Copyright Infringement against all Defendants

87.    Plaintiffs incorporate by reference the preceding factual allegations.

88.    Defendants ███████████████████████████████████ In doing so, Defendants ███████████████████████.

89.    ███████████████████████████████ ███████████████████████████████ violates Plaintiffs and Class members' exclusive rights under 17 U.S.C. § 106.

90.    Defendants ███████████████████████████████ Such use of the Infringed Works ███████████████████████.

91.    Defendants are contributorily liable for these direct infringements by ██████████, ███████████████████.

92.    Defendants are well aware of ████████████' infringing activity. Defendants facilitated, encouraged, and materially contributed to such infringement, including but not limited to by ███████████████████████████████ ███████████████████████████.

93.    Defendants failed to take steps to stop the specific infringing activity. Defendants ███ ███████████████████████████████ ███████████████████████████. As a direct and

1    proximate result, ███████████████████████████████ have infringed

2    Plaintiffs and Class members' copyrights in their works.

3        94.    By ██████████████████████ Plaintiff and Class members Works, Defendants

4    violated the exclusive rights under 17 U.S.C. § 106 of Plaintiffs and Class members.

5        95.    Plaintiffs have been and continue to be injured by Defendants' acts of contributory

6    copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits,

7    and all appropriate legal and equitable relief.

8                                    **COUNT 4**

9            **Inducement of Copyright Infringement against all Defendants**

10        96.    Plaintiffs incorporate by reference the preceding factual allegations.

11        97.    Defendants ████████████████████████████████████

12    ██████████████████████████████████████████████

13    ██████████████ Defendants did so by ████████████████████

14    ██████████████████████████████████████████████

15    ████████.

16        98.    At least ████████████████████████████████

17    ████████████████████████████████████████████████

18    ██████████████████████████████████████████████

19    ██████████ violates Plaintiffs and Class members' exclusive rights under 17 U.S.C. § 106.

20        99.    Defendants made a material contribution to this infringing activity by ████████████

21    ██████████████████████████████████████████████

22    ████████████████████████████████████.

23        100.    Plaintiffs have been and continued to be injured by Defendants' acts of inducement of

24    copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits,

25    and all appropriate legal and equitable relief.

26

27

28

## VIII.   DEMAND FOR JUDGMENT

Wherefore, Plaintiffs request that the Court enter judgment on their behalf and on behalf of the Class defined herein, by ordering:

a)  This action may proceed as a class action, with Plaintiffs serving as Class Representatives, and with Plaintiffs' counsel as Class Counsel.

b)  Judgment in favor of Plaintiffs and the Class and against Defendants.

c)  An award of statutory and other damages under 17 U.S.C. § 504 for violations of the copyrights of Plaintiffs and the Class by Defendants.

d)  Reasonable attorneys' fees and reimbursement of costs under 17 U.S.C. § 505 or otherwise.

e)  A declaration that such infringement is willful.

f)  Destruction or other reasonable disposition of all copies Defendants made or used in violation of the exclusive rights of Plaintiffs and the Class, under 17 U.S.C. § 503(b).

g)  Pre- and post-judgment interest on the damages awarded to Plaintiffs and the Class, and that such interest be awarded at the highest legal rate from and after the date this class action complaint is first served on Defendants.

h)  Defendants are to be jointly and severally responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification to the Class.

i)  Further relief for Plaintiffs and the Class as may be appropriate.

## IX.   JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all the claims asserted in this Complaint so triable

Dated: January 21, 2026

Respectfully submitted,

By: */s/ Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
William Castillo Guardado (SBN 294159)
Holden Benon (SBN 325847)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com
hbenon@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile:  (415) 395-9940
mb@buttericklaw.com

Bryan L. Clobes (admitted *pro hac vice*)
Mohammed A. Rathur (admitted *pro hac vice*)
Nabihah Maqbool (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com
nmaqbool@caffertyclobes.com

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
Dylan Salzman (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com
dsalzman@susmangodfrey.com

Rachel J. Geman (admitted *pro hac vice*)
Danna Z. Elmasry (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
ashaver@lchb.com

Betsy A. Sugar (admitted *pro hac vice*)
Kenneth S. Byrd (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com
kbyrd@lchb.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

SECOND AMENDED CONSOLIDATED COMPLAINT