1  JEDEDIAH WAKEFIELD (CSB No. 178058)
   jwakefield@fenwick.com
2  RYAN KWOCK (CSB No. 336414)
   rkwock@fenwick.com
3  FENWICK & WEST LLP
   One Front Street, 33rd Floor
4  San Francisco, CA 94111
   Telephone:     415.875.2300
5  Facsimile:     650.938.5200

6  DAVID HAYES (CSB No. 122894)
   dhayes@fenwick.com
7  FENWICK & WEST LLP
   801 California Street
8  Mountain View, CA 94041
   Telephone:     650.988.8500
9  Facsimile:     650.938.5200

10 *Attorneys for Defendants*
   DATABRICKS, INC., and
11 MOSAIC ML, LLC, formerly MOSAIC ML, INC.

12 *Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In Re Mosaic LLM Litigation* | Master File Case No. 3:24-cv-01451-CRB<br>Consolidated with Case No. 3:24-cv-02653-CRB<br><br>**NOTICE OF MOTION; MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT AND MOTION TO STRIKE**<br><br>Date:   March 6, 2026<br>Time:   10:00 a.m.<br>Dept:   Videoconference<br>Judge:  Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION AND SUMMARY OF THE ARGUMENT | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. Plaintiffs' Original Allegations Based on MosaicML's Use of Books3 | 2 |
| | B. Plaintiffs' Unsuccessful Attempt to Add Claims About DBRX | 3 |
| | C. Plaintiffs' New Attempt to Revive DBRX-Related Claims in the SACC | 4 |
| | D. Plaintiffs' New DBRX-Related Discovery Efforts | 6 |
| III. | STATEMENT OF ISSUES TO BE DECIDED | 7 |
| IV. | ARGUMENT | 7 |
| | A. The Court should dismiss the infringement claim related to DBRX. | 7 |
| |     1. Plaintiffs' allegations regarding ▮▮▮▮ cannot support a claim against DBRX. | 8 |
| |     2. Plaintiffs' remaining allegations fail to state a claim related to DBRX. | 9 |
| | B. The Court should strike allegations in the SACC relating to DBRX. | 10 |
| |     1. The Court should strike allegations regarding, and references to, DBRX as impertinent and immaterial (¶¶ 2, 6, 9, 54-57, 76). | 11 |
| |     2. Defendants will suffer prejudice from the gratuitous allegations. | 12 |
| V. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 7

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
    149 F. Supp. 3d 1167 (N.D. Cal. 2015) ............................................................................. 10

*Boone v. City of Phoenix*,
    No. CV-21-01708-PHX-JJT, 2022 WL 16950143 (D. Ariz. Nov. 15, 2022) ..................... 11

*California Interiors & Design v. Sentinel Ins. Co., Ltd.*,
    No. 23-CV-04956-LB, 2024 WL 694478 (N.D. Cal. Feb. 19, 2024) ................................. 10

*Castillo v. Walmart, Inc.*,
    No. 5:24-CV-06757-BLF, 2025 WL 1828465 (N.D. Cal. July 1, 2025) ............................ 10

*Cimoli v. Alacer Corp.*,
    587 F. Supp. 3d 978 (N.D. Cal. 2022) ............................................................................... 11

*Conservation Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011) ............................................................................................. 7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ............................................................................................... 7

*FBC Mortg., LLC v. Skarg*,
    699 F. Supp. 3d 837 (N.D. Cal. 2023) ............................................................................... 10

*Hoover v. Fed. Deposit Ins. Corp.*,
    No. SACV 09-00750 DOC (MLGx), 2010 WL 11558153 (C.D. Cal. Sept. 27, 2010)
    ..................................................................................................................................... 10, 12

*In re Google Generative AI Copyright Litig.*,
    No. 23-cv-03440-EKL, 2025 WL 2624885 (N.D. Cal. Sep. 11, 2025) ................................ 9

*Jianjun Xie v. Oakland Unified Sch. Dist.*,
    No. C 12-02950 CRB, 2012 WL 5869707 (N.D. Cal. Nov. 19, 2012) .............................. 10

*Johnson v. R & L Carriers Shared Servs., LLC*,
    No. 2:22-cv-01619-MCS-JPR, 2022 WL 18780398 (C.D. Cal. Dec. 15, 2022) .......... 11, 12

*Nguyen v. CTS Elecs. Mfg. Sols. Inc.*,
    301 F.R.D. 337 (N.D. Cal. 2014) ....................................................................................... 12

