[Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In Re Mosaic LLM Litigation* | Master File Case No. 3:24-cv-01451-CRB<br>Consolidated with Case No. 3:24-cv-02653-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT AND MOTION TO STRIKE**<br><br>Date:　　March 20, 2026<br>Time:　　10:00 a.m.<br>Location: Videoconference<br>Judge:　　Hon. Charles R. Breyer |

**<u>REDACTED</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ..................................................... 2

III.  BACKGROUND .................................................................................................... 2

IV.   ARGUMENT .......................................................................................................... 4

    A.    PLAINTIFFS PLAUSIBLY ALLEGE A DIRECT INFRINGEMENT CLAIM AGAINST DATABRICKS FOR ITS DEVELOPMENT OF DBRX .................... 5

    B.    BECAUSE PLAINTIFFS PLAUSIBLY ALLEGE A DIRECT INFRINGEMENT CLAIM, THE COURT SHOULD NOT STRIKE THE ALLEGATIONS REGARDING DBRX. ...................................................................................... 11

        1.    Plaintiffs' Allegations Regarding Databricks' Development of DBRX are neither Impertinent nor Immaterial ............................................................ 11

        2.    Defendants will not be Prejudiced from Plaintiffs' Allegations ............... 12

V.    CONCLUSION .................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aquarian Found., Inc. v. Lowndes*,
127 F.4th 814 (9th Cir. 2025) ...........................................................................................5

*Arizona Students' Ass'n v. Arizona Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016) ............................................................................................4

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015)..............................................................................................7

*Bartz v. Anthropic PBC*,
787 F. Supp. 3d 1007 (N.D. Cal. 2025) ..........................................................................5, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................4

*Biani v. Showtime Networks, Inc.*,
153 F.4th 957 (9th Cir. 2025) ...........................................................................................1

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) ..........................................................................11

*Brooks v. BevMo! Inc.*,
No. 2:20-CV-01216-MCE-DB, 2021 WL 3602152 (E.D. Cal. Aug. 13, 2021).....................12

*Carson v. Verismart Software*,
No. C 11-03766 LB, 2012 WL 1038662 (N.D. Cal. Mar. 27, 2012) .......................................2

*Doe 1 v. Univ. of San Francisco*,
685 F. Supp. 3d 882 (N.D. Cal. 2023) .............................................................................11

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) .............................................................................4

*In re Google Generative AI Copyright Litig*,
No. 23-CV-03440-EKL, 2025 WL 2624885 (N.D. Cal. Sept. 11, 2025)................................10

*IO Grp., Inc. v. Jordon*,
708 F. Supp. 2d 989 (N.D. Cal. 2010) ...............................................................................1

*Holly v. Alta Newport Hospital, Inc.*,
No. 2:19-cv-07496-ODW-MRW, 2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ...................12

*Koala v. Khosla*,
931 F.3d 887 (9th Cir. 2019) ............................................................................................4

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998) ...........................................................................................9

*Ma v. San Francisco Estuary Inst.*,
No. 3:23-cv-05060-JCS, 2024 WL 2113862 (N.D. Cal. May 8, 2024).....................................4

*Makkai, et al., v. Databricks, Inc., et al.*,
Case No. 3:24-cv02653-CRB (N.D. Cal. May 2, 2024) ..........................................................2

*Matthews v. Apple, Inc.*,
769 F. Supp. 3d 999 (N.D. Cal. 2024) ...................................................................................9

*Nguyen v. CTS Elecs. Mfg. Sols. Inc.*,
301 F.R.D. 337 (N.D. Cal. 2014)..........................................................................................12

*O'Nan, et al. v. Databricks Inc., et al.*,
Case No. 3:24-cv-01451-CRB (N.D. Cal. March 8, 2024).....................................................2

*Oracle Am., Inc. v. Micron Tech., Inc.*,
817 F. Supp. 2d 1128 (N.D. Cal. 2011) .................................................................................11

*Rodriguez v. Barrita, Inc.*,
No. C 09-4057 RS, 2013 WL 12175047 (N.D. Cal. Jan. 14, 2013) .........................................12

