1  JEDEDIAH WAKEFIELD (CSB No. 178058)
   jwakefield@fenwick.com
2  RYAN KWOCK (CSB No. 336414)
   rkwock@fenwick.com
3  FENWICK & WEST LLP
   One Front Street, 33rd Floor
4  San Francisco, CA 94111
   Telephone:     415.875.2300
5  Facsimile:     650.938.5200

6  DAVID HAYES (CSB No. 122894)
   dhayes@fenwick.com
7  FENWICK & WEST LLP
   801 California Street
8  Mountain View, CA 94041
   Telephone:     650.988.8500
9  Facsimile:     650.938.5200

10 *Attorneys for Defendants*
   DATABRICKS, INC., and
11 MOSAIC ML, LLC, formerly MOSAIC ML, INC.

12 *Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In Re Mosaic LLM Litigation* | Master File Case No.: 3:24-cv-01451-CRB |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT AND MOTION TO STRIKE** |
| | Date:    March 20, 2026<br>Time:    10:00 a.m.<br>Dept:    Videoconference<br>Judge:   Honorable Charles R. Breyer |

**REDACTED**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. The Court should dismiss the infringement claim against DBRX. ......................... 2

        1. Plaintiffs admit that DBRX's training data did not contain Plaintiffs' books. ........................................................................................ 3

        2. Plaintiffs' vague "development" allegations fail to state an infringement claim as to DBRX. ............................................................... 4

        3. Plaintiffs incorrectly reframe Defendants' motion to dismiss. .................. 6

    B. The Court should strike the SACC's DBRX-related allegations. ........................... 8

        1. The allegations that Defendants seek to strike (¶¶ 2, 6, 9, 54-57, and 76) are impertinent and immaterial. ............................................................ 9

        2. The gratuitous DBRX allegations will prejudice Defendants. ................ 10

III. CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015) ................................................................................................... 7

*Bartz v. Anthropic PBC*,
   787 F. Supp. 3d 1007 (N.D. Cal. 2025) ................................................................................... 7

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
   No. 18-cv-00933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ................................... 2

*Bender v. LG Electronics U.S.A., Inc.*,
   No. C 09-02114 JF (PVT), 2010 WL 889541 (N.D. Cal. Mar. 11, 2010) ............................ 3, 4

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
   149 F. Supp. 3d 1167 (N.D. Cal. 2015) ............................................................................... 2, 5

*Brooks v. BevMo! Inc.*,
   No. 20-CV-01216-MCE-DB, 2021 WL 3602152 (E.D. Cal. Aug. 13, 2021) ......................... 10

*Epikhin v. Game Insight N. Am.*,
   No. 14-CV-04383-LHK, 2015 WL 2412357 (N.D. Cal. May 20, 2015) ................................. 3

*Holly v. Alta Newport Hospital, Inc.*,
   No. 2:19-cv-07496-ODW (MRWx), 2020 WL 6161457
   (C.D. Cal. Oct. 21, 2020) ....................................................................................................... 11

*In re Google Generative AI Copyright Litigation*,
   No. 23-CV-03440-EKL, 2025 WL 2624885 (N.D. Cal. Sept. 11, 2025) ........................ 5, 6, 7

*Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*,
   677 F. Supp. 3d 1079 (N.D. Cal. 2023) ............................................................................... 6, 7

*Los Angeles News Services v. Reuters Television International, Ltd.*,
   149 F.3d 987 (9th Cir. 1998) ................................................................................................... 7

*Microsoft Corp. v. Phoenix Sols., Inc.*,
   No. 2:10-cv-03846-MRP-SSx, 2010 WL 11509230 (C.D. Cal. Nov. 4, 2010) .................... 3, 6

*Netbula, LLC v. Distinct Corp.*,
   212 F.R.D. 534 (N.D. Cal. 2003) .......................................................................................... 10

*Nguyen v. CTS Electronics Manufacturing Solutions, Inc.*,
   301 F.R.D. 337 (N.D. Cal. 2014) .......................................................................................... 10

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
  No. C 09-05659 WHA, 2011 WL 166198 (N.D. Cal. Jan. 18, 2011) ........................................ 2

*Rodriguez v. Barrita, Inc.*,
  No. C 09-4057 RS, 2013 WL 12175047 (N.D. Cal. Jan. 14, 2013) ...................................... 10

*Sony Corporation of America v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ............................................................................................................. 7

*UMG Recordings, Inc. v. Doe*,
  No. C 08-1193 SBA, 2008 WL 4104214 (N.D. Cal. Sept. 3, 2008) ....................................... 7

Defendants Databricks, Inc. ("Databricks") and Mosaic ML, LLC ("MosaicML") (collectively, "Defendants") submit this Reply in support of their Motion to Dismiss Plaintiffs' Second Amended Consolidated Complaint and Motion to Strike (Dkt. 263-3).

