VENABLE LLP
Jean-Paul P. Cart (SBN 267516)
jpcart@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: 415.653.3750
Facsimile: 415.653.3755
*Attorneys for Non-Party John Wiley & Sons, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In Re Mosaic LLM Litigation* | Master File Case No. 3:24-cv-01451-CRB<br><br>Consolidated with Case No. 3:24-cv-02653-CRB<br><br>**NONPARTY JOHN WILEY & SONS, INC.'S BRIEF IN SUPPORT OF ADMINISTRATIVE MOTIONS TO CONSIDER WHETHER NON-PARTY JOHN WILEY & SONS, INC.'S MATERIAL SHOULD BE SEALED (DKT NO. 397)** |

## I. INTRODUCTION.

Pursuant to Civil L.R. 79-5, non-party John Wiley & Sons, Inc. ("Wiley") respectfully submits this brief in support of the Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should be Filed Under Seal Re: Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (Dkt. 397) (the "Administrative Motion").

In their Administrative Motion, Plaintiffs seek this Court's consent to file under seal Exhibit 49 (Expert Report of Professor Daniel Spulber) and Exhibit 28 (Rebuttal Expert Report of Michael Sinkinson) (the "Reports") in support of Plaintiffs' opposition to Defendant's motion for summary judgment. Plaintiffs have filed other similar motions as well, and at issue in connection with the Administrative Motion are certain passages of these reports that reflect highly confidential and commercially sensitive information produced by Wiley in response to third-party discovery requests. Specifically, the relevant information contained within these reports derives from highly confidential business documents and agreements (the "Wiley Production") produced by Wiley with the expectation and intent that they would remain protected from disclosure pursuant to the protective order in this case.

As explained further herein, disclosure of the Reports—or at least the portions of the Reports that reflect information provided by Wiley—would significantly harm Wiley and improperly advantage its competitors. Accordingly, there exist substantial and compelling reasons to grant the Administrative Motion in its entirety.

## II. FACTUAL BACKGROUND.

On May 15, 2025, Wiley received a subpoena from the Plaintiffs seeking Wiley's licensing agreements related to training generative AI and/or training data. Wiley produced six license agreements (*i.e.*, the Wiley Production) on June 16, 2025. (Declaration of Allison S. Brehm ("Brehm Decl.") at ¶ 2.) These licenses are commercially sensitive documents related to an important, rapidly expanding part of Wiley's business. (*Id.* at ¶¶ 2-5.) As such, Wiley produced the Wiley Production with Third-Party Highly Confidential – Outside Counsel's Eyes Only designations as permitted pursuant to the protective order in this case. (*Id.* at ¶ 2.)

Wiley has consistently treated the documents within the Wiley Production as highly confidential and proprietary. (Brehm Decl. ¶ 5.) The Reports contain specific discussions and references to material terms of the documents comprising the Wiley Production (*i.e.*, discussion of licensing scope, terms, etc.). Indeed, the Reports contain quotations of data from the Wiley Production that includes specific figures. Public dissemination of the Reports will therefore disclose the contents of the Wiley Production, despite Wiley—which is not a party to this litigation—having taken reasonable efforts to protect the confidentiality of its proprietary business information.

## III. LEGAL STANDARD AND DISCUSSION.

The public's right to access judicial records in a civil case is "not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). A trial court has broad discretion to permit sealing of court documents for the protection of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). Confidential business information including "license agreements, financial terms, details of confidential licensing negotiations, and business strategies" warrant sealing. *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020); *see also In re Qualcomm Litig.*, No. 3:17-cv-0108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (permitting documents to be sealed to prevent competitors from "gaining insight into the parties' business model and strategy"); *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF (JSC), 2015 WL 3988132, at *4-5 (N.D. Cal. June 30, 2015); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000) ("Even a seemingly insignificant risk of disclosure cannot be ignored due to the threat of significant potential injury."). Disclosure of such information could allow competitors to "duplicate [] products, compete for [] customers, or interfere with [the parties'] business plan[s] and thereby gain a competitive advantage in the marketplace." *Intel*, 198 F.R.D. at 531; *Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 U.S. Dist. LEXIS 85620 at *2 (N.D. Cal. June 30, 2016).

## IV. ARGUMENT.

<u>First</u>, Wiley has an established legal interest in sealing the Reports, as they expressly

disclose highly confidential information from the Wiley Production. Courts in the Northern District of California have consistently found that license agreements constitute confidential and proprietary information that should be sealed. *See, e.g.*, *Exeltis USA Inc.*, 2020 WL 2838812, at *1 (finding that license agreements constitute sealable confidential business information); *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (ordering sealing where documents could be used "as sources of business information that might harm a litigant's competitive standing"); *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017). Here, each document in the Wiley Production is a highly confidential license agreement related to AI training, or is a supplement thereto, which contains commercial terms, pricing, and other obligations that disclose Wiley's business strategy and planning. (*See* Brehm Decl. ¶¶ 2, 5.) Such documents reflect specific and carefully negotiated terms, and the *differences* between these agreements are particularly sensitive, as they reflect Wiley's planning, priorities, and pricing strategies. (*See id.* at ¶¶ 2-7.) Further, each license agreement has a confidentiality provision, requiring Wiley to maintain the terms of the agreement and any supplementary materials as confidential. (*Id*. at ¶ 2.) Thus, Wiley has a valid and legally recognized interest in seeking confidential treatment of its production.

Second, Wiley would be uniquely harmed if the Reports were made public, as information derived from the highly confidential Wiley Production could be exploited by Wiley's competitors and other contracting partners to its detriment. AI licensing is a rapidly growing market with fierce competition, such that licensing agreements in the AI and AI training space are particularly sensitive. (Brehm Decl. ¶ 3.) The Wiley Production—and thus, the Reports—reflect confidential information and trade secrets belonging to Wiley's counterparties, such as proprietary AI development strategies, negotiating positions, pricing tolerances, and technical specifications for data ingestion. (*See id*. at ¶ 3.) Competitors to both Wiley and the counterparties could use information obtained from the Reports and/or the Wiley Production on which they are based when developing their own strategies, to Wiley's direct and irreparable harm. (*Id*. at ¶¶ 4-7.) Public disclosure of Wiley's licensing agreements may also damage Wiley's standing with its existing partners and negotiations with future partners. (*Id.* at ¶ 7.)

Third, there is no less restrictive alternative to Wiley's request that the Reports be sealed in order to protect the confidentiality of the Wiley Production (from which the Reports are, in part, derived). As the Reports directly reference, describe, and quote agreements within the Wiley Production, public filing would give Wiley's competitors an improper advantage by allowing them to offer more favorable licensing terms or undercut Wiley's pricing and terms. Likewise, disclosure of the counterparties identified in the Production could harm both Wiley and the counterparties, as it would shed light on their AI training, licensing, and negotiation strategies. Therefore, redactions are not sufficient to protect Wiley's interests, and the Reports (or portions thereof reflecting data derived from the Wiley Production) should be sealed.

## V. CONCLUSION.

For the foregoing reasons, Wiley respectfully requests that the Administrative Motion be granted, and that the Court: (1) permit Plaintiffs to file the Reports under seal, or at minimum those portions derived from or reflecting the Wiley Production; and (2) prohibit the parties from publicly disclosing the Wiley Production or other documents or arguments disclosing the confidential information contained within the Wiley Production.

Dated: August 18, 2026

VENABLE LLP

By: */s/ Jean-Paul P. Cart*
Jean-Paul P. Cart

*Attorneys for Non-Party John Wiley & Sons, Inc.*