# EXHIBIT A

**SCHAERR JAFFE LLP**
Donald M. Falk (SBN150256)
dfalk@schaerr-jaffe.com
One Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 562-4942

*Counsel for Amici Curiae Copyright Law Professors*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE MOSAIC LLM LITIGATION.

Case No. 3:24-cv-01451-CRB
Consolidated with Case No. 3:24-cv-02653-CRB

**BRIEF OF *AMICI CURIAE* COPYRIGHT LAW PROFESSORS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Hearing Date: October 30, 2026
Time: 10:00 a.m.
Dept.: Courtroom 6, 17th floor
Judge: Hon. Charles R. Breyer

**TABLE OF CONTENTS**

**Page**

STATEMENT OF INTEREST OF AMICI .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 3

I. PLAINTIFFS' "DILUTION" THEORY VIOLATES THE COPYRIGHT CLAUSE .......... 3

A. No Author Can Claim a Genre as "Their Writings" .......... 3

B. Authors' "Exclusive Right[s]" Cannot Extend to Uncopyrightable Genres Under Infringement or Fair Use Analysis .......... 5

C. Speech-Facilitating Technologies Promote the Progress of Science .......... 6

II. DILUTION VIOLATES THE FIRST AMENDMENT BY DISCRIMINATING BASED ON CONTENT AND CLASS OF SPEAKERS .......... 9

A. "Dilution" Alters the Traditional Contours of Copyright Under *Eldred* .......... 10

B. "Dilution" Is Speaker-Based Discrimination .......... 11

C. "Dilution" Is Content Discrimination That Fails Strict Scrutiny .......... 14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abdin v. CBS Broad. Inc.*, 971 F.3d 57 (2d Cir. 2020) .......... 4

*Anderson v. City of Hermosa Beach*, 621 F.3d 1051 (9th Cir. 2010) .......... 10

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) .......... 5, 9

*Authors Guild v. Google*, 804 F.3d 202 (2d Cir. 2015) .......... 9

*Azar v. Allina Health Servs.*, 587 U.S. 566 (2019) .......... 9

*Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007 (N.D. Cal. 2025) .......... passim

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) (en banc) .......... 12, 14

*Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985) .......... 8

*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011) .......... 2, 14

*Buckley v. Valeo*, 421 U.S. 1 (1976) .......... 12

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .......... 5, 6

*Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002) .......... 1, 4, 5, 8

*Citizens United v. FEC*, 558 U.S. 310 (2010) .......... 11, 12, 14

*Clement v. Cal. Dep't of Corrections*, 364 F.3d 1148 (9th Cir. 2004) .......... 10

*Cohen v. California*, 403 U.S. 15 (1971) .......... 10

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530 (1980) .......... 15

*Corbello v. Valli*, 974 F.3d 965 (9th Cir. 2020) .......... 8

*Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879 (7th Cir. 2021) .......... 4

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) .......... 5, 10

*Emerson v. Davies*, 8 F. Cas. 615 (C.C.D. Mass. 1845) (No. 4,436) .......... 5

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .......... 3

*Golan v. Holder*, 565 U.S. 302 (2012) .......... 7

*IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020) .......... 12

*John Donnelly & Sons v. Campbell*, 639 F.2d 6 (1st Cir. 1980) .......... 10

*Kadrey v. Meta*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025) ........................................... 3, 11, 15

*Kohls v. Bonta*, 797 F. Supp. 3d 1177 (E.D. Cal. 2025)........................................................ 13

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984)............................................................ 8

*Martin v. City of Struthers*, 319 U.S. 141 (1943) .................................................................. 11

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).................................... 5

*McCullen v. Coakley*, 573 U.S. 464 (2014) ............................................................................ 15

*McDermott v. Ampersand Pub., LLC*, 593 F.3d 950 (9th Cir. 2010) ........................................ 10

*McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149 (9th Cir. 2022)...................................................... 8

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575 (1983) ............... 13

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)...................................................................... 10

*New York Times v. Sullivan*, 376 U.S. 254 (1964)................................................................ 9, 15

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir. 1930) ............................................... 8

*Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer*, 961 F.3d 1062 (9th Cir. 2020)........... 13

*Perry v. L.A. Police Dep't*, 121 F.3d 1365 (9th Cir. 1997)........................................... 2, 12, 14

*Perry v. Sindermann*, 408 U.S. 593 (1972)............................................................................... 15

*Peters v. West*, 692 F.3d 629 (7th Cir. 2012)............................................................................. 4

*Progressive Democrats for Social Justice v. Bonta*, 73 F.4th 1118 (9th Cir. 2023)......... 11, 12, 14

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ......................................................................... 14

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995).................................... 12

*Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992) ................................... 6, 9, 14

*Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc)................................................................................................................. 1, 4, 6

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ......................................................................... 9

*Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000) ........................... 6

*Speiser v. Randall*, 357 U.S. 513 (1958)................................................................................. 14

*Thaler v. Perlmutter*, 130 F.4th 1039 (D.C. Cir. 2025) ............................................................ 11

*Tinker v. Des Moines Ind. Commun. Sch. Dist.*, 393 U.S. 503 (1969) ........................................ 10

*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975) .................... 7

*United States v. Metcalf*, 156 F.4th 871 (9th Cir. 2025) .................... 2, 8