*Rivers v. Cnty. of Marin*,
    No. C 05-4251, 2006 WL 581096 (N.D. Cal. Mar. 7, 2006) ............................................. 12

*Sallie Holly v. Alta Newport Hospital, Inc.*,
    No. 2:19-cv-07496-ODW (MRWx), 2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ............... 12

*Schiff v. Barrett*,
    No. C 10-1051 PJH, 2011 WL 570164 (N.D. Cal. Feb. 14, 2011) .......................................... 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(f) ............................................................................................................. 10

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on March 6, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard, by video conference, Defendants Databricks, Inc. ("Databricks") and Mosaic ML, LLC, formerly Mosaic ML, Inc., ("MosaicML") will move to dismiss the infringement claim related to the DBRX models with prejudice and strike certain allegations related to DBRX. Specifically, Defendants move to dismiss Plaintiffs' infringement claim related to DBRX and to strike paragraphs 2, 6, 9, 54-57, and 76 as they relate to DBRX.

This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Proposed Order; other materials submitted in connection with the motion; the records and docket in this matter; any reply that Defendants file in support of this motion; and any evidence and argument presented to the Court.

Dated:  February 4, 2026                                 FENWICK & WEST LLP

                                                         By:  */s/ Jedediah Wakefield*
                                                              Jedediah Wakefield (CSB No. 178058)
                                                              jwakefield@fenwick.com
                                                              555 California Street, 12th Floor
                                                              San Francisco, CA 94104
                                                              Telephone:     415.875.2300
                                                              Facsimile:     650.938.5200

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT**

For the second time, Plaintiffs attempt to assert an infringement claim involving Databricks' DBRX models based on threadbare allegations rather than facts. As with their earlier effort, Plaintiffs' new DBRX claim fails as a matter of law.

As the Court will recall, this case began with a claim by five authors that Defendant MosaicML copied Plaintiffs' books when training certain large language models ("LLMs") called the MPT models. In their initial complaint, Plaintiffs made specific allegations about why training an LLM requires copying a large quantity of training data, and why they believed their specific books were contained in a dataset called "Books3" that MosaicML used to train the MPT models. Based on those factual allegations, Plaintiffs brought a direct infringement claim against MosaicML, alleging that MosaicML had "necessarily made a copy of the Books3 dataset" when training the MPT models. Plaintiffs brought only a vicarious infringement claim against Databricks, which had acquired MosaicML in 2023.

Plaintiffs amended their complaint in 2025, attempting to add a direct infringement claim against Databricks by claiming that Databricks used Plaintiffs' books to train an unrelated set of LLMs, known as DBRX. In August 2025, the Court dismissed that new claim, agreeing with Defendants that none of Plaintiffs' loose allegations—"standing alone or together"—could support a direct infringement claim involving DBRX, because Plaintiffs had failed to "allege facts that could establish that the DBRX models are actually trained on … Plaintiffs' works."

In their Second Amended Consolidated Complaint (SACC), Plaintiffs assert new claims based on allegations that Defendants provided customers with access to training data for their own LLM research and training. But in addition, Plaintiffs attempt to resurrect a claim concerning DBRX. As with their prior attempt, Plaintiffs' new DBRX claim, despite extensive discovery, continues to rest on conclusory allegations and fails to state a plausible infringement claim.

Plaintiffs again allege no facts showing that DBRX was trained on Books3—which is still the only dataset that Plaintiffs allege contains their books. Indeed, Plaintiffs have *removed* their earlier allegations that Databricks copied their books to train DBRX. Instead, Plaintiffs allege that

DEFS.' MOTION TO DISMISS & STRIKE   1   Master File Case No. 3:24-cv-01451-CRB

FENWICK & WEST LLP

1  Databricks conducted ███████████████████ *before* training DBRX.
2  Plaintiffs allege that ███████ somehow contributed to DBRX's "development"—without
3  saying what that means—and without alleging that even one of Plaintiffs' books was used in DBRX
4  training. As with their earlier, failed allegations that Databricks "built upon" earlier alleged
5  infringing acts, Plaintiffs' new allegations are far too vague and conclusory to state an infringement
6  claim with respect to DBRX. In fact, the ████████ that Plaintiffs describe is fully consistent
7  with the fact that Databricks did *not* use Books3 to train DBRX.