*Scheibe v. ProSupps USA, LLC*,
141 F.4th 1094 (9th Cir. 2025) ..............................................................................................4

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)................................................................................................................7

*UMG Recordings, Inc. v. Doe*,
No. C 08-1193 SBA, 2008 WL 4104214 (N.D. Cal. Sept. 3, 2008) ........................................5

*Weizman v. Talkspace, Inc.*,
705 F. Supp. 3d 984 (N.D. Cal. 2023) ...................................................................................4

**Federal Statutes**

17 U.S.C. § 106.........................................................................................................................6

17 U.S.C. § 106(1) ...............................................................................................................1, 5

**Rules**

Fed. R. Civ. P. § 8(a) ...............................................................................................................4

Fed. R. Civ. P. § 12(b)(6)......................................................................................................4, 9

Fed. R. Civ. P. § 12(f)...........................................................................................................4, 11

## I.    INTRODUCTION

Defendants' motion seeks to dismiss a discrete set of allegations in the Second Amended Consolidated Complaint ("SACC," ECF No. 253-3): that Defendants committed copyright infringement through the development of the DBRX series of large language models ("LLMs"). This motion is meritless. To state a claim for copyright infringement, Plaintiffs need only plausibly allege (1) ownership of a valid copyright and (2) that the Defendants copied or distributed the work. Defendants do not dispute the first element, instead arguing that the SACC fails to sufficiently allege copying in connection with DBRX development.

The SACC includes detailed allegations based on recent discovery explaining that, in developing DBRX (f/k/a "MPT2"), Databricks ███████████████████████████████—two pirated books datasets containing Plaintiffs' works—including an ██████████ that involved ██████████ ██████████████████████████████████." SACC ¶ 52. The SACC further alleges that this process of pretraining an LLM necessarily involves copying of the works in the training dataset. *Id.* ¶ 32. That is more than enough to establish that Defendants copied Plaintiffs' works to develop DBRX.

Databricks argues that Plaintiffs fail to plausibly plead copying because Defendants decided "later" to "train DBRX without Books3." ECF 263 ("Mot.") at 5, 8. This is irrelevant. To state a *prima facie* claim for copyright infringement, Plaintiffs need only plausibly allege that Defendants copied Plaintiffs works. *See* 17 U.S.C. § 106(1) (granting copyright holders the exclusive right to "reproduce the copyrighted work"); *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 998 (N.D. Cal. 2010) (denying motion to dismiss when plaintiff "alleged that Defendant reproduced" copyrighted works). There is no requirement that Plaintiffs show Databricks copied for some particular purpose, let alone that Plaintiffs must allege that Databricks made a copy of the Books3 dataset in the *final* training data corpus used to develop DBRX. The SACC clearly alleges—based on internal documents produced in discovery—that Databricks used Books3 in ██████████ for the development of DBRX (SACC ¶¶ 52–53, 76), that Plaintiffs' works were in Books3 (SACC ¶ 27), and that those ████████████████████) involved making copies of the books in Books3 (SACC ¶¶ 29–35). That is far above what Rule 8 requires. *See Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 962 (9th Cir. 2025) ("To state a claim for copyright

infringement, the plaintiff must plausibly allege that she owns a valid copyright, and the defendant copied protected aspects of her work."); *Carson v. Verismart Software*, No. C 11-03766 LB, 2012 WL 1038662, at *4 (N.D. Cal. Mar. 27, 2012) (denying motion to dismiss when plaintiff alleged that defendant reproduced copyrighted computer program onto its own servers).

## II.    STATEMENT OF ISSUES TO BE DECIDED

(1)    Whether Plaintiffs' SACC plausibly alleges that Databricks committed direct copyright infringement when developing its DBRX models.

(2)    Whether Plaintiffs' allegations regarding the development of DBRX should be stricken, *i.e.* whether the allegations are either impertinent or immaterial to Plaintiffs' claims.