## I. INTRODUCTION

Plaintiffs' Opposition (Dkt. 271-3) admits the core facts supporting Defendants' Motion to Dismiss and Strike: (1) Plaintiffs make no allegation that DBRX's training data contained Plaintiffs' books; and (2) the only ▮▮▮▮▮▮▮ supposedly related to DBRX involved ▮▮▮▮▮▮▮. In other words, Plaintiffs acknowledge that they have no claim that Defendants infringed their copyrights when training DBRX. Instead, Plaintiffs rest on vague claims that ▮▮▮▮▮▮▮ were generally part of DBRX's "development." As with their First Amended Consolidated Complaint ("FACC"), these deliberately loose allegations fail to state a plausible infringement claim as to DBRX.

Rather than meaningfully address these points, Plaintiffs' opposition attacks a straw man. Plaintiffs incorrectly frame the issue as whether their ▮▮▮▮▮▮▮ allegations support an infringement claim in general, with or without a claim about DBRX. But this misses the point. Defendants' motion does not seek to dismiss all infringement claims in the lawsuit. Plaintiffs allege that a large language model "copies and ingests" textual works *during training*. Therefore, if DBRX did not train on Plaintiffs' books, there would be no infringement claim as to **DBRX**, regardless of whether Defendants ▮▮▮▮▮▮▮. Accordingly, Defendants moved specifically to dismiss Plaintiffs' claim that DBRX infringes, and to strike Plaintiffs' impertinent and immaterial allegations about DBRX—which Plaintiffs have transparently used as a hook to radically expand the case and pursue discovery not just about ▮▮▮▮▮▮▮ but about DBRX itself.

Plaintiffs also resort to mischaracterizing their own allegations to muddy the waters. In their opposition, Plaintiffs now assert that Databricks "▮▮▮▮ [DBRX] ▮▮▮▮▮▮▮." But the actual sentence in the Second Amended Consolidated Complaint ("SACC") does not contain the bracketed word "[DBRX]." While Plaintiffs now attempt to confuse the issue,

1  the SACC does not allege that Databricks pretrained DBRX with Books3 or any other dataset
2  containing Plaintiffs' books.
3      Despite that undisputed fact, Plaintiffs hope to use the amorphous term "development" to
4  encompass █████ that predates DBRX's training and release. This includes Plaintiffs'
5  nonsensical claims about ██████████████████████████████████████████████
6  ██████████████████. But any ███████████ were necessarily performed before
7  choosing the datasets to train DBRX itself. Indeed, the only ████████████████████
8  ████████████████████████████████████████████████████████████████████
9  ██████████████████. That is entirely consistent with the fact that DBRX was trained without
10  Books3.
11      Plaintiffs wrongly argue that ███████████ gives them a claim about DBRX itself. But
12  that is not how intellectual property claims work. By Plaintiffs' strained logic, if a car company
13  experimented on emissions technology with and without a patented component, and later
14  manufactured a car *without* that component, the patent owner could still assert infringement claims
15  as to the *non-infringing* car based solely on the earlier experimentation that led to the decision not
16  to include the component. The Court should reject this plainly flawed reasoning and grant
17  Defendants' Motion to Dismiss and Strike.

18  **II.   ARGUMENT**

19      **A.   The Court should dismiss the infringement claim against DBRX.**

20      To state an infringement claim, Plaintiffs must allege specific infringing conduct and cannot
21  rely on "conclusory statements" or generalizations. *See Richtek Tech. Corp. v. UPI Semiconductor*
22  *Corp.*, No. C 09-05659 WHA, 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011) (dismissing
23  copyright infringement claim where complaint lacked "factual allegations to identify [the
24  defendant's] allegedly infringing acts or works"); *see also Blizzard Ent., Inc. v. Lilith Games*
25  *(Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (granting motion to dismiss where
26  plaintiff made "only general allegations"). When alleging infringement as to specific products,
27  Plaintiffs must provide sufficient details pertaining to each allegedly infringing product at issue.
28  For example, in *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, the court dismissed a copyright