*Walker v. Time Life Films, Inc.*, 784 F.2d 44 (2d Cir. 1986) .................... 5

*Williams v. Crichton*, 84 F.3d 581 (2d Cir. 1996) .................... 5, 8

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. amend. I .................... 9

U.S. CONST. art. I, § 8, cl. 8 .................... 1, 3, 7

**STATUTES**

17 U.S.C. § 102(a) .................... 2, 9

U.S.C. § 102(b) .................... 4, 10

17 U.S.C. § 106 .................... 2, 9

17 U.S.C. § 107 .................... 2, 3, 9

**TREATISES**

4 PATRY ON COPYRIGHT § 10.155.40 .................... 2, 10, 15

**OTHER AUTHORITIES**

Wayne T. Brough, *Copyright, AI Training, and Innovation*, R STREET (Jun. 20, 2025) .................... 14

Zheng Dai & David K. Gifford, *Outputs of Generative Diffusion Models Are Often Unattributable*, 17 NATURE COMMUNS. 6974 (2026) .................... 15

Kat Eschner, *John Philip Sousa Feared 'The Menace of Mechanical Music,'* SMITHSONIAN MAG. (Nov. 6, 2017) .................... 14

Jane Ginsburg, *Creation and Commercial Value: Copyright Protection of Works of Information*, 90 COLUM. L. REV. 1865 (1990) .................... 8

Tom Hodgkinson, *Laments of the Old Trades*, IDLER (Jul. 21, 2023) .................... 13

Edward Lee, *Copyright Dilution Under Constitutional Scrutiny*, 25 CHI.-KENT J. INTELL.

PROP. 1 (2026) .......... 13
Edward Lee, *Fair Use and the Origin of AI Training*, 63 HOU. L. REV. 105 (2025) .......... 7, 13
Will Oremus, *Is This What Comes After AI Slop?*, ATLANTIC (Jul. 27, 2026) .......... 11
NEIL POSTMAN, TECHNOPOLY 16 (Vintage Books ed. 1993) .......... 13
U.S. COPYRIGHT OFF., AUTHORS, ATTRIBUTION, AND INTEGRITY 27-33 (Apr. 2019) .......... 9
U.S. COPYRIGHT OFF., COPYRIGHT & A.I. PART 3: GENERATIVE AI TRAINING 64-66 (prepublication version May 2025) .......... 9
JOSEPH E. WORCESTER, A DICTIONARY OF THE ENGLISH LANGUAGE (1860) .......... 3

## STATEMENT OF INTEREST OF AMICI

Amici Copyright Law Professors Edward Lee and Rebecca Tushnet are scholars whose research and teaching focus on copyright law, and who have written, taught, and lectured extensively on topics in copyright, the Copyright Clause, and the First Amendment. Amici have no direct interest in the outcome of this litigation. They share a professional interest in seeing copyright law applied in ways that serve the broader public interest in the United States, consistent with the Copyright Clause's goal of promoting the progress of science. Because of their expertise and experience with the issues raised by this case, Amici are uniquely positioned to provide the Court with a perspective that reflects the broader public interest in copyright's fair use doctrine.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Constitution limits copyrights granted to authors to "their respective writings." U.S. CONST. art. I, § 8, cl. 8. No author can claim "their writings" extends to entire genres or any other uncopyrightable elements, including ideas, facts, methods, concepts, and *scenes a faire*. These uncopyrightable elements are not the original writings of any author and are free for everyone to copy, including in creating new works for the public's enjoyment. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 348-50 (1991).

The Ninth Circuit strictly adheres to this constitutional limit. Copyright cannot extend to "commonplace elements that are firmly rooted in the genre's tradition." *Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020) (en banc) (cleaned up). Genres are free for everyone to build on: "Authors borrow from predecessors' works to create new ones, so giving exclusive rights to the first author who incorporated an idea, concept, or common element would frustrate the purpose of the copyright law and curtail the creation of new works." *Id.* Literary works are no exception; similarities in unprotected elements cannot be the basis of infringement. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822-25 (9th Cir. 2002).

Plaintiffs try to skirt this constitutional limit on the scope of copyright by devising a new

---

[1] No party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting this brief. No person other than amici or their counsel contributed money that was intended to fund preparing or submitting this brief.

theory of market harm they call "dilution" under Factor 4 of fair use, "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107; Pl. Opp. 22 (ECF 403). This unprecedented "dilution" theory expands Plaintiffs' copyright to third-party works that are *not* substantially similar to Plaintiffs' works and that do *not* copy any protected elements. Instead, these non-infringing works are merely in the same genre as Plaintiffs' works—novels. But Plaintiffs cannot claim their "copyrighted work" includes entire genres, whether as infringement or as market harm under fair use. Under the Copyright Clause, a genre is not "*their respective writings*." Genres are concepts free for all to use. Indeed, Plaintiffs themselves borrowed these genres to create their own works. In more than 235 years of copyright law, dilution is "without any precedent and is an erroneous position given it is not only contrary to the statute but is not based on there being any infringement at the output stage." 4 PATRY ON COPYRIGHT § 10.155.40 (2026).