8      Beyond these spurious allegations, Plaintiffs rely on a few vague allegations that DBRX
9  was trained on "open data sets" and that the DBRX models were the continuation of MosaicML's
10 earlier LLM development—exactly the allegations that the Court already rejected as insufficient to
11 state a claim in Plaintiffs' First Amended Consolidated Complaint. The Court should again dismiss
12 the infringement claim related to DBRX with prejudice.

13     The Court should also strike Plaintiffs' immaterial and impertinent DBRX-related
14 allegations. Apparently hoping (yet again) to pursue DBRX-related discovery that the Court
15 previously blocked, Plaintiffs are already attempting to leverage these allegations to pry open the
16 door to significant additional DBRX-related discovery. Tellingly, Plaintiffs recently backtracked
17 on their representation to the Court that any further DBRX-related discovery can be limited "only
18 to the use of Books3 during the development of the model." The Court should reject Plaintiffs'
19 "say-anything" tactics and strike their immaterial DBRX-related allegations.

20 **II.  STATEMENT OF FACTS**

21     **A.  Plaintiffs' Original Allegations Based on MosaicML's Use of Books3**

22     Plaintiffs filed their initial complaint against MosaicML and Databricks in March 2024.
23 Dkt. 1 (Compl.). Plaintiffs' basic theory was that MosaicML copied their books as part of training
24 MosaicML's MPT models. *Id.* at ¶¶ 3-5, 33-35. Specifically, Plaintiffs alleged that an LLM "is
25 *trained* by copying an enormous quantity of textual works." *Id.* ¶ 3 (emphasis in original).
26 Plaintiffs further alleged that their books were contained in a dataset called "Books3," which itself
27 is part of a larger dataset called "RedPajama – Books,"[1] and that MosaicML allegedly copied

---

[1] The other dataset contained in RedPajama – Books is PG-19, which is not at issue in this case.

RedPajama – Books when training a series of models called the MPT models. *Id.* ¶¶ 25, 26, 30, 32.

Based on these allegations, Plaintiffs brought a direct infringement claim against MosaicML and a vicarious infringement claim against Databricks, which had acquired MosaicML in July 2023. Compl. ¶¶ 36-42, 43-46. Plaintiffs alleged that, as MosaicML's corporate parent, "Databricks had the right and ability to control" and financially benefitted from MosaicML's alleged infringements. *Id.* ¶¶ 44-45. Plaintiffs did not allege that Databricks itself used Books3 to train any models. *See id.* at ¶¶ 43-46. In May 2024, two additional Plaintiffs filed a virtually identical complaint against MosaicML and Databricks. *Makkai v. Databricks, Inc.*, No. 3:24-cv-02653-CRB (N.D. Cal. May 2, 2024), Dkt. 1. The cases were related on May 13, 2024, Dkt. 45, and consolidated in December 2024, Dkt. 57.

### B. Plaintiffs' Unsuccessful Attempt to Add Claims About DBRX

More than a year after filing their initial complaint, on June 27, 2025, Plaintiffs filed their First Amended Consolidated Complaint ("FACC"). Dkt. 131. In the FACC, Plaintiffs added allegations about DBRX, a different set of models released by Databricks in 2024, along with a direct infringement claim against Databricks. Regarding DBRX, Plaintiffs included only conclusory allegations that Databricks copied their books to train DBRX but made no specific claim that DBRX was trained on Books3 or that any of Plaintiffs' books were contained in any other training data used for DBRX. Dkt. 131 ¶¶ 5, 7, 49, 51.

Instead, Plaintiffs made only conclusory allegations linking their books to DBRX training. They alleged that a former Databricks vice president (MosaicML's former CEO) "stated that DBRX was trained on 'open data sets that the community knows'" and that these "open data sets" include "shadow library websites" that contain Plaintiffs' books. Dkt. 131 ¶¶ 40-41. Plaintiffs also pointed to a blogpost stating that "the DBRX models were the culmination of 'years of LLM development at Databricks that includes the MPT … projects' and that '[t]he development of DBRX was led by the Mosaic team that previously built the MPT model family.'" *Id.* ¶ 42.[2] In addition, Plaintiffs

---

[2] Plaintiffs incorrectly described the cited DBRX blogpost. The DBRX blogpost did not state that DBRX was the "culmination" of LLM development. Instead, it stated that DBRX "was the *continuation* of months of *science, dataset research, and scaling experiments*, not to mention years

alleged that Defendants "built upon" MosaicML's infringing acts in the training and development of DBRX while taking steps to "conceal the training data." *Id.* at ¶¶ 43-44.