## III.    BACKGROUND

Plaintiffs initially filed complaints alleging that Defendants MosaicML, Inc. ("MosaicML") and Databricks, Inc. ("Databricks") downloaded and copied datasets containing Plaintiffs' pirated works and used Plaintiffs' copyrighted books without permission to train their MPT series of LLMs. *See O'Nan, et al. v. Databricks Inc., et al.*, Case No. 3:24-cv-01451-CRB (N.D. Cal. March 8, 2024) ("*O'Nan* Action"); ECF No. 1, ¶¶ 38–39; *Makkai, et al., v. Databricks, Inc., et al.*, ("*Makkai* Action") Case No. 3:24-cv-02653-CRB (N.D. Cal. May 2, 2024) ECF No. 1, ¶¶ 38–39. The original complaints further claimed vicarious infringement against Databricks because of Databricks' acquisition of MosaicML in 2023. *See O'Nan Action*, ECF No. 1 ¶¶ 43–46; *Makkai* Action, ECF No. 1 ¶¶ 43–48.

On June 27, 2025, Plaintiffs filed their First Amended Consolidated Complaint ("FACC") alleging direct copyright infringement by Databricks, among other claims, based in part on its use of Books3 to develop the DBRX series of LLMs. ECF No. 131. The Court dismissed this direct infringement claim without prejudice. ECF No. 162. The Court recognized, however, that "[i]f discovery into the surviving claims reveals information that would permit them to allege facts—not conclusions— as to Databricks' liability for direct infringement, Plaintiffs may move for leave to further amend their complaint." *Id.* at 5. Following the Court's guidance, Plaintiffs took discovery and then sought leave to amend their Complaint again, proposing to add new factual allegations underlying their claim of direct infringement based on the development of DBRX—the very facts the Court found wanting in the FACC.

On January 20, 2026, the Court granted Plaintiffs' motion for leave to file the SACC. ECF No. 251. Plaintiffs filed their SACC the next day. ECF No. 253-3.[1]

The SACC alleges that the development of an AI model involves multiple steps, known as the "training pipeline." SACC ¶ 30. The training pipeline includes: (1) the acquisition and curation of data that goes into the model; (2) "pretraining," the process by which the model ingests and extracts protected expression from datasets; and (3) running experiments known as "ablation studies," which test how a model's outputs change when training data is altered. SACC ¶¶ 31–33. Plaintiffs further allege that "[t]hroughout each step of the training pipeline, the same dataset may be used multiple times." SACC ¶ 35. The use of unlawfully obtained works during any of these steps "may result in an unauthorized use (i.e. infringement) of that copyrighted work." *Id.*

With this context in mind, Plaintiffs allege direct copyright infringement by Databricks during the development of the DBRX models—specifically, that:

> Soon after acquiring MosaicML, Databricks ███████████████ ██████ Referred to as █████████, Databricks employees ████████████ ████████████████████████████. A Databricks employee ████████ ████████████████████████████████████ ███████████ Databricks would later ██████████████████.

SACC ¶ 52. Plaintiffs additionally allege that ████████████████████ ████████████████████████████████████████████ ████████████████████ *Id.* ¶ 76. Databricks' use of Books3 was widespread after its acquisition of MosaicML. Indeed, MosaicML's former CEO and current Vice President of AI at Databricks Naveen Rao testified that ██████████████████

---

[1] Defendants argue that Plaintiffs have served boundless discovery into DBRX. Mot. at 6. This is both untrue and ignores that the Court clearly anticipated some amount of discovery was to follow the filing of the SACC. *See* ECF No. 251 at 4 ("[T]o the extent that further discovery is required, it will be limited."). Further discovery is required as the development of DBRX is now squarely implicated by the SACC. And Plaintiffs have limited such discovery by solely requesting that Defendants supplement their existing discovery responses. Plaintiffs have served *no new discovery requests*. In any event, the scope of discovery is irrelevant to this motion. This is especially so given that the parties continue to meet and confer regarding the scope of any supplemental discovery, and no impasse has been reached. The only question before the Court is whether the SACC plausibly alleges that Databricks committed direct copyright infringement through its development of DBRX. It does.