DEFS.' REPLY ISO MTD SACC AND
MOTION TO STRIKE
2
Master File Case No.: 3:24-cv-01451-CRB

infringement claim where the plaintiff did not allege "in what Cytek document or software such copying is manifest." No. 18-cv-00933-MMC, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020). Similarly, in *Bender v. LG Electronics U.S.A., Inc.*, the court dismissed a patent claim that failed to identify "certain named and specifically identified products or product components," explaining that the defendants therefore did not raise "a plausible claim that the named products are infringing." No. C 09-02114 JF (PVT), 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010); *see also Microsoft Corp. v. Phoenix Sols., Inc.*, No. 2:10-cv-03846-MRP-SSx, 2010 WL 11509230, at *2-3 (C.D. Cal. Nov. 4, 2010) (dismissing indirect patent infringement counterclaims for certain products where defendant provided only "conclusory allegations").

1. **Plaintiffs admit that DBRX's training data did not contain Plaintiffs' books.**

In their Opposition, Plaintiffs admit that the "SACC does not allege that the DBRX models' final training dataset contained Books3." Opp. at 8. Instead, Plaintiffs maintain, the "SACC replaces the FACC's more generalized claims related to 'training' DBRX with the specific instances of direct infringement." *Id.* at 10. But none of these so-called "specific instances" of direct infringement involved training DBRX. Instead, they involve largely unspecified ▓▓▓▓. Indeed, the ▓▓▓▓ that Plaintiffs describe in any detail is "▓▓▓▓" (*id.* at 8 (quoting SACC ¶ 52))—▓▓▓▓.

Attempting to sow confusion on this point, Plaintiffs mischaracterize their own allegations about DBRX. Purporting to quote paragraph 52 of the SACC, Plaintiffs claim to have alleged that "Databricks ▓▓▓▓ [DBRX] ▓▓▓▓'" Opp. at 7 (alterations in original). Not so. Plaintiffs' Opposition inserted the bracketed term "[DBRX]" after ▓▓▓▓ but the actual cited paragraph makes no such claim. *See also* Opp. at 1 (misleadingly inserting the words "the model" after ▓▓▓▓ when describing SACC ¶ 52). Plaintiffs cannot salvage their DBRX claim by rewriting it in their Opposition. *See Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2015 WL 2412357, at

1  *4 (N.D. Cal. May 20, 2015) ("Plaintiffs cannot avoid dismissal by alleging new facts in an
2  opposition to a motion to dismiss." (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197
3  n.1 (9th Cir. 1998))).

4      Perhaps Plaintiffs hope to draw a distinction between "training" and "pretraining" to
5  incorrectly suggest that DBRX was ▬▬▬▬▬▬▬▬. But as the SACC makes clear,
6  pretraining is simply another word for training an LLM—which allegedly is when "the LLM copies
7  and ingests each textual work in the training dataset." *See* SACC ¶ 32 ("Once a model is pretrained,
8  it results in a trained model known as a *base* or *foundational* model."). In the SACC, Plaintiffs
9  carefully avoided alleging that Databricks "pretrained" DBRX with Books3, and they had no Rule
10 11 basis to do so. Nor do they allege that Books3 was used in any fine-tuning of DBRX. Indeed,
11 on the next page of their Opposition, Plaintiffs admit that they did *not* allege that DBRX was trained
12 on Books3—the only dataset that Plaintiffs allege contains their books. Opp. at 8. Thus, Plaintiffs'
13 allegations about ▬▬▬▬▬ are not about training—or "pretraining"—DBRX, but about ▬
14 ▬▬▬▬▬ that was separate from any pretraining of DBRX.

       **2.   Plaintiffs' vague "development" allegations fail to state an infringement claim as to DBRX.**

17     Plaintiffs' allegations that ▬▬▬▬▬ were part of what they call "development" are far
18 too generalized to state a claim for infringement regarding DBRX. *See Bender*, 2010 WL 889541,
19 at *6 (dismissing claim where defendants did not raise "a plausible claim that the named products
20 are infringing"). Illustrating the amorphous nature of their "development" allegations, Plaintiffs
21 try to define "development" by referring circularly to a "development process" where certain
22 ▬▬▬▬▬. Opp. at 7-8 (quoting SACC ¶ 33). In doing so, Plaintiffs conflate
23 ▬▬▬ with "development," wrongly tying all ▬▬▬ to the developed product itself.
24 This is particularly true of Plaintiffs' arguments about so-called "ablation studies," which compare
25 the performance of models trained with and without certain data. SACC ¶ 33. But like the car
26 company that conducts experiments with a component but later builds a car *without* it, the fact that
27 Databricks ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ does not mean that
28 Databricks ▬▬▬▬▬. Indeed, the Court already rejected this reasoning when it held