To penalize as "dilution" the wholly non-infringing works of only people who used AI—but no one else—violates the First Amendment as impermissible content- and speaker-based discrimination. Dilution divides creators into two classes simply based on whether they used AI in creating their works. Among all non-infringing works created in a genre, dilution penalizes only the works of creators who used AI. Under the First Amendment, "[t]his type of speaker-based discrimination is unacceptable." *Perry v. L.A. Police Dep't*, 121 F.3d 1365, 1371 (9th Cir. 1997). Freedom of expression "do[es] not vary when a new and different medium for communication appears." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790 (2011) (cleaned up). Non-infringing works are protected speech, no matter the tool a person used to create them.

This Court need not decide these serious constitutional issues. Constitutional avoidance compels rejecting "dilution," a term nowhere mentioned in the Copyright Act. *See United States v. Metcalf*, 156 F.4th 871, 881-82 (9th Cir. 2025). The Act limits "the copyrighted work" to the author's own "*original*" contribution. 17 U.S.C. §§ 102(a), 106, 107; *Feist*, 499 U.S. at 346-50. "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Id.* at 349-50. As the Supreme Court admonished, this approach "is neither unfair nor unfortunate," but "the means by which copyright advances the progress of science and art" under the Copyright Clause. *Id.* at 350.

## ARGUMENT

## I. PLAINTIFFS' "DILUTION" THEORY VIOLATES THE COPYRIGHT CLAUSE

The Copyright Clause and the Supreme Court's precedents set forth clear constitutional limits on the scope of copyright. Authors can receive "exclusive right[s]" in only "their respective writings." U.S. CONST. art. I., § 8, cl. 8. And these exclusive rights are limited to the *original* elements authors create in "their respective writings," meaning the unoriginal elements are free for everyone to use. *Feist*, 499 U.S. at 348. Plaintiffs try to skirt these constitutional limits by inventing a new theory of "market dilution" that is contrary to the rule of *Feist.* Plaintiffs cannot use copyright to penalize as "dilution" wholly non-infringing works that are *not* substantially similar to Plaintiffs' works, do *not* copy any original elements from Plaintiffs' works, but are simply in the same genre (novels). Plaintiffs' attempt to expand their copyright beyond "their respective writings"—to encompass genres they themselves did not create—violates the Copyright Clause.

### A. No Author Can Claim a Genre as "Their Writings"

Plaintiffs advance a new, untested theory of market harm under fair use based on dicta in *Kadrey v. Meta*, 788 F. Supp. 3d 1026, 1052 (N.D. Cal. 2025); Pl. Opp. 20-24 (ECF 403). But the parties in *Kadrey* did not even brief this "dilution" theory, and the court unsurprisingly found the plaintiffs' lack of evidence rendered that theory too speculative. *Kadrey,* 788 F. Supp. 3d at 1056. If the *Kadrey* court had the benefit of briefing on "dilution," its constitutional infirmities would be plain. Plaintiffs attempt to expand their copyright to wholly non-infringing works of others—that copy no original elements of Plaintiffs' works—violates the Copyright Clause by expanding copyright *beyond* "their respective writings." U.S. CONST. art. I, § 8, cl. 8. No one can own a genre.

The Copyright Clause sets a clear limit on copyright: "authors" may be granted copyrights only in "their respective writings." *Id*. To be copyrightable, "writings" must satisfy the constitutional requirement of originality. *Feist*, 499 U.S. at 346. Originality derives from the Copyright Clause's word "author," which the Supreme Court defined "in a constitutional sense, to mean 'he to whom anything owes its origin.'" *Id.* (quoting *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884) (quoting JOSEPH E. WORCESTER, A DICTIONARY OF THE ENGLISH LANGUAGE 99 (1860)).

Originality is both a threshold constitutional requirement for copyright *and* an overriding limit on copyright's scope. Even if a work satisfies the threshold requirement, copyright for a work can extend only to the author's *original* elements in that work. As the Supreme Court stated:

> The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the *sine qua non* of copyright; accordingly, copyright protection *may extend only to those components of a work that are original to the author*.

*Id.* at 348 (emphasis added). *Un*original elements are *un*copyrightable. No one may claim copyright in facts or ideas because they are not the original expression of authors. *Id.* at 349-50. Everyone can therefore "build freely upon the ideas and information conveyed by a work." *Id.*

Nor can anyone claim copyright in genres. Genres are not the original "writing" of any author. Indeed, Plaintiffs did not originate any of the genres their works fall within. Plaintiffs simply borrowed these genres, as everyone is free to do. Genres are unprotected ideas or methods for structuring a common format of expression. *See* 17 U.S.C. § 102(b); *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1021-22 (N.D. Cal. 2025). Genres are "building blocks [that] belong in the public domain and cannot be exclusively appropriated by any particular author." *Skidmore*, 952 F.3d at 1069 (cleaned up); *see Gray v. Hudson*, 28 F.4th 87, 97-100 (9th Cir. 2022) (genre, scenes a faire, and common music elements are not copyrightable).

The public's right to freely use genres extends beyond the genre itself to stock elements associated with a particular genre under the *scenes a faire* doctrine. *Cavalier*, 297 F.3d at 823. "Familiar stock scenes and themes that are staples of literature are not protected." *Id.* This fundamental limit on copyright's scope enables *everyone* to create new works within the same genre. As the Seventh Circuit explained:

> Standard elements in a genre—called scènes à faire in copyright law—get no copyright protection. Scènes à faire are "so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another." . . . If standard elements received copyright protection, then the creation of a single work in a genre would prevent others from contributing to that genre because the copyright owner would have exclusive rights in all of the genre's basic elements.

*Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 889 (7th Cir. 2021) (cleaned up); *see also Peters v. West*, 692 F.3d 629, 636 (7th Cir. 2012) ("no poet can claim copyright protection in the form of a sonnet or a limerick"); *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 70-72 (2d Cir. 2020)

(collecting cases finding many stock elements to "science fiction genre"); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) (stock elements to police fiction genre).

Judge Alsup correctly rejected the *Bartz* plaintiffs' argument for dilution because genres constitute nothing more than an idea or concept. *Bartz*, 787 F. Supp. 3d at 1021-22. Indeed, the plaintiffs' dilution theory was "unthinkable" for copyright law to adopt. *Id.* at 1021. Copyright law allows people to freely use concepts embodied in "all the modern-day classics." *Id.* at 1021-22. As Justice Story recognized, "Every book in literature, science and art, borrows, and must necessarily borrow, and use much which was well known and used before. No man creates a new language for himself . . . in writing a book." *Emerson v. Davies*, 8 F. Cas. 615, 619 (C.C.D. Mass. 1845) (No. 4,436); *accord Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994). As the Ninth Circuit put it: "[S]cience and art generally rely on works that came before them and rarely spring forth in a vacuum." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir. 2003).

### B. Authors' "Exclusive Right[s]" Cannot Extend to Uncopyrightable Genres Under Infringement or Fair Use Analysis

Copyright law adheres to this constitutional limit on the scope of copyright by consistently recognizing in various doctrines that unprotected elements are off-limits to copyright. The Supreme Court has repeatedly held that the Constitution limits copyright protection to expression *original to an author*, not to the unprotectable elements of works. *Feist*, 499 U.S. at 346, 348 (actionable copying applies "only to those components of a work that are original to the author"); *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003) (idea-expression distinction is a "built-in" constitutional safeguard); *see Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 550 (2023) (copyright law's "escape valves" include "the idea–expression distinction; ... the requirement of originality; the legal standard for actionable copying; and … fair use").

The Ninth Circuit has been vigilant in adhering to this constitutional divide between what copyright can and cannot protect. In applying the infringement test's extrinsic prong, courts "must take care to inquire only whether 'the *protectible elements, standing alone*, are substantially similar.'" *Cavalier*, 297 F.3d at 822 (quoting *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996)). This extrinsic analysis ensures that copyright claims are based on substantial similarities in "what is

protected" in the plaintiff's work, instead of merely "similarities [that] do not involve protected expression." *Yonay v. Paramount Pictures*, 163 F.4th 685, 693 (9th Cir. 2026). "[P]laintiffs must therefore demonstrate that the works in question share 'substantial similarity in *protectable* expression,' not merely in facts, ideas, or concepts." *Id.* at 698 (quoting *Skidmore,* 952 F.3d at 1064).

This same constitutional dividing line limits cognizable market harms under fair use. *Cf. Campbell,* 510 U.S. at 591 (fair use limited to "cognizable" market harm). If a defendant creates a new work that does not even copy any original element from the plaintiff's work, the Ninth Circuit has held that a defendant's creation of such non-infringing works *weighed in favor of fair use*: "It is precisely this growth in creative expression, based on the dissemination of other creative works and the unprotected ideas contained in those works, that the Copyright Act was intended to promote." *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992). In *Sega*, the Ninth Circuit held that Accolade, a competitor to Sega, made a fair use in copying Sega's operating system to extract an *uncopyrightable* element to allow Accolade's own video games to play on Sega's consoles. *See id.* at 1523-24. The competitor's use of Sega's program "undoubtedly '*affected*' the market for Genesis-compatible games." *Id.* at 1523 (emphasis added). But, unlike a case involving publishing copies of the plaintiff's work, the Ninth Circuit held that "the same consequences do not and could not attach to a use which simply enables the copier to enter the market for works of *the same type as the copied work*." *Id.* at 1523 (emphasis added). Accolade extracted the unprotected element of Sega's program to create a non-infringing new work *in the same genre*. And the public benefited from this increase in new works. *Id.* at 1522. Factor 4 favored fair use. *Id.* at 1524; *see Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 606-08 (9th Cir. 2000) (finding fair use where defendant's "Virtual Game Station" did "not itself contain infringing material")

**C. Speech-Facilitating Technologies Promote the Progress of Science**

Plaintiffs' dilution theory misunderstands the purpose of copyright law. *See* Pl. Opp. 22 (ECF 403). "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" *Feist*, 499 U.S. at 349. The Copyright Clause recognizes the overriding goal of "promot[ing] the progress of science" ultimately for the public's benefit. U.S. CONST. art. I, § 8, cl. 8. "The limited scope of the copyright holder's statutory

monopoly ... reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). While copyright gives incentives "to stimulate artistic creativity for the general public good," *id.*, the Supreme Court has rejected the notion that "promot[ing] the progress of science" is confined solely to incentives. *Golan v. Holder*, 565 U.S. 302, 324 (2012). Instead, the phrase "refers broadly to 'the creation and spread of knowledge and learning.'" *Id.* As the Supreme Court held: "Nothing in the text or history of the Copyright Clause … confines the 'Progress of Science' exclusively to 'incentives for creation.'" *Id.* at 325-26.