Defendants moved to dismiss the direct infringement claim against Databricks and claims based on training of Databricks' DBRX models. Dkt. 133. On August 19, 2025, the Court granted Defendants' motion to dismiss without leave to amend, holding that Plaintiffs' allegations related to DBRX were insufficient to state a claim. Dkt. 162 (MTD Order) at 5. As to the datasets used to train DBRX, the Court held that Plaintiffs' allegations were "far too generalized to state a claim for copyright infringement." *Id.* at 3. Regarding Plaintiffs' allegation that "[t]he development of DBRX was led by the Mosaic team that previously built the MPT model family," the Court held that this allegation "does not plausibly support an inference of infringement as to the [DBRX] models." *Id.* at 4. The Court explained that "[a] plaintiff cannot use one alleged instance of infringement to simply presume that the same party committed more infringement." *Id.*

After concluding that Plaintiffs failed to allege a direct infringement claim against Databricks, the Court denied Plaintiffs' request for leave to amend after taking additional discovery, holding that "[i]f discovery into the surviving claims reveals information that would permit them to allege facts—not conclusions—as to Databricks' liability for direct infringement, Plaintiffs may move for leave to further amend their complaint." Dkt. 133 at 5.

### C.  Plaintiffs' New Attempt to Revive DBRX-Related Claims in the SACC

After the dismissal of Plaintiffs' direct infringement claim against Databricks, the parties engaged in additional fact discovery, which initially closed on November 21, 2025, and was then extended to January 5, 2026. Dkt. 238. During discovery, Defendants produced thousands of documents and terabytes of data, and Plaintiffs took fourteen depositions of Defendants' employees and former employees. Declaration of Diana C. Buck ("Buck Decl.") ¶¶ 2-4. This discovery included source code related to the use of Books3 and documents showing Defendants' use of Books3. *Id.* ¶ 2. This was in addition to the DBRX-related discovery that Defendants had produced:

---

of LLM development at Databricks that includes the MPT and Dolly projects and the thousands of models we have built and brought to production with our customers." The Mosaic Research Team, *Introducing DBRX: A New State-of-the-Art Open LLM* (Mar. 27, 2024), https://www.databricks.com/blog/introducing-dbrx-new-state-art-open-llm (emphases added).

Fenwick & West LLP

1  hundreds of source code files with DBRX model weights and model-enabling source code; internal
2  documents about how DBRX was trained, including documents identifying DBRX training datasets
3  by name and technical documents; code files identifying DBRX's pre-training datasets; and an
4  internal document identifying DBRX's post-training datasets. *Id.* ¶ 3. Throughout, Databricks
5  witnesses consistently testified that Books3 was never used to train DBRX. *Id.* ¶¶ 6-9; Exs. 1-3.

6        On November 20, 2025, the day before fact discovery initially closed, Plaintiffs moved to
7  modify the scheduling order and file the SACC. Dkt. 196. The Court granted leave to amend on
8  January 20, 2026. Dkt. 251. Plaintiffs' SACC adds contributory and inducement of copyright
9  infringement claims against Databricks and MosaicML relating to ███████████████████
10 ███████████████████████████████████████. Dkt. 253-3 (SACC) ¶¶ 66-82, 87-100. It
11 also includes a direct infringement claim against Databricks, based on allegations that Databricks
12 employees ███████████████████████████████████████████████████████
13 *Id.* at ¶¶ 2, 52, 57, 76. Specifically, Plaintiffs allege that Databricks ran an experiment by
14 ███████████████████████████████████████████████████████████████
15 *Id.* ¶ 52.

16       Critically, however, Plaintiffs allege no specific facts that might link their copyrighted
17 works to the DBRX models themselves. Plaintiffs assert that ████████████████████
18 ████████████ occurred during DBRX's "development" (a term they do not define or explain).
19 SACC ¶¶ 2, 76. But as with their earlier complaint, Plaintiffs make no allegation that Books3 was
20 used for DBRX *training*. Indeed, Plaintiffs have *dropped* their allegations that DBRX was trained
21 on Plaintiffs' books. *See* Dkt. 195-5 (redline between FACC and SACC) at 6, 17-18 (removing
22 allegations about DBRX in ¶¶ 5, 7, 41, 43, 49, 51).