█████████████████████████ SACC ¶ 53. Accordingly, Plaintiffs filed the SACC to include these allegations—which are all based on documents produced by Defendants and deposition testimony in this litigation. The SACC thus revives Plaintiffs' direct infringement claim against Databricks based on its use of Plaintiffs' works during the *development*—not the final training dataset—of DBRX. SACC ¶ 76.

## IV.    ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 569 n.14, 570. The statements alleged in the complaint must provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted). The Court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor. *See Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (reversing dismissal) (quoting *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) (same)). Further, courts recognize that "[t]he fact that defendants may have exclusive control and possession of critical facts . . . cannot categorically prevent plaintiffs from stating a plausible claim." *Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1100 (9th Cir. 2025) (reversing dismissal).

Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Ma v. San Francisco Estuary Inst.*, No. 3:23-cv-05060-JCS, 2024 WL 2113862, at *2 (N.D. Cal. May 8, 2024) (quoting *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008)). In addition, motions to strike are typically not granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. . . The moving party has the burden to show the allegations it hopes to strike as irrelevant will cause specific undue prejudice." *Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 988 (N.D. Cal. 2023) (internal quotations and citations omitted).

### A.    PLAINTIFFS PLAUSIBLY ALLEGE A DIRECT INFRINGEMENT CLAIM AGAINST DATABRICKS FOR ITS DEVELOPMENT OF DBRX

Plaintiffs state a claim for direct copyright infringement against Databricks stemming from its unauthorized use of Plaintiffs' pirated works while developing the DBRX models. Defendants' motion presents *no legal argument* to support dismissal of Plaintiffs' claims. Instead, Defendants push a contrived distinction between "training" and "development" that has no basis in law. Mot. at 8. This distinction is irrelevant to Plaintiffs' claims because any copying of Plaintiffs' copyrighted works without authorization is infringement—no matter when such copying occurred or for what purpose. *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1025 (N.D. Cal. 2025) ("the person who copies the textbook from a pirate site has infringed already, full stop."); 17 U.S.C. § 106(1) (granting copyright holders the exclusive right to "reproduce the copyrighted work"). Defendants present no authority to the contrary.

To state a claim for direct copyright infringement, a Plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Aquarian Found., Inc. v. Lowndes*, 127 F.4th 814, 818 (9th Cir. 2025). Defendants do not contest Plaintiffs' ownership of valid copyrights. Instead, they claim (incorrectly) that Plaintiffs' detailed allegations regarding Databricks' copying and use of Plaintiffs' works to *develop* DBRX cannot state a claim for direct copyright infringement as a matter of law. Mot. at 8–9. But their argument largely rests on a baseless assertion that because Defendants may not have ultimately included Books3 in the final dataset used to train DBRX, somehow all prior uses of the copyrighted works are irrelevant to this litigation. This distracts from Plaintiffs' actual allegations: Databricks copied Books3 multiple times in the process of developing its DBRX models and by so doing, directly infringed Plaintiffs' copyrights in the asserted works.

Under Defendants' logic, as long as an AI company does not incorporate copyrighted books into the *final* training dataset of a model, it is free to download, store, reproduce, and indefinitely use pirated works for its own benefit. That argument gets it backwards. The copying of Books3—which contains Plaintiffs' asserted works—is an infringement, whether the copying is done to ███████, to fine-tune models, or to otherwise develop LLMs. *See Bartz*, 787 F. Supp. 3d at 1025; *UMG Recordings, Inc. v.*

*Doe,* No. C 08-1193 SBA, 2008 WL 4104214, at *1 (N.D. Cal. Sept. 3, 2008) ("[T]here is no dispute the uploading and downloading of copyrighted works without authorization is copyright infringement."). Plaintiffs plausibly allege direct copyright infringement based on Databricks' use of their works to develop the DBRX models.