DEFS.' REPLY ISO MTD SACC AND    4    Master File Case No.: 3:24-cv-01451-CRB
MOTION TO STRIKE

that Plaintiffs cannot "use one alleged instance of [alleged] infringement to simply presume that the same party committed more infringement." Dkt. 162 (Order on MTD FACC) at 4-5 (citing *Implicit Networks Inc. v. F5 Networks Inc.*, No. C10-3365 SI, 2013 WL 1007250, at *12 (N.D. Cal. Mar. 13, 2013); *Menzel v. Scholastic, Inc.*, No. 17-cv-5499-EMC, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018)).

The cases that Plaintiffs try to distinguish reinforce this point. In *In re Google Generative AI Copyright Litigation*, the court allowed copyright infringement claims to proceed only where the plaintiffs "identified specific copyrighted works *that were allegedly included in datasets used to train [certain] models*." No. 23-CV-03440-EKL, 2025 WL 2624885, at *7 (N.D. Cal. Sept. 11, 2025) (emphasis added). The court's use of the term "develop" when discussing "training datasets used to develop these models" referred to models where the models' training data *contained* the plaintiffs' books; there were no allegations of ███████████████ that the word "development" would have encompassed in that case. *See id.*; *In re Google Generative AI Copyright Litig.*, No. 23-CV-03440-EKL, Consolidated Compl. ¶¶ 95, 123, 128-29, 131, Dkt. 91 (N.D. Cal. Dec. 20, 2024). As the court there explained, "copyright infringement allegedly occur[red] *when training the generative AI models*." *Google Generative AI Copyright Litig.*, 2025 WL 2624885, at *7 n.3 (emphasis added). Similarly, in *Blizzard Entertainment*, the Court dismissed plaintiffs' claims when plaintiffs could not allege infringement with regard to specific products. 149 F. Supp. 3d at 1175 ("Plaintiffs' sweeping allegations fail to apprise [the defendant] or the Court of <u>which</u> 'Heroes Charge" characters infringe <u>which</u> characters from <u>which</u> of Blizzard or Valve's numerous games, 'related products and merchandise'" (alterations in original) (footnote omitted)).

The same reasoning applies here. To state a claim as to DBRX, Plaintiffs need to allege that **DBRX**—███████████████—was trained on Plaintiffs' books. As Plaintiffs acknowledge, they have failed to do so.[1]

---

[1] Plaintiffs argue that the Court should disregard the citation of deposition testimony, where Databricks witnesses testified that Books3 was not used to train DBRX. Opp. at 9. This citation was used only to show that Plaintiffs *could not* allege that Books3 was used to train DBRX. This issue is not contested, as Plaintiffs acknowledge that they no longer allege that Books3 was used in DBRX's training data. Opp. at 8, 10.

None of Plaintiffs' remaining allegations state a claim as to DBRX. The allegations that (1) a former Databricks vice president and CEO of MosaicML said that "DBRX was trained on 'open data sets that the community knows'" (SACC ¶ 55); and (2) the DBRX blogpost stated that "the DBRX models were the culmination of 'years of LLM development at Databricks'" (*id.* ¶ 56) cannot support an infringement claim against DBRX, as the Court already held. Dkt. 162 at 3-4. In fact, these allegations are even weaker now that Plaintiffs have acknowledged that they do not allege that the DBRX training data includes Plaintiffs' books. Opp. at 8, 10. And Plaintiffs' identification of SACC ¶ 53 (███████████████████████████████████ ███████) is beside the point, as this allegation fails to ███████████████████████████.

In sum, none of Plaintiffs' allegations can support an infringement claim for DBRX. The Court should dismiss this claim.