Consistent with this broad purpose to "promote the progress of science," the Supreme Court and the courts of appeals have recognized that innovative tools that facilitate the creation and spread of new works or knowledge serve the goal of progress. *See* Edward Lee, *Fair Use and the Origin of AI Training*, 63 HOU. L. REV. 105, 131-51 (2025) (summarizing fair use cases involving technology). In *Google LLC v. Oracle America, Inc.*, the Court held that Google's copying of Java declaring code from Oracle's computer program to develop Google's "new product [that] offers programmers a highly creative and innovative tool for a smartphone environment" ultimately served the "creative 'progress' that is the basic constitutional objective of copyright itself." *Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 31 (2021) (citing *Feist*, 499 U.S., at 349–350). Google used Oracle's code to develop "a new and transformative program" that enabled programmers familiar with Java to develop new applications for people to use on Android smartphones. *Id.* at 40. In considering Factor 4 of fair use, the Supreme Court also weighed "the public benefits the [defendant's] copying will likely produce," *id.* at 35, versus the "risk [of] harm to the public" in denying fair use, *id.* at 39. The Supreme Court found that Factor 4 favored fair use partly because the risk of harm to the public by a ruling that gave a copyright holder "a lock limiting the future creativity of new programs." *Id.*

That "lock" on future creativity of others is what Plaintiffs' dilution theory seeks to impose. Plaintiffs' argument treats all non-infringing books that other people create using AI as dilution, even though they are not substantially similar to their own books. Pl. Opp. 20-22 (ECF 403).

To skirt this deficiency in their copyright claim, Plaintiffs rely on the copies of their books Defendants used to train their AI models. Pl. Opp. 22 (ECF 403). But that argument fares no better. The training copies serve a highly transformative purpose to develop a technology that advances progress. *Bartz*, 787 F. Supp. 3d at 1021; *cf. Google*, 593 U.S. at 30, 35. Plaintiffs' argument rests on the fallacy that their copyright extends to all aspects of their books. It does not. "[C]opyright protection may extend only to those components of a work that are *original to the author*." *Feist*, 499 U.S. at 348 (emphasis added). The facts and ideas of every copyrighted work—including Plaintiffs'—"are free for the taking." *Id.* at 349 (quoting Jane Ginsburg, *Creation and Commercial Value: Copyright Protection of Works of Information*, 90 COLUM. L. REV. 1865, 1868 (1990)).

"To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Id.* at 349-50. Indeed, the Ninth Circuit has consistently applied this limitation to literary works in finding non-infringement. *See Yonay*, 163 F.4th at 694-96 (facts in article); *Corbello v. Valli*, 974 F.3d 965, 976-84 (9th Cir. 2020) (facts in autobiography); *Cavalier*, 297 F.3d at 824-25 (basic plot in children's stories); *Berkic v. Crichton*, 761 F.2d 1289, 1293-94 (9th Cir. 1985) (basic plot of crime ring to sell organs); *see also Litchfield v. Spielberg*, 736 F.2d 1352, 1356-57 (9th Cir. 1984) (story of alien visit); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121-22 (2d Cir. 1930) (parents disapprove children's marriages story); *Williams*, 84 F.3d at 589 (plot of dinosaur zoo). In all these cases, the defendant's non-infringing work could be said to "dilute" the value of the plaintiff's works. That result "is neither unfair nor unfortunate," but "the means by which copyright advances the progress of science and art" under the Copyright Clause. *Feist*, 499 U.S. at 350.

Plaintiffs' attempt to distinguish *Bartz* based on *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149 (9th Cir. 2022) is misplaced. The defendant there republished plaintiffs' photographs. *Id.* at 1153. The use "was in no way transformative"; fair use was foreclosed. *Id.* at 1153, 1164. But *McGucken* does not suggest cognizable harm can stem from *non-infringing works* or "dilution."

Constitutional avoidance compels this Court's rejection of dilution. *Metcalf*, 156 F.4th at 881-82. "Dilution" is not recognized in the Copyright Act. Instead, the Copyright Act's provisions for both the exclusive rights and fair use apply only to uses of "the copyrighted work," which the

Act limits to "original works." *See* 17 U.S.C. §§ 102, 106, 107; *Azar v. Allina Health Servs.*, 587 U.S. 566, 576 (2019) ("[W]hen Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout."). For both infringement and fair use analysis, "the copyrighted work" is the same—and the scope of what the copyright holder may assert is always limited to the *original* elements in the work. *Feist*, 499 U.S. at 348.

Adhering to this principle in fair use analysis, courts confine market harm to "*the protected aspect* of the author's work." *Authors Guild v. Google*, 804 F.3d 202, 224 (2d Cir. 2015); *see Sega*, 977 F.2d at 1522 (creating a non-infringing video game that did not copy any protected element was fair use). As the *Warhol* Court explained, fair use is concerned "with a substantial substitute *for matter protected by [the copyright owner's] interests* in the *original* work or derivatives of it." *Warhol*, 598 U.S. at 531-32 (quoting *Authors Guild*, 804 F.3d at 207) (emphasis added) (cleaned up). Where, as here, there is *no* substantial similarity between the works in question, or even copying of any protected element, copyright holders have *no* copyright interest to assert.[2]

## II. DILUTION VIOLATES THE FIRST AMENDMENT BY DISCRIMINATING BASED ON CONTENT AND CLASS OF SPEAKERS

In the entire universe of non-infringing novels, dilution disfavors only the non-infringing works of only one class of speakers—people who use Defendant's AI in creating their works. By discriminating based on both content and class of speakers, dilution violates the First Amendment. A court decision applying "dilution" to penalize lawful expression is state action. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964) (state action in court's application of common law rule of law for defamation liability); U.S. CONST. amend. I.