23       Instead, Plaintiffs repeat a number of DBRX-related allegations from their earlier, failed
24 attempt to assert an infringement claim, namely that (1) MosaicML's former CEO "stated that
25 DBRX was trained on 'open data sets that the community knows'"; (2) DBRX was "the
26 culmination of 'years of LLM development at Databricks that includes the MPT ... projects'"; and
27 (3) "[t]he development of DBRX was led by the Mosaic team that previously built the MPT model

family." Dkt. 195-4 ¶¶ 55-56; Dkt. 162 at 3-4. These are the same allegations in the FACC that the Court previously rejected as insufficient to state a claim.

### D. Plaintiffs' New DBRX-Related Discovery Efforts

When moving for leave to amend, Plaintiffs argued that Defendants would "not face undue prejudice from Plaintiffs' proposed SACC's introduction of their new claims." Dkt. 195-3 (Mot. for Leave) at 11. Plaintiffs stated that while they did not "anticipate" serving new discovery requests, they would "ask Defendants to respond to already served discovery on the DBRX models that the Court previously held was outside the scope of the operative complaint"—which Plaintiffs called "a small additional burden." *Id.* at 12. Defendants pointed out that, contrary to Plaintiffs' misleading assertion, responding to these requests—many of which Defendants had rightly refused to respond to after the Court's ruling—would entail an *enormous* burden, given the broad scope of discovery that Plaintiffs had served about DBRX. Dkt. 213 (Opp.) at 12. In reply, Plaintiffs claimed that "[a]ny concerns Defendants have regarding extensive discovery resulting from the SACC can be alleviated by limiting additional discovery requests and limiting discovery into DBRX *only to* ███████████ during the development of the model." Dkt. 226-3 (Pls.' Reply) at 7 n.4 (emphasis added). The Court expressly relied on this representation when granting Plaintiffs' motion for leave to amend. Dkt. 251 (Order) at 4.

Two days after filing the SACC, Plaintiffs asked Defendants to supplement numerous discovery responses related to DBRX, including requests having nothing to do with ███████████, including requests involving DBRX training data and revenue. Buck Decl. ¶¶ 10-11; Ex. 4 at 5. Defendants reminded Plaintiffs of their assurance to the Court they would limit discovery "to ███████████ during the development of the model" and the Court's reliance on this representation. Ex. 4 at 5. Defendants also told Plaintiffs that they already had thorough discovery into Defendants' use of Books3 and still did not allege that Books3 was used to train DBRX. *Id.*

Plaintiffs immediately backtracked on their representation to the Court—stating that, when they told the Court that "[a]ny concerns Defendants have regarding extensive discovery resulting from the SACC *can be* alleviated by limiting additional discovery requests and limiting discovery into DBRX only to ███████████ during the development of the model," Plaintiffs did not

DEFS.' MOTION TO DISMISS & STRIKE   6   Master File Case No. 3:24-cv-01451-CRB

mean that they *would* limit discovery in this way. Ex. 4 at 3-4 (emphasis in original). Plaintiffs insisted that Defendants should supplement numerous DBRX-related discovery responses. *Id.*; Buck Decl. ¶ 13.

### III. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs' SACC fails to state a claim for direct copyright infringement involving DBRX.

2. Whether Plaintiffs' SACC contains allegations involving DBRX that the Court should strike as impertinent, immaterial, and prejudicial.

### IV. ARGUMENT

#### A. The Court should dismiss the infringement claim related to DBRX.

Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a court accepts "as true all well-pleaded allegations of material fact," it need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[D]ismissal for failure to state a claim under [Rule] 12(b)(6) is proper if there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

The Supreme Court has articulated a "two-pronged approach" to assess whether Rule 8(a)'s plausibility requirement is met on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Twombly*, 550 U.S. at 555). First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, after filtering out legal conclusions and other conclusory allegations, the court should determine whether the remaining factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.*

Following this two-pronged approach, the Court should dismiss the infringement claim as it relates to DBRX. Plaintiffs' allegations about ████████████████████████ ████████ cannot state a claim that Databricks infringed Plaintiffs' copyrights when training

DEFS.' MOTION TO DISMISS & STRIKE 7 Master File Case No. 3:24-cv-01451-CRB

the DBRX models. And the Court has already rejected Plaintiffs' remaining DBRX-related allegations as insufficient to support an infringement claim. As with Plaintiffs' FACC, DBRX should remain out of this case.