Defendants characterize Plaintiffs' argument as based on the *omission* of Books3 from the DBRX dataset. Mot. at 9. That is incorrect. As explained above, ablation studies—██████████████ ████████████████████████—test whether removal of particular pieces of data from a data pool impacts the model's final outputs. SACC ¶¶ 33–35. The obvious conclusion resulting from Databricks' use of Books3 in ████████████ is that it *used* Books3 in the first place; it could only ██████████ ██████████████████████████████████████████████████████. That ████████████████████████ process, as the SACC plausibly alleges, necessarily requires making reproductions of the underlying data, *i.e.,* the books contained in Book3 (including Plaintiffs' books). SACC ¶¶ 32–35. Whether Books3 was ultimately used in the final pretraining dataset for DBRX is entirely irrelevant at the pleading stage, as the SACC plausibly alleges that Databricks maintained copies of the pirated Books3 dataset and made further copies of that dataset to ████████████ in the development of DBRX. SACC ¶¶ 32–35, 52, 76. That easily states a claim for copyright infringement.

Defendants' arguments reflect confusion about copyright law. The Copyright Act protects copyright holders' exclusive right to reproduce and distribute their works. *See* 17 U.S.C. § 106. In the context of AI model creation, copyright infringement can take many forms. As explained above, Plaintiffs allege that when Databricks acquired MosaicML in June 2023, it "██████████████████████ ██████████████████████████████████████████████" SACC ¶ 48. Soon after the acquisition of MosaicML, Databricks "██████████████████████████████████ ████████████" initially referred to as ██████████████████████████████ *Id.* ¶ 52. Critically, nothing in the Copyright Act limits claims for copyright infringement to reproductions made to create a "final" training dataset. Mot. at 5 (arguing that "Plaintiffs make no allegation that Books3 was used for DBRX ***training***.").

The SACC alleges that the development of DBRX involved copying the Books3 dataset

containing Plaintiffs' works, as the below examples demonstrate:

- Databricks "█████████████████████████████████ ██████████████." SACC ¶ 52.

- Databricks "█████████████████████████████████ ████████████████████████." *Id*.

- After acquiring MosaicML, Databricks ████████████████ ████████. *Id*. ¶ 53.

- Databricks "█████████████████████████████████ ████████████████████████." *Id*. ¶ 57.

- ███████████████████████████████████████████ ███████████████████████████████████████ ████████████████████." *Id*. ¶ 76.

Again, each instance of Databricks' unauthorized copying or subsequent use of Plaintiffs' copyrighted works—at any phase in the models' development—is infringement. *See id*. ¶ 35; *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (quoting 17 U.S.C. § 106) ("'Anyone who violates any of the exclusive rights of the copyright owner,' that is, anyone who trespasses into his exclusive domain by using . . . the copyrighted work . . . 'is an infringer of the copyright.'"). Defendants used Plaintiffs' copyrighted works when developing DBRX; Defendants therefore infringed Plaintiffs' copyrights. *See Bartz*, 787 F. Supp. 3d at 1020 (explaining at the summary judgment stage that infringing "[u]ses do not turn on the subjective intent of the user but on an objective inquiry into what use was made, *i.e.*, what the user d[id] with the original work. . . Sometimes, the copying involves many uses . . . .") (internal quotations and citations omitted); *see Authors Guild v. Google, Inc.*, 804 F.3d 202, 217 (2d Cir. 2015) (analyzing the many uses of Plaintiffs' copyrighted works in the context of fair use).

Defendants claim that the SACC does "not define or explain" the term "development." Mot. at 5. They are wrong. The SACC explains, very clearly, that:

During the *development process* of an LLM, engineers may also conduct experiments known as "ablation studies" that test the effect of certain data on the model. This can include, for example, determining whether there is a difference in the quality of a model's output if it is trained with books versus without. A dataset may be used to run such experiments but be excluded from the

final training dataset of the model. Importantly, these datasets too may consist of copyrighted works, including books.

SACC ¶ 33 (emphasis added). Plaintiffs' allegations expressly describe the process of LLM development. The fact that the process involves multiple phases, including multiple potential uses of Plaintiffs' works, belies Defendants' argument and does not impede Plaintiffs' claim of direct infringement.