### 3. Plaintiffs incorrectly reframe Defendants' motion to dismiss.

Rather than address Defendants' motion to dismiss the infringement claim as it relates to DBRX, Plaintiffs generally explain why they can assert infringement based on the alleged "unauthorized copying and use of Plaintiffs' works." Opp. at 9. But a court may dismiss an infringement claim about a ***specific product*** if a plaintiff cannot allege sufficient facts to support the claim. For example, in *Google Generative AI Copyright Litigation*, the court dismissed claims against certain models where the plaintiffs failed to allege that their copyrighted works were included in the training datasets used to train those models. 2025 WL 2624885, at *7. By contrast, the court did not dismiss claims related to models where the plaintiffs "identified specific copyrighted works that were allegedly included in datasets used to train [those] models." *Id.* Similarly, in *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, the court dismissed patent infringement claims as to certain accused products because the plaintiffs did not provide "sufficient allegations" to "meet every element of at least one claim." 677 F. Supp. 3d 1079, 1085, 1089 (N.D. Cal. 2023). And in *Microsoft*, the court dismissed indirect patent infringement counterclaims pertaining to certain products where the defendant failed to allege "particular facts" supporting its claims as to those specific products. 2010 WL 11509230, at *2-3.

Apparently acknowledging that they cannot state a claim for infringement related to DBRX, Plaintiffs spend much of their argument attacking a straw man by arguing that they can state other infringement claims related to Books3. They assert that the distinction between "training" and "development" is "irrelevant to Plaintiffs' claims because any copying of Plaintiffs' copyrighted works without authorization is infringement—no matter when such copying occurred or for what purpose." Opp. at 5; *see also id.* at 9. But Defendants are not arguing that the "copying of Plaintiffs' copyrighted works" would never be infringement. Nor do they seek to dismiss all infringement claims. Rather, Defendants move to dismiss the infringement claim **related to DBRX**, as courts regularly dismiss claims related to specific products when a plaintiff cannot allege sufficient facts for that product. *See, e.g.*, *Google Generative AI Copyright Litigation*, 2025 WL 2624885, at *7 (dismissing claims related to specific products); *Kawasaki*, 677 F. Supp. 3d at 1085, 1089 (same).

Accordingly, the cases that Plaintiffs rely on are neither procedurally nor substantively relevant. And importantly, none of Plaintiffs' cases suggest that generalized infringement allegations can provide the basis for an infringement claim involving a specific product. The summary judgment order in *Bartz v. Anthropic PBC* addressed a situation in which the plaintiffs explicitly alleged that the authors' works were used to train the LLMs at issue. 787 F. Supp. 3d 1007, 1017 (N.D. Cal. 2025). *UMG Recordings, Inc. v. Doe* involved a motion for leave to take immediate third-party discovery from an internet service provider regarding claims involving illegal "P2P" downloads, which is inapplicable to the DBRX allegations here. No. C 08-1193 SBA, 2008 WL 4104214, at *1 (N.D. Cal. Sept. 3, 2008). In *Los Angeles News Services v. Reuters Television International, Ltd.*, the claims involved a specific "commercial use" with copying and selling footage to news organizations. 149 F.3d 987, 994 (9th Cir. 1998). And *Sony Corporation of America v. Universal City Studios, Inc.* involved alleged contributory infringement where the court ultimately held that the conduct at issue was fair use. 464 U.S. 417, 455-56 (1984). Similarly, in *Authors Guild v. Google, Inc.*, the plaintiffs alleged specific acts of infringement based on Google's Library Project, and the Second Circuit affirmed the district court's ruling that Google's actions constituted fair use and were "not an infringement." 804 F.3d 202, 207-09, 229 (2d Cir.

2015). In short, none of these cases support Plaintiffs' attempt to bring an infringement claim against *DBRX* based on generalized ▇▇▇▇ allegations.

The distinction between the DBRX-related infringement claim and Plaintiffs' other Books3-related infringement claims is not a theoretical point. Despite their representation to the Court that concerns about extensive discovery "can be alleviated by limiting additional discovery requests and limiting discovery into DBRX only ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"—which the Court relied on when granting Plaintiffs leave to amend—Plaintiffs immediately turned around and pursued sweeping DBRX-related discovery. Mot. at 6-7. Plaintiffs do not even try to address their backtracking, instead saying that they "have served *no new discovery requests*" and that "the parties continue to meet and confer regarding the scope of any supplemental discovery." Opp. at 3 n.1. This assertion completely sidesteps the issue. Plaintiffs have *previously* served numerous requests related to DBRX, many of which Defendants rightfully objected to based on the Court's previous rulings. And Plaintiffs still maintain that "[f]urther discovery is required as the development of DBRX is now squarely implicated by the SACC" (*id.*)—even though they have already had discovery about Defendants' use of *Books3*, which, again, is the only dataset that Plaintiffs allege contains their books. The Court should not allow a generalized "development" allegation to support a baseless infringement claim, and onerous discovery, as it relates to DBRX.