---

[2] In a nonfinal, prepublication report, the Copyright Office conceded that "dilution" is "uncharted territory." U.S. COPYRIGHT OFF., COPYRIGHT & A.I. PART 3: GENERATIVE AI TRAINING 64-66 (prepublication version May 2025), https://tinyurl.com/bdcwd6nc.The Copyright Office's terse endorsement of dilution does not receive deference, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024), and does not qualify even as persuasive authority under *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944). The Office did not discuss the requirement of "cognizable" market harm under fair use precedents. Nor did the Office acknowledge, much less analyze, the serious constitutional issues raised by dilution, in sharp contrast to its report on moral rights that admonished: "[A]ny changes to the law must comport with the First Amendment, fair use, and constitutional requirement of limited copyright terms." U.S. COPYRIGHT OFF., AUTHORS, ATTRIBUTION, AND INTEGRITY 28-32 (Apr. 2019), https://tinyurl.com/39pfjjas.

### A. "Dilution" Alters the Traditional Contours of Copyright Under *Eldred*

People who use AI to create and publish non-infringing books are engaged in expressive activities protected by the First Amendment. As the Supreme Court recognized in drawing a limit on copyright's scope, "[t]he First Amendment securely protects the freedom *to make … one's own speech*." *Eldred*, 537 U.S. at 221 (emphasis added). Speech activities protected by the First Amendment are broad and are not limited to those that qualify as works of authorship. *See, e.g.*, *Cohen v. California*, 403 U.S. 15, 16 (1971) (wearing jacket with "Fuck the Draft"); *Tinker v. Des Moines Ind. Commun. Sch. Dist.*, 393 U.S. 503, 505-06 (1969) (wearing antiwar black armbands). The First Amendment protects not just creators of expression, but also entities and individuals who adopt, edit, curate, and publish expression, or engage in expressive activities. *See, e.g.*, *Moody v. NetChoice, LLC*, 603 U.S. 707, 728 (2024) (First Amendment protects "expressive activity [that] includes presenting a curated compilation of speech originally created by others"); *McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 962 (9th Cir. 2010) ("publisher's choice of writers"); *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010) (both tattoo artist and person receiving tattoo "are engaged in expressive activity"). Both the speaker's choice in medium to create or publish a work *and* the public's right to receive it are protected by the First Amendment. *See Clement v. Cal. Dep't of Corrections*, 364 F.3d 1148, 1151 (9th Cir. 2004) ("The First Amendment 'embraces the right to distribute literature, and necessarily protects the right to receive it.'") (cleaned up); *John Donnelly & Sons v. Campbell*, 639 F.2d 6, 19 n.3 (1st Cir. 1980) (Pettine, J., concurring), *aff'd sub nom*. *Campbell v. Donnelly & Sons*, 453 U.S. 916 (1981).

Under *Eldred*, First Amendment scrutiny of a copyright law is required when the "traditional contours of copyright law" have been "altered." *Eldred*, 537 U.S. at 221. Two traditional contours of copyright law that serve as "built-in First Amendment accommodations," *id.* at 219, are the idea-expression dichotomy and fair use. *Golan*, 565 U.S. at 328-29. Dilution radically alters—and undermines—both. Genres are ideas or concepts beyond copyright's scope. *Bartz*, 787 F. Supp. 3d at 1021-22 (citing 17 U.S.C. § 102(b)). Fair use has *never* treated wholly non-infringing expression as cognizable market harm. *See* 4 PATRY ON COPYRIGHT § 10.155.40. Dilution significantly curtails both doctrines, necessitating First Amendment scrutiny. *Eldred*, 537 U.S. at 221.

### B. "Dilution" Is Speaker-Based Discrimination

Dilution violates the First Amendment by discriminating based on the class of speakers. Dilution divides human creators into two classes: (1) people who "create things the old-fashioned way," and (2) "[p]eople … [who] prompt … AI models to produce … outputs." *Kadrey*, 788 F. Supp. 3d at 1034-35. This division underlies Plaintiffs' dilution theory: Only the non-infringing works of AI creators are *disfavored* as "dilution"—and even disparaged as "AI slop." *See* Pl. Opp. 21 n.3 (ECF 403) (citing Will Oremus, *Is This What Comes After AI Slop?*, ATLANTIC (Jul. 27, 2026)).

Plaintiffs' argument is also based on the false dichotomy between "human creation" and "machine-generated works." Pl. Opp. 22 (ECF 403). But the case they cite, *Thaler v. Perlmutter*, recognizes that humans *are* involved in prompt-engineering of works (as *Kadrey* recognized above). 130 F.4th 1039, 1050 (D.C. Cir. 2025) ("Those line-drawing disagreements over how much artificial intelligence contributed to a particular human author's work are neither here nor there in this case."). In all events, the First Amendment is not limited to authors. Indeed, a paradigmatic speech activity is distributing the speech of others to the public, including religious and political pamphlets. As the Supreme Court explained, "This freedom embraces the right to distribute literature, and necessarily protects the right to receive it." *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943). The public distribution of AI-generated works is precisely what Plaintiffs seek to penalize as market harm.