### 1. Plaintiffs' allegations regarding ███ cannot support a claim against DBRX.

In their SACC, Plaintiffs replace their prior, inadequate allegations that DBRX was trained on Plaintiffs' books with equally spurious allegations that Databricks used ███ ███ of DBRX. SACC ¶¶ 2, 52, 57, 76; *see also* Dkt. 195-5 at 6, 17-18 (removing allegations about DBRX in ¶¶ 5, 7, 41, 43, 49, 51). But the SACC's only specific allegation in that regard is that Databricks ███ ███ SACC ¶ 52. Importantly, as discussed above, Plaintiffs do not allege that Databricks then chose to use Books3 to train DBRX. Nor could they, as Databricks employees and former employees uniformly testified that Books3 was *not* used to train DBRX. *See* Buck Decl. ¶¶ 6-9; Exs. 1-3 (deposition testimony of three witnesses).

Instead, Plaintiffs attempt to redefine the term "development" so expansively that it would encompass any research activity occurring before DBRX's training. That is precisely the reasoning the Court already rejected in granting Defendants' previous motion to dismiss the FACC. In their earlier complaint, Plaintiffs alleged that (1) the DBRX models were the product of earlier "development at Databricks"; and (2) DBRX was "built upon" earlier infringing acts. But as the Court previously held, those allegations, "standing alone or together," could not support a plausible direct infringement claim involving DBRX. Dkt. 162 at 4-5. The same conclusion follows here. Once again, Plaintiffs improperly attempt to "use one alleged instance of [alleged] infringement to simply presume that the same party committed more infringement." *Id.* (citing *Implicit Networks Inc. v. F5 Networks Inc.*, No. C10-3365 SI, 2013 WL 1007250, at *12 (N.D. Cal. Mar. 13, 2013); *Menzel v. Scholastic, Inc.*, No. 17-cv-5499-EMC, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018)).

1  If anything, Plaintiffs' new DBRX claim is even more implausible than the claim the Court
2  previously dismissed. The ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ described in the SACC allegedly
3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. That is fully
4  consistent with later training DBRX *without* Books3—and Plaintiffs make no factual allegation to
5  the contrary. Accordingly, the Court should dismiss Plaintiffs' infringement claim as to DBRX.

### 2. Plaintiffs' remaining allegations fail to state a claim related to DBRX.

Plaintiffs' remaining allegations involving DBRX are irrelevant and, worse, involve assertions that the Court already held could not support an infringement claim.

*First*, Plaintiffs (again) rely on a quote from a former Databricks vice president (and the former MosaicML CEO), in which he said that DBRX was trained using "open data sets that the community knows." SACC ¶ 55 (citing https://techcrunch.com/2024/03/27/databricks-spent-10m-on-a-generative-ai-model-that-still-cant-beat-gpt-4/). But as noted above, the Court already held that this allegation could not support a direct infringement claim. Dkt. 162 at 3-4. As the Court explained, "Plaintiffs do not allege facts that could establish that the DBRX models are actually trained on any shadow library websites, let alone those that contain Plaintiffs' works." *Id.* at 3; *see also id.* (the Court describing the allegations as "vague and conclusory"); Dkt. 133 (Defs.' MTD FACC) at 10-11 (citing cases about how specific acts of infringement must be alleged).

*Second*, Plaintiffs again cite Databricks' DBRX announcement that DBRX was the continuation of "years of LLM development at Databricks that includes the MPT … projects" and that "[t]he development of DBRX was led by the Mosaic[ML] team that previously built the MPT model family." SACC ¶ 56 (quoting DBRX blogpost). But here too the Court already held that this allegation could not support an infringement claim. Dkt. 162 at 4-5. Allegations that DBRX followed "years of development" by the MosaicML team does not mean that any infringement occurred relating to *DBRX*. *See id.*

*Third*, as discussed above, Plaintiffs removed their earlier allegation that DBRX was trained on Plaintiffs' books. Dkt. 195-5 at 6, 17-18 (removing allegations that Defendants copied their books to train DBRX). This underscores Plaintiffs' failure to state a claim of infringement related to DBRX. *See In re Google Generative AI Copyright Litig.*, No. 23-cv-03440-EKL, 2025 WL

FENWICK & WEST LLP

2624885, at *7 (N.D. Cal. Sep. 11, 2025) (dismissing direct copyright infringement claims for models where Plaintiffs did "not allege that any of their works were included in training datasets used to develop" them); *see also Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (dismissing copyright claim where "Plaintiffs' sweeping allegations" failed to identify "which" products infringed "which" works). The Court should dismiss Plaintiffs' infringement claim related to DBRX with prejudice.