Defendants then claim that "Plaintiffs allege no specific facts that might link their copyrighted works to the DBRX models themselves." Mot. at 5. To support this incorrect claim, Defendants selectively quote the SACC's allegation that Databricks ███████████████████████████ ████████████████████████████████████." Mot. at 5 (quoting SACC ¶ 52). But the full sentence, with the surrounding context, does the opposite—it *specifically links* the copyrighted works to DBRX:

> Soon after acquiring MosaicML, Databricks ████████████████████████████ ███████. Referred to as ████████████, Databricks employees ████████████ ███████████████████████████████████. A Databricks employee ██████████ ████████████████████████████████████████████████████████████ ████████████████." Databricks would later ██████████████████████████.

SACC ¶ 52. The SACC explicitly alleges—and Defendants do not contest—that Plaintiffs' books were in both The Pile and RedPajama-Books datasets, and that those datasets were used to develop the DBRX models. *See* SACC ¶¶ 52–53, 57. In sum, the SACC makes three plausible allegations that Databricks does not contest: (1) that Plaintiffs' books were in Books3, (SACC ¶ 27); (2) that Databricks developed models using Books3, (SACC ¶¶ 52, 76); and (3) that the development process involves copying protected expression from Plaintiffs' works, (SACC ¶ 32–33). Those allegations state a claim of copyright infringement.

The SACC does not allege that the DBRX models' final training dataset contained Books3. Defendants nonetheless *assume* Plaintiffs' claim is premised on DBRX's final training dataset, writing that "Plaintiffs' allegations about ████████████████████████████████ cannot state a claim that Databricks infringed Plaintiffs' copyrights *when training the DBRX models*." Mot. at 7–8 (emphasis added). This entirely misses the point. Plaintiffs allege that Databricks developed DBRX using

Books3. That is sufficient to state a claim for direct copyright infringement as it necessarily entails the unauthorized copying and use of Plaintiffs' works. *See Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (Aug. 25, 1998) ("[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright."). That Databricks did not engage in *one* possible infringing use (*i.e.*, incorporating Books3 into the final DBRX training dataset) does not mean it did not engage in *other* infringing uses (*i.e.*, making copies of Books3 in earlier phases of DBRX development).

The Court should disregard Defendants' attempt to inject extrinsic evidence in support of their argument that "Databricks employees and former employees uniformly testified that Books3 was ***not*** used to train DBRX" (emphasis in original). Mot. at 8; Declaration of Diana C. Buck Exs. 1–3. Putting aside the fact that this evidence is irrelevant because Plaintiffs do not allege the final DBRX training dataset contained Books3, Defendants' reliance on such deposition testimony—which is not included nor referenced in Plaintiffs' SACC—is improper. *See Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1007 (N.D. Cal. 2024) ("In general, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (internal quotations omitted) (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)). The Court should disregard any reference to evidence extrinsic to Plaintiffs' SACC.

Defendants' arguments regarding Plaintiffs' "remaining allegations" are equally deficient. Mot. at 9. Defendants cherry-pick certain quotes from the SACC and, worse, fail to substantively engage with Plaintiffs' allegations. First, Defendants highlight a quote from Naveen Rao**,** Databricks' Vice President of AI and former MosaicML CEO, that the Court previously held to be insufficient to sustain Plaintiffs' direct infringement claim regarding DBRX in the FACC. Mot. at 9; SACC ¶ 55. This is misdirection. Now, with the benefit of additional discovery, the SACC makes much more specific allegations regarding how Databricks used Plaintiffs' works in connection with DBRX. Indeed, Defendants fail to address the more pertinent—and incriminating—quotes from Databricks Chief Scientist Jonathan Frankle and Dr. Rao in the SACC that evince Databricks' use of Books3 in the development of DBRX. SACC ¶

53 ("███████████████████████████████████████████

███████████████████████████.'". . .; "Naveen Rao stated that Databricks ███████

███████████████████████████████████████████

██████████.'"). Defendants ignore these allegations.