**B.    The Court should strike the SACC's DBRX-related allegations.**

In their Motion to Dismiss and Strike, Defendants explained why Plaintiffs' allegations regarding DBRX's development, release, and distribution are irrelevant to any pled claim, given that the SACC does not allege that *DBRX*'s training data included Books3. Mot. at 11-12. Rather than address these specific allegations and explain their relevance, Plaintiffs fall back on their refrain that "the allegations regarding the development of DBRX … plausibly state a claim against Databricks for direct copyright infringement." Opp. at 11. But for the reasons discussed in Defendants' opening motion and above, the DBRX claim fails as a matter of law. The remaining infringement claims relating to Books3 cannot justify the inclusion of Plaintiffs' gratuitous and

immaterial DBRX allegations. Nor do Plaintiffs meaningfully address the prejudice that will result from including these allegations.

### 1. The allegations that Defendants seek to strike (¶¶ 2, 6, 9, 54-57, and 76) are impertinent and immaterial.

Defendants seek to strike allegations about DBRX that are irrelevant to Plaintiffs' surviving claims. For example, the Court already held that the allegations that DBRX was "trained on 'open data sets that the community knows'" and that "[t]he development of DBRX was led by the Mosaic team that previously built the MPT model family" (SACC ¶¶ 55-56) could not support a direct infringement claim. Dkt. 162 at 3-5. As the Court explained, "Plaintiffs do not allege facts that could establish that the DBRX models are actually trained on any shadow library websites, let alone those that contain Plaintiffs' works." *Id.* at 3. This point applies with even more force now that Plaintiffs have acknowledged that the "SACC does not allege that the DBRX models' final training dataset contained Books3" and that the SACC "replaces the FACC's more generalized claims related to 'training' DBRX" with the current allegations. *See* Opp. at 8, 10. As the Court stated in its previous motion to dismiss order, "Plaintiffs' other allegations about the DBRX data sets are ancillary to the core factual question of whether those data sets contain Plaintiffs' copyrighted works, so they do not state a claim." Dkt. 162 at 4. Here, too, Plaintiffs' DBRX-related allegations do not address whether DBRX itself was trained on Plaintiffs' books. Because Plaintiffs have not alleged—and in fact *removed* any allegations suggesting—that DBRX's training data contained Plaintiffs' books, the Court should strike these impertinent allegations.

Tellingly, the only specific DBRX allegations that Plaintiffs try to defend are SACC ¶¶ 52-53 and 76. Opp. at 11-12. But Defendants did not move to strike ¶¶ 52-53. As explained above, paragraph 52 involves ▬▬▬▬▬▬▬▬▬▬ (notwithstanding Plaintiffs' attempt in their Opposition to confuse this issue), and paragraph 53 alleges that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Paragraph 76 vaguely alleges that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ But Plaintiffs fail to connect these unspecified ▬▬▬▬▬ to the trained DBRX model. And as discussed above, Plaintiffs' remaining

allegations are irrelevant to DBRX, since they cannot support a claim that DBRX was trained on Plaintiffs' books. Accordingly, the Court should strike these allegations.[2]

### 2. The gratuitous DBRX allegations will prejudice Defendants.

Defendants will also incur significant prejudice if these gratuitous DBRX allegations remain. Plaintiffs blithely cite the Court's order on Plaintiffs' motion to amend to assert that "the 'need for further discovery alone does not constitute prejudice.'" Opp. at 12 (citing Dkt. 251). But the case the Court relied on in that Order stands in stark contrast to the facts here. In *Rodriguez v. Barrita, Inc.*, the defendants "conceded that they would suffer no real prejudice" and that additional discovery would not impact any deadlines. No. C 09-4057 RS, 2013 WL 12175047, at *3 (N.D. Cal. Jan. 14, 2013). And in *Brooks v. BevMo! Inc.*, the court found no prejudice where the plaintiff moved to strike affirmative defenses in the answer and did not identify the "'potential threat' of discovery." No. 20-CV-01216-MCE-DB, 2021 WL 3602152, at *1 (E.D. Cal. Aug. 13, 2021).