But this speaker-based discrimination—disfavoring AI creators alone—is unconstitutional. As the Supreme Court explained, "the Government may commit a constitutional wrong when by law it identifies certain preferred speakers." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010). Applying this principle, the Ninth Circuit admonished: "*Citizens United v. FEC* … explained that 'the First Amendment ... [p]rohibit[s] ... restrictions distinguishing among different speakers, allowing speech by some but not others.'" *Progressive Democrats for Social Justice v. Bonta*, 73 F.4th 1118, 1122 (9th Cir. 2023). In *Progressive Democrats*, the Ninth Circuit held that a state law that allowed state government employees—but not local government employees—to solicit political contributions from coworkers violated the First Amendment as impermissible discrimination based on content and class of speaker that failed strict scrutiny. *Id.* at 1122. The law singled out local employees for "second-class treatment." *Id.* at 1130.

Under the First Amendment, the law "may not favor one speaker over another." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995); *see Citizens United*, 558 U.S. at 341 (law "may not … determine … what speech and speakers are worthy of consideration"); *Buckley v. Valeo*, 424 U.S. 1, 48-49 (1976) (First Amendment prohibits "government … restrict[ing] the speech of some elements of our society in order to enhance the relative voice of others").

Dilution does so. It favors traditional creators and their works over anyone who uses Defendant's AI to create wholly non-infringing works in the same genres shared by Plaintiffs' works. Only these non-infringing works of AI creators are disfavored—and penalized as "dilution" and "market harm." Dilution penalizes what many other defendants in Ninth Circuit cases were all allowed to do: publish non-infringing works that copied no protected elements. *See supra* p. 8 (collecting cases). Penalizing the non-infringing content of "only a single category of speakers" violates the First Amendment. *See Progressive Democrats*, 73 F.4th at 1130; *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (state law targeting only some websites from publishing certain information about entertainment professionals violated First Amendment).

Speaker-based discrimination is no less pernicious where, as here, Plaintiffs argue it should arise in the context of a statutory exception (fair use). In *Perry v. L.A. Police Department*, the Ninth Circuit held that a municipal code that prohibited solicitations in certain public areas violated the First Amendment because the law granted exceptions to only certain classes of speakers, non-profit and news organizations. *Perry*, 121 F.3d at 1371. The Ninth Circuit rejected the government's argument that a musician and an animal rights activist can be treated differently because they were not non-profit organizations: "This type of speaker-based discrimination is unacceptable." *Id.*

Courts cannot apply the statutory exception of fair use to disfavor as "market harm" the wholly non-infringing works of AI creators alone. Singling out the works of AI creators for "second-class treatment" violates the First Amendment. *See Progressive Democrats*, 73 F.4th at 1130; *Perry*, 121 F.3d at 1371; *Berger v. City of Seattle*, 569 F.3d 1029, 1055 (9th Cir. 2009) (en banc) (city regulation exempting concessionaries from prohibition of engaging in speech activities in public park near "captive audience" violated First Amendment because it favored commercial speech over artistic and political speech); *Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer*, 961 F.3d 1062,

1065-66 (9th Cir. 2020) (statutory exception favoring some speakers but disqualifying others may violate First Amendment); *see also Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 586 (1983) (state "tax violates the First Amendment not only because it singles out the press, but also because it targets a small group of newspapers.").

Dilution's speaker-based discrimination cannot be justified merely because AI is involved. Judge Mendez rejected an analogous attempt for speaker-based discrimination in the context of California's AI deepfake election law, which allowed some speakers (candidates and broadcasters) to disseminate election-related deepfakes with disclaimers but prohibited all other speakers from doing so. *Kohls v. Bonta*, 797 F. Supp. 3d 1177, 1184-85 (E.D. Cal. 2025), *appeal filed*, *Babylon Bee, LLC v. Bonta*, No. 25-6138 (9th Cir. Sept. 30, 2025). Such speaker-based discrimination violated the First Amendment because the law "treats different speakers dissimilarly, subjecting certain individuals to stricter rules and other speakers to more lenient rules." *Id.*

That is precisely what Plaintiffs' dilution theory does. Dilution targets only people who adopted AI as a part of their creative expression to produce non-infringing works of certain genres. But people's choices in adopting a new technology reflects their own perspective and ideological belief in the value of adopting the technology. New technologies compete with old ones—and this competition is a clash in worldviews. NEIL POSTMAN, TECHNOPOLY 16 (Vintage Books ed. 1993). That is especially so with AI, given the public debate over using AI in any artistic expression. *See* Edward Lee, *Copyright Dilution Under Constitutional Scrutiny*, 25 CHI.-KENT J. INTELL. PROP. 1, 33-35 (2026). Many criticisms of AI—and outright vitriol against AI "slop"— were submitted to the Copyright Office's study that endorsed dilution. *See* Lee, 63 HOU. L. REV. at 207-09 & n.561.