### B. The Court should strike allegations in the SACC relating to DBRX.

Courts have wide discretion to control pleadings and "may strike from a pleading any … redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money, which arise from litigating spurious issues by dispensing with those issues prior to trial." *FBC Mortg., LLC v. Skarg*, 699 F. Supp. 3d 837, 840-41 (N.D. Cal. 2023) (citation modified) (citing *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)) (granting motion to strike). As with a motion to dismiss, on a motion to strike the court views the pleadings in the light most favorable to the nonmoving party. *Jianjun Xie v. Oakland Unified Sch. Dist.*, No. C 12-02950 CRB, 2012 WL 5869707, at *3 (N.D. Cal. Nov. 19, 2012) (granting defendant's motion to strike). Courts will also consider the prejudice to the moving party if the motion is denied. *See, e.g.*, *Hoover v. Fed. Deposit Ins. Corp.*, No. SACV 09-00750 DOC (MLGx), 2010 WL 11558153, at *2-3 (C.D. Cal. Sept. 27, 2010) (granting motion to strike where defendant would be prejudiced by potential confusion from allegations that were already litigated through motions to dismiss).

Whether an allegation is "impertinent" under Rule 12(f) "speaks to the relevance of challenged allegations." *California Interiors & Design v. Sentinel Ins. Co., Ltd.*, No. 23-CV-04956-LB, 2024 WL 694478, at *2 (N.D. Cal. Feb. 19, 2024). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Castillo v. Walmart, Inc.*, No. 5:24-CV-06757-BLF, 2025 WL 1828465, at *2 (N.D. Cal. July 1, 2025) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Id.* (quoting *Fogerty*, 984 F.2d at 1527).

As discussed above, Plaintiffs' SACC (1) attempts to revive several allegations that the Court previously rejected as insufficient to state a claim, and (2) adds new, equally flimsy allegations. These allegations are not only impertinent and immaterial but also highly prejudicial to Defendants, as Plaintiffs seek to use them to pursue discovery that the Court has repeatedly and appropriately blocked. *See* Dkt. 162 at 5; Dkt. 163; Dkt. 202 at 4. The Court should strike the allegations regarding, and references to, DBRX in paragraphs 2, 6, 9, 54-57, and 76 of the SACC.

### 1. The Court should strike allegations regarding, and references to, DBRX as impertinent and immaterial (¶¶ 2, 6, 9, 54-57, 76).

The Court should strike Plaintiffs' allegations regarding DBRX's development, release, and distribution because they are irrelevant to any pled claim. Courts will strike allegations that were either used in support of a dismissed claim or cannot support a claim. For example, in *Cimoli v. Alacer Corp.*, after dismissing a state-law claim, the court struck the related nationwide class allegations because they were "based exclusively on that claim." 587 F. Supp. 3d 978, 995 (N.D. Cal. 2022); *see also Schiff v. Barrett*, No. C 10-1051 PJH, 2011 WL 570164, at *2 (N.D. Cal. Feb. 14, 2011) (striking allegations that related only to a previously barred claim and unrelated to any pled claim as immaterial). Similarly, in *Johnson v. R & L Carriers Shared Services, LLC*, the court struck portions of an amended complaint as "immaterial" because they "include[d] allegations and causes of action the Court already dismissed." No. 2:22-cv-01619-MCS-JPR, 2022 WL 18780398, at *1 (C.D. Cal. Dec. 15, 2022). There, the court explained that "[a]t best, these elements will only cause confusion as to which issues remain live. At worst, the inclusion of these allegations could be interpreted as an underhanded attempt to unjustly expand the scope of discovery." *Id.*; *see also id.* ("Judicial efficiency is undermined when judges must compare an amended complaint against prior orders to determine which claims and allegations are relevant to the surviving causes of action."); *Boone v. City of Phoenix*, No. CV-21-01708-PHX-JJT, 2022 WL 16950143, at *4 (D. Ariz. Nov. 15, 2022) (striking allegations from amended complaint that were "unchanged" from original complaint, finding allegations irrelevant even if they might "provide context" for existing claims).