Defendants similarly argue that because the SACC retains an allegation from the FACC regarding DBRX, the direct infringement claim against Databricks must be dismissed. The SACC and the FACC both reference public statements by Databricks indicating that the DBRX models "were the culmination of 'years of LLM development at Databricks that includes the MPT . . . projects' and that '[t]he development of DBRX was led by the Mosaic team that previously built the MPT model family.'" SACC ¶ 56 (quoting a Databricks blogpost). Far from requiring dismissal of the SACC's claims regarding DBRX, this quote—now combined with Plaintiffs' more specific allegations—*supports* Plaintiffs' claim that the *development* of DBRX involved the use of the Books3 dataset that the MosaicML team carried over from its development of the MPT models. Again, Defendants sidestep evidence backing the direct infringement claim in the SACC—the very same evidence that supported Plaintiffs' successful motion to amend. *See* ECF No. 251 (finding that Plaintiffs advanced a sufficient factual basis to support amending the complaint to include a direct infringement claim).

Defendants further assert that "Plaintiffs removed their earlier allegation that DBRX was trained on Plaintiffs' books." Mot. at 9–10. This again misrepresents Plaintiffs' claims in the SACC. The SACC replaces the FACC's more generalized claims related to "training" DBRX with the specific instances of direct infringement detailed above.

The cases Defendants cite in support of their position simply reinforce the plausibility of Plaintiffs' claim against Databricks. For example, in *In re Google Generative AI Copyright Litig*, the Court dismissed the Plaintiffs' claim of direct infringement as to certain models only when the Plaintiffs failed to allege "any facts" regarding them. No. 23-CV-03440-EKL, 2025 WL 2624885, at *7 (N.D. Cal. Sept. 11, 2025). The Court explained, "[b]ecause Plaintiffs do not allege that any of their works were included in training datasets used to *develop* these models, Plaintiffs do not plausibly allege copyright infringement." *Id*. (emphasis added). Indeed, the Court *declined to dismiss* claims regarding models that

the plaintiffs *specifically* connected to datasets containing pirated works used in their development. *Id.* Here, Plaintiffs unequivocally allege that their works were copied and used to *develop* the DBRX models, including specific allegations detailing the copying of their works in the models' development. *See* SACC ¶¶ 52–53, 57, 76. Likewise, in *Blizzard Ent., Inc.*, the Court dismissed Plaintiffs' claims for asserting only generalized allegations of infringement and for failing to specifically identify at least a "representative sampling" of infringed content. *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015). In contrast, here, Plaintiffs specifically identify their infringed works, describe how Defendants copied and stored such works, and identify multiple instances of Databricks using those works to develop DBRX. SACC ¶¶ 52–53, 57, 76.

**B.      BECAUSE PLAINTIFFS PLAUSIBLY ALLEGE A DIRECT INFRINGEMENT CLAIM, THE COURT SHOULD NOT STRIKE THE ALLEGATIONS REGARDING DBRX.**

**1.      Plaintiffs' Allegations Regarding Databricks' Development of DBRX are neither Impertinent nor Immaterial**

There is absolutely no basis for the Court to strike Plaintiffs' allegations regarding DBRX. Defendants argue that Plaintiffs' allegations regarding DBRX in the SACC are "impertinent" and "immaterial." Mot. at 10–12. "'Immateriality' and 'impertinence' under Rule 12(f) both speak to the relevance of challenged allegations." *Doe 1 v. Univ. of San Francisco*, 685 F. Supp. 3d 882, 894 (N.D. Cal. 2023). Allegations that are immaterial have no "essential or important relationship to the claim for relief or the defenses being pleaded," and allegations that are impertinent "do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). Courts *must* deny a motion to strike "if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011) (emphasis added).