By contrast, at this point fact discovery has long been closed, and the parties are well into the expert phase of the case. Defendants have already produced discovery about all uses of Books3. Dkt. 263-4 (Decl. of Diana C. Buck) ¶ 2. Yet Plaintiffs maintain that "[f]urther discovery is required as the development of DBRX is now squarely implicated by the SACC." Opp. at 3 n.1. "Further discovery" about DBRX beyond what Defendants have already produced would involve substantial and unwarranted delay and expense.

Finally, Plaintiffs' attempt to distinguish Defendants' cases again reinforces why the Court should grant Defendants' motion to strike. Notably, Plaintiffs purported to address only two of Defendants' cases, both of which support granting a motion to strike here. In *Nguyen v. CTS Electronics Manufacturing Solutions, Inc.*, the court explained when granting a motion to strike

---

[2] Plaintiffs suggest that Defendants' decision not to raise futility in opposing Plaintiffs' motion to amend "underscores the weakness of Defendants' arguments." Opp. at 12 n.2. Not so. Indeed, the Court has previously ruled in this case that futility arguments are better raised on a motion to dismiss rather than in opposition to a motion for leave to amend. *See* Dkt. 129 at 5-6. And, as discussed, Defendants do not seek to dismiss the entirety of the direct infringement claim, so issues about the sufficiency of certain allegations would not have been addressed on a motion for leave to amend. *See, e.g.*, *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003) ("Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed."). Further, Defendants *did* raise the significant prejudice that would be incurred from Plaintiffs' DBRX allegations. Dkt. 213 at 10-13.

"repetitive" allegations that "[t]he possibility that issues will be unnecessarily complicated is the type of prejudice that is sufficient to support the granting of a motion to strike."  301 F.R.D. 337, 343 (N.D. Cal. 2014) ("a contrary decision would prejudice Defendants by forcing Defendants to waste resources by litigating essentially the same claim twice").  The same reasoning applies to the DBRX allegations, regardless of whether they are allegedly "repetitive" of other allegations.  These allegations would force Defendants to "waste resources" on litigating issues relating to DBRX that are not supported by the SACC.  In *Holly v. Alta Newport Hospital, Inc.*, the court struck unsupported allegations that the plaintiff repeated across complaints (as Plaintiffs do here) to avoid "costly discovery."  No. 2:19-cv-07496-ODW (MRWx), 2020 WL 6161457, at *5 (C.D. Cal. Oct. 21, 2020).  The same reasoning applies here.  And Defendants' remaining cases—which Plaintiffs do not even attempt to address—all support the same conclusion.  Mot. at 10-13.  The Court should grant Defendants' motion to strike Plaintiffs' superfluous, irrelevant, and prejudicial allegations.

### III.    CONCLUSION

For these reasons, along with those in Defendants' Motion to Dismiss and Strike (Dkt. 263-3), Defendants respectfully request that the Court (1) dismiss Plaintiffs' infringement claim related to DBRX with prejudice for failure to state a claim; and (2) strike the allegations regarding, and references to, DBRX in paragraphs 2, 6, 9, 54-57, and 76 from the SACC as impertinent, immaterial, and prejudicial.

Dated:  February 25, 2026        FENWICK & WEST LLP

By: /s/ *Jedediah Wakefield*
Jedediah Wakefield (CSB No. 178058)
jwakefield@fenwick.com
Ryan Kwock (CSB No. 336414)
rkwock@fenwick.com
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone:    415.875.2300
Facsimile:      650.938.5200

David Hayes (CSB No. 122894)
dhayes@fenwick.com

Diana C. Buck (CSB No. 339314)
dbuck@fenwick.com
801 California Street
Mountain View, CA 94041
Telephone:        650.988.8500
Facsimile:        650.938.5200

Deena Feit (admitted *pro hac vice*)
dfeit@fenwick.com
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:        206.389.4510
Facsimile:        650.938.5200

Charles Moulins (admitted *pro hac vice*)
cmoulins@fenwick.com
Justine Vandermel (admitted *pro hac vice*)
justine.vandermel@fenwick.com
902 Broadway, 18th Floor
New York, NY 10010
Telephone:        212.430.2600
Facsimile:        650.938.5200

Zachary Harned (CSB No. 335898)
zharned@fenwick.com
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone:        310.434.5400
Facsimile:        650.938.5200

*Attorneys for Defendants*
DATABRICKS, INC., and
MOSAIC ML, LLC, formerly
MOSAIC ML, INC.