"[Printers] flood the market with anything that hints of lasciviousness. Destroy the printing press I beg you," the scribe Fra Filippo de Strata decried in 1473. Tom Hodgkinson, *Laments of the Old Trades*, IDLER (Jul. 21, 2023), https://tinyurl.com/2rayry98. The painter Paul Delaroche exclaimed, of photography: "From today, painting is dead!"; John Philip Sousa said the phonograph would destroy music; musicians later feared "software-based music production would replace human artists." Lee, 63 HOU. L. REV. at 190; Kat Eschner, *John Philip Sousa Feared 'The Menace of Mechanical Music,'* SMITHSONIAN MAG. (Nov. 6, 2017), https://tinyurl.com/2tpj95b6. These past

fears were unfounded. And "more speech, not less, is the governing rule" in the United States. *Citizens United*, 558 U.S. at 361; *see Brown*, 564 U.S. at 790 (speech technologies protected).

Copyright fosters competition based on people's use of unprotected elements. *See Sega*, 977 F.2d at 1523-24. As Judge Alsup explained, in rejecting the book authors' dilution argument in *Bartz*, "This is not the kind of competitive or creative displacement that concerns the Copyright Act. The Act seeks to advance original works of authorship, not to protect authors against competition." *Bartz*, 787 F. Supp. 3d at 1032; *see* Wayne T. Brough, *Copyright, AI Training, and Innovation*, R STREET (Jun. 20, 2025), https://tinyurl.com/yc3azjkr ("AI-generated content that competes with existing works is simply market competition, not copyright infringement."). As the Ninth Circuit explained, "[A]n attempt to monopolize the market by making it impossible for others to compete runs counter to the statutory purpose of promoting creative expression and cannot constitute a strong equitable basis for resisting … the fair use doctrine." *Sega*, 977 F.2d at 1523. Some view AI creators as second class. But the law may not do so. *See Progressive Democrats*, 73 F.4th at 1130; *Perry*, 121 F.3d at 1371. Under the First Amendment, one person's slop is "another's lyric." *Cohen*, 403 U.S. at 25.

**C. "Dilution" Is Content Discrimination That Fails Strict Scrutiny**

Denying fair use based on "dilution" from non-infringing expression violates the First Amendment. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Plaintiffs' dilution theory is content-based: it "singles out specific subject matter for differential treatment," namely, AI-generated books in the same genre as Plaintiffs' works, even though the AI-generated books are non-infringing. *Reed*, 576 U.S. at 169; *Berger*, 569 F.3d at 1051. Dilution targets and penalizes only AI creators by treating their non-infringing works as "market harm" as the putative basis to deny fair use in the development of the AI that makes such creations possible. *See Speiser v. Randall*, 357 U.S. 513, 518 (1958) ("To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech."). But this denial of fair use "penalize[s] and inhibit[s]" the expressive activities of people who use AI to create non-infringing works. *Cf. Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (denying

government benefits to penalize expressive activities of recipients).

"Mere speculation of harm does not constitute a compelling state interest." *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 543 (1980); 4 PATRY ON COPYRIGHT § 10.155.40 (dilution is "speculative"). Plaintiffs' justification for adopting dilution falls far short. In granting partial summary judgment on Meta's fair use, *Kadrey* rejected dilution because there was no evidence substantiating it, just "speculation." 788 F. Supp. at 1056. Plaintiffs here offer the same. Pl. Opp. 24 (ECF 403). Plaintiffs provide no financial data showing they suffered economic loss to their books caused by consumers *declining* to buy Plaintiffs' 28 books in order to buy books others created with Defendants' AI. Plaintiffs offer no evidence that any non-infringing fiction produced from Defendants' AI derives in any way from Plaintiffs' 28 books. *Cf.* Zheng Dai & David K. Gifford, *Outputs of Generative Diffusion Models Are Often Unattributable*, 17 NATURE COMMUNS. 6974 (2026), https://doi.org/10.1038/s41467-026-75667-5 (study finding that removing any work or creator from a training set is unlikely to affect output of diffusion models trained on large amounts of data). Plaintiffs' brief fails even to allege actual diminishment of their own incentives to write.

Content-based restrictions must also be "the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). But, if fair use in AI training is denied merely based on "dilution" from non-infringing works, everyone's ability to use AI to create any non-infringing works is in jeopardy. *See Kadrey*, 788 F. Supp. 3d at 1034-35 (suggesting dilution may make AI training "generally illegal"). There are far less restrictive alternatives, such as adhering to the constitutional limit on copyright to only *original* elements. *Bartz*, 787 F. Supp. 3d at 1021-22.

Extending copyright to genres to deny fair use in training AI for wholly non-infringing uses "would … shackle the First Amendment in its attempt to secure 'the widest possible dissemination of information from diverse and antagonistic sources.'" *Sullivan*, 376 U.S. at 266 (cleaned up). In our democracy, a new "dilution" theory cannot be used to undermine this First Amendment goal of widespread dissemination of speech from diverse and antagonistic sources, including AI creators.

**CONCLUSION**

The Court should grant Defendants' motion for summary judgment on fair use.

Dated: August 27, 2026

Respectfully submitted,

**SCHAERR JAFFE LLP**
*/s/ Donald M. Falk*
Donald M. Falk (SBN150256)
dfalk@schaerr-jaffe.com
One Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 562-4942

*Counsel for Amici Curiae Copyright Law Professors*