Here, Plaintiffs' allegations regarding DBRX are immaterial to any viable claim. As discussed above, the SACC contains no allegations that DBRX was trained on Books3 or that DBRX's training data contained any of Plaintiffs' books. Accordingly, the allegations pertaining to DBRX "development" and "distribution" (SACC ¶¶ 2, 6, 9, 57, 76) are irrelevant to Plaintiffs' claims. And the Court previously held that Plaintiffs' remaining allegations about DBRX, which Plaintiffs carried over nearly verbatim from the FACC, could not support an infringement claim related to DBRX. Dkt. 162 at 3-4. These include allegations regarding the former MosaicML CEO's statement about "open data sets," and assertions that the DBRX models were the "culmination of 'years of LLM development'" that "was led by the Mosaic team that previously built the MPT model family." *See* SACC ¶¶ 54-56; Dkt. 195-5 at 16-17 (redline comparing FACC and SACC). And, given that Plaintiffs' SACC has jettisoned the claim that DBRX was trained on Books3, these allegations are even more impertinent. These are the type of allegations that, as in *Johnson*, at best "will only cause confusion as to which issues remain live" and at worst "could be interpreted as an underhanded attempt to unjustly expand the scope of discovery." *See* 2022 WL 18780398, at *1. The Court should strike the DBRX-related allegations and references.

### 2. Defendants will suffer prejudice from the gratuitous allegations.

In addition to being immaterial and impertinent, leaving these allegations in the pleadings will prejudice Defendants. *See Hoover*, 2010 WL 11558153, at *3 (granting motion to strike to avoid prejudice to moving party). "The possibility that issues will be unnecessarily complicated is the type of prejudice that is sufficient to support the granting of a motion to strike." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 340 (N.D. Cal. 2014). Courts will also consider whether allegations would force the parties to engage in unnecessary discovery. For example, in *Sallie Holly v. Alta Newport Hospital, Inc*, the court struck unsupported allegations, explaining that it was "unwilling to put both parties through costly discovery to permit [plaintiff] further attempts to establish an implausible fact." No. 2:19-cv-07496-ODW (MRWx), 2020 WL 6161457, at *5 (C.D. Cal. Oct. 21, 2020); *see also Rivers v. Cnty. of Marin*, No. C 05-4251, 2006 WL 581096, at *5 (N.D. Cal. Mar. 7, 2006) (granting motion to strike allegations as to a "superfluous" party where there was a possibility of prejudice including "evasion of discovery limitations and confusion").

1  Here, allegations about DBRX's training will only confuse the issues and prejudice
2  Defendants through Plaintiffs' quest for DBRX-related discovery. Indeed, despite telling the Court
3  that discovery "can be limited" to "only ▮▮▮▮▮▮▮ during the development of the model,"
4  Plaintiffs now insist that Defendants supplement their discovery on *numerous topics* related to
5  DBRX, ▮▮▮▮▮▮▮. See Buck Decl. ¶ 13; Ex. 4. The Court should strike
6  the impertinent DBRX allegations to avoid this prejudice to Defendants.

### V.  CONCLUSION

For these reasons, Defendants respectfully request that the Court (1) dismiss Plaintiffs' infringement claim related to DBRX with prejudice for failure to state a claim with prejudice; and (2) strike the allegations regarding, and references to, DBRX in paragraphs 2, 6, 9, 54-57, and 76 from the SACC as impertinent, immaterial, and prejudicial.

Dated: February 4, 2026               FENWICK & WEST LLP

By: */s/ Jedediah Wakefield*
Jedediah Wakefield (CSB No. 178058)
jwakefield@fenwick.com
Ryan Kwock (CSB No. 336414)
rkwock@fenwick.com
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone:    415.875.2300
Facsimile:    650.938.5200

David Hayes (CSB No. 122894)
dhayes@fenwick.com
Diana C. Buck (CSB No. 339314)
dbuck@fenwick.com
801 California Street
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

Deena Feit (admitted *pro hac vice*)
dfeit@fenwick.com
401 Union Street, 5th Floor
Seattle, WA 98101

|   |   |
|---|---|
| Telephone: | 206.389.4510 |
| Facsimile: | 650.938.5200 |

Charles Moulins (admitted *pro hac vice*)
cmoulins@fenwick.com
Justine Vandermel (admitted *pro hac vice*)
justine.vandermel@fenwick.com
902 Broadway, 18th Floor
New York, NY 10010
Telephone:     212.430.2600
Facsimile:      650.938.5200

Zachary Harned (CSB No. 335898)
zharned@fenwick.com
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone:     310.434.5400
Facsimile:      650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly
MOSAIC ML, INC.