There is nothing immaterial or impertinent about Plaintiffs' allegations concerning Databricks' use of Plaintiffs' books to develop DBRX. Defendants' assertion to the contrary (that "allegations regarding DBRX's development, release, and distribution . . . are irrelevant") is baseless. Mot at 11. Rather, the allegations regarding the development of DBRX, as explained above, plausibly state a claim against Databricks for direct copyright infringement. Defendants continue to repeat their misleading

argument that the "SACC contains no allegations that DBRX was trained on Books3 or that DBRX's training contained any of Plaintiffs' books." Mot. at 12. Similarly, Defendants again highlight the allegations retained from the FACC but completely ignore the new allegations included in the SACC. *See* SACC ¶¶ 52–53, 76; ECF No. 195-5 at 12; 19 (redline comparing Plaintiffs' FACC and SACC). The gravamen of Plaintiffs' claims regarding DBRX is precisely that Databricks copied Plaintiffs' books when developing DBRX. *See, e.g.*, SACC ¶ 52. These allegations state a claim for direct copyright infringement.[2] They are therefore not irrelevant, immaterial, or impertinent to Plaintiffs' claim of direct infringement. Accordingly, Defendants' request to strike Plaintiffs' allegations should be denied.

### 2. Defendants will not be Prejudiced from Plaintiffs' Allegations

Defendants claim that they will suffer prejudice if the Court does not strike Plaintiffs' DBRX allegations. Mot. at 12–13. First, any possible prejudice will be obviated if Defendants prevail on their motion to dismiss. Additionally, as the Court noted in granting Plaintiffs' motion to amend, the "need for further discovery alone does not constitute prejudice." ECF No. 251 (quoting *Rodriguez v. Barrita, Inc.*, No. C 09-4057 RS, 2013 WL 12175047, at *3 (N.D. Cal. Jan. 14, 2013)); *see also Brooks v. BevMo! Inc.*, No. 2:20-CV-01216-MCE-DB, 2021 WL 3602152, at *1 (E.D. Cal. Aug. 13, 2021) (denying motion to strike due to the "potential threat of discovery").

The cases Defendants cite to support their claim of prejudice are inapposite. In *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, the Court granted a motion to strike where Plaintiff alleged "repetitive" overlapping claims involving the same conduct. *See* 301 F.R.D. 337, 342 (N.D. Cal. 2014). Here, Plaintiffs' claims regarding DBRX stand alone and do not overlap with the other allegations in this case. Plaintiffs specifically explain that Databricks used Books3—and Plaintiffs' stolen works—to develop DBRX; that is clearly distinct from Plaintiffs' allegations about the other implicated models. Accordingly, Defendants' argument that Plaintiffs' direct infringement claim will "confuse the issues" is misplaced. Mot. at 13; *cf. Nguyen*, 301 F.R.D. at 340. Similarly, *Holly v. Alta Newport Hospital, Inc.* provides no support for Defendants. There, the plaintiff *failed to amend* her allegations after they were

---

[2] While Defendants now seek to strike Plaintiffs' allegations regarding DBRX, they did not attempt a futility argument when challenging Plaintiffs' motion to amend. *See* ECF No. 198. This underscores the weakness of Defendants' arguments.

previously dismissed by the Court in a putative class action. *See* No. 2:19-cv-07496-ODW-MRW, 2020 WL 6161457, at \*5 (C.D. Cal. Oct. 21, 2020). Here, Plaintiffs have advanced numerous new allegations to further support and substantiate their direct infringement claim—many of which Defendants simply ignore in their motion. Defendants' claims of prejudice are unavailing.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the motion to dismiss be Denied. In the alternative, Plaintiffs should be granted leave to amend their complaint.

Dated: February 18, 2026

Respectfully submitted,

By: */s/ Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
William Castillo Guardado (SBN 294159)
Avery Wolff (admitted *pro hac vice*)
Drew Morgan (SBN 366901)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com
awolff@saverilawfirm.com
dmorgan@saverilawfirm.com

Bryan L. Clobes (admitted *pro hac vice*)
Mohammed A. Rathur (admitted *pro hac vice*)
Nabihah Maqbool (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com
nmaqbool@caffertyclobes.com

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
Dylan Salzman (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com
dsalzman@susmangodfrey.com

Rachel J. Geman (admitted *pro hac vice*)
Danna Z. Elmasry (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
ashaver@lchb.com

Betsy A. Sugar (admitted *pro hac vice*)
Kenneth S. Byrd (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com
kbyrd@lchb.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
mb@butericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*